**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>STANLEY CHAIS, individually and as General Partner of Defendants The Brighton Company, The Lambeth Company, and The Popham Company, and as trustee for The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. | Adv. Pro. No. __________ (BRL) |

Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, the Onondaga, Inc. Defined Benefit Plan, and the Unicycle Corporation Money Purchase Plan;

PAMELA CHAIS, individually and as trustee for the Chais 1991 Family Trust, the Appleby Productions Ltd., Defined Contribution Plan, the Appleby Productions Ltd. Money Purchase Plan, and the Appleby Productions Ltd. Profit Sharing Plan;

EMILY CHASALOW, individually and as trustee for the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow

1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust;

MARK CHAIS, individually and as trustee for the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust;

WILLIAM CHAIS individually and as trustee for the William Chais and Wrenn Chais 1994 Family Trust Dated 4/25/95, the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow

1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, and the Onondaga, Inc. Defined Benefit Plan;

MICHAEL CHASALOW;

MIRIE CHAIS;

WRENN CHAIS, individually and as trustee for the William and Wrenn Chais 1994 Family Trust Dated 4/25/95;

ALBERT ANGEL, as trustee for The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow Transferee #1 Trust, and the Tali Chais Transferee #1 Trust;

THE BRIGHTON COMPANY; THE LAMBETH COMPANY; THE POPHAM COMPANY; APPLEBY PRODUCTIONS LTD.; THE APPLEBY PRODUCTIONS LTD. DEFINED CONTRIBUTION PLAN; THE

APPLEBY PRODUCTIONS LTD. MONEY PURCHASE PLAN; THE APPLEBY PRODUCTIONS LTD. PROFIT SHARING PLAN; THE UNICYCLE TRADING COMPANY; UNICYCLE CORP., individually and as the General Partner of The Unicycle Trading Company; THE UNICYCLE CORPORATION MONEY PURCHASE PLAN; ONONDAGA, INC., individually and as General Partner of Chais Investments Ltd., a Nevada Limited Partnership; THE ONONDAGA, INC. MONEY PURCHASE PLAN; THE ONONDAGA, INC. DEFINED BENEFIT PENSION PLAN; CHAIS INVESTMENTS, LTD.; CHAIS FAMILY FOUNDATION; CHAIS MANAGEMENT, INC., individually and as General Partner of Chais Management Ltd.; CHAIS MANAGEMENT, LTD.; CHAIS VENTURE HOLDINGS;

THE 1994 TRUST FOR THE CHILDREN OF STANLEY AND PAMELA CHAIS; THE 1996 TRUST FOR THE CHILDREN OF PAMELA CHAIS AND STANLEY CHAIS; THE 1999 TRUST FOR THE CHILDREN OF STANLEY AND PAMELA CHAIS; THE 1999 TRUST FOR THE GRANDCHILDREN OF STANLEY AND PAMELA CHAIS; THE CHAIS 1991 FAMILY TRUST; THE EMILY CHAIS 1983 TRUST; THE EMILY CHAIS TRUST; THE EMILY CHAIS ISSUE TRUST; THE MARK HUGH CHAIS TRUST; THE MARK HUGH CHAIS ISSUE TRUST; THE MARK HUGH CHAIS 1983 TRUST; THE WILLIAM FREDERICK CHAIS TRUST; THE WILLIAM F. CHAIS ISSUE TRUST; THE WILLIAM FREDERICK CHAIS 1983 TRUST; THE WILLIAM AND WRENN CHAIS 1994 FAMILY TRUST; THE ARI CHAIS 1999 TRUST; THE ARI CHAIS TRANSFEREE #1 TRUST; THE BENJAMIN PAUL CHASALOW 1999 TRUST; THE BENJAMIN PAUL CHASALOW TRANSFEREE #1 TRUST; THE CHLOE FRANCIS CHAIS 1994 TRUST; THE CHLOE FRANCIS CHAIS TRANSFEREE #1 TRUST; THE JONATHAN WOLF CHAIS TRUST; THE JONATHAN CHAIS TRANSFEREE #1 TRUST; THE JUSTIN ROBERT CHASALOW 1999 TRUST; THE

JUSTIN ROBERT CHASALOW TRANSFEREE #1 TRUST; THE MADELINE CELIA CHAIS 1992 TRUST; THE MADELINE CHAIS TRANSFEREE #1 TRUST; THE RACHEL ALLISON CHASALOW 1999 TRUST; THE RACHEL ALLISON CHASALOW TRANSFEREE #1 TRUST; THE TALI CHAIS 1997 TRUST; THE TALI CHAIS TRANSFEREE #1 TRUST; and DOES 1-25;

Defendants.

**COMPLAINT**

Irving H. Picard, Esq. (the "Trustee"), as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), by and through his undersigned counsel, for his Complaint, states as follows:

**NATURE OF PROCEEDING**

1. This adversary proceeding arises from the massive Ponzi scheme perpetrated by Bernard L. Madoff ("Madoff"). In early December 2008, BLMIS generated client account statements for its nearly 7,000 client accounts at BLMIS. When added together, these statements purportedly show that clients of BLMIS had approximately $64.8 billion invested with BLMIS. In reality, BLMIS had assets on hand worth a small fraction of that amount. On March 12, 2009, Madoff admitted to the fraudulent scheme and pled guilty to 11 felony counts. Defendants received avoidable transfers from BLMIS, and the purpose of this proceeding is to recover the avoidable transfers received by one or more of the Defendants.

2. Stanley Chais ("Chais") was a beneficiary of this Ponzi scheme for at least thirty years. Since December 1995, he and the other Defendants collectively profited from this scheme through the withdrawal of more than one billion dollars, and knew or should have known that they were reaping the benefits of manipulated purported returns, false documents and fictitious

profits. On information and belief, prior to 1995 Defendants received untold additional funds that consisted in substantial part of money that had been paid to BLMIS by other investors.

3. Regular trading accounts for investment funds managed by Chais received unrealistically high and consistent annual returns of between 20% and 24%, with only three months of purported negative returns over 144 months of purported trading. At the same time, Chais' own family and corporate accounts reported even higher returns, sometimes in excess of 100%—and even 300%—per year, with a combined average annual return approaching 40%. Either an utter lack of volatility over twelve years or implausibly high rates of return over the same period suggests misconduct; that the same investment manager purported to accomplish both at the same time should have removed all doubt. Even aside from the other indicia of fraud in Defendants' accounts discussed herein, Chais knew or should have known that BLMIS was engaged in fraud based on these two patterns of returns, whose only common denominator is the unlikelihood that they could result from legitimate trading.

4. This adversary proceeding is brought pursuant to 15 U.S.C. §§ 78fff(b) and 78fff-2(c)(3), and sections 105(a), 502(d), 542, 544, 547, 548(a), 550(a) and 551 of 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), the New York Fraudulent Conveyance Act (N.Y. Debt & Cred. § 270 *et seq*. (McKinney 2001)), and other applicable law, for turnover, accounting, preferences, fraudulent conveyances, damages and objection to claim in connection with certain transfers of property by BLMIS to or for the benefit of Defendants. The Trustee seeks to set aside such transfers and preserve the property for the benefit of BLMIS' defrauded customers.

## JURISDICTION AND VENUE

5. This is an adversary proceeding brought in this Court, the Court in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding"). This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§ 78eee(b)(2)(A), (b)(4).

