**SILLS CUMMIS & GROSS P.C.**
One Rockefeller Plaza
New York, NY 10020
Tel: 212-643-7000
Philip R. White
Email: pwhite@sillscummis.com
Andrew H. Sherman
Email: asherman@sillscummis.com

*Attorneys for Defendants*
*Emily Chasalow, Mark Chais, Wrenn Chais,*
*William Chais, Miri Chais and the Entities*
*identified on Exhibit 1 to the Notice of*
*Partial Motion to Dismiss submitted herewith*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>STANLEY CHAIS, *et al.*,<br><br>        Defendants. | Adv. Pro. No. 09-1172 (BRL) |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE
## DEFENDANTS' PARTIAL MOTION TO DISMISS

---

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 5

    The Madoff Ponzi Scheme ...................................................................................... 5

    The Chais Family ................................................................................................... 7

    The Trustee's Allegations ...................................................................................... 7

    The Trustee's Claims ............................................................................................. 9

ARGUMENT ................................................................................................................ 10

    I.     THE TRUSTEE'S COMPLAINT IMPERMISSIBLY LUMPS
         THE DEFENDANTS TOGETHER WITH STANLEY CHAIS
         AND FAILS TO COMPLY WITH THE STRICT
         PARTICULARITY REQUIREMENTS OF RULE 9(B) AND THE
         FACTUAL BASIS STANDARDS ENUNCIATED BY THE
         SUPREME COURT ...................................................................... 10

         A.     The Trustee's Fraud Claims Must Be Pleaded With The
             Particularity Required By Rule 9(b)........................................... 10

         B.     The Trustee Must Plead Plausible Grounds To Infer
             Actionable Conduct By The Defendants .................................... 11

         C.     The Complaint Satisfies Neither The Particularity
             Requirements Of Rule 9(b) Nor The Plausibility
             Requirements Of Rule 8(a) ........................................................ 12

    II.    THE TRUSTEE HAS FAILED TO PLEAD FACTS SUFFICIENT
         TO SUSTAIN HIS CLAIMS FOR TRANSFERS MADE WITH
         ACTUAL INTENT TO DEFRAUD (COUNTS THREE, FIVE
         AND NINE) .................................................................................. 18

         A.     The Trustee Has Not Particularized The Fraudulent
             Transfers ................................................................................... 18

         B.     The Trustee's Six Year Transfer Claim Does Not Plead
             That The Defendants Received Distributions From BLMIS
             With Actual Intent To Hinder, Delay or Defraud BLMIS'
             Other Creditors.......................................................................... 19

    III.    THE CONSTRUCTIVE FRAUD CLAIMS (COUNTS FOUR,
         SIX, SEVEN, AND EIGHT) MUST BE DISMISSED BECAUSE
         THE TRUSTEE HAS FAILED TO PLEAD A LACK OF VALUE
         OR FAIR CONSIDERATION ........................................................ 20

A.    The Trustee Must Plead A Plausible Claim That Any Transfers To The Defendants Exceed Their Claim Against BLMIS For Restitution Of The Principal Invested In The Ponzi Scheme ........................................................................... 20

B.    The Principal Sum Includes Not Only Amounts Invested By The Defendants But Also Expected Returns If BLMIS Had Honestly Administered Their Investment .......................... 23

C.    The Trustee Has Failed To Plead A Plausible Claim That The Six Year Transfers Were Not Received In Good Faith ........ 24

IV.    TRANSFERS MADE MORE THAN SIX YEARS BEFORE THE FILING OF THE ADVERSARY COMPLAINT ARE NOT VOIDABLE UNDER NEW YORK LAW OR SECTION 544(B) OF THE BANKRUPTCY CODE ........................................................ 24

A.    The Bankruptcy Code Repealed The Express Tolling Provisions Of The Former Bankruptcy Act For Trustee Claims Based On An Actual Creditor ........................................ 25

B.    Section 544(b) Confers On The Trustee No Greater Rights After Commencement Of The Case Than An Actual Creditor Would Have Enjoyed Outside Of Bankruptcy .............. 30

C.    The Trustee's Claims For Undiscovered Transfers Does Not Extend The Lookback Period Beyond Six Years Prior To Filing The Adversary Complaint ......................................... 31

V.    THE TRUSTEE'S CLAIM FOR TURNOVER AND ACCOUNTING (COUNT ONE) MUST BE DISMISSED BECAUSE THE TRANSFERS ARE NOT PROPERTY OF THE ESTATE ................................................................................................. 35

VI.    THE TRUSTEE'S CLAIM TO AVOID SUBSEQUENT TRANSFERS (COUNT TEN) MUST BE DISMISSED BECAUSE THE TRUSTEE HAS NOT IDENTIFIED ANY SUBSEQUENT TRANSFERS ............................................................ 36

VII.    THE DEFENDANTS SHOULD BE PERMITTED TO SEEK RELIEF UNDER SIPA (COUNT ELEVEN) ........................................ 37

CONCLUSION ................................................................................................. 41

# TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps">Cases</span>

*Ad Rendon Commc'ns, Inc. v. Lumina Americas, Inc.,*
No. 04-CV-8832, 2007 U.S. Dist. LEXIS 75625, 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) ................................................................................................................. 12

*Altria, Inc. v. Good,*
__ U.S. __, 129 S. Ct. 538 (2008) ...................................................................... 29

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.),*
373 B.R. 262 (Bankr. S.D.N.Y. 2007) ............................................................... 19

*Apace Commc'ns, Ltd. v. Burke,*
522 F. Supp. 2d 512 (W.D.N.Y. 2007) ......................................................... 2, 11

*Ashcroft v. Iqbal,*
__ U.S. __, 129 S. Ct. 1937 (2009) .............................................................2, 12, 22

*Atlanta Shipping Corp. v. Chem. Bank,*
818 F.2d 240 (2d Cir. 1987)............................................................................18, 20

*Avalon LLC v. Coronet Props. Co.,*
762 N.Y.S.2d 48 (1st Dept. 2003) ..................................................................24, 32

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.),*
256 B.R. 664 (Bankr. S.D.N.Y. 2000), *aff'd, Balaber-Strauss v. Lawrence,* 264 B.R. 303 (S.D.N.Y. 2001) ............................................................................................... 21

*Barr v Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.),*
238 B.R. 558 (Bankr. S.D.N.Y. 1999) ............................................................... 28

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC),*
396 B.R. 810 (Bankr. S.D.N.Y. 2008)................................................................ 19

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund),*
397 B.R. 1 (S.D.N.Y. 2007).................................................................................. 33

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955 (2007)..........................................................passim

*Bianchi v. United States,*
46 Fed. Cl. 363 (Ct. Cl. 2000) ............................................................................ 28

*Bloom v. Fry (In re Leach),*
  380 B.R. 25 (Bankr. D.N.M. 2007) .................................................................. 25

*Breeden v. Bennett (In re Bennett Funding Group, Inc.),*
  220 B.R. 743 (Bankr. N.D.N.Y. 1997) ..........................................................21, 24

*Coleman v. Cmty. Trust Bank (In re Coleman),*
  426 F.3d 719 (4th Cir. 2005)........................................................................28, 31

*FDIC v. Hirsch (In re Colonial Realty Co.),*
  980 F.2d 125 (2d Cir. 1992) .............................................................................. 35

*Feldman v. First Nat'l City Bank,*
  511 F.2d 460 (2d Cir. 1975)..........................................................................26, 28

*First Union Nat'l Bank v. Gibbons (In re Princeton-N.Y. Investors, Inc.),*
  219 B.R. 55 (D.N.J. 1998) .................................................................................. 29

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.,*
  __ U.S. __, 128 S. Ct. 2326 (2008) .................................................................. 29

*Freightliner Corp. v. Myrick,*
  514 U.S. 280, 115 S. Ct. 1483 (1995)............................................................... 29

*G-I Holdings, Inc. v. Those Parties Listed On Exhibit A (In re G-I Holdings, Inc.),*
  313 B.R. 612 (Bankr. D.N.J. 2004) ................................................................... 30

*Gentry v. Kovler (In re Kovler),*
  329 B.R. 17 (Bankr. S.D.N.Y. 2005), *correcting*, 249 B.R. 238 (Bankr. S.D.N.Y.
  2000) .................................................................................................................. 19

*Global Crossing Estate Representative v. Winnick,*
  No. 04 Civ. 2558, 2006 U.S. Dist. LEXIS 53785, 2006 WL 2212776 (S.D.N.Y. Aug.
  3, 2006) .............................................................................................................. 27

*Glosser v. S&T Bank (In re Ambulatory Med. & Surgical Health Care, Inc.),*
  187 B.R. 888 (Bankr. W.D. Pa. 1995) ............................................................... 25

*Halpert v. Engine Air Serv., Inc.,*
  116 F. Supp. 13 (E.D.N.Y. 1953) ....................................................................... 26

*Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.),*
  32 B.R. 199 (Bankr. S.D.N.Y. 1983)................................................................... 17

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Group, Inc.),*
  916 F.2d 528 (9th Cir. 1990)...........................................................................17, 33

*In re Saunders*,
   101 B.R. 303 (Bankr. N.D. Fla. 1989).............................................................. 36

*Iqbal v. Hasty*,
   490 F.3d 143 (2d Cir. 2007), *aff'd in part & rev'd in part*, *Ashcroft v. Iqbal*, __ U.S.
   __, 129 S. Ct. 1937 (2009) .......................................................................... 12

*Jobin v. Cervenka (In re M & L Bus. Mach. Co.)*,
   194 B.R. 496 (D. Colo. 1996) ...................................................................... 21

*Jobin v. Ripley (In re M & L Bus. Mach. Co.)*,
   198 B.R. 800 (D. Colo. 1998) ...................................................................... 34

*Lamie v. United States Trustee*,
   540 U.S. 526 (2004).............................................................................30, 31

*Lawler v. RepublicBank Dallas (In re Lawler)*,
   53 B.R. 166 (Bankr. N.D. Tex. 1985)............................................................. 26

*Levit v. Spatz (In re Spatz)*,
   222 B.R. 157 (Bankr. N.D. Ill. 1998) ............................................................ 25

*Lippe v. Bairnco Corp.*,
   225 B.R. 846 (S.D.N.Y. 1998) ..................................................................... 32

*MacLeod v. Kapp*,
   81 F. Supp. 512 (S.D.N.Y. 1948) ................................................................. 26

*Mancuso v. Cont'l Bank Nat'l Ass'n Chicago (In re Topcor, Inc.)*,
   132 B.R. 119 (Bankr. N.D. Tex. 1991)............................................................ 25

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
   No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, 1994 WL 88129 (S.D.N.Y. Mar. 15,
   1994) ...................................................................................................... 11

*Merrill v. Abbott (In re Indep. Clearing House Co.)*,
   77 B.R. 843 (D. Utah 1987) ...................................................................17, 21

*Monaco v. N.Y. Univ. Med. Ctr.*,
   623 N.Y.S.2d 566 (1st Dept.), *appeal dismissed in part & denied in part*, 86 N.Y.2d
   882 (1995) ............................................................................................... 32