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E), (F), (H) and (O).

7. Venue in this district is proper under 28 U.S.C. § 1409.

**BACKGROUND, THE TRUSTEE AND STANDING**

8. On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud. Contemporaneously, the Securities and Exchange Commission ("SEC") filed a complaint in the District Court which commenced the District Court Proceeding against Madoff and BLMIS. The District Court Proceeding remains pending in the District Court. The SEC complaint alleged that Madoff and BLMIS engaged in fraud through the investment advisor activities of BLMIS.

9. On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order which appointed Lee S. Richards, Esq. as Receiver for the assets of BLMIS.

10. On December 15, 2008, pursuant to 15 U.S.C. § 78eee(a)(4)(A), the SEC consented to a combination of its own action with an application of the Securities Investor Protection Corporation ("SIPC"). Thereafter, pursuant to 15 U.S.C. § 78eee(a)(4)(B), SIPC filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.

11. Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA (the "Protective Decree"), which, in pertinent part:

a. appointed the Trustee for the liquidation of the business of BLMIS pursuant to 15 U.S.C. § 78eee(b)(3);

b. appointed Baker & Hostetler LLP as counsel to the Trustee pursuant to 15 U.S.C. § 78eee(b)(3); and

c. removed the case to this Bankruptcy Court pursuant to 15 U.S.C. § 78eee(b)(4).

12. By orders dated December 23, 2008 and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person. Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

13. At a plea hearing (the "Plea Hearing") on March 12, 2009 in the case captioned *United States v. Madoff*, Case No. 09-CR-213(DC), Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys' Office for the Southern District of New York. At the Plea Hearing, Madoff admitted that he "operated a Ponzi scheme through the investment advisory side of [BLMIS]." (Plea Hr'g Tr. at 23:14-17.) Additionally, Madoff asserted "[a]s I engaged in my fraud, I knew what I was doing [was] wrong, indeed criminal." (Id. at 23:20-21.)

14. As the Trustee appointed under SIPA, the Trustee has the job of recovering and paying out customer property to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors. The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway. However,

such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years. Consequently, the Trustee must use his authority under SIPA and the Bankruptcy Code to pursue recovery from customers who received preferences and/or payouts of fictitious profits to the detriment of other defrauded customers whose money was consumed by the Ponzi scheme. Absent this or other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of 15 U.S.C. § 78fff-2(c)(1).

15. Pursuant to 15 U.S.C. § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code in addition to the powers granted by SIPA pursuant to 15 U.S.C. § 78fff(b). Chapters 1, 3, 5 and Subchapters I and II of Chapter 7 of the Bankruptcy Code are applicable to this case.

16. Pursuant to 15 U.S.C. § 78*lll*(7)(B), the Filing Date is deemed to be the date of the filing of the petition within the meanings of sections 547 and 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

17. The Trustee has standing to bring these claims pursuant to 15 U.S.C. § 78fff-1 and the Bankruptcy Code , including 11 U.S.C. § 101 *et seq*., including sections 323(b) and 704(a)(1) because, among other reasons:

a. BLMIS incurred losses as a result of the claims set forth herein;

b. The Trustee is a bailee of customer funds entrusted to BLMIS for investment purposes; and

c. The Trustee is the assignee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding (such claim-filing customers,

collectively, "Accountholders"). As of this date hereof, the Trustee has received multiple express unconditional assignments of the applicable Accountholders' causes of action, which actions could have been asserted against Defendants. As assignee, the Trustee stands in the shoes of persons who have suffered injury, in fact, and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages.

## THE FRAUDULENT PONZI SCHEME

18. BLMIS is a New York limited liability company that is wholly owned by Madoff. Founded in 1960, BLMIS operated from its principal place of business at 885 Third Avenue, New York, New York. Madoff, as founder, chairman, and chief executive officer, ran BLMIS together with several family members and a number of additional employees. BLMIS had three business units: investment advisory (the "IA Business"), market making and proprietary trading.

19. For certain accounts in the IA Business, BLMIS purported to participate in a capital appreciation/depreciation strategy, depending on whether the customer sought to generate gains or losses. For example, the strategy was executed by either purporting to purchase small groups of securities transactions near lows and then purporting to sell those same securities at highs, or by purporting to sell securities near highs and then purporting to repurchase those securities near lows.

20. Although clients of the IA Business received monthly or quarterly statements purportedly showing the securities that were held in, or had been traded through, their accounts, and the growth of and profit from those accounts over time, the trades reported on these statements were a complete fabrication. The security purchases and sales depicted in the account statements virtually never occurred and the profits reported were entirely fictitious. At the Plea Hearing, Madoff admitted that he never in fact purchased any of the securities he claimed to have purchased for customer accounts. Indeed, based on the Trustee's investigation to date and

with the exception of isolated individual trades for certain clients other than the Defendants, there is no record of the IA Business having cleared any purchase or sale of securities at the Deposit Trust & Clearing Corporation, the clearing house for such transactions, or any other trading platform on which BLMIS could have reasonably traded securities.

21. Prior to his arrest, Madoff assured clients and regulators that he conducted trades on the over-the-counter market, after hours. To bolster that lie, Madoff periodically wired tens of millions of dollars to BLMIS' affiliate, Madoff Securities International Ltd. ("MSIL"), a London based entity wholly owned by Madoff. There are no records that MSIL ever used the wired funds to purchase securities for the accounts of the IA Business clients.

22. Additionally, based on the Trustee's investigation to date, there is no evidence that the IA Business ever purchased or sold any of the options that Madoff claimed on customer statements to have purchased.

23. For all periods relevant hereto, the IA Business was operated as a Ponzi scheme and Madoff and BLMIS concealed the ongoing fraud in an effort to hinder and delay other current and prospective customers of BLMIS from discovering the fraud. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to, or payments on behalf of, other investors. The money sent to BLMIS for investment, in short, was simply used to keep the operation going and to enrich Madoff, his associates and others, including Defendants, until such time as the requests for redemptions in December 2008 overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

24. During the scheme, certain investors requested and received distributions of the "profits" listed for their accounts which were nothing more than fictitious profits. Other

investors, from time to time, redeemed or closed their accounts, or removed portions of them, and were paid consistently with the statements they had been receiving. Some of those investors later re-invested part or all of those withdrawn payments with BLMIS.

25. When payments were made to or on behalf of these investors, including the Defendants, the falsified monthly statements of accounts reported that the accounts of such investors included substantial gains. In reality, BLMIS had not invested the investors' principal as reflected in customer statements. In an attempt to conceal the ongoing fraud and thereby hinder, delay, and defraud other current and prospective investors, BLMIS paid to or on behalf of certain investors, such as the Defendants, the inflated amounts reflected in the falsified customer statements, including fictitious profits, and not such investors' true, depleted account balances.

26. BLMIS used the funds deposited from investors or new investments to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers. Due to the siphoning and diversion of new investments to pay requests for payments or redemptions from other investors, particularly longer term account holders like the Defendants, BLMIS did not have the funds to pay investors on account of their new investments. BLMIS was able to stay afloat only by using the principal invested by some clients to pay other investors, most often longer term investors or their designees.