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*,
   361 B.R. 369 (Bankr. S.D.N.Y. 2007) ............................................................ 19

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir.), *cert. denied*, 531 U.S. 1012, 121 S. Ct. 567 (2000) ........... 11

*O'Connell v. Shallo (In re Die Fliedermaus LLC)*,
    323 B.R. 101 (Bankr. S.D.N.Y. 2005) .............................................................. 25

*Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JP Morgan*
    *Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*,
    394 B.R. 721 (Bankr. S.D.N.Y. 2008) .............................................................. 18

*Orr v. Kinderhill*,
    991 F.2d 31 (2d Cir. 1993) .............................................................................. 32

*Peskin v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*,
    413 B.R. 137 (Bankr. S.D.N.Y. 2009) .............................................................. 39

*Picard v. Taylor (In re Park S. Sec., LLC)*,
    326 B.R. 505 (Bankr. S.D.N.Y. 2005) .............................................................. 19

*Polar Int'l Brokerage Corp. v. Reeve*,
    108 F. Supp. 2d 225 (S.D.N.Y. 2000) .............................................................. 10

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland*
    *Holding Corp.)*,
    398 B.R. 761 (Bankr. S.D.N.Y. 2008) .........................................................33, 36

*Rieger v. Drabinksy (In re Livent, Inc. Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) .............................................................. 16

*Rosania v. Haligas (In re Dry Wall Supply, Inc.)*,
    111 B.R. 933 (D. Colo. 1990) ....................................................................27, 29

*Russello v. United States*,
    464 US. 16 (1983) ......................................................................................28, 31

*Savage & Assocs., P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*,
    307 B.R. 744 (Bankr. S.D.N.Y. 2004) .............................................................. 36

*Schoen v. Martin*,
    589 N.Y.S.2d 443 (1st Dept. 1992) .................................................................. 32

*Scholes v. Lehman*,
    56 F.3d 750 (7th Cir. 1995) ............................................................................. 21

*Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., Inc.*,
    417 F. Supp. 2d 212 (D. Mass. 2006) .........................................................25, 27

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780 (S.D.N.Y. Aug.
    9, 2005) ........................................................................................................ 11

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*,
403 F.3d 43 (2d Cir. 2005) .................................................................. 18, 19, 20

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*,
337 B.R. 791 (Bankr. S.D.N.Y. 2005) .................................................. 19

*Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*,
392 B.R. 24 (Bankr. E.D.N.Y. 2008) .................................................. 30

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
547 F.3d 406 (2d Cir. 2008) ................................................................ 5

*Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*,
335 B.R. 539 (D. Del. 2005) .............................................................. 36

*Stone v. I.N.S.*,
514 U.S. 386 (1995) .......................................................................... 28

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
216 F. Supp. 2d 198 (S.D.N.Y. 2002) ................................................ 19

*Visconsi v. Lehman Brothers, Inc.*,
244 Fed. Appx. 708 (6th Cir. 2007) .................................................. 23

*Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*,
No. 01 Civ. 8871, 2002 U.S. Dist. LEXIS 9615, 2002 WL 1144903 (S.D.N.Y. May
29, 2002) ........................................................................................ 19

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*,
944 F.2d 589 (9th Cir. 1991) ............................................................ 21

## STATUTES

11 U.S.C. § 100 .............................................................................. 20
11 U.S.C. § 108 .............................................................................. 26
11 U.S.C. § 501 .......................................................................... 37, 38
11 U.S.C. § 502 ...................................................................... 5, 37, 40
11 U.S.C. § 541 .............................................................................. 35
11 U.S.C. § 542 .................................................................... 4, 34, 35, 36
11 U.S.C. § 544 ........................................................................ *passim*
11 U.S.C. § 546 ........................................................................ *passim*
11 U.S.C. § 547 .......................................................................... 31, 35
11 U.S.C. § 548 ........................................................................ *passim*

11 U.S.C. § 29 (repealed 1978) .................................................... 25, 29
11 U.S.C. § 110 (repealed 1978) .............................................. 25, 26, 29

15 U.S.C. § 78fff-2 .................................................................................35, 38, 39, 40
15 U.S.C. § 78fff-3 ...................................................................................................... 39

NY CPLR § 213 .........................................................................................24, 32, 34

NY DCL § 272 ............................................................................................................ 3, 24
NY DCL § 273 .........................................................................................................*passim*
NY DCL § 274 .........................................................................................................*passim*
NY DCL § 275 .........................................................................................................*passim*
NY DCL § 276 .........................................................................................................*passim*

## OTHER AUTHORITIES

Lawrence P. King, Collier on Bankruptcy (15th ed. Revd.)..........................................25, 30, 38

*Fed. R. Civ. P.* 8 .........................................................................................................1, 11, 12
*Fed. R. Civ. P.* 9 ......................................................................................................*passim*
*Fed. R. Civ. P.* 12 ....................................................................................................1, 4, 36

*Fed. R. Bank. P.* 7008 .................................................................................................. 1
*Fed. R. Bank. P.* 7009 .................................................................................................. 1
*Fed. R. Bank. P.* 70012 ................................................................................................ 1

H.R.Rep. No. 95-595 (1977) ....................................................................................... 27

S.Rep. No. 95-989 (1977) ........................................................................................... 27

Defendants Mark Chais, William Chais, Miri Chais, Emily Chasalow, Wrenn Chais and the entity defendants identified on Exhibit 1 to the Notice of Motion to Dismiss submitted herewith (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Count One and Counts Three through Eleven of the Complaint, pursuant to *Fed. R. Civ.* P. 8, 9 and 12(b)(6), and *Fed. R. Bank. P.* 7008, 7009 and 7012(b).

## PRELIMINARY STATEMENT

The Complaint in this action relies upon a false premise – alleged guilt by family association. Irving H. Picard, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC (the "Trustee"), seeks to tar innocent family members and trusts with one individual's alleged knowledge of Bernard Madoff's ("Madoff") Ponzi scheme while blithely ignoring requisite pleading requirements. On even superficial examination, it is evident that the Trustee is relying solely on lumped allegations and family connections to extend his claim against one individual, Stanley Chais – an investment professional, to more than 50 other individuals and entities. Without any specific allegations against Chais's children and their spouses, his grandchildren, and certain trusts, the Trustee seeks to hold the entire group liable for allegedly fraudulent transfers made to their accounts with Bernard L. Madoff Investment Securities LLC ("BLMIS").

This is the only avoidance action to date that seeks to recoup transfers from third-party investors, with no direct connection to Madoff other than their BLMIS accounts. Unlike every other defendant sued by the Trustee to date, the Defendants did not have a close personal relationship with Madoff or work for a company that did. The Defendants have been ensnared in the exceedingly broad net cast by the Trustee over Stanley Chais.

The Trustee's Complaint completely lacks any specific allegations giving rise to a plausible claim that the Defendants either knew or should have known that Madoff was operating a Ponzi scheme. While the Trustee alleges that Stanley Chais had access to Madoff, he does not allege that the Defendants had any contact with Madoff. While he contends that Stanley Chais, as a professional investment advisor, should have questioned the legitimacy of Madoff's operation, he does not allege that the Defendants are professional investors. While the Trustee alleges backdating in certain accounts unconnected to the Defendants, he does not allege that the Defendants had any knowledge of or involvement with the alleged backdating. The Trustee's fanciful conclusion that Stanley Chais had to have known that Madoff was engaged in fraud because returns received by Stanley Chais's family members were higher than those received by his investment customers is also unconnected to the Defendants. The Trustee does not allege that the Defendants had any involvement with Stanley Chais's investment business or any knowledge that their accounts were receiving returns different from the customers of the business. In sum, the Trustee does not allege that the Defendants did anything or knew anything that would support his claims in the Complaint.

As pled, the Complaint fails to meet the particularity requirements of *Fed. R. Civ. P.* 9(b) because, among other things, it impermissibly lumps the Defendants and Stanley Chais together, without differentiating the allegations against each separate defendant. *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 512, 517 (W.D.N.Y. 2007). Moreover, the Trustee's failure to plead specific facts in support of his claims requires dismissal of the Complaint under the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009), which require a plaintiff to plead in

enough factual detail to state a claim that is plausible on its face. The Complaint utterly fails these threshold requirements with respect to the Defendants.

The Trustee's Complaint raises several claims for fraudulent transfers, none of which states a claim. First, the claims for constructive fraudulent transfers under Bankruptcy Code § 548(a)(1)((B) and New York Debtor and Creditor Law ("NY DCL") §§ 273-75 (Counts Four, Six, Seven, and Eight) fail because the Trustee has not pled that the Defendants received distributions from BLMIS in excess of the principal sums they had invested there. Madoff has admitted only that at some point in the early 1990's he transformed what had previously been a legitimate business into a pure Ponzi scheme. While the Complaint alleges that Madoff had business dealings with Stanley Chais going back to the 1970's (Compl. ¶ 33), it contains no allegations regarding the principal sum invested in any of the Defendants' accounts or that the transfers the Trustee seeks to recover exceeded the principal sum. Therefore, the Trustee has not pled that any of the transfers were not made for value, as required by Bankruptcy Code § 548(a)(1)(B), or not for fair consideration, as required by New York Debtor and Creditor Law §§ 273-75. With respect to the NY DCL claims, the Trustee also has not pleaded facts supporting the assertion that the Defendants received transfers not in good faith, an essential element of "fair consideration" under NY DCL § 272.

Second, the Trustee's claims for transfers made with actual intent to defraud under Bankruptcy Code § 548(a)(1)(A) (Count Three) should be dismissed because the Trustee has failed to identify the specific transfers that he seeks to recover. While the Trustee has attached as Exhibit B to his Complaint a chart purporting to identify each transfer made to sixty-one different entities over the last thirteen years, he has not identified which transfers he seeks to recover in this action. Instead of identifying the transfers he seeks to recoup from specific

defendants, the Trustee merely lumps all of the defendants in this case together and aggregates all of the transfers made within two years and six years before the petition date. The Trustee's claims under NY DCL § 276 for transfers made with actual intent to defraud (Count Nine) must be dismissed for the additional reason that the Trustee has not pleaded facts stating a plausible claim that the Defendants received any such transfer with actual intent to defraud the other creditors of BLMIS.

Third, the Trustee's fraudulent transfer claims under the NY DCL and Code § 544(b) (Counts Five and Six), which puts the Trustee in the position of a creditor suing under the New York Debtor and Creditor Law, should be dismissed insofar as they seek to recover transfers made more than six years before the filing of the Complaint. Suing under § 544(b), the Trustee stands in the shoes of an actual creditor, whose state law claims would be cut off by the statute of limitations a maximum of six years prior to the date of the Complaint. Nothing in the Bankruptcy Code tolled the running of the statute when the case against BLMIS was commenced.

Fourth, the Trustee's claims for turnover and accounting (Count One) must be dismissed because the subject of the claims are not property of the estate and are subject to dispute – as evidenced by the fact that the Trustee has asserted fraudulent transfer claims against the property for which he seeks a turnover. To state a claim for turnover of property under § 542, a plaintiff must allege that the transfer of property already has been avoided or that the property is otherwise the undisputed property of the estate. This the Trustee cannot do, and Count One of the Complaint should be dismissed pursuant to *Fed. R. Civ. P.* 12(b)(6).