27. Defendants were among the primary beneficiaries of this scheme, receiving the distribution of more than one billion dollars since December 1995 alone. Defendants knew or should have known that the activity purportedly conducted in their accounts was patently false on its face, and that their purported returns and profits were fictitious.

28. In an effort to hinder, delay and defraud authorities from detecting the fraud, BLMIS did not register as an Investment Advisor until September 2006.

29. In or about January 2008, BLMIS filed with the SEC a Uniform Application for Investment Adviser Registration. The application represented, *inter alia*, that BLMIS had 23 customer accounts and assets under management of approximately $17.1 billion. In fact, in January 2008, BLMIS had over 4,900 active customer accounts with a purported value of approximately $68 billion under management.

30. Not only did Madoff seek to evade regulators, Madoff also had false audit reports "prepared" by Friehling & Horowitz, a three-person accounting firm in Rockland County, New York. Of the three employees at the firm, one employee was an assistant and one was a semi-retired accountant living in Florida.

31. At all times relevant hereto, the liabilities of BLMIS were billions of dollars greater than the assets of BLMIS. At all relevant times, BLMIS was insolvent in that (i) its assets were worth less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and (iii) at the time of the transfers, BLMIS was left with insufficient capital.

32. This and similar complaints are being brought to recapture monies paid to or for the benefit of certain investors so that this customer property can be equitably distributed among all of the victims of BLMIS in accordance with the provisions of SIPA.

**THE DEFENDANTS AND THE TRANSFERS**

33. Defendant Chais is an unregistered investment advisor formerly based in Beverly Hills who invested in BLMIS over many decades through more than 60 entity and/or personal accounts. He currently resides at 785 Fifth Avenue #14C, New York, NY 10022 and 9255 Doheny Road, No. 901/903, West Hollywood, CA 90069. On information and belief, Chais has been closely associated with Madoff on both a business and social level since at least the 1970s. On information and belief, Chais is the settlor and trustee for the following trusts: The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela

Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust. On information and belief, Defendant Chais is also trustee for the Onondaga, Inc. Defined Benefit Plan and Unicycle Corporation Money Purchase Plan.

34. Defendant Pamela Chais is a person residing at 785 Fifth Avenue #14C, New York, NY 10022 and 9255 Doheny Road, No. 901/903, West Hollywood, CA 90069. On information and belief, Pamela Chais is the wife of Chais. On information and belief, Pamela Chais is the trustee for the Chais 1991 Family Trust, the Appleby Productions Ltd., Defined Contribution Plan, the Appleby Productions Ltd. Money Purchase Plan, and the Appleby Productions Ltd. Profit Sharing Plan. On information and belief, Pamela Chais is the President and owner of Defendant Appleby Productions Ltd.

35. Defendant Emily Chasalow is a person residing in Los Angeles, California. On information and belief, Emily Chasalow (née Chais) is the daughter of Pamela and Stanley

Chais. On information and belief, Emily Chasalow is an officer and/or director of Defendants Chais Venture Holdings, Onondaga, Inc., Chais Management, Inc., Unicycle Corp. and Chais Family Foundation. On information and belief, Emily Chasalow holds an individual BLMIS account in the name "Emily Chais," with the account address reported as 9255 Doheny Road, No. 901, West Hollywood, CA 90069. On information and belief, Emily Chasalow is a trustee for the following trusts: The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust.

36. Upon information and belief, Defendant Mark Chais is a person residing at Te'ena 12, Herzaiya Pituach, Israel. On information and belief, Mark Chais is the son of Pamela and Stanley Chais. On information and belief, Mark Chais is President of Defendant Unicycle Corp. On information and belief, Mark Chais is a Director of Defendants Chais Venture Holdings and Unicycle Corp. On information and belief, Mark Chais holds a joint BLMIS

account in the name "Mark and Mirie Chais JT WROS," with the account address reported as 9255 Doheny Road, No. 901, West Hollywood, CA 90069. On information and belief, Mark Chais is the trustee for the following Chais family trusts: The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust.

37. Defendant William Chais is a person residing in Los Angeles, California. On information and belief, William Chais is the son of Pamela and Stanley Chais. On information and belief, William Chais is an officer of Chais Venture Holdings, Chais Management, Inc., and Onondaga, Inc. On information and belief, William Chais holds an individual BLMIS account in the name "William Chais," with the account address reported as 9255 Doheny Road, No. 901, West Hollywood, CA 90069. On information and belief, William Chais holds a joint BLMIS account in the name "William Chais and Wrenn Chais J/T WROS," with the account address

reported as 9255 Doheny Road, No. 901, West Hollywood, CA 90069. On information and belief, William Chais is a trustee for the following trusts: The William Chais and Wrenn Chais 1994 Family Trust Dated 4/25/95, the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, and the Onondaga, Inc. Defined Benefit Plan.

38. Defendant Michael Chasalow is a person residing in Los Angeles, California. On information and belief, Michael Chasalow is the husband of Emily Chasalow. On information and belief, Michael Chasalow is the registered agent for The Brighton Company and the Chais Family Foundation, and officer and/or director of Onondaga, Inc.

39. Defendant Mirie Chais is a person residing at Te'ena 12, Herzaiya Pituach, Israel. On information and belief, Mirie Chais is the wife of Mark Chais. On information and belief,

Mirie Chais holds an individual BLMIS account in the name "Mirie Chais," with the account address reported as Te'ena 12, Herzaiya Pituach, Israel.

40. Defendant Wrenn Chais is a person residing in Los Angeles, California. On information and belief, Wrenn Chais is the wife of William Chais. On information and belief, Wrenn Chais is a trustee for the William and Wrenn Chais 1994 Family Trust Dated 4/25/95. On information and belief, Wrenn Chais holds a joint BLMIS account in the name "William Chais and Wrenn Chais J/T WROS," with the account address reported as 9255 Doheny Road, No. 901, West Hollywood, CA 90069.

41. Defendant Albert Angel is a person residing at 4 Rocky Way, West Orange, NJ 07052. On information and belief, Albert Angel is a trustee for the following trusts: The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow Transferee #1 Trust, and the Tali Chais Transferee #1 Trust.

42. Defendant The Brighton Company ("Brighton") is a limited partnership, organized under the laws of California, with a principal place of business at 9255 Doheny Road, No. 901, West Hollywood, CA 90069.

43. Defendant The Lambeth Company ("Lambeth") is a limited partnership, organized under the laws of California, with a principal place of business at 9255 Doheny Road, No. 901, West Hollywood, CA 90069.

44. Defendant The Popham Company ("Popham") is a limited partnership, organized under the laws of California, with a principal place of business at 9255 Doheny Road, No. 901, West Hollywood, CA 90069.

45. Defendant Stanley Chais is the general partner of Defendants Brighton, Lambeth and Popham (collectively, the "Chais Funds"), which are investment funds that purportedly engaged in "arbitrage transactions." The Chais Funds have been dominated and used merely as the instrument of Chais to advance his personal interests rather than corporate ends. As set forth herein, Chais exercised complete domination of the Chais Funds in dealing with BLMIS, which he knew or should have known was predicated on fraud. As a result, Defendants Brighton, Lambeth, and Popham functioned as alter egos of Chais and no corporate veil can be maintained between them.