Fifth, the Trustee's claim to avoid subsequent transfers (Count Ten) should be dismissed because he has not identified any subsequent transfers.

Sixth, the objection to the Defendants' Securities Investor Protection Act ("SIPA") claims (Count Eleven) should be dismissed because § 502(d) of Code, upon which he relies, does not defeat claims against the Securities Investor Protection Corp. ("SIPC").

In sum, the Trustee has sued more than 50 different individuals, entities and trusts linked only by a relationship to Stanley Chais without alleging specific facts with respect to any of the Defendants – as opposed to his allegations against Stanley Chais. The Trustee has pled no facts that would put the Defendants in a different position from thousands of Madoff's other victims – investors deceived by his reputation and prestige, who received distributions in good faith, and who lost substantial sums as a result of his fraud. The fraudulent transfer claims against the Defendants should be dismissed.

## STATEMENT OF FACTS[1]

### The Madoff Ponzi Scheme

On December 11, 2008, Madoff was arrested by federal agents for violations of the criminal securities law, including, among other things, securities fraud, investment advisor fraud, and mail and wire fraud. (Compl. ¶ 8). At a plea hearing on March 12, 2009, Madoff pled guilty to an 11-count criminal information filed against him by the United States Attorneys Office for the Southern District of New York. (Compl. ¶ 13). At the plea hearing, Madoff read from an allocution where he admitted that he began running a Ponzi scheme sometime in the early 1990's in order to satisfy customer expectations:

---

[1]    The Statement of Facts is drawn from the allegations in the Trustee's Complaint, which are accepted as true solely for purposes of this motion, as well as publicly available documents, which are contained in the transmittal Declaration of Philip R. White, Esq., dated November 12, 2009, and cited as "Ex.__". The Court may take judicial notice of the background information contained in press articles without converting the motion into one for summary judgment. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

> To the best of my recollection, my fraud began in the early 1990s. At the time, the country was in a recession and this posed a problem for investments in the securities markets. Nevertheless, I had received investment commitments from certain institutional clients and understood that those clients, like all professional investors, expected to see their investments out-perform the market. While I never promised a specific rate of return to any client, I felt compelled to satisfy my clients' expectations, at any cost.

(Ex. 1, at 25:12-20). Madoff has not admitted that BLMIS was engaged in a Ponzi scheme at any time before the early 1990s or that funds invested at BLMIS prior to that date were not actually invested in securities.

The plea allocution by Madoff's chief lieutenant, Frank DiPascali ("DiPascali"), reveals the extreme lengths to which Madoff and DiPascali went to ensure that the fraud would not be discovered, including the falsification of thousands of backdated securities trades in real time to create the specious appearance of actual investment activity. (Ex. 2, at 47:16-22). An investor who checked his statements against published data would therefore see that the reported trades corresponded with historical prices. (*Id.*; Ex. 1, at 27:9-22).

Madoff's deceptive tactics allowed him to keep his Ponzi scheme afloat for an extraordinarily long time, approximately 16 years by his own admission. He deceived numerous sophisticated financial institutions, including BNP Paribas, UBS, Union Bancaire Privee, HSBC, Banco Santander, Fortis, Royal Bank of Scotland, Barclays PLC, and Banco Popolare. (Ex. 3). Beginning in 1992, the SEC conducted multiple investigations of Madoff's investment advisory business, giving him a clean bill of health each time. (Ex. 4). Prior to his arrest, Madoff was viewed as a great philanthropist, an industry pioneer and an investment genius. (Ex. 5). He counted as clients prominent educational institutions (New York University, Yeshiva University, New York Law School), charitable foundations (The Elie Weisel Foundation for Humanity, Hadassah, the Diocese of St. Thomas), and individuals (John Malkovich, Kevin Bacon and Kyra

Sedgwick, Larry King, Mark Green and Sandy Koufax). (Ex. 3). The scope of his fraud and its devastating impact is unprecedented.

### The Chais Family

Stanley Chais is a Los Angeles philanthropist and investment advisor who, over the last thirty years, invested millions of dollars of his own money, his family's money, and his clients' money with BLMIS. Pamela Chais is his wife. (Compl. ¶ 34). Mr. Chais is the general partner of defendants The Brighton Company, The Lambeth Company and The Popham Company (collectively, the "Chais Funds"), funds through which Mr. Chais invested with BLMIS on behalf of his clients. (Compl. ¶ 45).

Defendants Emily Chasalow, Mark Chais and William Chais are the children of Stanley and Pamela Chais. (Compl. ¶¶ 35-37). Defendant Miri Chais is Mark's spouse, Defendant Wrenn Chais is William's spouse, and Defendant Michael Chasalow is Emily's spouse. (Compl. ¶¶ 38-40). The Trustee also has sued the family trusts identified on Exhibit 1 to the Notice of Motion to Dismiss submitted herewith. None of the Defendants ever worked for Stanley Chais's investment business. Defendant Miri Chais is not alleged to have been an officer or agent of, or trustee for any entity listed on Exhibit A to the Complaint. Defendant Wrenn Chais is not alleged to have been an officer or agent of any entity listed on Exhibit A to the Complaint and is only alleged to have been a trustee for her personal family trust.

### The Trustee's Allegations

The Trustee's Complaint is premised entirely on Stanley Chais's relationship with Bernard Madoff. Instead of alleging with particularity facts sufficient to demonstrate that each separate Defendant knew or should have known of Madoff's fraud or lacked good faith, as required by Rule 9(b), the Trustee merely lumps the Defendants together with Stanley Chais. Regardless of what Stanley Chais knew or didn't know, there are simply no facts, and the

Trustee has pled none, that could give rise to a plausible claim that the Defendants were complicit in, or aware of in any respect, Madoff's Ponzi scheme.

For example, the Trustee has not pled that the Defendants, all of whom live in either California or Israel (Compl. ¶¶ 35-40), had any interaction with Madoff. The Trustee does not and cannot allege that the Defendants had any involvement with Stanley Chais's investment business or that they were aware of the alleged discrepancies between the returns earned by Stanley Chais's family accounts and the returns provided to Stanley Chais's investors. Indeed, the Trustee contends that Stanley Chais, not the Defendants, managed all of BLMIS accounts for the entities connected to the Defendants, even though he alleges no facts in support of that assertion. (Compl. ¶ 92).

While the Trustee claims that the Defendants were collectively on notice of certain "indicia" of irregularity, including the existence of financial industry press reports questioning the legitimacy of BLMIS and the fact that many banks and industry advisors refused to deal with Madoff, the Trustee does not contend that the Defendants ever saw the referenced publications or knew that certain financial institutions had declined to do business with Madoff. (Compl. ¶ 104; Ex. 6). Nor does he allege that the Defendants had any knowledge beyond what was available to other non-professional investors in BLMIS, none of whom has been sued. Moreover, these factors raise questions only with the benefit of hindsight. The Defendants, like thousands of other defrauded investors, had no reason to think that Bernard Madoff, a former Chairman of Nasdaq, was running a massive Ponzi scheme.

While some of the Defendants' BLMIS accounts outperformed the major market indices in certain years, other accounts underperformed the market indicators. Moreover, as the Trustee

points out in his Complaint, the Defendants' BLMIS account statements did not reflect gains only; they also showed losses.  (Compl. ¶ 103(d)).

In sum, while the Trustee makes claims against the Defendants that require a significant level of knowledge and complicity, the facts as alleged in the Complaint present their relationship to Madoff as no different from the other non-professional victims of the Madoff Ponzi scheme.  According to the Complaint, their funds were managed by an advisor who dealt directly with Madoff, and in whom they put their trust.  The Complaint is devoid of any facts which allege that the Defendants had a reason to suspect that Madoff was running anything other than a legitimate business.  Madoff succeeded in concealing his massive Ponzi scheme from everyone, including regulators, until December 11, 2008 when the Defendants, along with the rest of the world, learned that it was all a fraud.

### The Trustee's Claims

In addition to asserting claims for:  (i) Turnover and Accounting (Count One); (ii) unidentified Subsequent Transfers (Count Ten); (ii) Undiscovered Transfers (Count Nine) and objecting to the Defendants SIPA Claims (Count Eleven), the Trustee seeks recovery of all transfers made within two years of the petition (the "Two Year Transfers") and all transfers made within six years of the petition ("the Six Year Transfers").  Specifically, the Trustee contends that:  (i) the Two Year Transfers are recoverable under 11 U.S.C. § 548(a)(1)(A) because transfers were made with actual intent to hinder, delay or defraud and under 11 U.S.C. § 548(a)(1)(B) because transfers were made while BLMIS was insolvent (Counts Three and Four) and (ii) the Six Year Transfers are recoverable under 11 U.S.C. § 544(b) and NY DCL § 276 because transfers were made with actual intent to hinder delay or defraud and under 11 U.S.C. § 544(b) and NY DCL §§ 273-275 because transfers were made while BLMIS was insolvent (Counts Five through Eight).

<u>**ARGUMENT**</u>

I.   **THE TRUSTEE'S COMPLAINT IMPERMISSIBLY LUMPS THE DEFENDANTS TOGETHER WITH STANLEY CHAIS AND FAILS TO COMPLY WITH THE STRICT PARTICULARITY REQUIREMENTS OF RULE 9(B) AND THE FACTUAL BASIS STANDARDS ENUNCIATED BY THE SUPREME COURT**

   A.   **The Trustee's Fraud Claims Must Be Pleaded With The Particularity Required By Rule 9(b)**

The Complaint alleges in general terms that the Defendants knew of and were complicit in Madoff's fraud.  For example, it alleges:

- "Since December 1995, [Stanley Chais] and the other Defendants collectively profited from [Madoff's Ponzi] scheme through the withdrawal of more than one billion dollars, and knew or should have known that the were reaping the benefits of manipulated purported returns, false documents and fictitious profits."  (Compl. ¶ 2)

- "Defendants knew or should have known that Madoff's IA [investment advisory] business was predicated on fraud, and they were benefitting from fraudulent transactions in their accounts, and that their purported activity was inconsistent with legitimate trading activity and credible returns."  (Compl. ¶ 98).

However, these generalized assertions are not supported by allegations of fact that credibly support the knowledge of the Defendants, as opposed to Stanley Chais.  The Trustee has not identified any involvement of the Defendants with "manipulated returns" or "false documents."  Nor has he explained how the withdrawal of funds from the Defendants' BLMIS accounts put them on notice of the fraudulent nature of Madoff's IA business.  Nor does he set forth facts showing that any of the Defendants knew that they were benefitting from fraudulent transactions in their accounts.  His attempt to lump together the Defendants with Stanley Chais without distinction does not meet the pleading requirements of *Fed. R. Civ. P.* 9(b).