46. Defendant Appleby Productions Ltd. ("Appleby") is a corporation organized under the laws of California, with a principal place of business at 16530 Ventura Boulevard, Suite 611, Encino, California. Appleby maintained separate accounts at BLMIS for the Appleby Productions Ltd. Money Purchase Plan, the Appleby Productions Ltd. Defined Contribution Plan, and the Appleby Productions Ltd. Profit Sharing Plan (collectively, with Appleby, the "Appleby Defendants"). Upon information and belief, Defendant Pamela Chais is an officer and/or director and/or principal of the Appleby Defendants.

47. Upon information and belief, Defendant Appleby Productions Ltd. Defined Contribution Plan is a benefits plan with Pamela Chais named as trustee and/or plan administrator/manager.

48. Upon information and belief, Defendant Appleby Productions Ltd. Money Purchase Plan is a benefits plan with Pamela Chais named as trustee and/or plan administrator/manager.

49. Upon information and belief, Defendant Appleby Productions Ltd. Profit Sharing Plan is a benefits plan with Pamela Chais named as trustee and/or plan administrator/manager.

50. Defendant Unicycle Trading Company is a limited partnership organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701.

51. Defendant Unicycle Corp. is a corporation organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701. On information and belief, Unicycle Corp. is the General Partner of Defendant Unicycle Trading Company. Unicycle Corp. maintained a separate BLMIS account for the Unicycle Corp. Money Purchase Plan (collectively, with Unicycle Corp. and Unicycle Trading Company, the "Unicycle Defendants").

52. Upon information and belief, Defendant Unicycle Corp. Money Purchase Plan is a benefits plan with Chais named as trustee and/or plan administrator/manager.

53. Defendant Onondaga Inc. ("Onondaga") is a corporation organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701. Onondaga is the General Partner of Defendant Chais Investments Ltd. Onondaga maintained separate accounts at BLMIS for the Onondaga, Inc. Money Purchase Plan

and the Onondaga, Inc. Defined Benefit Pension Plan (collectively, with Onondaga, the "Onondaga Defendants"). Upon information and belief, Defendants Stanley Chais, Emily Chasalow, Mark Chais, William Chais and/or Michael Chasalow are officers and/or directors and/or Trustees of the Onondaga Defendants.

54. Upon information and belief, Defendant Onondaga, Inc. Money Purchase Plan is a benefits plan with Chais and William Chais named as trustees and/or plan administrators/managers.

55. Upon information and belief, Defendant Onondaga, Inc. Defined Benefit Pension Plan is a benefits plan with Chais and William Chais named as trustees and/or plan administrators/managers.

56. Defendant Chais Investments Ltd. is a limited partnership organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701. Upon information and belief, Defendants Stanley Chais, Emily Chasalow, Mark Chais and/or William Chais are officers and/or directors of Chais Investments Ltd.

57. Defendant Chais Family Foundation is a corporation organized under the laws of California with a principal place of business at 9255 Doheny Road, No. 901, West Hollywood, CA 90069. Upon information and belief, Defendants Stanley Chais, Emily Chasalow, Mark Chais and/or William Chais are officers and/or directors of Chais Family Foundation.

58. Defendant Chais Management Inc. is a corporation organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701. Defendant Chais Management Inc. is the General Partner of Defendant Chais Management Ltd. Upon information and belief, Defendants Stanley Chais, Emily Chasalow, Mark Chais and/or William Chais are officers and/or directors of Chais Management Inc.

59. Defendant Chais Management Ltd. is a limited partnership organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701. Upon information and belief, Defendants Stanley Chais, Emily Chasalow, Mark Chais and/or William Chais are officers and/or directors and/or general partners of Chais Management Ltd.

60. Defendant Chais Venture Holdings is a corporation organized under the laws of Nevada with a registered agent for service at 1000 East William Street, Suite 204, Carson City, NV 89701. Upon information and belief, Defendants Stanley Chais, Emily Chasalow, Mark Chais and/or William Chais are officers and/or directors of Chais Venture Holdings.

61. Upon information and belief, Defendant 1994 Trust for the Children of Stanley and Pamela Chais is a trust established for beneficiaries Mark Chais, William Chais, and Emily Chasalow, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

62. Upon information and belief, Defendant 1996 Trust for the Children of Pamela Chais and Stanley Chais is a trust established for beneficiaries Mark Chais, William Chais, and Emily Chais Chasalow, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account addresses reported as 9255 Doheny Road, No. 901, West Hollywood, CA 90069 and 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the 1996 Trust for the Children of Pamela Chais and Stanley Chais held multiple accounts at BLMIS.

63. Upon information and belief, Defendant 1999 Trust for the Children of Stanley and Pamela Chais is a trust established for beneficiaries Mark Chais, William Chais, and Emily

Chais Chasalow, Chais' children, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

64. Upon information and belief, Defendant 1999 Trust for the Grandchildren of Stanley and Pamela Chais is a trust established for Chais' grandchildren, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and/or Albert Angel listed as trustees and the trust's BLMIS account address reported as a prior home address of Stanley Chais.

65. Upon information and belief, Defendant Chais 1991 Family Trust is a trust established for members of the Chais immediate family as beneficiaries, with Defendants Chais, Pamela Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Chais 1991 Family Trust held multiple accounts at BLMIS.

66. Upon information and belief, Defendant Emily Chais 1983 Trust is a trust established for beneficiary Emily Chais Chasalow, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Emily Chais 1983 Trust held multiple accounts at BLMIS.

67. Upon information and belief, Defendant Emily Chais Trust is a trust established for beneficiary Emily Chais Chasalow, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Emily Chais Trust held multiple accounts at BLMIS.

68. Upon information and belief, Defendant Emily Chais Issue Trust is a trust established for the children of Emily Chais Chasalow as beneficiaries, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Emily Chais Issue Trust held multiple accounts at BLMIS.

69. Upon information and belief, Defendant Mark Hugh Chais Trust is a trust established for beneficiary Mark Chais, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Mark Hugh Chais Trust held multiple accounts at BLMIS.

70. Upon information and belief, Defendant Mark Hugh Chais Issue Trust is a trust established for the children of Mark Chais as beneficiaries, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Mark Hugh Chais Issue Trust held multiple accounts at BLMIS.

71. Upon information and belief, Defendant Mark Hugh Chais 1983 Trust is a trust established for beneficiary Mark Chais, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the Mark Hugh Chais 1983 Trust held multiple accounts at BLMIS.

72. Upon information and belief, Defendant William Frederick Chais Trust is a trust established for beneficiary William Chais, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address

reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the William Frederick Chais Trust held multiple accounts at BLMIS.

73. Upon information and belief, Defendant William F. Chais Issue Trust is a trust established for the children of Mark Chais as beneficiaries, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the William F. Chais Issue Trust held multiple accounts at BLMIS.

74. Upon information and belief, Defendant William Frederick Chais 1983 Trust is a trust established for beneficiary William Chais, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052. On information and belief the William Frederick Chais 1983 Trust held multiple accounts at BLMIS.