*Fed. R. Civ. P.* 9(b) requires that in all charges of fraud, the circumstances constituting the alleged fraud must be stated with particularity.  *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 236-37 (S.D.N.Y. 2000).  The primary purpose of Rule 9(b) is to afford

defendants fair notice of the plaintiff's claim and the factual ground upon which it is based. *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir.), *cert. denied*, 531 U.S. 1012, 121 S. Ct. 567 (2000). Rule 9(b) does not allow a complaint to merely lump multiple defendants together. Instead, it requires plaintiffs to differentiate their allegations when suing more than one defendant and to inform each defendant separately of the allegations surrounding his or her participation in the alleged fraud. *See Apace Commc'ns, Ltd.*, 522 F. Supp. 2d at 517; *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780, at *12 (S.D.N.Y. Aug. 9, 2005) (Lumped-together accusations of wrongdoing by undifferentiated groups of defendants is not sufficient to satisfy Rule 9(b)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, at *21, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)"). The Complaint does precisely what these authorities prohibit. Because the Trustee is unable to allege specific facts that set forth the particulars of each Defendant's knowledge of or complicity in Madoff's fraud, the Complaint simply lumps the Defendants together with the allegations asserted against Stanley Chais. Accordingly, the fraud based claims against the Defendants have not been pleaded with specificity and must be dismissed.

## B. The Trustee Must Plead Plausible Grounds To Infer Actionable Conduct By The Defendants

Regardless of whether Rule 9(b) applies, the Supreme Court has recently stiffened the pleading standards under *Fed. R. Civ. P.* 8(a) to require more specific pleading of the factual basis of every claim for relief. In *Twombly*, the Supreme Court explained that whether a plaintiff has satisfied Rule 8's requirement that a pleading set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," turns on the *plausibility*, rather than the

*conceivability*, of an actionable claim under the facts alleged.  550 U.S. at 561-62, 127 S. Ct. at 1968-69, Specifically, the Court held that, to state a claim, a plaintiff's "[f]actual allegations [if true] must be enough to raise a right to relief above the speculative level," and that there must be "plausible grounds to infer" actionable conduct.  *Id.* at 550 U.S. at 555-56, 127 S. Ct. at 1965; *see also Ad Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, No. 04-CV-8832, 2007 U.S. Dist. LEXIS 75625, at *10, 2007 WL 2962591, at *3 (S.D.N.Y. Oct. 10, 2007) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974) (if plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed" (brackets in original)); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (*Twombly* requires that a plaintiff satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible"), *aff'd in part & rev'd in part, Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009).

The Supreme Court reiterated these principles of pleading in *Ashcroft v. Iqbal*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  *Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice*. . . . Second, only a complaint that states *a plausible claim for relief* survives a motion to dismiss. . . . But *where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct*, the complaint has alleged – but it has not show[n] – that the pleader is entitled to relief.

129 S. Ct. at 1949-50 (emphases added; internal quotation marks and citations omitted).

To satisfy these standards, the Trustee must allege well-pleaded facts, with respect to each of the Defendants, that would support his claims if proven.

## C.     The Complaint Satisfies Neither The Particularity Requirements Of Rule 9(b) Nor The Plausibility Requirements Of Rule 8(a)

The Complaint fails to meet both the requirement of Rule 9(b) that fraud be particularized with respect to each defendant and the requirements of *Twombly-Iqbal* with respect to the

Defendants because its allegations are focused on *Stanley Chais* instead of the Defendants.

Among other points the Complaint alleges that:

- "*Defendant Chais* is a sophisticated investor who acts as a professional investment advisor" and had "unusually intimate access" to Bernard Madoff because his telephone number appears as the first speed dial entry on a telephone list at BLMIS." (Compl. ¶ 99 (emphasis added)).

- "*Chais knew or should have known* that Madoff was engaged in fraud rather than real trading activity based on the fact that the Chais Family Accounts received drastically higher rates of returns than those reported for the Chais Fund accounts during the same periods." (Compl. ¶ 103(b) (emphasis added)).

- "On some occasions, certain Chais Family Accounts reported anomalous losses that, on information and belief, *were manufactured at Chais' direction*, presumably for tax purposes." (Compl. ¶ 103(d) (emphasis added)).

- "BLMIS recorded several million dollars' worth of securities 'trades' *in an account controlled by Chais* and held in the name of Defendant Appleby. Many of these transactions were backdated to various dates in 1997, were accounted for according to the values of the securities on those prior dates, and were in included in the March 1998 statement." (Compl. ¶ 103(f) (emphasis added)).

- "[T]he sale of Dell securities for Defendant Appleby's account in March 1998 was clearly fabricated, a fact which should have been known by *Defendant Chais*." (Compl. ¶ 103(g) (emphasis added)).

- "On information and belief, *Madoff instructed Chais* and other fund managers not to inform their investors that BLMIS was their money manager . . . . *Chais knew or should have known* Madoff's lack of transparency to the underlying investors was counterintuitive for an investment advisor that purportedly depended on volume trading business to generate commissions, and therefore indicative of fraud." (Compl. ¶ 104(b) (emphasis added)).

- "BLMIS did not provide its customers with electronic real-time online access to their accounts, which was and is customary in the industry for hedge fund and fund of funds investors. As a manager of his investors' funds, *Chais knew or should have known that* BLMIS' practice not to provide electronic access or automated confirmation of trading activity was atypical and warranted further inquiry." (Compl. ¶ 104(c) (emphasis added)).

- "The compensation system utilized by BLMIS was atypical in that BLMIS . . . was compensated only for the trades it executed, while *Defendant Chais*, whose only role was to funnel money to BLMIS, received administrative fees and a share of the profits that would normally go to the entity in the position of BLMIS. This compensation arrangement, together with the lack of transparency and other factors listed herein, should

have caused an investment professional to question Madoff's operation.  (Compl. ¶ 104(f) (emphasis added)).

Regardless of whether these allegations state any claim against Stanley Chais, they clearly do not show any knowledge by the Defendants.

Nor do any other allegations in the Complaint.  The Trustee has made:

- No allegation that the Defendants ever interacted with Madoff;

- No allegation that the Defendants are either investment professionals or sophisticated investors;

- No allegation that the Defendants controlled any entities accused of  "backdating" trades;

- No allegation that the Defendants had access to or were aware that returns for the Chais Family Accounts were higher than the returns reported for the Chais Fund accounts during the same time period;

- No allegation that the Defendants had any knowledge that losses for certain Chais Family Accounts were manufactured;

- No allegation that the Defendants knew that Madoff allegedly instructed Stanley Chais and other fund managers not to inform their investors that BLMIS was their money manager; or

- No allegation that the Defendants knew or should have known that BLMIS's practice not to provide electronic access or automated confirmation of trading activity was atypical and warranted further inquiry.

In Paragraph 103, where the Trustee attempts to allege knowledge, the allegations lack specificity and are again focused on Stanley Chais rather than the Defendants:

- Subparagraph (a) – the Trustee's allegations are against Stanley Chais and the Chais Funds – not the Defendants;

- Subparagraph (b) – the Trustee does not contend that the Defendants were aware of or had access to records for the Chais Fund accounts and therefore would have been aware that the Chais Family Accounts received higher rates of returns than the Chais Fund Accounts;

- Subparagraph (c) – a high rate of return combined with the ability to withdraw funds is not sufficient to sustain allegations that the Defendants were aware of Madoff's Ponzi scheme;

- Subparagraph (d) – the fact that William Chais Account lost its entire value in 2004 or Mark Chais's account showed a negative 89% rate of return in 2003 is not sufficient to put the Defendants on notice of Madoff's fraud. The allegations of backdating relate to the Chais 1991 Family Trust, and no facts connecting them to the Defendants are alleged;

- Subparagraph (e) – while the Trustee alleges that "Chais and the other Defendants knew or should have known that fictitious and backdated trading activity was being reported in their accounts, and that their accounts reflected fictitious holdings," he has failed to set forth a single example of backdated trading activity in any of the Defendants' accounts;

- Subparagraphs (f) and (g) – Defendant Appleby is not connected to the Defendants and the Trustee has failed to set forth any facts suggesting that the Defendants knew or should have known that backdated trading activity was occurring in this account;

- Subparagraph (h) – the Trustee has not alleged that the Defendants were experienced investment professionals.

Finally, in paragraph 104 of his Complaint, Trustee alleges that "Defendants" collectively ignored other indicia of irregularity and fraud, but again, has failed to tie any of these general allegations to any of the specific Defendants:

- Subparagraph (a) – The Trustee has not alleged that any of the Defendants either read or were aware of the May 2007 article in Barron's and the May 2001 article in MAR/Hedge;

- Subparagraph (b) – this allegation relates solely to Stanley Chais – not the Defendants;

- Subparagraph (c) – this allegation relates solely to Stanley Chais – not the Defendants;

- Subparagraph (d) – the Trustee has not alleged that the Defendants were either aware of or should have been aware of the fact that BLMIS functioned as both investment manager and custodian of securities;

- Subparagraph (e) – the Trustee has not alleged that the Defendants were either aware of or should have been aware of the fact that BLMIS was audited by a three person accounting firm;

- Subparagraph (f) – the Trustee has not alleged that the Defendants were either aware of or should have been aware of the fact that the compensation system utilized by BLMIS was atypical. The remainder of the allegation relates solely to Stanley Chais – not the Defendants;

- Subparagraph (g) – the Trustee has not alleged that the Defendants were either aware of or should have been aware of the fact that the BLMIS was substantially a family-run operation;

- Subparagraph (h) – The Trustee has not alleged that the Defendants had any obligation or even reason to perform a performance audit of BLMIS.

These allegations are precisely the type of conclusory, lumped together allegations prohibited by Rule 9(b). They provide no factual basis, much less the "ample factual basis" required to survive a motion to dismiss. *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001) (citing *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

The Trustee has not set forth any facts that support the assertion that the Defendants' returns were implausible when viewed over time or in the context of the market as a whole. There is nothing in the Complaint regarding the Defendants' investment strategies or the securities purportedly held in their accounts. Without providing the required context for the Defendants' investments and returns, no inference can be drawn as to whether those returns were plausible or not.

While the Trustee alleges that the Chais Family Accounts reported an annual average rate of return over 39% between 1996 through 2007 (Compl. ¶ 103(b)), when viewed along the returns reported by other investors, the purported returns from the Defendants' BLMIS accounts appear unremarkable. For example, George Soros has averaged annual returns of 30% in his Quantum Fund for thirty years, from 1970 through 2000. (Ex. 7). Indeed, the "implausibly" high return rate of 39% actually underperformed NASDAQ annual returns during several years in the relevant period. For example, the NASDAQ Composite Index reported a 85% gain in 1999. (Ex. 8). Nor is it remarkable that some of the Defendants' BLMIS accounts had some years of significant positive returns. John Paulson's Paulson & Co. reported that in 2007 four different funds he managed achieved returns in excess of 100% - one earning 589.67%. (Ex. 9). Against that background, the receipt of the returns alleged does not raise the Defendants'

knowledge of the Madoff Ponzi scheme above the "speculative" level. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965. Furthermore, each of the Defendants is entitled to respond to specific allegations against him or herself, not collective conclusory allegations about a large group of individuals and entities.