75. Upon information and belief, Defendant William and Wrenn Chais 1994 Family Trust is a trust established for the family of William Chais, with Defendants William Chais and Wrenn Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

76. Upon information and belief, Defendant Ari Chais 1999 Trust is a trust established for beneficiary Ari Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

77. Upon information and belief, Defendant Ari Chais Transferee #1 Trust is a trust established for beneficiary Ari Chais, Chais' grandchild, with Defendants Chais, Emily

Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

78. Upon information and belief, Defendant Benjamin Paul Chasalow 1999 Trust is a trust established for beneficiary Benjamin Paul Chasalow, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

79. Upon information and belief, Defendant Benjamin Paul Chasalow Transferee #1 Trust is a trust established for beneficiary Benjamin Paul Chasalow, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

80. Upon information and belief, Defendant Chloe Francis Chais 1994 Trust is a trust established for beneficiary Chloe Francis Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

81. Upon information and belief, Defendant Chloe Francis Chais Transferee #1 Trust is a trust established for beneficiary Chloe Francis Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

82. Upon information and belief, Defendant Jonathan Wolf Chais Trust is a trust established for beneficiary Jonathan Wolf Chais, Chais' grandchild, with Defendants Chais,

Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

83. Upon information and belief, Defendant Jonathan Wolf Chais Transferee #1 Trust is a trust established for beneficiary Jonathan Wolf Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

84. Upon information and belief, Defendant Justin Robert Chasalow 1999 Trust is a trust established for beneficiary Justin Robert Chasalow, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

85. Upon information and belief, Defendant Justin Robert Chasalow Transferee #1 Trust is a trust established for beneficiary Justin Robert Chasalow, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

86. Upon information and belief, Defendant Madeline Celia Chais 1992 Trust is a trust established for beneficiary Madeline Celia Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

87. Upon information and belief, Defendant Madeline Chais Transferee #1 Trust is a trust established for beneficiary Madeline Celia Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the

trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

88. Upon information and belief, Defendant Rachel Allison Chasalow 1999 Trust is a trust established for beneficiary Rachel Allison Chasalow, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

89. Upon information and belief, Defendant Rachel Allison Chasalow Transferee #1 Trust is a trust established for beneficiary Rachel Allison Chasalow, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

90. Upon information and belief, Defendant Tali Chais 1997 Trust is a trust established for beneficiary Tali Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, and William Chais listed as trustees and the trust's BLMIS account address reported as 9255 Doheny Road, 901/03, West Hollywood, CA 90069.

91. Upon information and belief, Defendant Tali Chais Transferee #1 Trust is a trust established for beneficiary Tali Chais, Chais' grandchild, with Defendants Chais, Emily Chasalow, Mark Chais, William Chais, and Albert Angel listed as trustees and the trust's BLMIS account address reported as 4 Rocky Way, Llewellyn Park, West Orange, NJ 07052.

92. Defendant Chais is the principal and/or directed and controlled the remaining Defendant entities and individuals with IA accounts at BLMIS listed in paragraphs 46 through 91 above (collectively, the "Chais Family Accounts"). The Chais Family Accounts have been dominated and used merely as the instrument of Defendant Chais to the benefit of his personal

interests and those of his family members. As set forth herein, Chais exercised complete domination of the Chais Family Accounts in dealing with BLMIS, which he knew or should have known was predicated on fraud. As a result, the Chais Family Accounts functioned as alter egos of Chais, who established the accounts at BLMIS and at all relevant times directed the deposit and/or transfer of fictitious profits and other funds into the accounts.

93. At all times relevant hereto, one or more of the Defendants was a client of the IA Business. According to BLMIS' records, Defendants maintained the accounts with BLMIS set forth on Exhibit A (the "Accounts"). The Accounts were opened on or about the dates set forth on Exhibit A. Upon information and belief, for each Account, one or more of the Defendants executed a Customer Agreement, an Option Agreement, and/or a Trading Authorization Limited to Purchases and Sales of Securities and Options, (the "Account Agreements") and delivered such papers to BLMIS at BLMIS' headquarters at 885 Third Avenue, New York, New York.

94. The Account Agreements were to be performed in New York, New York through securities trading activities that would take place in New York, New York. The Accounts were held in New York, New York, and the Defendants consistently wired funds to BLMIS' account at JPMorgan Chase & Co., Account #000000140081703 (the "BLMIS Bank Account") in New York, New York for application to the Accounts and the conducting of trading activities.

95. Between January 1996 and the Filing Date, the Defendants invested with BLMIS through multiple deposits to the BLMIS Bank Account. The BLMIS Bank Account was maintained at a JPMorgan Chase & Co. branch in New York, New York. Defendants have intentionally taken advantage of the benefits of conducting transactions in the State of New York and have submitted themselves to the jurisdiction of this Court for purposes of this proceeding.

96. Prior to the Filing Date, BLMIS made payments or other transfers (collectively, the "Transfers") to one or more of the Defendants. The Transfers were made to or for the benefit of one of more of the Defendants and include, but are not limited to, the Transfers listed on Exhibit B.

97. Defendant Chais managed the assets of the Chais Funds, which management included directing where those assets were to be invested, and Chais was paid or received substantial fees in connection with his management duties.

98. Defendants knew or should have known that Madoff's IA Business was predicated on fraud, that they were benefitting from fraudulent transactions in their accounts, and that their purported account activity was inconsistent with legitimate trading activity and credible returns.

99. Defendant Chais is a sophisticated investor who acts as a professional investment advisor in his capacity as general partner of the Chais Funds. According to complaints filed by Chais Fund investors and Chais Fund records held or obtained by BLMIS, Chais collected fees equal to 25% of each Chais Fund's entire net profit for every calendar year in which profits exceeded 10% -- which has occurred every calendar year since at least 1996. Chais received these fees in consideration for exercising his purported skill and judgment in managing investments. Chais has reportedly known Madoff for decades and has been invested in BLMIS since at least the 1970s. Chais' telephone number appears as the first speed dial entry on a telephone list at BLMIS. He therefore enjoyed unusually intimate access to Madoff, allowing him an opportunity to gain special access to extensive information about the operations of BLMIS.

100. The remaining Defendants consist of individuals, trusts and other entities for which Chais is a principal and/or for whose accounts Chais provided direction and control. The

other individual Defendants are family members of Chais and/or trustees, officers and/or directors of trusts and other entities established by Chais on behalf of his family members. The trust and entity Defendants are entities controlled or managed by Chais together with one or more individual Defendants.

101. Among other things, Chais reviewed and notated customer statements for Chais Fund and Chais Family accounts, directed purported purchases and sales of securities within the Chais Family Accounts, including direction as to specific stocks to be purportedly purchased or sold and direction that sales or purchases be made for purposes of achieving gains or losses; directed that funds be transferred among Defendants' accounts; directed and received withdrawals of funds from Defendants' accounts; directed payments to and among various Defendants from their own and other Defendants' accounts; and otherwise communicated with and provided direction to BLMIS regarding Defendants' accounts. On information and belief Chais had virtually unlimited access to and control of the funds in the Chais Family Accounts.

102. The source of funds in many of the Chais Family Accounts was fictitious profits received by Chais for his participation in the Ponzi scheme.