Finally, Defendants' ability to withdraw sums from BLMIS over many years could have only reinforced their belief – shared by countless other investors and the SEC – that BLMIS was a legitimate business. The fraudster's very purpose in making distributions from a Ponzi scheme is to reassure investor-victims that the business is prospering and all is well. *See Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Group, Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) (distributions conceal existence of Ponzi scheme); *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987) (same). This is yet another instance where the Trustee has failed to differentiate between allegations made against Stanley Chais and the Defendants, alleging only that "Defendants collectively withdr[ew] more than $1 billion from BLMIS since December 1995." (Compl. ¶ 103(c)). The Trustee has not alleged how much of that amount was withdrawn by the Defendants, how much by Stanley Chais, and how much by the other defendants.

Simply put, the Trustee has failed to set forth clear and probative facts that would support his sweeping claims that the Defendants were complicit in, knew of or were in some way responsible for Madoff's fraud. The law is clear that without such facts his fraud allegations must be dismissed. *See Hassett v. Zimmerman (In re O.P.M. Leasing Servs., Inc.)*, 32 B.R. 199, 200-01 (Bankr. S.D.N.Y. 1983) (dismissing § 548 claim where trustee failed to allege facts supporting his assertion of fraud). The Complaint has failed to meet the requirements of Rule 9(b) and *Twombly-Iqbal* with respect to Defendants and should be dismissed.

## II. THE TRUSTEE HAS FAILED TO PLEAD FACTS SUFFICIENT TO SUSTAIN HIS CLAIMS FOR TRANSFERS MADE WITH ACTUAL INTENT TO DEFRAUD (COUNTS THREE, FIVE AND NINE)

### A.    The Trustee Has Not Particularized The Fraudulent Transfers

The Trustee contends that the Transfers were made with actual fraudulent intent under both New York Debtor and Creditor Law and the Bankruptcy Code and therefore may be set aside without regard to the adequacy of any consideration received by the debtors.  (Compl. ¶¶ 130, 143).  A claim to avoid an intentional fraudulent conveyance or transfer must satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005); *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).  The Trustee's generalized allegations of actual fraudulent transfers also fail to meet the heightened pleading requirements of Rule 9(b) and must be dismissed.  Under Rule 9(b), the party asserting an actual fraudulent transfer claim must "specify the property that was allegedly conveyed, the timing and frequency of those allegedly fraudulent conveyances, and the consideration paid."  *Official Comm. of Unsecured Creditors of M. Fabrikant & Sons, Inc. v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 733 (Bankr. S.D.N.Y. 2008) (citing *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 221 (S.D.N.Y. 2002)).

While the Trustee has attached as Exhibit B to his Complaint a chart allegedly identifying every single transfer made to sixty-one different entities over the past thirteen years, nowhere in his Complaint has he identified which transfers he claims are fraudulent.  He also lumped together and aggregated all of the transfers made to those sixty-one different entities within six years of the date of the petition (the "Six Year Transfers") (Compl. ¶ 108) and within two years of the petition (the "Two Year Transfers") (Compl. ¶ 109).  He has not identified which transfers to which entities he is challenging or the specific dates or amounts of those transfers.  This

shotgun pleading is not sufficient. *Wujin Nanxiashu Secant Factory v. Ti-Well Int'l Corp.*, No. 01 Civ. 8871, 2002 U.S. Dist. LEXIS 9615, at *10-11, 2002 WL 1144903, at *4 (S.D.N.Y. May 29, 2002) (dismissing intentional fraudulent transfer claim that failed to identify the property that was transferred, when the transfers occurred and to whom the transfers were made). The Trustee's failure to specifically identify for each transfer to the Defendants "the property that was allegedly conveyed [or] the timing and frequency of [the] allegedly fraudulent conveyances" is fatal to these claims of actual fraudulent transfers. *United Feature Syndicate, Inc.*, 216 F. Supp. 2d at 221. Accordingly, the Trustee's claims for actual fraudulent transfers to the Defendants, including any "undiscovered fraudulent transfers," should be dismissed.

**B.** **The Trustee's Six Year Transfer Claim Does Not Plead That The Defendants Received Distributions From BLMIS With Actual Intent To Hinder, Delay or Defraud BLMIS' Other Creditors**

With respect to the Six Year Transfers, under NY DCL § 276, a transfer is made with actual intent to hinder, delay and defraud creditors only if **both** the transferor and the transferee have the intent to defraud. *See Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 276 (Bankr. S.D.N.Y. 2007); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 396 (Bankr. S.D.N.Y. 2007); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*, 337 B.R. 791, 805 (Bankr. S.D.N.Y. 2005); *Gentry v. Kovler (In re Kovler)*, 329 B.R. 17, 18 (Bankr. S.D.N.Y. 2005) ("actual and mutual fraudulent intent by both parties"), *correcting*, 249 B.R. 238, 244 (Bankr. S.D.N.Y. 2000); *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005).[2] For the reasons stated in Section I, *supra*, the Trustee has alleged no facts from which it

---

[2]      *But see Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810, 826 n.5 (Bankr. S.D.N.Y. 2008). However, the Second Circuit decisions cited by *Bayou Group* hold that the transferor's actual intent must be proven under N.Y.D.C.L. § 276 but are silent with respect to the transferee's intent. *See In re Sharp Int'l*

could be inferred, if they were proven, that the Defendants had any knowledge of the Madoff

fraud, much less that they intended to defraud his other victims by the receipt of distributions

from BLMIS.

### III. THE CONSTRUCTIVE FRAUD CLAIMS (COUNTS FOUR, SIX, SEVEN, AND EIGHT) MUST BE DISMISSED BECAUSE THE TRUSTEE HAS FAILED TO PLEAD A LACK OF VALUE OR FAIR CONSIDERATION

#### A. The Trustee Must Plead A Plausible Claim That Any Transfers To The Defendants Exceed Their Claim Against BLMIS For Restitution Of The Principal Invested In The Ponzi Scheme

In Counts Four, Six, Seven and Eight of the Complaint the Trustee asserts constructive

fraudulent transfer claims against the Defendants in connection with the Two Year Transfers and

the Six Year Transfers.  To state a claim for constructive fraudulent transfers under the

Bankruptcy Code or the NY DCL, the Trustee must plead facts demonstrating that each of the

Two Year Transfers was not made for "value," 11 U.S.C. § 548(a)(1)(B), and that each of the Six

Year Transfers was not made for "fair consideration."  NY DCL §§ 273-75; *see In re Sharp Int'l

Corp.*, 403 F.3d at 53; *Atlanta Shipping Corp.*, 818 F.2d at 248.

Under the Code, the Trustee may avoid only those constructively fraudulent transfers

from BLMIS for which BLMIS received "less than reasonably equivalent value" in return.  11

U.S.C. § 548(a)(1)(B)(i).  Section 548(d)(2)(A) defines "value" as "property, or satisfaction or

securing of a present or antecedent debt."  Under the Bankruptcy Code, "debt" includes a

"liability on a claim," *id.*, § 101(12), which in turn is defined broadly to include any "right to

payment, whether or not such right is reduced to judgment, liquidated, unliquidated fixed,

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

*Id.*, § 101(5).  A legal or equitable claim against a debtor constitutes an antecedent debt, and any

---

*Corp.*, 403 F.3d at 56 (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)) ("'creditor must show intent to defraud on the part of the transferor'").

payment that reduces the amount of that claim necessarily is an exchange for fair value.[3]  *See*

*Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 595 (9th Cir. 1991).

New York law contains parallel definitions.  Under the NY DCL provisions governing

constructively fraudulent transfers, the Trustee may avoid only those transfers for which BLMIS

did not receive "fair consideration."  NY DCL §§ 273-275.  Courts in this Circuit have

recognized that the terms "reasonably equivalent value" in § 548(a)(1)(B) of the Bankruptcy

Code and "fair consideration" in §§ 273-275 of the NY DCL have "the same fundamental

meaning."  *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256

B.R. 664, 677 (Bankr. S.D.N.Y. 2000), *aff'd*, *Balaber-Strauss v. Lawrence*, 264 B.R. 303

(S.D.N.Y. 2001).

As investor-victims of Madoff's admitted Ponzi scheme, the Defendants have a claim

against BLMIS for restitution of the principal sums entrusted to the scheme.  *See, e.g.*, *Scholes v.*

*Lehman,* 56 F.3d 750, 756-58 (7th Cir. 1995); *In re United Energy Corp.*, 944 F.2d at 595;

*Merrill*, 77 B.R. at 857; *Jobin v. Cervenka (In re M & L Bus. Mach. Co.)*, 194 B.R. 496, 502 (D.

Colo. 1996).  To state a claim that transfers to each of the Defendants' accounts were not made

for value, the Trustee therefore must plausibly allege that each of the Defendants has received

distributions from Madoff in excess of that Defendant's principal investment in BLMIS.  The

Trustee's claim that the Two Year Transfers and Six Year Transfers were not made for value

impermissibly ignores the Defendants' claims against BLMIS for the value of their invested

principal.

---

[3]      The terms "fair consideration" as used in the NY DCL and "reasonably equivalent value"
have substantially the same meaning, although the definition of "fair consideration" under the
NY DCL expressly incorporates the concept of good faith in making a transfer, whereas the term
"reasonably equivalent value" does not.  *Breeden v. Bennett (In re Bennett Funding Group, Inc.)*,

Madoff has admitted only that at some point in the early 1990s he transformed what had previously been a legitimate investment advisory business into a pure Ponzi scheme. (Ex. 1, at 25:12-13). The Defendants have a restitution claim against BLMIS both for the value of actual securities it held on their behalf before Madoff rolled them into his Ponzi scheme and for any additional post-transformation investments with BLMIS. It is also far from clear that the time Madoff "commenced" his Ponzi scheme involved the accounts of the Defendants since most of these accounts had long term securities holdings and were not part of the "risk arbitrage" trading fund involved in the fraud. All the Complaint alleges is that Stanley Chais had business dealings with Madoff going back to the 1970s. (Compl. ¶ 33). It contains no allegations whatsoever about the source or amount of the principal sums invested in the Defendants' accounts, and no allegations that any of the Defendants' accounts received distributions from BLMIS in excess of that principal sum. Accordingly, the Trustee has not pleaded that any of the distributions to the Defendants' accounts were made without fair consideration.

Instead, the Trustee has only recited the statutory elements of a fraudulent transfer claim without factual detail. (*See, e.g.*, Compl. ¶ 134 ("BLMIS received less than a reasonably equivalent value in exchange for each of the Two Year Transfers"); Compl. ¶ 146 ("BLMIS did not receive fair consideration for the Six Year Transfers")). Such conclusory allegations are insufficient to state a claim. *See Twombly.*, 550 U.S. at 555, 127 S. Ct. at 1964 ("a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 129 S. Ct. at 1949 (Allegations that are only "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice").