103. The Defendants knew or should have known that they were benefitting from fraudulent activity or, at a minimum, failed to exercise reasonable due diligence of BLMIS and its auditors in connection with the Ponzi scheme. Among other things, the Defendants were on notice of the following indicia of irregularity and fraud in their own accounts but failed to make sufficient inquiry:

a. The Chais Fund accounts, for which Chais recruited outside investors, reported implausibly consistent — and consistently high — rates of return. For example, during the twelve year period from 1996 through 2007, the purported annual rate of return for the

regular trading accounts held by the Chais Funds and controlled by Chais remained consistently between 20% and 24% for each account for each year in which trading activity took place over the entire year. In only three of those 144 months did the regular trading accounts for Chais Funds earn a negative monthly return. By contrast, during the same period, annual returns for the S&P 500 fluctuated by over fifty-five percentage points, with an average annual return of 10.72% and 52 months of negative returns.

b. Improbable as the rates of return were for the Chais Fund accounts, they pale in comparison to the fantastical rates of return for the Chais Family Accounts, whose funds apparently were at Chais' disposal. For example, Defendant Jonathan Wolf Chais Trust's account purportedly earned an annual return of more than 300% in 1999, while Defendant Unicycle Corporation's purported annual return in 2003 was more than 100%. Indeed, between 1996 and 2007, the Chais Family Accounts enjoyed more than 35 instances of supposed annual returns of more than 100% and more than 125 in which the annual returns purportedly exceeded 50%. Collectively, the regular trading accounts for the Chais Family Accounts reported an annual average rate of return of over 39% during the period between 1996 – 2007. Chais knew or should have known that Madoff was engaged in fraud rather than real trading activity based on the fact that the Chais Family Accounts received drastically higher rates of returns than those reported for the Chais Fund accounts during the same time periods. On information and belief, the substantially higher returns reported on the Chais Family Accounts were a form of compensation by Madoff to Chais for perpetuating the Ponzi scheme by investing and maintaining millions of dollars of other people's money in BLMIS.

c. These implausibly high purported returns have enabled Defendants to collectively withdraw more than $1 billion from BLMIS since December 1995.

d. On some occasions, certain Chais Family Accounts reported anomalous "losses" that, on information and belief, were manufactured at Chais' direction, presumably for tax purposes. For example, in 2004, Defendant William Chais' account purported to lose almost its entire value with a negative 95% annual rate of return. Similarly, in 2003, Defendant Mark Hugh Chais' account purported to show a negative 89% annual rate of return. At least some of these "losses" were apparently manufactured after the dates when the subject transactions purportedly took place. For instance, in one of Defendant Chais 1991 Family Trust's accounts, BLMIS purported to purchase and sell 125,000 shares of Micron Technology Inc. for a loss of more than $1 million. The trade was first recorded on the account's July 1998 account statement, but was backdated to January 27, 1998. No such purchase appeared on the account's January 1998 statement, nor was a corresponding value of securities reflected in any account statement between January and June. Instead, the first appearance of the stock is on the July statement, when the fictitious purchase is first reflected and the "sale" at a loss is purported to occur. On information and belief, the fictitious purchase was backdated by more than 150 days to ensure that a targeted loss figure was met.

e. Chais and the other Defendants knew or should have known that fictitious and backdated trading activity was being reported in their accounts, and that their accounts reflected fictitious holdings. Indeed, the purported "losses" generally were remedied in subsequent periods with monumental and patently incredible rates of return that far outpaced the market. For example, the year after Defendant Mark Hugh Chais' account posted its negative 89% returns in 2003, it rebounded to earn a reported 165% return in 2004.

f. Similarly, in March 1998, BLMIS recorded several million dollars' worth of securities "trades" in an account controlled by Chais and held in the name of Defendant

Appleby. Many of these transactions were backdated to various dates in 1997, were accounted for according to the values of the securities on those prior dates, and were included in the March 1998 statement. Among the activity reflected in Defendant's March 1998 statement, therefore, were transactions that supposedly had taken place from April 30, 1997 through February 29, 1998, but that had neither appeared on any of the monthly statements previously issued for those months nor were consistent with the net asset values that had appeared on the earlier statements when the trades purportedly took place. The value of this Appleby account appeared to fall from about $6.7 million in February 1998 to less than $4.2 million in March 1998 because the March 1998 statement was (and subsequent statements were) based on an entirely different account history: one in which various trades had taken place on purported dates in 1997, resulting in entirely different positions and values. On information and belief, Chais directed the backdating of the March 1998 account statement presumably for tax purposes in connection with the 1997 calendar year. At a minimum, the mysterious addition of securities transactions months after the purported trades settled – and which did not appear on the earlier statements during the relevant trading period – was not credible and should have raised questions by the accountholder.

g. A specific example is instructive. Defendant Appleby's account as of December 1997 purportedly included 43,600 shares of Dell Computer Corp. ("Dell"). Among the "trades" reported in Appleby's March 1998 statement was the fictitious sale of 21,800 shares of Dell on June 17, 1997, for a total of $2,357,125. The statement reflected a securities position of 21,800 shares of Dell valued at $1,476,950, and a total market value of all securities of $4,152,213.13. But Dell stock had a 2:1 split in July 1997: Appleby's 43,600 shares in Dell had been, back in June 1997, only 21,800 shares. So if Appleby really had sold 21,800 shares on June 17, 1997 (instead of nine months later when the "transaction" was being created), the Dell

position would have been fully liquidated and the remaining balance for these securities would be zero. Accordingly, the sale of Dell securities on the March 1998 statement was clearly fabricated, a fact which should have been obvious to Chais. The following month, the April 1998 Appleby statement reversed the fictitious entry, reflecting a "DELV ADJ" of 21,800 shares of Dell with no corresponding value, and a reduction of the total market value of securities for the account to $2,806,566.50. The inexplicable disappearance of holdings that represent about one third of the account value is, at a minimum, an indication of irregularity or fraud that warrants inquiry.

h. BLMIS' statements to Defendants reflected a consistent ability to trade stocks near their monthly highs and lows to generate consistent and unusual profits (or, when requested by Defendants to generate losses, to do the opposite). No experienced investment professional could have reasonably believed that this could have been accomplished legitimately.

104. Beyond these indicia of fraud in Defendants' own accounts, Defendants ignored numerous other indicia of irregularity and fraud from the general manner in which BLMIS operated. Among other things, Defendants were on notice of the following additional indicia of irregularity and fraud but failed to make sufficient inquiry:

a. Financial industry press reports, including a May 27, 2001 article in Barron's entitled "Don't Ask, Don't Tell: Bernie Madoff is so secretive, he even asks investors to keep mum," and a May, 2001 article in MAR/Hedge, a semi-monthly newsletter that is widely read by investment professionals as Chais purported to be, entitled "Madoff Tops Charts; Skeptics Ask How," raised serious questions about the legitimacy of BLMIS and Madoff and their ability to achieve the IA Business returns they purportedly had achieved using the investment strategy Madoff claimed to employ for most clients.

b. On information and belief, Madoff instructed Chais and other fund managers not to inform their investors that BLMIS was their money manager, and accordingly Chais did not inform the investors in the Chais Funds that he had placed any—and in fact all—of their money with Madoff. Chais knew or should have known Madoff's lack of transparency to the underlying investors was counterintuitive for an investment advisor that purportedly depended on volume trading business to generate commissions, and therefore indicative of fraud.

c. BLMIS did not provide its customers with electronic real-time online access to their accounts, which was and is customary in the industry for hedge fund and fund of funds investors. As a manager of his investors' funds, Chais knew or should have known that BLMIS' practice not to provide electronic access or automated confirmation of trading activity was atypical and warranted further inquiry.