---

220 B.R. 743, 754 n.15 (Bankr. N.D.N.Y. 1997) (citing *United States v. McCombs*, 30 F.3d 310, 326 n.1 (2d Cir.1994)).

**B.    The Principal Sum Includes Not Only Amounts Invested By The Defendants But Also Expected Returns If BLMIS Had Honestly Administered Their Investment**

Where the Ponzi scheme operator is a broker-dealer, investors' restitution claims should not be limited to merely "out of pocket" damages, which are a "wholly inadequate" measure of damages. *Visconsi v. Lehman Brothers, Inc.*, 244 Fed. Appx. 708, 713 (6th Cir. 2007).  In *Visconsi*, the plaintiffs initially invested $21.3 million with a broker running a Ponzi scheme, but withdrew approximately $31.3 million before the Ponzi scheme was discovered.  In litigation against Lehman Brothers – who failed to detect the Ponzi scheme – Lehman took the position that the investors weren't entitled to any damages because they had already recovered more than their initial investment.  Upholding an arbitration award in favor of the investors, the Sixth Circuit rejected Lehman's argument, holding that its out-of-pocket theory misapprehended the harm suffered by the investors, who had a reasonable expectation that their initial investment would grow.  *Id.*  As the Sixth Circuit recognized, if the broker running the Ponzi scheme had invested the plaintiffs' money as he was supposed to (and not used it for his own benefit) the initial investment would have grown immensely.  *Id.*

Like the case here, the investors' expectations were reflected in their final account statements, which established the damages to which the investors were entitled in their action against Lehman Brothers.  Therefore, the Defendants' final account statements should set the baseline against which transfers are measured to determine whether they constitute fair consideration.  In order for the Trustee to plead that the Defendants received transfers from BLMIS without giving fair consideration, he must allege that the Defendants' transfers exceeded the value of the securities reflected on their last BLMIS account statements.  Since no such allegation is pled, the Transfers should be treated as a reduction in the amount of the Defendants' claims against BLMIS, which constitute fair consideration.

### C. The Trustee Has Failed To Plead A Plausible Claim That The Six Year Transfers Were Not Received In Good Faith

Finally, with respect to the Six Year Transfers, NY DCL § 272 defines "fair consideration" to mean receipt "for value" and in "good faith." *In re Bennett Funding Group*, 220 B.R. at 754 n.15 (citing *United States v. McCombs*, 30 F.3d 310, 326 n.1 (2d Cir. 1994)). For the reasons stated in Section I, *supra*, the Complaint contains no plausible allegations that the Defendants, as opposed to Stanley Chais, lacked a good faith belief in the legitimacy of BLMIS or any distribution from it.

## IV. TRANSFERS MADE MORE THAN SIX YEARS BEFORE THE FILING OF THE ADVERSARY COMPLAINT ARE NOT VOIDABLE UNDER NEW YORK LAW OR SECTION 544(B) OF THE BANKRUPTCY CODE

Relying on § 544(b) of the Code and NY DCL §§ 273-76, the Trustee seeks in Counts Five through Eight of the Complaint to recover all transfers made within six years of the December 11, 2008 Filing Date.[4] However, the limitations period under New York law, incorporated by reference into Code § 544(b), is six years from the commencement of this adversary proceeding, i.e., May 1, 2009. *See* NY CPLR 213; *Avalon LLC v. Coronet Props. Co.*, 762 N.Y.S.2d 48, 49 (1st Dept. 2003). Because the Trustee has no greater rights under § 544(b) than an actual creditor would have under the NY DCL, he cannot recover transfers made prior to May 1, 2003 unless New York law tolls the statute of limitations. No provision of the Code tolls the running of the New York statute of limitations at the Filing Date. Instead, the Trustee must bring any claim under § 544(b) within the shorter of i) the limitations period provided by CPLR 213 and ii) the two year post-commencement limitation imposed by Code § 546(a)(1)(A).

---

[4] Paragraph 108 of the Complaint defines the Six Year Transfers as those made within six years of the Filing Date.

The Trustee apparently assumes that the commencement of the proceeding stops the running of the state statute of limitations for state law claims asserted under § 544(b), leaving him free to bring such claims at any time within the two year period provided by § 546(a). We recognize that a number of district and bankruptcy courts have so held,[5] including this court,[6] and that the *Collier* treatise so states.[7] However, these cases are not well-reasoned. They assume the continuance under the Code of tolling provisions of the former Bankruptcy Act, which Congress narrowed when it enacted the Code. When the plain language of the relevant Code provisions and their legislative history is examined, they confer on the Trustee no greater rights than an actual creditor would have in the absence of bankruptcy.

### A. The Bankruptcy Code Repealed The Express Tolling Provisions Of The Former Bankruptcy Act For Trustee Claims Based On An Actual Creditor

Section 11(e) of the former Bankruptcy Act, 11 U.S.C. § 29(e) (repealed 1978), expressly tolled the statute of limitations with respect to any claim asserted on behalf of the estate. A trustee was allowed:

> Two years subsequent to the [petition date] . . . to institute proceedings on behalf of the estate *upon any claim* against which the period of limitation fixed by Federal or State law *had not expired at the time of the filing of the petition in bankruptcy*.

*Id.* (emphasis added). Section 11(e) tolled the limitations period for claims to avoid fraudulent conveyances under state law, brought under former § 70(e) of the Act, 11 U.S.C. § 110(e)

---

[5]    *See, e.g.*, *Sears Petroleum & Transp. Corp. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 2d 212 (D. Mass. 2006); *Bloom v. Fry (In re Leach)*, 380 B.R. 25 (Bankr. D.N.M. 2007); *Levit v. Spatz (In re Spatz)*, 222 B.R. 157 (Bankr. N.D. Ill. 1998); *Glosser v. S&T Bank (In re Ambulatory Med. & Surgical Health Care, Inc.)*, 187 B.R. 888, 901 (Bankr. W.D. Pa. 1995); *Mancuso v. Cont'l Bank Nat'l Ass'n Chicago (In re Topcor, Inc.)*, 132 B.R. 119 (Bankr. N.D. Tex. 1991).

[6]    *O'Connell v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 107 (Bankr. S.D.N.Y. 2005).

[7]    5 Lawrence P. King, *Collier on Bankruptcy*, ¶ 544.09[3] (15th ed. Revd).

(repealed 1978).[8] *See, e.g.*, *Halpert v. Engine Air Serv., Inc.*, 116 F. Supp. 13, 15 (E.D.N.Y. 1953); *MacLeod v. Kapp*, 81 F. Supp. 512, 513 (S.D.N.Y. 1948).

As the Second Circuit explained the former scheme, the trustee was to have at least the time allowed by the state statute of limitations, plus the two year tolling period conferred by § 11(e). *Feldman v. First Nat'l City Bank*, 511 F.2d 460, 463 n.3 (2d Cir. 1975). The purpose of the tolling provision statute was to allow the trustee "breathing room" to evaluate potential state law claims that were viable when the petition was filed:

> The underlying purpose of § 11(e) was clearly to give the trustee some breathing room, unless the applicable limitations period had expired prior to the filing of a bankruptcy petition. Congress clearly did not intend to resurrect a corpse, but did intend to allow a trustee the opportunity to resuscitate a viable claim for the benefit of the estate.

*Lawler v. RepublicBank Dallas (In re Lawler)*, 53 B.R. 166, 171 (Bankr. N.D. Tex. 1985).

When it enacted the Bankruptcy Code, Congress limited its tolling provisions to suits in which the trustee was asserting the debtor's rights. Instead of the "any claim" language of the Act, the Code provides in pertinent part:

> If applicable *nonbankruptcy law* . . . fixes a period *within which the debtor may commence an action*, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of--
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) two years after the order for relief.

---

[8] Former § 70(e)(1), the predecessor to § 544(b) of the Code, provided:

A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor having a claim provable under this Act, shall be null and void as against the trustee of such debtor.

11 U.S.C. § 108(a) (emphasis added).  The House and Senate Committee reports state that § 108 is "derived from" former § 11(e), but that it provides a two year extension of time to the trustee "when he steps into the shoes of the debtor."[9]  Consistent with its plain language and legislative history, § 108 does not extend the limitations period when a trustee brings a state law fraudulent transfer action asserting the rights of a creditor under § 544(b).  *Sears Petroleum & Transp. Corp.*, 417 F. Supp. 2d at 224; *Rosania v. Haligas (In re Dry Wall Supply, Inc.*), 111 B.R. 933, 935 (D. Colo. 1990).  Instead, the applicable limitations period is that imposed by 11 U.S.C. § 546(a).  *Sears Petroleum & Transp. Corp.*, *supra*; *Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558, 2006 U.S. Dist. LEXIS 53785, at *21-22, 2006 WL 2212776, at *6 (S.D.N.Y. Aug. 3, 2006).

Section 546 of the Code contains no tolling language whatsoever, instead providing:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title *may not be commenced* after the earlier of--
>
> (1) the later of--
>
> > (A) 2 years after the entry of the order for relief; or
> >
> > (B) 1 year after the appointment or election of the first . . . ; or
>
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546 (emphasis added).  Its legislative history also contains no reference to tolling; instead, the Senate committee report states that the section "adds a statute of limitations."[10]  Consistent with this language and legislative history as a statute of limitations, § 546 cuts off an otherwise viable § 544(b) claim if not asserted within the two year post-petition limitations period.  *Global Crossing Estate Representative*, 2006 U.S. Dist. LEXIS 53785, at *21-22, 2006

---

[9]    H.R.Rep. No. 95-595 (1977), at 318; S.Rep. No. 95-989 (1977), at 31.

[10]   S.Rep. No. 95-989, at 87.

WL 2212776, at *6; *Barr v Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.)*, 238 B.R. 558, 571-73 (Bankr. S.D.N.Y. 1999). In contrast, § 11(e) of the Act allowed the trustee the longer of two years post-petition or the actual expiration of a state statute of limitations to bring an avoidance claim under state law. *See Feldman*, 511 F.2d at 463.

Like the Act before it, the Code represents a compromise between the trustee's avoiding power for the benefit of the estate, on the one hand, and transferee's right to repose on the other. By the plain language of the Code, confirmed by its legislative history, Congress shifted that compromise in favor of transferees in two respects. First, Congress deleted the Act's express tolling provision for state law claims in which the trustee stood in a creditor's shoes, limiting tolling under § 108 to actions brought to assert the debtor's rights. Second, Congress repealed the Act's provision that gave the trustee the longer of two years post-petition or the state limitations period to assert state law claims, replacing it with a firm two year cutoff under Code § 546(a). Congress manifestly intended to curtail the trustee's avoidance powers utilizing state law from what they had been under the Act.

Two familiar principles of statutory construction require that this intent be respected. First, Congress is presumed to know prior law and to intend to change the law when it changes the statutory language. *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *Bianchi v. United States*, 46 Fed. Cl. 363, 367 (Ct. Cl. 2000). Second, when Congress includes language in one section of a statute but not another, it is presumed that the exclusion is deliberate. *See Russello v. United States*, 464 US. 16, 23 (1983); *Coleman v. Cmty. Trust Bank (In re Coleman)*, 426 F.3d 719, 725 (4th Cir. 2005). Here Congress eliminated the two year tolling provision for state law claims based on a creditor's rights, and it left any tolling language out of the post-petition limitations period in § 546(a). The time limitations on a trustee's state law based avoiding action under

Code § 544(b) are more stringent than they were under §§ 11(e) and 70(e) of the Act, and this Court may not read back into the Code what Congress deliberately removed.