d. BLMIS functioned as both investment manager and custodian of securities. This arrangement eliminated another frequently utilized check and balance in investment management by excluding an independent custodian of securities from the process, and thereby furthering the lack of transparency of BLMIS to other investors, regulators and outside parties.

e. BLMIS, which reputedly ran the world's largest hedge fund, was purportedly audited by Friehling & Horowitz, an accounting firm that had three employees, one of whom was semi-retired, with offices located in a strip mall. No investment professional could have reasonably believed it possible for any such firm to have competently audited an entity the size of BLMIS.

f. The compensation system utilized by BLMIS was atypical in that BLMIS, the entity purportedly employing the hugely-successful and secret proprietary trading system,

was compensated only for the trades that it executed, while Defendant Chais, whose only role was to funnel money to BLMIS, received administrative fees and a share of the profits that would normally go to the entity in the position of BLMIS. This compensation arrangement, together with the lack of transparency and other factors listed herein, should have caused an investment professional to question Madoff's operation.

g. Despite its immense size, BLMIS was substantially a family-run operation, employing many of Madoff's relatives, and virtually no outside professionals. Indeed, the comptroller for BLMIS was based in Bermuda and was not an in-house comptroller with full access to information about BLMIS operations.

h. At no time did Chais or the other Defendants conduct a performance audit of BLMIS or match any trade confirmations provided by BLMIS with actual trades executed through any domestic or foreign public exchange, despite the fact that the Chais Funds and other Defendants' accounts had tens of millions of dollars in assets and easily could have afforded to do this.

i. Based on all of the foregoing factors, many banks, industry advisors and insiders who made an effort to conduct reasonable due diligence flatly refused to deal with BLMIS and Madoff because they had serious concerns that their IA Business operations were not legitimate. On information and belief, included among these were Société Générale, Goldman Sachs, CitiGroup, Morgan Stanley, Merrill Lynch, Bear Stearns, and Credit Suisse.

105. The Transfers were and continue to be customer property within the meaning of 15 U.S.C. § 78*lll*(4), and are subject to turnover pursuant to section 542 of the Bankruptcy Code.

106. The Transfers were, in part, false and fraudulent payments of nonexistent profits supposedly earned in the Accounts ("Fictitious Profits").

107. The Transfers are avoidable and recoverable under sections 544, 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. CPLR 203(g) (McKinney 2001) and N.Y. Debt. & Cred. §§ 273 – 276 (McKinney 2001).

108. Of the Transfers, multiple transfers in the collective amount of at least approximately $804 million (the "Six Year Transfers") were made during the six years prior to the Filing Date and are avoidable and recoverable under sections 544, 550(a)(1) and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), and applicable provisions of N.Y. Debt. & Cred. §§ 273 - 276.

109. Of the Six Year Transfers, multiple transfers in the collective amount of at least approximately $377 million (the "Two Year Transfers") were made during the two years prior to the Filing Date, and are additionally recoverable under sections 548(a)(1), 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3).

110. Of the Two Year Transfers, multiple transfers in the collective amount of at least approximately $46 million (the "90 Day Transfers") were made during the 90 days prior to the Filing Date, and are additionally recoverable under sections 547, 550(a)(1) and 551 of the Bankruptcy Code and applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3).

111. To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

112. The Trustee's investigation is on-going and the Trustee reserves the right to (i) supplement the information on the Transfers and any additional transfers, and (ii) seek recovery of such additional transfers.

**COUNT ONE**
**TURNOVER AND ACCOUNTING – 11 U.S.C. § 542**

113. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

114. The Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

115. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is entitled to the immediate payment and turnover from the Defendants of any and all Transfers made by BLMIS, directly or indirectly, to any Defendant.

116. As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such Transfers received by any Defendant from BLMIS, directly or indirectly.

**COUNT TWO**
**PREFERENTIAL TRANSFERS - 11 U.S.C. §§ 547(b), 550 AND 551**

117. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

118. At the time of each of the 90 Day Transfers (hereafter, the "Preference Period Transfers"), the Defendants were each a "creditor" of BLMIS within the meaning of section 101(10) of the Bankruptcy Code and pursuant to 15 U.S.C. § 78fff-2(c)(3).

119. Each of the Preference Period Transfers constitutes a transfer of an interest of BLMIS in property within the meaning of section 101(54) of the Bankruptcy Code and pursuant to 15 U.S.C. § 78fff-2(c)(3).

120. Each of the Preference Period Transfers was to or for the benefit of a Defendant.

121. Pleading in the alternative, each of the Preference Period Transfers was made on account of an antecedent debt owed by BLMIS before such transfer was made.

122. Each of the Preference Period Transfers was made while BLMIS was insolvent.

123. Each of the Preference Period Transfers was made during the preference period under section 547(b)(4) of the Bankruptcy Code.

124. Each of the Preference Period Transfers enabled Defendant to receive more than the receiving Defendant would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) the applicable Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

125. Each of the Preference Period Transfers constitutes a preferential transfer avoidable by the Trustee pursuant to section 547(b) of the Bankruptcy Code and recoverable from the applicable Defendant pursuant to section 550(a).

126. As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 547(b), 550, and 551 of the Bankruptcy Code: (a) avoiding and preserving the Preference Period Transfers, (b) directing that the Preference Period Transfers be set aside, and (c) recovering the Preference Period Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**COUNT THREE**
**FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(A), 550 AND 551**

127. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

128. The Two Year Transfers were made on or within two years before the filing date of BLMIS' case.

129. The Two Year Transfers were made by BLMIS with the actual intent to hinder, delay, and defraud some or all of BLMIS' then existing or future creditors.

130. The Two Year Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and recoverable from the Defendants pursuant to section 550(a).

131. As a result of the foregoing, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS.

**COUNT FOUR**
**FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(a)(1)(B), 550 AND 551**

132. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

133. The Two Year Transfers were made on or within two years before the Filing Date.

134. BLMIS received less than a reasonably equivalent value in exchange for each of the Two Year Transfers.

135. At the time of each of the Two Year Transfers, BLMIS was insolvent, or became insolvent as a result of the Two Year Transfer in question.

136. At the time of each of the Two Year Transfers, BLMIS was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with BLMIS was an unreasonably small capital.

137. At the time of each of the Two Year Transfers, BLMIS intended to incur, or believed that it would incur, debts that would be beyond BLMIS' ability to pay as such debts matured.

138. The Two Year Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(B) of the Bankruptcy Code and recoverable from the Defendants pursuant to section 550(a).

139. As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS.

**COUNT FIVE**
**FRAUDULENT TRANSFER – NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a) AND 551**

140. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

141. At all times relevant to the Six Year Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

142. The Six Year Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Six Year Transfers to or for the benefit of the Defendants in furtherance of a fraudulent investment scheme.

143. As a result of the foregoing, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, (c)

recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the Defendants.

**COUNT SIX**
**FRAUDULENT TRANSFER -- NEW YORK DEBTOR AND CREDITOR LAW §§ 273 AND 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(A), 551 AND 1107**

144. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

145. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

146. BLMIS did not receive fair consideration for the Six Year Transfers.

147. BLMIS was insolvent at the time it made each of the Six Year Transfers or, in the alternative, BLMIS became insolvent as a result of each of the Six Year Transfers.

148. As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 273, 278 and 279 of the New York Debtor and Creditor Law and sections 544(b), 550 and 551 of the Bankruptcy Code: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, for the benefit of the estate of BLMIS.