It is immaterial that some courts characterize the effect of § 546(a) not as tolling the state statute of limitations but as implicitly preempting it. *See, e.g.*, *First Union Nat'l Bank v. Gibbons (In re Princeton-N.Y. Investors, Inc.)*, 219 B.R. 55, 61-65 (D.N.J. 1998). Implied preemption, which is disfavored, requires an actual conflict between the policy enacted by Congress and inconsistent state law. *See generally Altria, Inc. v. Good*, __ U.S. __, 129 S. Ct. 538, 543 (2008); *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S. Ct. 1483, 1488 (1995). There is no conflict between provisions of § 546(a) and the state statute of limitations; they can be reconciled by holding that the Trustee must bring a § 544(b) claim existing at the commencement of the case within the earlier of the state limitations period or the two-year post-petition limitation of § 546(a).

The Code, as enacted, thus limits the "breathing room" that the Trustee would have enjoyed under the Act. Some of the courts holding that the commencement of the case tolls state statutes of limitations for § 544(b) claims have been influenced by the argument that the breathing period is desirable policy. *See, e.g.*, *In re Princeton-N.Y. Investors, Inc.*, 219 B.R. at 65; *In re Dry Wall Supply, Inc.*, 111 B.R. at 936-37. Nevertheless, "'it is not for us to substitute our view of . . . policy for the legislation which has been passed by Congress.'" *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, __ U.S. __, 128 S. Ct. 2326, 2329 (2008) (citing *Baltimore Cnty. V. Hechiner Liquidation Trust (In re Hechiner Invest. Co. of Del., Inc.)*, 335 F.3d 243, 256 (3d Cir. 2003)) (ellipsis in original).

Nor can it be argued that the change in the law was inadvertent, or that Congress could not have intended to change the law as it has. If Congress has failed to draft language that

accurately implements Congressional intent, the courts must give effect to the language actually

chosen, while leaving Congress to revise the law prospectively to carry out the drafter's intent:

> If Congress enacted into law something different from what it intended,
> then it should amend the statute to conform to its intent. "It is beyond our
> province to rescue Congress from its drafting errors, and to provide for
> what we might think . . . is the preferred result."

*Lamie v. United States Trustee*, 540 U.S. 526, 540 (2004) (citing *United States v. Granderson*,

511 U.S. 39, 68 (1994)) (ellipsis in original) (rejecting *Collier's* conclusion that a change in the

Code was "a scrivener's error that ought not have any effect"). Congress struck a balance

between a trustee's avoiding powers utilizing state law on the one hand and the repose of

transferees on the others. That Congress might have struck a balance more favorable to the

trustee.

**B.** **Section 544(b) Confers On The Trustee No Greater Rights After Commencement Of The Case Than An Actual Creditor Would Have Enjoyed Outside Of Bankruptcy**

In attempting to vacate a fraudulent transfer under § 544(b), the Trustee asserts the rights

that an existing, actual creditor would have under state law.[11] Standing in the shoes of that

creditor, he is subject to all defenses that could be asserted against the creditor, including the

state statute of limitations. *See, e.g.*, *Silverman v. Sound Around, Inc. (In re Allou Distribs.,*

*Inc.)*, 392 B.R. 24, 31 (Bankr. E.D.N.Y. 2008); *G-I Holdings, Inc. v. Those Parties Listed On*

*Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 623 (Bankr. D.N.J. 2004); 5 *Collier on*

*Bankruptcy, supra*, ¶ 544.09[3].[12] But if the state statute of limitations were to be tolled by the

---

[11]     5 *Collier on Bankruptcy, supra*, ¶ 544.09[1].

[12]     *Collier* goes on to state, "Consequently, if a creditor . . . is barred from recovery because
of the running of a statute of limitations prior to the commencement of the case, the trustee is
likewise . . . barred." 5 *Collier on Bankruptcy, supra*, ¶ 544.09[3], at 544-22.1. For the reasons
stated in Section III.A, *supra*, *Collier's* assumption that the commencement of the case stops the

commencement of the bankruptcy case, a trustee would have a stronger position than what the actual state law creditor would have enjoyed after that date.

This is inconsistent with the plain language of §544(b), which provides:

> Except [for reasons immaterial here], the trustee may avoid any transfer of an interest of the debtor in property or any obligation that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b). When Congress wanted to give the trustee avoidance powers greater than those enjoyed by an existing creditor under state law, it did so expressly. Hence, § 544(a), the "strong arm clause," gives the trustee the powers of a judicial or execution lien creditor, "whether or not such a creditor exists," and "as of the commencement of the case." Section 547, which governs preferences, allows the trustee to recover specified transfers made "more than 90 days prior to the filing of the petition." Section 548, the Code's fraudulent transfer provision, allows the trustee to recover fraudulent transfers defined therein made "within two years before the date of filing the petition." In contrast to the trustee's rights under § 544(b), these rights to recovery arise on commencement of the case and are purely a creation of federal law. The omission of such language from § 544(b) confirms that the trustee was to enjoy no more favorable position than the actual creditor in whose shoes he stands. *See Russello*, 464 U.S. at 23; *Coleman*, 426 F.3d at 725.

**C.     The Trustee's Claims For Undiscovered Transfers Does Not Extend The Lookback Period Beyond Six Years Prior To Filing The Adversary Complaint**

The New York Debtor and Creditor Law, incorporated into the Trustee's § 544(b) claim, contains no statute of limitations and no provisions dealing with fraudulently concealed transfers.

---

running of the statute is contrary to the language of the Code. *Cf. Lamie*, 540 U.S. at 540 (rejecting *Collier* interpretation of Code provision).

Instead, CPLR § 213 provides the statute of limitations. *Orr v. Kinderhill*, 991 F.2d 31, 35 (2d Cir. 1993); *Avalon LLC*, 762 N.Y.S.2d at 49.

CPLR § 213 fixes the limitations period and provides expressly for tolling in the event a claim could not reasonably have been discovered:

The following actions must be commenced within six years:

> an action based upon fraud; the time within which the action must be commenced shall be *the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud*, or could with reasonable diligence have discovered it.

NY CPLR § 213(8) (emphasis added). The tolling provision applies only to claims based on intentional fraud; there is no tolling for claims of constructive fraud. *Monaco v. N.Y. Univ. Med. Ctr.*, 623 N.Y.S.2d 566, 568 (1st Dept.), *appeal dismissed in part & denied in part*, 86 N.Y.2d 882 (1995); *Schoen v. Martin*, 589 N.Y.S.2d 443, 444 (1st Dept. 1992).

Actions to recover fraudulent conveyances under NY DCL §§ 273-75, governing transfers with actual intent to defraud, are claims for constructive fraud and are subject to the six-year limitation period without tolling. *Orr*, 991 F.2d at 35; *Lippe v. Bairnco Corp.*, 225 B.R. 846, 835 (S.D.N.Y. 1998). Accordingly, claims for undiscovered fraudulent transfers other than those based on actual intent to defraud under NY DCL §276 are barred for transfers more than six years before the filing of the Complaint.

With respect to claims made with actual intent to hinder, delay or defraud under NY DCL § 276,[13] the Trustee stands in the shoes of an actual creditor of BLMIS. To the extent that such a creditor actually knows or reasonably should have known of the existence of fraudulent transfers

---

[13] As demonstrated in Section II, *supra*, with respect to claims under NY DCL §276, the Trustee must plead and prove that both BLMIS and the defendant transferee had actual intent to hinder, delay and defraud the other creditors of BLMIS.

after the exposure of Madoff's Ponzi scheme, the Trustee can sue to recapture such transfers as took place within six years of the filing of the complaint. To the extent that a creditor could not have reasonably known of such transfers, the six-year limitation period is tolled for a further two years after a reasonable actual creditor would have discovered them. However, the tolling provision puts the creditor, and the Trustee, in the same position it would have occupied if it had actual notice of the transfers before the six-year period expired.

We concede for purposes of argument that when the existence of a Ponzi scheme is proven, the fraudster makes all distributions to investor-victims with the actual intent to hinder, delay and defraud the distributees, other investor-victims, and other creditors from discovering the intrinsically fraudulent nature of the scheme.[14] Contrary to the law in this Circuit, the Complaint does not identify any creditor or class of creditors of BLMIS who could not reasonably have known of the Madoff Ponzi scheme before the Filing Date. *See Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.)*, 398 B.R. 761, 778-81 (Bankr. S.D.N.Y. 2008) (under § 544(b), trustee must plead existence of class of actual creditors but need not identify specific creditor until trial). But even if it is assumed that the Trustee would identify a class of "non-professional" deluded victims of the Madoff scheme as such actual creditors, the Complaint on its face contradicts any claim that such creditors could not have known, before December 2008, that BLMIS was a Ponzi scheme and that its distributions to investors were therefore made with intent to defraud.

Paragraph 104 of the Complaint sets out numerous "red flags" that the Trustee alleges were apparent to all the world, including financial industry press reports going back to 2001, the

---

[14] *See generally In re Agric. Research & Tech. Group, Inc.*, 916 F.2d at 535; *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund)*, 397 B.R. 1, 10 (S.D.N.Y. 2007) ("Ponzi

high and consistent returns, the family nature of the Madoff operation, its auditing by a three person accounting firm with offices in a strip mall, the absence of real time electronic access to investors' accounts, and the refusal of numerous banks and financial advisors to do business with BLMIS.  These publicly available red flags are the only indicia of fraud that the Complaint connects to the Defendants.  If it was reasonable for the non-professional Defendants to have known that they were receiving distributions from a Ponzi scheme based on those publicly known facts, it was equally reasonable for any other non-professional investor to have known the same thing.  If the Trustee alleges that the Defendants should have known what was going on for purposes of liability, he contradicts and defeats his claim that other non-professional creditors could not reasonably have known for purposes of tolling the statute of limitations.

In conclusion, even if he does have claims under  § 544(b) to recover fraudulent transfers from the Defendants under the NY DCL, the Trustee can reach back no further than six years before the filing of the Complaint.  Recovery of earlier distributions is barred by the applicable statute of limitations, CPLR § 213.  The two-year tolling provision of CPLR § 213(8) allows the Trustee a further two years to bring claims for transfers made with actual intent to defraud, within that six-year lookback period, that could not reasonably have been known by an actual creditor before the public exposure of the Madoff Ponzi scheme in December 2008.  To the extent that Counts Five through Nine of the Complaint assert claims for transfers made to any Defendant before May 1, 2003, they fail to state a claim on their face and must be dismissed.

---

scheme presumption"); *Jobin v. Ripley (In re M & L Bus. Mach. Co.)*, 198 B.R. 800, 806 (D. Colo. 1998).

## V. THE TRUSTEE'S CLAIM FOR TURNOVER AND ACCOUNTING (COUNT ONE) MUST BE DISMISSED BECAUSE THE TRANSFERS ARE NOT PROPERTY OF THE ESTATE

In Count One of the Complaint, the Trustee asserts a claim for the transfers made to all of the Defendants pursuant to 11 U.S.C. § 542.  The Trustee contends that "[t]he Transfers constitute property of the estate to be recovered and administered  by the Trustee pursuant to section 541 of the Bankruptcy Code and 15 U.S.C. §78fff-2(c)(3)."  (Compl. ¶ 114).