**COUNT SEVEN**
**FRAUDULENT TRANSFERS—NEW YORK DEBTOR AND CREDITOR LAW §§ 274, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(A), 551 AND 1107**

149. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

150. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under

section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

151. BLMIS did not receive fair consideration for the Six Year Transfers.

152. At the time BLMIS made each of the Six Year Transfers, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Six Year Transfers was an unreasonably small capital.

153. As a result of the foregoing, pursuant to sections 274, 278 and/or 279 of the New York Debtor and Creditor Law and sections 544(b) and 550(a) of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS.

## COUNT EIGHT
## FRAUDULENT TRANSFERS-NEW YORK DEBTOR AND CREDITOR LAW §§ 275, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(A) AND 551

154. The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint as if fully rewritten herein.

155. At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

156. BLMIS did not receive fair consideration for the Six Year Transfers.

157. At the time BLMIS made each of the Six Year Transfers, BLMIS had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.

158. As a result of the foregoing, pursuant to sections 275, 278 and/or 279 of the New York Debtor and Creditor Law and sections 544(b), 550(a) and 551 of the Bankruptcy Code, the Trustee is entitled to a judgment: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS.

**COUNT NINE**
**UNDISCOVERED FRAUDULENT TRANSFERS – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), AND NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278 AND/OR 279, AND 11 U.S.C. §§ 544, 550(a) AND 551**

159. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

160. At all times relevant to the Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

161. At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

162. The Transfers were made by BLMIS with the actual intent to hinder, delay, or defraud the creditors of BLMIS. BLMIS made the Transfers to or for the benefit of the Defendants in furtherance of a fraudulent investment scheme.

163. As a result of the foregoing, pursuant to NY CPLR 203(g), sections 276, 276-a, 278 and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a) and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, (c) recovering

the Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the Defendants.

**COUNT TEN**
**RECOVERY OF SUBSEQUENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW § 278 AND 11 U.S.C. §§ 544, 547, 548, 550(a) AND 551**

164. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

165. Each of the Transfers is avoidable under sections 544, 547 and/or 548 of the Bankruptcy Code.

166. On information and belief, some or all of the Transfers were subsequently transferred by one or more Defendants directly or indirectly to Defendant Chais and/or other Defendants in the form of payment of commissions or fees, transfers from one account to another, or other means (collectively, the "Subsequent Transfers").

167. Each of the Subsequent Transfers was made directly or indirectly to one or more Defendants.

168. One or more Defendants are immediate or mediate transferees of the Subsequent Transfers from Defendant Chais and/or other Defendants.

169. As a result of the foregoing, pursuant to section 278 of the New York Debtor and Creditor Law, sections 550(a) and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment against one or more Defendants: (a) preserving the Subsequent Transfers, (b) recovering the Subsequent Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS, and (c) recovering attorneys' fees from the Defendants.

## COUNT ELEVEN
## OBJECTION TO DEFENDANTS' SIPA CLAIMS

170. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

171. One or more Defendants has filed, or will file, a claim under SIPA.

172. Defendants' claims (the "Claims") are not supported by the books and records of BLMIS nor the claim materials submitted by Defendants, and, therefore, should be disallowed.

173. The Claims also should not be allowed as general unsecured claims. Defendants are the recipients of transfers of BLMIS' property which are recoverable under sections 547, 548 and 550 of the Bankruptcy Code, and Defendants have not returned the Transfers to the Trustee. As a result, pursuant to section 502(d) the Claims must be disallowed unless and until the Defendants return the Transfers to the Trustee.

174. As a result of the foregoing, the Trustee is entitled to an order disallowing the Claims.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendants as follows:

i. On the First Claim for Relief, pursuant to sections 542, 550(a) and 551 of the Bankruptcy Code: (a) that the property that was the subject of the Transfers be immediately delivered and turned over to the Trustee, and (b) for an accounting by the Defendants of the property that was the subject of the Transfers or the value of such property;

ii. On the Second Claim for Relief, pursuant to sections 547, 550(a) and 551 of the Bankruptcy Code: (a) avoiding and preserving the Preference Period Transfers, (b) directing that the Preference Period Transfers be set aside, and (c) recovering the Preference Period Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS;

iii. On the Third Claim for Relief, pursuant to sections 548(a)(1)(A), 550(a) and 551 of the Bankruptcy Code: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS;

iv. On the Fourth Claim for Relief, pursuant to sections 548(a)(1)(B), 550(a) and 551 of the Bankruptcy Code: (a) avoiding and preserving the Two Year Transfers, (b) directing that the Two Year Transfers be set aside, and (c) recovering the Two Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS;

v. On the Fifth Claim for Relief, pursuant to sections 276, 276-a, 278 and/or 279 of the New York Debtor & Creditor Law and sections 544(b), 550(a) and 551 of the Bankruptcy Code: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the Defendants;

vi. On the Sixth Claim for Relief, pursuant to sections 273, 278 and/or 279 of the New York Debtor and Creditor Law and sections 544(b), 550 and 551 of the Bankruptcy Code: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS;

vii. On the Seventh Claim for Relief, pursuant to sections 274, 278 and/or 279 of the New York Debtor and Creditor Law and sections 544(b), 550, 551 and 1107 of the Bankruptcy Code: (a) avoiding and preserving the Six Year Fraudulent Transfer, (b) directing the Six Year

Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the state of BLMIS;

viii. On the Eighth Claim for Relief, pursuant to New York Debtor and Creditor Law §§ 275, 278 and/or 279 and Bankruptcy Code §§ 544(b), 550, 551, and 1107: (a) avoiding and preserving the Six Year Transfers, (b) directing that the Six Year Transfers be set aside, and (c) recovering the Six Year Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS;

ix. On the Ninth Claim for Relief, pursuant to NY CPLR 203(g) and sections 276, 276-a, 278 and/or 279 of the New York Debtor & Creditor Law and sections 544(b), 550(a) and 551 of the Bankruptcy Code: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, (c) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from the Defendants;

x. On the Tenth Claim for Relief, pursuant to section 278 of the New York Debtor and Creditor Law, sections 550(a) and 551 of the Bankruptcy Code, and 15 USC § 78fff-2(c)(3): (a) preserving the Subsequent Transfers, (b) directing that the Subsequent Transfers be set aside; (c) recovering the Subsequent Transfers, or the value thereof, from Defendants for the benefit of the estate of BLMIS, and (d) recovering attorneys' fees from Defendants;

xi. On the Eleventh Claim for Relief, that the claims of Defendants be disallowed;

xii. On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001, 5004 awarding the Trustee prejudgment interest from the date on which the Transfers were received;

xiii. On all Claims for Relief, establishment of a constructive trust over the proceeds of the Transfers in favor of the Trustee for the benefit of BLMIS' estate;

xiv. On all Claims for Relief, assignment of Defendants' rights to seek refunds from the government for federal, state and local taxes paid on fictitious profits during the course of the scheme;

xv. Awarding the Trustee all applicable interest, costs, and disbursements of this action; and

xvi. Granting Plaintiff such other, further, and different relief as the Court deems just, proper, and equitable.

Date: May 1, 2009

Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC*

Of Counsel:

Paul P. Eyre
3200 National City Center
Cleveland, Ohio 44114
Email: mailto:peyre@bakerlaw.com