The Trustee's cause of action for turnover and accounting under 11 U.S.C. § 542 fails to state a claim as a matter of law because property that is alleged to have been fraudulently transferred is not property of the estate until it has been recovered through a successful avoidance action.  *See FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992) ("Section 550 authorizes a trustee to recover transferred property for the benefit of the estate to the extent that a transfer is avoided, *inter alia*, as fraudulent under either 11 U.S.C. § 544 (1988) or § 548").

Not only is it illogical to claim that "transfers," which have been transferred out of the debtor's estate and are the subject of an avoidance action, are the property of the debtor's estate and therefore subject to a claim for turnover and accounting, it would render fraudulent transfer actions pursuant to § 541(a)(3) meaningless.  *In re Colonial Realty Co.*, 980 F.2d at 131.  As the Second Circuit in *In re Colonial Realty* recognized:

> [T]he inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional subparagraph clearly reflects the congressional intent that such property is *not* to be considered property of the state until it is recovered.

*Id.* (quoting *In re Saunders*, 101 B.R. 303, 305 (Bankr. N.D. Fla. 1989)) (emphasis added).

Courts have repeatedly rejected attempts like the Trustee's here to circumvent the more rigorous requirements for avoidance under §§ 544, 547 and 548 of the Bankruptcy Code by using

the turnover mechanism of § 542 to obtain "immediate" recovery of the transfers. *See Savage & Assocs., P.C. v. BLR Servs. SAS (In re Teligent, Inc.)*, 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004) ("The trustee cannot compel the turnover of non-estate property under 11 U.S.C. § 542, and circumvent the more restrictive fraudulent transfer claim in the process."); *In re Saunders*, 101 B.R. at 305 ("Until a judicial determination has been made that the property was, in fact, fraudulently transferred, it is not property of the estate. If it were, the trustee could simply use the turnover action under 11 U.S.C. § 542").

In sum, turnover actions cannot be used to demand assets whose title is in dispute. *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 554 (D. Del. 2005). In order to state a claim for turnover of property under § 542, a plaintiff must allege that the transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate. *Id.* Here, the Trustee had not made, and cannot make that allegation. Accordingly, Count One of the Complaint should be dismissed pursuant to Rule 12(b)(6).

## VI. THE TRUSTEE'S CLAIM TO AVOID SUBSEQUENT TRANSFERS (COUNT TEN) MUST BE DISMISSED BECAUSE THE TRUSTEE HAS NOT IDENTIFIED ANY SUBSEQUENT TRANSFERS

The Trustee also seeks to recover subsequent transfers, but has failed to identify a single subsequent transfer in his Complaint, instead averring "on information and belief" that "some or all of the Transfers" were subsequently transferred to others in the form of payment of commissions or fees. (Compl. ¶ 166).[15] The Trustee then contends that the estate is entitled to

---

[15] The Trustee cannot plead his claim for Subsequent Transfers on "information and belief" since he has account records related to the Defendants' BLMIS accounts and can determine whether any such transfers were made. Since the information is not "'peculiarly within [the Defendants'] knowledge,'" the Trustee is not permitted to rely upon "information and belief" pleading. *See In re Musicland Holding Corp.*, 398 B.R. at 774 (citations omitted).

recover such subsequent transfers because "[o]ne or more Defendants are immediate or mediate transferees of the Subsequent Transfers from Defendant Chais and/or other Defendants." (Compl. ¶ 168). Since the Trustee cannot state a claim for subsequent transfers that he cannot even identify, his claim for avoidance of subsequent transfers should be dismissed.

## VII.  THE DEFENDANTS SHOULD BE PERMITTED TO SEEK RELIEF UNDER SIPA (COUNT ELEVEN)

In Count Eleven of the Complaint, the Trustee seeks an Order disallowing any claims filed by the Defendants under SIPA. (Compl. ¶ 174). The Trustee alleges that claims by the Defendants under SIPA are barred for two reasons: because the claims are not supported by the books and records of BLMIS and because the claims are barred under § 502(d) of the Bankruptcy Code. (Compl. ¶¶ 172-73). The first allegation fails to state a claim because it is precisely the kind of perfunctory, formulaic allegation, unsupported by factual detail, that *Twombly* and *Iqbal* condemn. In what respect are the Defendants' SIPA claims not supported by BLMIS books and records? The Complaint is silent.

The second allegation fails to state a claim because 11 U.S.C. § 502(d) does not apply to insurance claims that are payable in the first instance by funds advanced by SIPC and only secondarily, if at all, by the BLMIS bankrupt estate. Section 502(d) provides that an otherwise allowable claim against the bankrupt estate may not be allowed while the claimant is retaining assets recoverable by the estate as fraudulent transfers. Claims against the estate are filed under 11 U.S.C. § 501 and 11 U.S.C. § 502(a) and (b) provide for allowance of such claims either without objection or after objections have been determined. Subsection (d) then prohibits the allowance of otherwise allowable claims as follows:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title  or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549,

or 724(a) of this title unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

The provision is an absolute bar to payment of claims against the estate as long as the claimant has retained recoverable preferences or fraudulent transfers. *See 5 Collier on Bankruptcy*, *supra*, ¶ 502.05[2]. Its purpose appears to be to protect the assets of the estate, and the general creditors, by denying any payment, whether or not in excess of the recoverable transfer, until the transfers are recovered.

But by its terms, it is limited to the disallowance of claims against the bankrupt estate. However, customer claims to net equity under SIPA are in the first instance not claims against the estate but claims against SIPC, which is required to advance the funds necessary to pay them regardless of the amount of the debtor's assets.[16]

SIPA clearly differentiates between customer claims against SIPC and claims against the broker-dealer's bankrupt estate:

- 15 U.S.C. § 78fff-2(a)(2) provides that a customer shall file a statement of claim "but need not file a formal proof of claim," except for certain insiders. In contrast, Code § 501 requires the filing of a proof of claim.

- 15 U.S.C. § 78fff-2(a)(4) provides that nothing in the statute 'shall limit the right of any person . . . to establish by formal proof or otherwise as the court shall provide such claims as such person may have against the debtor, including claims for payment of money . . . without resort to moneys advanced by SIPC to the trustee."

Having differentiated between a notice of claim for insurance from SIPC and a claim against the broker-dealer's bankrupt estate, SIPA goes on to provide for the payment of customer claims out of a combination of SIPC funds and customer property.

- 15 U.S.C. § 78fff-2(b)(1) provides that after receipt of notice of claim, "the trustee shall promptly discharge, in accordance with the provisions of this section, all obligations of

---

[16]     SIPA provides for the payment of customer net equity claims up to $500,000 for securities and up to $100,000 for cash.

the debtor to a customer relating to, or net equity claims based upon, securities or cash by the delivery of securities or the making of payments . . . insofar as such obligations are ascertainable from the books and records of the debtor or are otherwise established to the satisfaction of the trustee. . . .For purposes of this subsection, *the court shall, among other things (1) with respect to net equity claims, authorize the trustee to satisfy claims out of moneys made available to the trustee by SIPC notwithstanding the fact that there has not been any showing or determination that there are sufficient funds of the debtor available to satisfy such claims* (emphasis added).

- 15 U.S.C. § 78fff-3(a)(1) provides that "In order to provide for prompt payment and satisfaction of net equity claims of customers of debtor, SIPC shall advance to the trustee" up to $500,000 for securities claims or $100,000 for cash claims.

- 15 U.S.C. § 78fff-3(a)(4) and (5) prohibit advances to pay the claims of insider customers or of other broker-dealers or banks trading on their own account.

- 15 U.S.C. §78fff-2(c)(2) and (3) provides that customer property, as it is recovered, goes first ratably to customers and then to SIPC as subrogee for customer claims.

It follows that SIPA requires SIPC to advance whatever is necessary to pay off promptly all retail customer net equity claims, up to the $500,000 limit for securities or the $100,000 limit for cash. The financial risk is in the first instance on SIPC, which will then be reimbursed only if more customer property can ultimately be recovered than the amount of customer claims. For an insolvent broker – and a Ponzi scheme is insolvent by definition – there will never be enough customer property to repay the SIPC advances. The statutory scheme is promptly to pay the customers' claims within the statutory limit using SIPC funds, allowing customers to file proofs of claim against the broker-dealer for losses beyond the statutory limit, and leaving SIPC with an empty subrogation claim against the unlikely prospect of surplus customer property. As this Court has stated, "the Trustee satisfies customer claims by allocating customer property supplemented by SIPA advances." *Peskin v. Picard (In re Bernard L. Madoff Inv. Sec. LLC)*, 413 B.R. 137, 143 (Bankr. S.D.N.Y. 2009).

The SIPA trustee's power to recover preferences or fraudulent transfers under the Code, conferred by § 78fff-2(c)(3), has to be viewed in that context. Recovered property is deemed to

be customer property, which is to say that it goes first to satisfy pro rata the net equity claims of the customers. Only the remainder, if any, goes to the SIPC as subrogee. While SIPC is in theory subrogated against the estate for the amount it advances to pay those claims, in practice its subrogation claim will be meaningful only if all customers are eventually paid their net equity in full. That cannot happen in a Ponzi scheme. Thus, SIPC, not the estate, is primarily responsible for the payment of customers' claims.

SIPA applies the Code to SIPA liquidations only to the extent not inconsistent with SIPA. *See* 15 U.S.C. § 78fff-2(b). Applying § 502(d) to block SIPA claims of customers who have received allegedly recoverable distributions is inconsistent with SIPA's purpose of imposing the financial risk of the prompt payment of net equity claims on SIPC. Applying § 502(d) does not protect the estate or its general creditors; it merely decreases SIPC's eventual financial exposure as insurer.

For that reason, no reported decision has held that § 502(d) bars payment of customer claims to net equity. Instead, the policy of SIPA requires that ascertainable customer claims be paid promptly with SIPC funds, at SIPC's risk, leaving until later the litigation of disputed avoidance actions for the benefit of the estate. Because § 502(d) does not bar payment of the Defendants' SIPA claims, and because Count Eleven otherwise fails to provide a basis for its conclusory assertion that BLMIS's books and records do not support those claims, Count Eleven of the Complaint should therefore be dismissed.

## **CONCLUSION**

For the foregoing reasons, Counts One and Three through Eleven of the Trustee's

Complaint should be dismissed as against the Defendants.


Dated:  November 12, 2009     Respectfully submitted,

            SILLS CUMMIS & GROSS P.C.


      By:  _/s/ Philip R. White__
         Philip R. White
         Andrew H. Sherman
         One Rockefeller Plaza
         New York, NY 10020
         Tel:  212-643-7000
         pwhite@sillscummis.com
         asherman@sillscummis.com

         *Attorneys for Defendants*
         *Emily Chasalow, Mark Chais, Wrenn Chais, William*
         *Chais, Miri Chais and the Entities identified On*
         *Exhibit 1 to the Notice of Partial Motion to Dismiss*
         *submitted herewith*