**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
E-mail: dsheehan@bakerlaw.com
Marc Hirschfield
E-mail: mhirschfield@bakerlaw.com
Paul P. Eyre (admitted *pro hac vice*)
E-mail: peyre@bakerlaw.com
Ona T. Wang
E-mail: owang@bakerlaw.com
Karl Fanter (admitted *pro hac vice*)
E-mail: kfanter@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the Substantively Consolidated*
*SIPA Liquidation of Bernard L. Madoff*
*Investment Securities LLC and Bernard L. Madoff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Debtor. | SIPA LIQUIDATION<br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>    Plaintiff,<br>          v.<br>STANLEY CHAIS, *et al*.,<br><br>    Defendants. | Adv. Pro. No. 09-1172 (BRL) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................... 1

BACKGROUND ................................................................................. 2

I.    IRVING H. PICARD, ESQ., IS APPOINTED TRUSTEE OF BLMIS ON
      DECEMBER 15, 2008. .............................................................. 3

II.   THE TRUSTEE, PURSUANT TO HIS STATUTORY AND FIDUCIARY
      DUTIES, SENDS GOLDMAN THE NOTICE LETTER AT ISSUE ON MARCH
      6, 2009. ....................................................................................... 3

III.  THE TRUSTEE FILES AN ACTION TO RECOVER AVOIDABLE
      TRANSFERS AGAINST THE CHAISES. ..................................... 5

IV.   THE TRUSTEE AND THE CHAISES ENTER INTO A CONSENT ORDER
      FREEZING ASSETS. ................................................................. 6

V.    THE CHAISES FILE A COUNTERCLAIM BASED SOLELY ON THE
      LETTER TO GOLDMAN. ........................................................... 7

ARGUMENT ...................................................................................... 8

I.    STANDARD OF REVIEW. ......................................................... 9

II.   THE TRUSTEE HAD THE AUTHORITY – INDEED, THE DUTY –  TO SEND
      THE LETTER, WHICH ALSO CORRECTLY STATED THE LAW. ......... 10

      A.    SIPA Grants The Trustee Duties and Powers Beyond Those Granted By
            The Bankruptcy Code ..................................................... 10

      B.    Goldman – Not The Trustee – Froze The Chaises' Account, And Goldman
            Was Permitted To Do So. .............................................. 12

      C.    The Letter's Legal Position Also Was Proper. ................ 14

III.  THE TRUSTEE IS IMMUNE, AND THE LETTER IS ALSO PRIVILEGED. ......... 19

      A.    A Trustee Is Immune When Acting Within His Duties. ......... 19

      B.    The Letter Is Relevant To The Bankruptcy Proceeding And Thus
            Privileged. ..................................................................... 22

IV.   THE CHAISES' TORTIOUS INTERFERENCE WITH CONTRACT CLAIM
      ALSO FAILS FOR ADDITIONAL REASONS. ............................... 24

      A.    There Was No Breach Of Contract. ................................ 24

      B.    The Trustee Had Legal And Economic Justification To Send The Letter. ......... 25

V.    THERE WAS NO TORTIOUS INTERFERENCE WITH A PROSPECTIVE
      BUSINESS RELATION. ............................................................. 27

VI.   THE TRUSTEE DID NOT CONVERT THE MONEY IN THE ACCOUNT. ......... 28

      A.    The Trustee Did Not Exercise Ownership Of The Account, And Even If
            He Did, His Conduct Was Authorized. ........................... 28

# TABLE OF CONTENTS
(continued)

**Page**

B.    The Chaises Did Not Plead That The Account Funds Were Specifically
Identifiable Property. .......................................................................................... 29

VII.    THE CHAISES' FIFTH AMENDMENT CLAIM FAILS.............................................. 30

CONCLUSION ....................................................................................................................... 32

# TABLE OF AUTHORITIES

Page

## Cases

*9310 Third Ave. Assoc. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207 (N.Y. App. Div. 1994)..... 29

*Amerol Corp. v. Am. Chemie-Pharma, Inc.*, CV 04-0940(JO), 2006 WL 721319 (E.D.N.Y. Mar. 17, 2006)................................................................................................................................. 28

*Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937 (2009) .................................................................. 9

*Auguston v. Spry*, 282 A.D.2d 489 N.Y.S.2d 103 (N.Y. App. Div. 2001) ................................... 29

*Begier v. IRS,* 496 U.S. 53 (1990)................................................................................................... 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 9

*Boullion v. McClanahan,* 639 F.2d 213 (5th Cir. 1981) .............................................................. 21

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182 N.E.2d 1100 (N.Y. 2004) ............................................. 27

*Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d 115 (2d. Cir. 2008)........................... 27

*Conklin v. Warrington Twp.*, No. 1:06-CV-2245, 2008 WL 2704629, n.11 (M.D. Pa. July 7, 2008)........................................................................................................................................ 31

*Double Alpha, Inc. v. Mako Partners, L.P.*, 99 CIV 11541(DC), 2000 WL 1036034 (S.D.N.Y. July 27, 2000) ............................................................................................................................ 30

*Enron Corp. v. Rexel S. Elec. Supply (In re Enron Corp.)*, Nos. 01-16034 (AJG), 03-93246, 2006 WL 2400096, (Bankr. S.D.N.Y. June 1, 2006) ........................................................................ 9

*Fed'n Internationale Du Sport Universitaire v. Greater Buffalo Athletic Corp.*, No. 93-CV-0356E(F), 1994 WL 411908 (W.D.N.Y. Aug. 4, 1994) ........................................................ 29

*Foster v. Churchill*, 87 N.Y.2d 744 (N.Y. 1996)......................................................................... 26

*Friedman v. Alexander,* 79 A.D.2d 627 N.Y.S.2d 627 (N.Y. App. Div. 1980) .......................... 23

*Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251 (1st Cir. 1986) .................... 31

*Hill v. Spencer (Matter of Bevill, Bresler & Schulman, Inc.)*, 94 B.R. 817 (D.N.J. 1989).......... 16

*Hill v. Spencer Savs. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.*), 83 B.R. 880 (D.N.J. 1988)........................................................................................................................................ 18

*Hill*, 94 B.R. at 825 ...................................................................................................................... 17

*In re Berry*, 231 B.R. at 684.......................................................................................................... 23

*In re Park South Secs., LLC*, 326 B.R. at 512................................................................... 16, 17, 18

*In re Park South Secs., LLC*, 326 B.R. at 513............................................................................... 17

*In re Park South*, 326 B.R. at 512................................................................................................. 17

*In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009) ............................................................. 20

*In re Smith*, 400 B.R. at 377-78 ................................................................................................... 21

*Indus. Equip. Credit Corp. v. Green*, 62 N.Y.2d 903 N.E.2d 525 (N.Y. 1984) .......................... 28

## TABLE OF AUTHORITIES
(continued)

Page

*Joel v. Weber,* 153 Misc. 2d 549 N.Y.S.2d 579 (N.Y. Sup. Ct. 1992) ........................................ 27

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006)........................................................ 24

*Kirch v. Liberty Media Corp.,* 449 F.3d 388 (2d Cir. 2006)........................................................ 27

*Kothe v. R.C. Taylor Trust,* 280 U.S. 224 (1930) ........................................................................ 8

*Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*, No. 95-08203, 1998 WL 551972,
   (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*, 208 F.3d 202 (2d Cir. 2000) .............................. 11, 20

*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (N.Y. 1996)........................................ 24

*Lassiter v. Dep't of Social Servs. of Durham County, N.C.*, 452 U.S. 18 (1981) ........................ 31

*Levovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272 (2d Cir. 1996)............................ 19

*Lonnecker Farms, Inc. v. Kobucher*, 804 F.2d 1096 (9th Cir. 1986) ......................................... 31

*Mosser v. Darrow,* 341 U.S. 267 (1951).................................................................................... 19

*Natural Res. Media & Tech. Group, LLC v. Snoop Youth Football League Found.*, No. 07 CIV
   7701(SAS), 2008 WL 728650 (S.D.N.Y. Mar. 14, 2008) ...................................................... 24

*New Dimensions Spa, Inc. v. Fitness Place Rockville Ctr., Inc.*, 187 A.D.2d 493 (N.Y. App. Div.
   1992)......................................................................................................................................... 27

*Picard v. Taylor (In re Park South Secs., LLC)*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005) ............. 14

Rosenman Family, LLC v. Picard (In re Bernard L. Madoff Inv. Secs. LLC) --- B.R. ---, No. 09
   Civ. 2576 (NRB), 2009 WL 4402891 (S.D.N.Y. Nov. 30, 2009)................................................ 8

*Rosenman Family, LLC v. Picard* (*In re Bernard L. Madoff Inv. Secs. LLC)*, 401 B.R. 629
   (Bankr. S.D.N.Y. 2009)............................................................................................................. 8

*Ruha v. Guior*, 277 A.D.2d 116 N.Y.S.2d 35 (N.Y. App. Div. 2000)........................................ 27

*Schwartz v. Bartle,* 49 Misc. 2d 848 N.Y.S.2d 715 (N.Y. Sup. Ct. 1966)................................... 23

*SEC v. Madoff,* S.D.N.Y. No. 08-CV-10791 ................................................................................ 3

*See In re Park South Secs., LLC*, 326 B.R. at 512 ...................................................................... 26

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ........................................ 9

*The High View Fund, L.P. v. Hall,* 27 F. Supp. 2d 420 (S.D.N.Y. 1998) ................................... 29

*Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400 (2d Cir. 2006)............................................. 28

*United States v. Madoff*, S.D.N.Y. No. 09-CR-213 ...................................................................... 3

*United Sys. Assoc. v. Norstar Bank Upstate N.Y.*, 171 A.D.2d 922 N.Y.S.2d 793 (N.Y. App. Div.
   1991)......................................................................................................................................... 29

*Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36 N.E.2d 1121
   (N.Y. 1995) ............................................................................................................................... 28

*Weissman v. Hassett*, 47 B.R. 462 (S.D.N.Y. 1985)................................................................... 19

# TABLE OF AUTHORITIES
(continued)

Page

*Weissman*, 47 B.R. at 468 n.5 ............................................................ 21

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281 (2d Cir. 2006) ................... 26

**Statutes**

11 U.S.C. § 362 ............................................................................. 3, 11

11 U.S.C. § 362(a) ......................................................................... 3, 15

11 U.S.C. § 362(d) ............................................................................ 12

11 U.S.C. § 362(k) ............................................................................ 18

11 U.S.C. § 544(a)-(b), 548(a) ......................................................... 16, 18

11 U.S.C. §§ 362(a)(3), (6), 362(k) ................................................. 11, 15

11 U.S.C. §§ 544, 547, 548, and 550 ....................................................... 8

11 U.S.C. §§ 549 and 550 .................................................................... 24

15 U.S.C. § 78aaa *et seq.* .................................................................... 1

15 U.S.C. § 78lll(4) ........................................................................... 5

15 U.S.C. §§ 362(a), 704(a) .......................................................... 25, 29

15 U.S.C. §§ 78j(b), 78f ...................................................................... 2

17 C.F.R. § 240.10b-5 ......................................................................... 2

78fff-2(c)(3) ................................................................. 15, 16, 17, 29

78fff-2(c)(3) of SIPA ......................................................................... 14

SIPA § 78fff(a) ............................................................................... 10

SIPA § 78fff(b) ................................................................................. 4

SIPA § 78fff-2(c)(1) ........................................................................... 4

SIPA § 78fff-2(c)(3) ................................................................ 8, 16, 17, 18

SIPA §§ 78fff(a)-(b) ................................................................... 25, 29

SIPA §§ 78fff-2(c)(3) ........................................................................ 26

**Rules**

Fed. R. Bankr. P. 2015(a)(4) ............................................................... 11

Plaintiff Irving H. Picard, trustee ("Trustee") for the substantively consolidated Securities

Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.*,[1] liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") and Bernard L. Madoff (collectively, "Debtors"),

respectfully submits this memorandum of law, as well as the declaration of Marc Hirschfield, in

support of the Trustee's motion, brought pursuant to Rule 12 of the Federal Rules of Procedure,

made applicable to this proceeding by Federal Bankruptcy Rule 7012,[2] to dismiss the

counterclaim (the "Counterclaim") filed by defendants Stanley Chais, Pamela Chais, Appleby

Productions Ltd., Appleby Productions Ltd. Defined Contribution Plan, Appleby Productions

Ltd. Money Purchase Plan, Appleby Productions Ltd. Profit Sharing Plan, and the 1991 Chais

Family Trust (collectively, the "Chais Defendants" or the "Chaises").

## PRELIMINARY STATEMENT

The Chaises' counterclaim is based solely on the Trustee's March 6, 2009 notice letter

(the "Letter) to Goldman Sachs ("Goldman").  Although the Chaises' vague pleading does not

specify what was allegedly improper about sending the Letter, it appears the Chaises take issue

with the statement that certain funds held by Goldman may constitute "customer property" under

SIPA for purposes of the automatic stay.  (Counterclaim ¶ 184.)  Consequently, the Chaises

allege that Goldman – not the Trustee – froze the Chaises' account and only permitted

disbursements that were approved by the Trustee.  (*Id.* ¶ 187.)

The Chaises' Counterclaim fails for several independent reasons.  First, because the

Trustee was authorized to send the Letter, Goldman was permitted to withhold funds under its

contract with the Chaises, and the statements in the Letter are correct as a matter of law, all of

---

[1] Subsequent references to SIPA will omit "15 U.S.C."

[2] This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b).

the Chaises' causes of action are barred.  Second, the Trustee is entitled to immunity, and the

Letter is privileged in any event.

Moreover, the Chaises' individual causes of action also fail for additional reasons.  The

Chaises' tortious interference claims fail because: (1) there was no breach of the underlying

Goldman contract; (2) the Trustee had economic and legal justification for sending the Letter;

and (3) the Chaises do not plausibly allege malice, fraud, or illegal actions by the Trustee.  The

Chaises' conversion claim fails because: (1) the Trustee did not exercise unauthorized ownership

over the funds, and (2) the Chais Defendants did not plead that the money was specifically

identifiable property.  Finally, the Chaises' vague "Fifth Amendment violation" claim fails

because: (1) the Trustee never froze any assets and the Chaises received ample due process; (2)

the Trustee is not a "state actor"; and (3) the Chaises have no right to counsel here and have

actually been represented by counsel since Madoff was exposed.

## BACKGROUND

This adversary proceeding arises from the massive Ponzi scheme perpetrated by Madoff

through his investment company, BLMIS.  (Cmplt. ¶ 1.)  As a broker-dealer registered with the

Securities and Exchange Commission ("SEC"), BLMIS was a member of the Securities Investor

Protection Corporation ("SIPC").  On December 11, 2008, Madoff was arrested in his Manhattan

home and charged with securities fraud in violation of 15 U.S.C. §§ 78j(b), 78f, and 17 C.F.R. §

240.10b-5 in the United States District Court for the Southern District of New York ("District

Court").  (Cmplt. ¶ 8.)  That same day, the SEC filed a complaint in the District Court against

Madoff and BLMIS, Case No. 08-CV-10791 ("SEC Action"), alleging that Madoff and BLMIS

engaged in fraud through BLMIS's investment activities.  (*Id*.)

2

I.       **Irving H. Picard, Esq., Is Appointed Trustee of BLMIS On December 15, 2008.**

On December 15, 2008, pursuant to SIPA, the SEC consented to a combination of the

SEC Action with an application of SIPC.  (Cmplt. ¶ 10.)  Pursuant to section 78eee(a), SIPC

filed an application in the District Court stating that BLMIS was unable to meet its obligations to

customers, who in turn needed the protection of SIPA.  (Cmplt. ¶ 10.)  That same day, the

District Court issued an order: (1) appointing the Trustee, (2) appointing Baker & Hostetler LLP

as counsel to the Trustee, (3) removing the case to this Court, and (4) stating that "all persons

and entities are notified that, subject to the other provisions of 11 U.S.C. § 362, the automatic

stay provisions of 11 U.S.C. § 362(a) operate as a stay . . . ."  (Cmplt. ¶ 11.)  *See also SEC v.*

*Madoff*, S.D.N.Y. No. 08-CV-10791, Docket Entry # 4, at 2.

On March 12, 2009, Madoff pled guilty to an 11-count criminal indictment.  (Cmplt. ¶

13.)  At the March 12, 2009 Plea Hearing, Madoff admitted that he "operated a Ponzi scheme

through the investment advisory side of [BLMIS]," and that "[a]s I engaged in my fraud, I knew

what I was doing [was] wrong, indeed criminal."  (*Id.* ¶ 13.)  On June 29, 2009, Madoff was

sentenced to imprisonment of 150 years for his crimes and was ordered to make restitution to his

victims.  *United States v. Madoff*, S.D.N.Y. No. 09-CR-213, Docket Entry # 100.

II.      **The Trustee, Pursuant To His Statutory And Fiduciary Duties, Sends Goldman The
         Notice Letter At Issue On March 6, 2009.**

Under SIPA, the Trustee has the job of recovering and distributing customer property to

BLMIS's customers, assessing claims, and liquidating any other assets of the firm for the benefit

of the estate and its creditors.  (Cmplt. ¶ 14.)  Pursuant to section 78fff-1(a), the Trustee has the

general powers of a bankruptcy trustee in addition to the powers granted by section 78fff(b),

"including the rights to avoid preferences."  SIPA section 78fff-2(c)(3) specifically states that

"the trustee may recover any property transferred by the debtor which, except for such transfer,

would have been customer property if and to the extent that such transfer is voidable or void under the provisions of title 11."[3]  Chapters 1, 3, 5 and Subchapters I and II of Chapter 7 of the Bankruptcy Code are also applicable to this case.  *See* SIPA § 78fff(b).

Consistent with his duties, the Trustee is in the process of marshalling and liquidating BLMIS's assets, a process which is well underway.  (Cmplt. ¶ 14.)  Because BLMIS's assets will not be sufficient to reimburse its customers for the billions of dollars that they invested over the years, the Trustee, as the court-appointed fiduciary in this matter, is attempting to collect customer property from customers who received preferences and/or fraudulent transfers, in accordance with, *inter alia*, section 78fff-2(c)(3).  (*Id.*) Absent this and other recovery actions, the Trustee will be unable to satisfy the claims described in subparagraphs (A) through (D) of section 78fff-2(c)(1).  (*Id.*)

The Trustee is required to comply with the provisions of SIPA and the Bankruptcy Code, which are premised on the concept of proportionate distribution of available assets to all customers, such that no customer receives more or less than any similarly situated customer.  *See generally* SIPA § 78fff-2(c)(1); *Begier v. IRS,* 496 U.S. 53, 58 (1990).  Consistent with these duties, the Trustee has sent demand letters seeking the voluntary return of many hundreds of millions of dollars, all of which is recoverable under the Trustee's avoidance powers.  To the extent that parties have refused to return customer property that is owed to the Trustee, he has commenced and will commence numerous avoidance actions, including the current case.

On March 6, 2009, the Trustee's counsel sent Goldman the Letter – the subject of the Chaises' Counterclaim – stating that "[Goldman] may have received funds, either directly or

---

[3] Thus, for purposes of avoidance actions, the transferred property is deemed to be property of the debtor under the fraudulent conveyance and preference sections of the Bankruptcy Code.  The customer who receives such fraudulent conveyance and preferences is "deemed to have been a creditor."  However, when the property at issue is recovered and brought back into the estate, it is "treated as customer property."  *See* section 78fff-2(c)(3).

indirectly, from BLMIS during the 90-day period prior to the Filing Date (the 'Funds')."  (Letter

at 1, Ex. A to Counterclaim.)  Further, the Letter stated that those "Funds and any other

payments from BLMIS that you may have received at any time prior to such 90-day period

represent 'customer property' as defined under 15 U.S.C. § 78lll(4)" (*Id.*)

In addition to providing legal authority for SIPA's broad definition of "customer

property," the Letter put Goldman on notice that the Trustee will presume that further

disbursements of Funds will be a willful violation of the Bankruptcy Court's automatic stay:

> This letter places you on notice (if  you were not already on notice) that because
> the Funds constitute "customer property" and, therefore, property of BLMIS
> pursuant to SIPA, the Trustee will presume that any further payment or
> disposition of the Funds by you (whether or not at the direction of your customer
> or depositor) will be deemed a willful violation of the automatic stay by the
> Bankruptcy Court.

*Id.* at 2.  The two-page letter did not mention the Chaises.  Around the same time, the Trustee

sent a similar letter to City National Bank, and prior to the November 2, 2009 consent order

signed by the Chaises and the Trustee, the Trustee is unaware of any freeze put in place by City

National Bank on the Chaises' accounts there.

### III.    The Trustee Files An Action To Recover Avoidable Transfers Against The Chaises.

On May 1, 2009, the Trustee filed this action to recover the preferential and fraudulent

transfers from BLMIS to the Chaises, and to recover those assets for the benefit of all BLMIS

customers.  (Cmplt. ¶ 1.)  Specifically, since December 1995, Stanley Chais and other defendants

have profited from this scheme through the withdrawal of more than one billion dollars.  (*Id.* ¶

2.)  Chais, an unregistered investment advisor, was a beneficiary of Madoff's Ponzi scheme for

at least 30 years. (*Id.* ¶¶ 2, 33.) Moreover, Chais exercised complete domination of the Chais Family Accounts[4] when dealing with BLMIS. (*Id.* ¶ 92.)

The Chaises knew or should have known Madoff's business was predicated on fraud, that they were benefiting from fraudulent transactions in their accounts, and that their purported activity was inconsistent with legitimate trading activity and credible returns. (*Id.* ¶ 98.) Indeed, Mr. Chais admits he has known Madoff for decades and invested in BLMIS since the 1970s, and that Mr. Chais "received fees equal to 25% of each Chais Fund's entire net profit for every calendar year in which profits exceeded 10%." (Answer ¶ 99.) Moreover, Mr. Chais' regular trading accounts for investment funds managed by Mr. Chais received unrealistically high and consistent returns between 20% and 24%, with only three months of purported negative returns over 144 months of purported "trading." (Cmplt. ¶ 3.) Mr. Chais' family and corporate accounts fared even better – sometimes in excess of 100% or 300% per year, with a combined average annual return of approximately 40%. (*Id.*) Mr. Chais does not deny that his telephone number appears as the first speed dial entry on a telephone list at BLMIS. (Answer ¶ 99.) Nor does Mr. Chais deny that approximately $804 million in transfers were made since December 11, 2002, including approximately $377 million within the last two years. (*Id.* ¶¶ 108-110.)

## IV.    The Trustee And The Chaises Enter Into A Consent Order Freezing Assets.

The Chais Defendants have complained that Goldman would not release funds from the Chaises' account unless the Trustee approved the release. In the six months following Goldman's freeze of the Chais account, the Trustee agreed, based on the representation of need by the Chais Defendants, to Goldman releasing over $450,000 for living, medical, and legal expenses. (Trustee App. for Temp. Restraining Order, Docket Entry # 21, at 9-10.)

---

[4] The Chais Family Accounts are defined in the Complaint in paragraph 92. All of the accounts associated with the Chaises' Counterclaim are "Chais Family Accounts."

On September 29, 2009, the Chaises moved the Court by an order to show cause seeking

a declaration that the money in the Goldman account not be restrained.  (Chais Memo. in Supp.

of Order to Show Cause, Docket Entry # 17, at 1.)  On October 1, 2009 the Trustee opposed the

Chaises' motion and filed an application for a temporary restraining order and preliminary

injunction prohibiting the Chaises from transferring or otherwise dissipating "any of the funds in

their banking and investment accounts located in the custody of Goldman Sachs, City National

Bank, or elsewhere . . . ." (Trustee App. for Temp. Restraining Order, Docket Entry # 21, at 9-

10.)

The Court granted the Trustee's application with the consent of the Chaises.  (*See* Oct. 7,

2009 Order, Docket Entry # 28.)  On November 2, 2009, the Chaises entered into a consent order

freezing various assets, including the Goldman account.  (Consent Order Freezing Assets,

Docket Entry # 33, at 2-3.)  The consent order also permitted the Chaises to withdraw money

from those accounts for legal, medical, and living expenses, in addition to other expenses such as

capital calls.  (*Id.* at 3-4.)

## V.    The Chaises File A Counterclaim Based Solely On The Letter To Goldman.

On November 12, 2009, the Chaises answered the complaint and filed a counterclaim

against the Trustee.  The Chaises' counterclaim concerns the March 6, 2009 Letter sent to

Goldman.  The Chaises contend the Letter improperly stated that certain funds held by Goldman

may constitute "customer property" under SIPA, and are property of the BLMIS estate for

purposes of the automatic stay.  (Counterclaim ¶ 184.)  Consequently, the Chaises allege that

Goldman – not the Trustee – froze the Chais 1991 Family Trust Goldman account, and only

permitted disbursements that were approved by the Trustee.  (*Id.* ¶¶ 181, 187, 192.)

The Chaises pled four causes of action, all of which are based on the Letter: (1) tortious

interference with a contract, (2) tortious interference with a business relationship, (3) conversion,

and (4) a claim styled "Fifth Amendment violation." (*Id.* at 24-27.) Although the last claim is

vague, the Chaises have described their constitutional claim as the Trustee depriving the Chaises

of access to counsel. (Chais Def. Memo. in Supp. of Order to Show Cause, Docket Entry # 17,

at 3.) And, in addition to damages, the Chaises request an order declaring "that the contents of

the Account are not customer property or property of the estate and enjoining the Trustee from

sending out similar letters in the future." (Counterclaim at 27.)

## ARGUMENT

The Chaises' counterclaim simply reflects their disagreement with the statutory scheme

governing the liquidation of BLMIS. It is the Trustee's obligation to bring actions on behalf of

the BLMIS estate to recover avoidable transfers. Madoff stole billions of dollars through the

largest Ponzi scheme in history, which victimized thousands of investors. As this Court has

recognized, the purpose of SIPA is "to protect investors against financial loss arising from the

insolvency of their brokers, and reestablish investor confidence in capital markets." *Rosenman*

*Family, LLC v. Picard* (*In re Bernard L. Madoff Inv. Secs. LLC)*, 401 B.R. 629, 633-34 (Bankr.

S.D.N.Y. 2009) (Lifland, J.) (citations omitted), *aff'd,* --- B.R. ---, No. 09 Civ. 2576 (NRB),

2009 WL 4402891 (S.D.N.Y. Nov. 30, 2009). The purpose of the Bankruptcy Code is similar.

*See Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 227 (1930) ("The broad purpose of the Bankruptcy

Act is to bring about an equitable distribution of the bankrupt's estate among creditors holding

just demands based upon adequate consideration."). All transfers from BLMIS for the benefit of

Chais were transfers of BLMIS property and are voidable and recoverable under SIPA and the

Bankruptcy Code. *See* SIPA § 78fff-2(c)(3); 11 U.S.C. §§ 544, 547, 548, and 550.

The Chaises' Counterclaim is inconsistent with the express provisions of SIPA. However

their causes of action are styled, the Chaises' vague counterclaim is just an incorrect allegation

that the Trustee misunderstood his duties under the law and this Court's orders.

8

I.        **Standard Of Review.**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"[5] *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Facially plausible," in turn, means the pleading

has sufficient "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* at 1949.  "Threadbare recitals of elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Pleading "facts

that are merely consistent with a defendant's liability . . . stops short of the line between

possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations

omitted).  Likewise, a complaint containing mere "labels and conclusions," "a formulaic

recitation of the elements of a cause of action," or "naked assertions devoid of further factual

enhancement" is insufficient. *Id.*  Moreover, "the court is not bound to accept as true a legal

conclusion couched as a factual allegation." *Enron Corp. v. Rexel S. Elec. Supply (In re Enron*

*Corp.)*, Nos. 01-16034 (AJG), 03-93246, 2006 WL 2400096, at *3 (Bankr. S.D.N.Y. June 1,

2006) (internal quotation omitted); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d

236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss" (internal citation omitted)).

---

[5] Federal Rule of Civil Procedure 12 is made applicable to this proceeding by the Federal Rules of Bankruptcy
Procedure.  Fed. R. Bankr. P. 7012.  Moreover, a motion to dismiss a counterclaim for failure to state a claim upon
which relief may be granted is governed by Federal Rule of Procedure 12(b)(6).  *See New York Mercantile Exch.,*
*Inc. v. Intercont'l Exch., Inc.*, 323 F. Supp. 2d 559, 560-61 (S.D.N.Y. 2004).

**II.    The Trustee Had The Authority – Indeed, The Duty –  To Send The Letter, Which Also Correctly Stated The Law.**

The Chaises' counterclaim essentially alleges that the Trustee misinterpreted his own statutory duties and powers in the Letter, and by disseminating the Letter, committed various torts.  (Counterclaim ¶¶ 179-208.)  The Chaises' Counterclaim should be dismissed because the Trustee's act of sending the Letter cannot serve as a basis for their claims.  The Trustee has the authority to preserve the estate and enforce the automatic stay.  Sending the Letter, in itself, is a fundamental role of any trustee, and thus cannot give rise to liability.  Moreover, Goldman – not the Trustee – froze the Chaises' account, which it was permitted to do pursuant to its contract with the Chaises.  In any event, the Letter is an accurate statement of the law: the funds in the Chaises' account constitute "customer property" and therefore are subject to the automatic stay.  So, regardless of any immunity or other independent reason, the counterclaim should be dismissed because the Trustee did not act improperly – a necessary element for all of the Chaises' claims.

**A.    SIPA Grants The Trustee Duties And Powers Beyond Those Granted By The Bankruptcy Code.**

Under SIPA, a trustee's mandate is, as promptly as possible after his appointment, and in accordance with the procedures established by the Act, to: (i) deliver customer name securities to or on behalf of customers, (ii) distribute customer property and otherwise satisfy customer net equity claims, (iii) sell the debtor's business, (iv) enforce the debtor's rights on behalf of the estate, and (iv) liquidate the debtor's business.  SIPA § 78fff(a).  In essence, a SIPA trustee's role is "marshaling the assets of a debtor's estate and distributing the proceeds in accordance with the scheme established under the statute," and SIPA gives the trustee "wide discretion" in determining how to comply with this mandate.  *Kusch v. Mishkin (In re Adler, Coleman Clearing*

10

*Corp.)*, No. 95-08203, 1998 WL 551972, at *11, *17 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*,

208 F.3d 202 (2d Cir. 2000).

Here, the order appointing the Trustee gave him the powers of a trustee under SIPA

pursuant to section 78eee(b)(3). (S.D.N.Y. No. 08-10791, December 15, 2009 Order, Docket

Entry # 12, at 2.)  The order also instituted an automatic stay pursuant to 11 U.S.C. § 362, and

states that all persons and entities are stayed from disbursing property "except for the purpose of

effecting possession and control of said property by the trustee."  (*Id.* at 2-3.)  The Trustee may

also "take immediate possession of the property of the Defendant, wherever located."  (*Id.* at 6.)

The Counterclaim alleges nothing more than the Trustee fulfilling his statutory duty, and

thus the Letter cannot serve as a basis for the Counterclaim.  The Letter essentially states that the

Trustee has the authority to consider disbursement of funds from the Chaises' account a willful

violation of the automatic stay.  (*See* Letter.)  The Letter was sent to enforce the automatic stay

and preserve the estate in accordance with, *inter alia*, the December 15, 2009 order.  The Chaises

do not allege that the Trustee lacked the authority to do this.  Nor do the Chaises allege that the

Trustee took any action to formally seize their property.  Instead, the Chaises allege that the legal

position taken by the Trustee with regard to his own authority is incorrect, and his sending the

Letter, in itself, gives rise to various torts stemming from its effect on Goldman's decisions with

regard to their account.  (Counterclaim ¶¶ 179-208.)  This argument, however, ignores the fact

that the Trustee has the statutory duty to enforce the automatic stay and preserve the property of

the estate, and to do so he must necessarily take legal positions and communicate them to parties

in possession of estate property.  11 U.S.C. §§ 362(a)(3), (6), 362(k); *see generally* Fed. R.

Bankr. P. 2015(a)(4) (trustee authorized to send notice of stay to any "entity known to be holding

money or property subject to withdrawal or order of the debtor, including every bank, savings or

building and loan association . . . ."). The Chaises are essentially just suing the Trustee for being a trustee.

The Chaises may argue that their claims rely upon the Trustee sending the Letter only insofar as that it contains an incorrect statement of the law. If so, their argument misses the point. If a party disagrees with the impact of the Trustee's legal position, that party may seek relief from the stay (*see* 11 U.S.C. § 362(d)), follow the claims process, defend against the Trustee's avoidance action, or, as the Chaises actually did, file a motion seeking relief from the court.[6] (*See* Docket Entry # 17.) The Chaises' end run around these permissible avenues, essentially arguing that the communication of a legal position by itself can serve as an independent basis for their counterclaim if the position happens to be incorrect, is improper. The Chaises cannot bring suit against the Trustee merely for communicating an authorized letter.

### B.    Goldman – Not The Trustee – Froze The Chaises' Account, And Goldman Was Permitted To Do So.

Even if the Letter were not authorized, the Chaises' counterclaim still hinges on the implausible contention that Goldman – a full-service global investment banking and securities firm with its own attorneys and advisors – decided to breach its contract with the Chaises based on an improper Letter.[7] The Letter details the statutory and legal support for its statements, and

---

[6] The Letter was sent on March 6, 2009, and the Chaises allege that Goldman had refused to disburse money to the Chaises' beginning in the spring of 2009. The Chaises did not seek relief from the Court, however, until September 29, 2009 – over six months later. Accordingly, any claim the Chaises may have had based on the Letter is barred by waiver and laches. *See In re Bradlee Stores, Inc.*, 209 B.R. 36, 39 (Bankr. S.D.N.Y. 1997) (Lifland, J.) (party waived right to seek appointment of examiner by delaying request for months); *see generally Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 132 (2d Cir. 2003) (laches applies when a party inexcusably sleeps on its rights, and such delay prejudices the defendant); *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 22 A.D.3d 204, 209, 802 N.Y.S.2d 17 (N.Y. App Div. 2005) (waiver "may be inferred from conduct or a failure to act that evince[s] an intent not to claim the purported advantage" (internal quotations omitted)).

[7] The counterclaim contains little factual content in support of its conclusory allegations and formulaic recitation of the elements of the causes of action – exactly the type of pleading that fails Federal Civil Rule 12(b)(6)'s plausibility analysis. *See Iqbal*, 556 U.S. ---, 129 S. Ct. at 1949. For example, the counterclaim does not explain why the Trustee was not authorized to send the Letter, nor is there any explanation whatsoever why Goldman would have felt threatened by such a Letter.

Goldman was capable of making its own determination whether to release funds from the

Chaises' account.  In fact, the only plausible inference was that Goldman believed it was

appropriate to withhold funds based on its contract with the Chaises and/or pending the approval

of the Trustee based on the authority provided in the Letter.  Goldman's decision does not,

however, give rise to a cause of action against the Trustee.

Indeed, the Chaises' contract with Goldman specifically provides Goldman with

authority to freeze funds at their complete discretion.  "In no event will [Goldman] or its

affiliates be obligated to effect any transaction they believe would violate any federal or state

law, rule or regulation or the rules or regulations of any regulatory or self-regulatory body."  (*See*

Customer Agreement ¶ 29, Ex. 1 to Hirschfield Decl., attached as Ex. A.)[8]  Goldman was not

even required to have a reasonable belief that releasing funds to the Chaises would potentially

violate the law.  Moreover, Goldman has a security interest in the property in the Chaises'

account, and is "authorized to take whatever action is necessary to perfect or maintain the

perfection of a security interest . . . ."  (*Id.* ¶ 22.)

Finally, the customer agreement provides that if Goldman, "in its discretion, deems it

advisable for its protection, [Goldman] may, at any time and without prior notice to you . . .

cancel, terminate, accelerate, liquidate and/or close out any or all agreements or transactions

between you and [Goldman] or otherwise relating to the Account . . . [or] take any other action

---

[8] The contract is integral to the Chaises' tortious interference with contract and other claims, and the Chaises repeatedly reference both the account and the contract governing the account throughout their pleading.  (*See, e.g.,* Counterclaim ¶¶ 179-182, 184-186, 187, 190-194, 197-200).  Thus, the Court may properly consider the contract even though the Chaises did not attach it.  *Castorino v. Citibank*, 2008 U.S. Dist. LEXIS 98559, at *9-10 n.3 (S.D.N.Y. Dec. 5, 2008); *Am. Rock Salt Co. v. Norfolk S. Corp.*, 180 F. Supp. 2d 420, 423-24 (W.D.N.Y. 2001); *see also New York Mercantile Exch.*, 323 F. Supp. 2d at 561.  Moreover, considering the contract will not convert the Trustee's motion into a motion for summary judgment.  A party "should not be allowed to escape the consequences of its own failure" to attach a document.  *Lim v. Harvest Int'l Realty Inc.*, No. 08-cv-3505 (ORH) (WDW), 2009 U.S. Dist. LEXIS 109389, at *7 (E.D.N.Y. Nov. 23, 2009) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *Gilbert v. LaSalle Bank Corp.*, No. 06 Civ. 4799(LAK) (JCF), 2007 U.S. Dist. LEXIS 31955, *8 (S.D.N.Y. May 2, 2007).

as [Goldman], in its discretion, deems appropriate with respect to any for the foregoing, and apply the proceeds to the discharge of the obligation." (*Id.*) This broad language would permit Goldman, for example, to withhold funds from the Chaises if Goldman believed a freeze was necessary to ensure that future capital calls on the account's investments would be met. Thus, even if Goldman were somehow mistaken, tricked, or intimidated by the contents of the Letter, Goldman still would have been permitted under its contract with the Chaises to withhold funds. Accordingly, the Chaises' claims should be dismissed.[9]

### C.    The Letter's Legal Position Also Was Proper.

As explained above, the Trustee was authorized to send the Letter, and in any event, Goldman – not the Trustee – froze the Chaises' account. The Chaises' Counterclaim, however, should also be dismissed for an additional reason: the Letter's statements were correct and consistent with the Trustee's duty. Indeed, the Letter even asserts ample authority in support of its statements. The Letter makes five substantive points:

1.    "[Goldman Sachs] received funds, either directly or indirectly, from BLMIS during the 90-day period prior to the Filing Date (the "Funds"). The Funds and any other payments from BLMIS that you may have received at any time prior to such 90-day period represent "customer property" as defined under [the Act]." (Letter at 1.)

2.    "Courts have held that 'SIPA . . . specifically defines the Debtor's 'interest in property' to include property that was previously transferred from a customer account.'" (*Id.* (quoting *Picard v. Taylor (In re Park South Secs., LLC)*, 326 B.R. 505, 512 (Bankr. S.D.N.Y. 2005)).)

3.    "The Funds and any other payments from BLMIS received by you, whether directly or indirectly, prior to receipt of the Funds are 'customer property' and are deemed property of BLMIS by virtue of Section 78fff-2(c)(3) of SIPA." (Letter at 2.)

---

[9] Moreover, the Chaises' counterclaim is essentially moot. On November 2, 2009, the Chaises entered into a consent order freezing various assets including the Goldman account. (Consent Order Freezing Assets, Docket Entry # 33, at 2-3.) While the consent order does not "prevent either party from seeking additional or different relief from the Court," the order also permits the Chaises to withdraw money from those accounts for legal, medical, and living expenses, in addition to other expenses such as capital calls. (*Id.* at 3-4, 7.)

4.   "Pursuant to 11 U.S.C. § 362(a), the automatic stay extends, inter
     alia, to any act to exercise control over property of the estate or to
     collect or recover a claim against BLMIS." (*Id.*)

5.   "This letter places you on notice (if you were not already on notice)
     that because the Funds constitute 'customer property' and, therefore,
     property of BLMIS pursuant to SIPA, the Trustee will presume that any
     further payment or disposition of the Funds by you (whether or not at the
     direction of your customer or depositor) will be deemed a willful
     violation of the automatic stay by the Bankruptcy Court. . . . Your
     failure to abide by this instruction may subject you and/or the transferee to
     liability under [the Bankruptcy Code]. In addition, any such transfer or
     disposition may be deemed by the Bankruptcy Court to have been made
     in bad faith and your liability may include sanctions." (*Id.*)

As stated below (as well as in the text of the Letter), each of these statements is supported by

legal authority.

Although the Chaises do not specify which statements they believe are improper, it

appears the Chaises' counterclaim can be boiled down to a single contention – "the Trustee does

not have the power to control Mr. and Mrs. Chais' assets [which] are not a part of the Madoff

estate." (Counterclaim ¶ 192.) SIPA section 78fff-2(c)(3), however, plainly states that the

Trustee may consider the proceeds from the Goldman account as potential property of the estate.

Any act to exercise control over customer property is subject to the automatic stay, which

is enforced by the Trustee. Section 362(a) of the Bankruptcy Code, which is expressly

incorporated by SIPA (section 78fff(b)), states that "any act to . . . exercise control over property

of the estate" violates the automatic stay, and that willful violations may be subject to sanction.

11 U.S.C. §§ 362(a)(3), (6), 362(k). Similarly, the December 15, 2009 order also stays "any

assets or property owned, controlled or in the possession of the Defendant . . . except for the

purpose of effecting possession and control of said property by the trustee." (*Id.* at 2.) SIPA

section 78fff-2(c)(3), in turn, allows a trustee to treat customer property as property of the estate,

and section 78lll(4) defines customer property as the proceeds from a customer account.  Thus,

any willful attempt to exercise control over the proceeds from a customer account violates the

stay and may be subject to sanction.

With regard to fraudulent transfers, a SIPA trustee has powers including and beyond

those granted to a trustee under the Bankruptcy Code.  Section 78fff-1(a) provides that a "[SIPA]

trustee shall be vested with the same powers and title with respect to the debtor and property of

the debtor, including the same right to avoid preferences, as a trustee in a case under Title 11."

Sections 544 and 548(a) of the Bankruptcy Code give a trustee standing to avoid fraudulent

transfers "of property of the debtor," or "of an interest of the debtor in property." 11 U.S.C. §

544(a)-(b), 548(a).  SIPA, however, goes beyond the Bankruptcy Code, and specifically defines

the debtor's "'interests in property' to include property that was previously transferred from a

customer's account."  *In re Park South Secs., LLC*, 326 B.R. at 512 (citing SIPA section 78fff-

2(c)(3)).  Specifically, section 78fff-2(c)(3) states:

> Whenever customer property is not sufficient to pay in full the claims . . . , the
> trustee may recover any property transferred by the debtor which, except for such
> transfer, would have been customer property if and to the extent that such transfer
> is voidable or void under the provisions of Title 11. Such recovered property shall
> be treated as customer property. For purposes of such recovery, the property so
> transferred *shall be deemed to have been the property of the debtor* and, if such
> transfer was made to a customer or for his benefit, such customer shall be deemed
> to have been a creditor, the laws of any State to the contrary notwithstanding.

Section 78fff-2(c)(3) (emphasis added).

Although the Bankruptcy Code may require a trustee to prove that the property in

question is part of the debtor's estate, the last sentence of § 78fff-2(c)(3) relieves a SIPA trustee

from this burden.  *See Hill v. Spencer (Matter of Bevill, Bresler & Schulman, Inc.)*,  94 B.R. 817,

825-26 (D.N.J. 1989).  This section authorizes a trustee to avoid a transfer of customer property

even "if such transfer was made to a customer or for his benefit." SIPA § 78fff-2(c)(3).  SIPA

defines "customer property," in turn, as including "cash and securities . . . at any time received, acquired, or held . . . for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."   Section 78lll(4).

Stated differently, section 78fff-2(c)(3) "creates a legal fiction by deeming customer property to be property of the debtor, relieving the trustee from having to prove that the property belonged to the debtor's estate." *In re Park South Secs., LLC*, 326 B.R. at 512-13 (summarizing holding of *Hill*); *see also Hill*, 94 B.R. at 825-26 (section 78fff-2(c)(3) "creates a legal fiction which treats securities as if they were owned by the debtor prior to transfer; and, if the transfer was for the benefit of the customer, treats the customer as if it were a creditor").   Accordingly, to subject property to the fraudulent conveyance provisions of SIPA once customer property is insufficient to pay claims in full, "the trustee need only prove that the property in question was 'customer property' as defined by SIPA."  *Hill*, 94 B.R. at 826 ("This fiction relieves the Trustee from having to prove (as he would have to if proceeding solely under section 549) that the securities in question are property of the estate"); *In re Park South Secs., LLC*, 326 B.R. at 512-13.  It follows then, by operation of section 78fff-2(c)(3), that transfers to the Chaises were transfers of property of the debtor, BLMIS, and that such transfers are voidable by the Trustee under sections 544, 547, 548, and 550 of the Bankruptcy Code and/or are subject to turnover under section 542 of the Bankruptcy Code.  *See* SIPA § 78fff-2(c)(3); *In re Park South*, 326 B.R. at 512-513; *Hill*, 94 B.R. at 824-27 (section 78fff-2(c)(3) allows the trustee to avoid certain transfers so the trustee can include that property in the debtor's estate for return to customers).

Any argument to the contrary overlooks the fact that BLMIS is in liquidation under SIPA and thus different from ordinary bankruptcies.  *See In re Park South Secs., LLC*, 326 B.R. at 513; *Hill v. Spencer Savs. & Loan Ass'n* (*In re Bevill, Bresler & Schulman, Inc.*), 83 B.R. 880, 886

(D.N.J. 1988) (proceeding under SIPA is "uniformly recognized" as "bankruptcy liquidation remodeled to achieve the special purposes of SIPA").  For example, as described above, SIPA defines property of a debtor's estate differently from the Bankruptcy Code.  *See* SIPA § 78fff-2(c)(3).  It is SIPA's definition – and not the definition used in ordinary bankruptcy proceedings – that is applicable in this case.[10]

Consistent with black-letter law, the Letter does nothing more than inform Goldman that the Trustee will consider disbursement of such property a violation of the stay.  Under SIPA and the Bankruptcy Code, the Trustee has the court-appointed duty to avoid fraudulent transfers "of an interest of the debtor in property," which includes property that was previously transferred from a customer's account, and also to seek sanctions where a party willfully violates the automatic stay.  11 U.S.C. § 544(a)-(b), 548(a); SIPA § 78fff-2(c)(3); 11 U.S.C. § 362(k); *In re Park South Secs., LLC*, 326 B.R. at 512.  In this case, customer property was transferred to the Chaises.  (*See generally* Complaint ¶¶ 1-174.)  Because customer property is insufficient to pay claims in full (thereby triggering section 87fff-2(c)(3)), the Trustee had the power – indeed, the obligation – to inform Goldman of the stay.  Goldman, in turn, did nothing to dispute the Letter. In sum, the Letter and the Trustee's actions in sending it to Goldman are a lawful fulfillment of his statutory powers and duties to the estate, the Trustee acted properly as a matter of law, and thus, the counterclaim should be dismissed.

---

[10]  However, even in ordinary bankruptcy proceedings, "[f]unds obtained from investors in a 'Ponzi' scheme are property [of the debtor], and are as susceptible of preferential and fraudulent disposition as other property."  *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 41 B.R. 985, 999 (Bankr. D. Utah 1984), *rev'd on other grounds*, *Merrill v. Dietz (In re Indep. Clearing House Co.)*, 62 B.R. 118 (D. Utah 1986).

## III.    The Trustee Is Immune, And The Letter Is Also Privileged.

Even if the Trustee's letter misstated the law, the Chaises' counterclaim should be dismissed because the Trustee is immune, and the Chaises have not alleged any facts to overcome this immunity.[11]  Furthermore, the Letter is a judicially-privileged communication.

### A.    A Trustee Is Immune When Acting Within His Duties.

Because the Trustee was acting in accordance with his statutory and court-appointed duties and discretion when he sent the Letter, he is entitled to immunity for his actions.  Trustees, as quasi-judicial officials, derive qualified immunity with respect to the exercise of business judgment under lawful authority.  *Weissman v. Hassett*, 47 B.R. 462, 466 (S.D.N.Y. 1985); *see also Levovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272, 276 (2d Cir. 1996) (bankruptcy trustee is officer of court appointing him, and "the court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties"); *see generally Mosser v. Darrow*, 341 U.S. 267, 274 (1951) ("Courts are quite likely to protect trustees against heavy liabilities for disinterested mistakes in business judgment.").  A trustee is immune for discretionary matters when acting "at the court's behest or under its supervision and subject to its orders."  *Weissman*, 47 B.R. at 466-67.

"The law in this circuit is clear.  A bankruptcy trustee is immune from suit for personal liability for actions taken as a matter of business judgment in acting in accordance with statutory

---

[11] The Chaises did not specify in what capacity they are suing the Trustee.  If the Chaises are suing the Trustee in his individual capacity – meaning they seek recovery from the trustee personally for acts done beyond the scope of his representative authority – then their Counterclaim should be dismissed.  It is fundamental that when a trustee brings an action in his representative capacity, a counterclaim cannot be asserted against him in his individual capacity. *Eisenberg v. Casale (In re Casale)*, 62 B.R. 899, 900 (Bankr. E.D.N.Y. 1986); *Rogers, v. Virgin Land, Inc.*, No. 1996-13M, 1996 WL 493174, at *2 (D.Virgin Islands 1996) (tortious interference counterclaim in adversary proceeding based on trustee exceeding his authority was against trustee personally, and thus improper); *Pettigrew v. Graham (In re Graham)*, 16 B.R. 606, 611 (Bankr. N.D. Ga. 1981).    Federal Rule of Civil Procedure 13, made applicable to adversary proceedings by Bankruptcy Rule 7013, requires that a counterclaim be asserted against an "opposing party."    A trustee, in his personal capacity, is not an "opposing party" in an action initiated by the trustee in his representative capacity.  *Eisenberg*, 62 B.R. at 900; *Rogers*, 1996 WL 493174, at *2; *In re Graham*, 16 B.R. at 611.  As such, any claims against the Trustee personally must be dismissed.

or other duty or pursuant to court order." *In re Smith*, 400 B.R. 370, 377-78 (Bankr. E.D.N.Y.

2009) (internal quotations omitted) (involving a Chapter 7 trustee).  Courts employ the same

standard to SIPA trustees.  Because SIPA vests trustees with the powers of a trustee under the

Bankruptcy Code, courts employ an identical analysis when deciding whether to grant immunity

to trustees under SIPA.  *Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*, No. 95-08203,

1998 WL 551972, at *11, *17 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*, 208 F.3d 202 (2d Cir.

2000).  Indeed, this Court has held that a SIPA Trustee is "immune from suit for personal

liability for acts taken as a matter of business judgment when acting in accordance with statutory

or other duty or pursuant to court order." *Id.* at *11.  Like a Chapter 7 bankruptcy trustee, a SIPA

trustee "is not liable in any manner for mistakes in judgment where discretion is allowed."  *Id.* at

*17 (internal quotation omitted)).  Here, the Chaises have not pleaded any facts stating that the

Trustee has done anything other than act: (1) in accordance with the best interests of the estate,

and (2) within the discretion afforded to him under SIPA.

　　　For example, in *Adler*, the trustee was appointed under SIPA to liquidate a licensed

broker with several thousand customer accounts.  *Id.* at *1.  A customer of the broker brought

several claims against the trustee based upon his refusal to release securities from her account,

which resulted in significant economic loss.  *Id.* at *2-4.  The customer alleged the Trustee acted

fraudulently, in bad faith, and intentionally interfered with her contractual rights.  *Id.* at *5.  The

trustee admitted to refusing to release the securities, but claimed immunity, stating that SIPA

confers upon the trustee the discretion to determine whether or when to transfer all or any part of

a customer's account, and that "he was merely exercising his discretion in a manner and on a

subject that SIPA explicitly contemplates." *Id.* at *10.

This Court dismissed the investor's claims and held that the trustee was immune. *Id.* at

*11. The Court explained that a trustee may be liable for a "knowing, intentional and/or

negligent breach of his fiduciary duties," but there can be no breach of duty to a customer where

a trustee acts in accordance with the statutory scheme. *Id.* at *11,*17. The Act specifically

contemplates the powers of the trustee and grants him "wide discretion" in carrying out these

powers. *Id.* at *17. Moreover, a SIPA trustee's primary duty, like that of a Chapter 7 trustee, "is

not to any individual creditor or even any particular class of creditors, but to the estate as a

whole," and accordingly, "the trustee's duty to the SIPA estate as a whole clearly prevails over

the interests of any single customer." *Id.* at *17.

Thus, a trustee has absolute immunity when he exercises his discretion in the interest of

the estate and in a manner and on a subject that SIPA expressly contemplates. *Id.* For example,

a plaintiff's allegations that a trustee maliciously failed to carefully investigate a report giving

rise to the plaintiff's intentional infliction of emotion distress and tortious interference with

business relations did not abrogate the trustee's immunity. *Weissman*, 47 B.R. at 468 n.5; *see

also Boullion v. McClanahan,* 639 F.2d 213, 214 (5th Cir. 1981) (trustee immune from suit for,

*inter alia,* "(1) recommending an inexperienced appraiser; (2) allowing the filing of an incorrect

appraisal; (3) improperly handling sales of the estate property. . . ."). "To distinguish the

improperly conducted investigation from the otherwise proper exercise of quasi-judicial

authority would emasculate the immunity defense by applying it only to conduct for which it is

not needed." *Weissman*, 47 B.R. at 468 n.5 (internal quotations omitted).

In this circuit, a "bankruptcy trustee is immune from suit for personal liability for acts

taken as a matter of business judgment in acting in accordance with statutory or other duty or

pursuant to court order." *In re Smith*, 400 B.R. at 377-78 (internal quotations omitted). Here,

there is no plausible allegation that the Trustee's actions were not a business judgment taken in

furtherance of a court order or statutory duty.  Rather, the counterclaim simply attacks the

veracity of the Letter's content.  The two core allegations of the counterclaim allege: (1) "the

Trustee does not have the power to control Mr. and Mrs. Chais' assets and such assets are not a part

of the Madoff estate," and (2) the Letter to Goldman contained "false representations of the law

and serious but unsubstantiated threats to persuade Goldman to freeze the Account."

(Counterclaim ¶¶ 186, 192.)  As stated above, the Trustee's actions in sending the Letter to

Goldman are a lawful exercise of his powers under SIPA and pursuant to court order.  Thus, the

Trustee is immune from the Counterclaim.

**B.**     **The Letter Is Relevant To The Bankruptcy Proceeding And Thus Privileged.**

The Counterclaim should also be dismissed because the Letter – which is the entire basis

of the Chaises' claims – is privileged.  Statements pertinent or reasonably connected to a judicial

proceeding are absolutely privileged.[12]  *Weissman*, 47 B.R. at 468 (internal citations omitted).

The privilege is broad, protecting "statements regardless of the speaker's state of mind,

knowledge of falsity, or the injury the statements cause." *Weissman*, 47 B.R. at 468.  The

privilege "embraces anything that may possibly be pertinent or which has enough appearance of

connection with [a judicial proceeding] so that a reasonable man might think it relevant.  All

doubt should be resolved in favor of its relevancy or pertinency . . . ." *Id.*  (internal quotations

omitted).

---

[12] Although often barring defamation claims, "the privilege is now held to apply to almost all torts, including . . .
interference with prospective economic advantage." *Doctors' Co. Ins. Servs. v. Superior Court*, 225 Cal. App. 3d
1284, 1294 (Cal. App. 1990); *see also Weissman*, 47 B.R. 462 (applying privilege and dismissing tortious
interference and intentional infliction of emotional distress claims).

Regardless of the exact contours of the privilege, it applies to a letter from a trustee to a financial institution in possession of customer property.[13] "Actions to augment the assets of a bankrupt estate are considered part of a judicial proceeding," and thus communications relevant to these actions are privileged. *Id.* at 469. For example, in *Weissman*, the privileged trustee report at issue concerned possible improprieties of business dealings with the bankrupt estate by the family members of the debtor's president. *Id.* at 465, 469. Other examples of privileged letters relating to bankruptcy proceedings include: (1) a letter from a bankrupt company's court-appointed operating officer to various creditors that purported to recount another creditor's alleged improprieties, *Friedman v. Alexander,* 79 A.D.2d 627, 628, 433 N.Y.S.2d 627 (N.Y. App. Div. 1980), and (2) letters written by members of an informal creditors' committee charging an individual with dealing fraudulently with the bankrupt company, *Schwartz v. Bartle,* 49 Misc. 2d 848, 850-51, 268 N.Y.S.2d 715 (N.Y. Sup. Ct. 1966).

Here, the Letter was entirely devoted to the Trustee's obligations and duties, including supporting statutory and legal authority. The Letter was sent pursuant to a lawful court order, it sought to preserve the assets of BLMIS, and it concerned the possible improprieties of disbursing property that is lawfully presumed to be customer property. It was highly relevant "to the affairs of the Debtor, this bankruptcy case, [and] the administration of this case," and thus privileged. *See In re Berry*, 231 B.R. at 684. Accordingly, because the Chaises' Counterclaim is based upon the privileged Letter, the Counterclaim should be dismissed.

---

[13] The privilege does not apply to a trustee's communication only if it is not "pertinent, or even remotely related" to the trustee's statutory or court-mandated obligations or discretion. *See In re Berry Pub. Servs., Inc.*, 231 B.R. 676, 683-84 (Bankr. N.D. Ill. 1999) ("Here, the offending statement concerning Real Media's right to the publication was not made in an official report required by statute and does not appear to have any pertinence at all to the affairs of the Debtor, this bankruptcy case, or the administration of this case.").

IV.    **The Chaises' Tortious Interference With Contract Claim Also Fails For Additional Reasons.**

In addition to the above reasons, the Chaises have not plausibly pleaded that the Trustee tortiously interfered with the Chaises' contract with Goldman.  As the Chaises have conceded (*see* Chais Def. Memo. in Supp. of Order to Show Cause, Docket Entry # 17, at 16), under New York law, the elements of tortious interference with contract are: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom.  *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).

A.    **There Was No Breach Of Contract.**

As a preliminary matter, the Chaises' claim fails because they did not specify the contractual term that was breached.  *Natural Res. Media & Tech. Group, LLC v. Snoop Youth Football League Found.*, No. 07 CIV 7701(SAS), 2008 WL 728650, at *2 (S.D.N.Y. Mar. 14, 2008) ("the plaintiff must identify a specific contractual term that was breached" when pleading a tortious interference claim (internal quotation omitted)).  This is because there was no breach. The contract provides Goldman with authority not to conduct any transaction if it believes such a transaction would violate the law.  (*See* Customer Agreement ¶ 29, Ex. 1 to Hirschfield Decl., attached as Ex. A.)  The Letter informed Goldman, as the Trustee is required to do, of the automatic stay, and that further transfers could result in liability under 11 U.S.C. §§ 549 and 550. (Letter at 2.)

Goldman was permitted by contract to effectuate a freeze and seek the Trustee's approval for disbursements from the Chaises' account, whether or not Goldman's reasons were correct.

"In no event will [Goldman] or its affiliates be obligated to effect any transaction they believe would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory body."  (Customer Agreement ¶ 29.) Moreover, Goldman has a security interest in the property in the Chaises' account, and is "authorized to take whatever action is necessary to perfect or maintain the perfection of a security interest . . . ."  (*Id.* ¶ 22.) Finally, the customer agreement provided that if Goldman, "in its discretion, deems it advisable for its protection, [Goldman] may, at any time and without prior notice to you . . . cancel, terminate, accelerate, liquidate and/or close out any or all agreements or transactions between you and [Goldman] or otherwise relating to the Account . . . [or] take any other action as [Goldman], in its discretion, deems appropriate with respect to any for the foregoing, and apply the proceeds to the discharge of the obligation."  (*Id.*)  This broad language would permit Goldman to withhold funds from the Chaises if Goldman believed a freeze was necessary to ensure that future capital calls on the account's investments would be met.

As discussed above, the Letter was sent pursuant to the Trustee's authority, and the Letter's statements of law are correct.  But even if the Letter was improper, Goldman did not breach its contract because it was permitted to withhold funds.  Indeed, under the contract, Goldman's belief was not even required to be reasonable.  Accordingly, the Chaises' Counterclaim fails because there was no underlying breach of contract.

### B.     The Trustee Had Legal And Economic Justification To Send The Letter.

Even assuming the Letter sent by the Trustee caused Goldman to breach its contract with the Chaises, the Chaises' claim still fails because the Trustee had ample legal and economic justification for sending the Letter.  As discussed above, the Trustee is required to recover and distribute property of the estate, and enforce the automatic stay.  *See generally* SIPA §§ 78fff(a)-(b); 15 U.S.C. §§ 362(a), 704(a).  And, as described above, a debtor's interest in customer

25

property includes property previously transferred from a customer's account if customer property is insufficient to pay claims in full.  *See In re Park South Secs., LLC*, 326 B.R. at 512-13; SIPA §§ 78fff-2(c)(3).

The Letter was sent pursuant to the Trustee's economic interest in protecting the estate. *See Foster v. Churchill*, 87 N.Y.2d 744, 750-51 (N.Y. 1996) (actions taken to protect an economic interest are justified and cannot give rise to tortious interference with contract claim). The Trustee, as the court-appointed fiduciary, is attempting to collect customer property for distribution to customers defrauded by Madoff.  Moreover, "the trustee's duty to the SIPA estate as a whole clearly prevails over the interests of any single customer." *Kusch*, 1998 WL 551972, at *17.  Accordingly, the Trustee's "concrete, pre-existing economic interest" is sufficient justification.  *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 286 (2d Cir. 2006).  Indeed, this Court has held that a SIPC trustee's attempt to maximize the value of the estate was sufficient economic justification to dismiss a tortious interference with contract action.  *See Kusch*, 1998 WL 551972, at *19.

Because the Trustee had economic and legal interests in sending the Letter, New York law requires that the Chaises show the Trustee acted with fraud, malice, or illegality.  *See Foster*, 87 N.Y.2d at 750-51; *White Plains Coat & Apron Co.*, 460 F.3d at 286.  The Chaises have failed to plead plausibly any such actions by the Trustee.  The Chaises did not plead that the Trustee acted fraudulently,[14] nor did the Chaises plead that the Trustee acted illegally or otherwise lacked authority to send the Letter.  Furthermore, the Chaises did not plead actual malice by the Trustee – indeed, the Letter did not even mention the Chaises.  Of course, bare allegations of malice

---

[14] The Chaises did not allege a fraud claim, and in any event, their counterclaim cannot be construed to have pleaded such a claim with specificity.  Rule 9(b) of the Federal Rules of Civil Procedure requires that a party state with particularity the statements he contends were fraudulent, and why he contends those statements were fraudulent.

would still be insufficient.  *See, e.g., Ruha v. Guior*, 277 A.D.2d 116, 116, 717 N.Y.S.2d 35

(N.Y. App. Div. 2000); *New Dimensions Spa, Inc. v. Fitness Place Rockville Ctr., Inc.*, 187

A.D.2d 493, 494 (N.Y. App. Div. 1992); *Joel v. Weber,* 153 Misc. 2d 549, 551, 581 N.Y.S.2d

579, 581 (N.Y. Sup. Ct. 1992).  Accordingly, the Chaises' tortious interference with contract

claim should be dismissed.

**V.      There Was No Tortious Interference With A Prospective Business Relation.**

Likewise, the Chaises' tortious interference with a business relationship claim is without

merit.  Under New York law, the elements of tortious interference with a business relationship,

also referred to as tortious interference with prospective contractual relations, are: (1) the

plaintiff had business relations with a third party; (2) the defendant interfered with those business

relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper

means; and (4) the defendant's acts injured the relationship.  *Catskill Dev., LLC v. Park Place

Entm't Corp.*, 547 F.3d 115, 132 (2d. Cir. 2008).  More culpable conduct by the defendant is

required than for a tortious interference with contract claim.  *Id.*  Specifically, a plaintiff must

allege criminal or independently tortious conduct, or that the defendant acted solely out of

malice.  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192, 818 N.E.2d 1100 (N.Y. 2004); *Kirch v.

Liberty Media Corp.,* 449 F.3d 388, 400 (2d Cir. 2006).  Here, the Chaises did not allege any

such conduct, and in any event, the Trustee's conduct does not even support the lower standard

of wrongful conduct for a tortious interference with contract claim.  Thus, their tortious

interference with business relations claim fails.

Moreover, the Chaises do not point to any prospective business relations with which the

Trustee interfered.  "To be actionable, the conduct at issue must have caused the third party not

---

*Mercer Capital, Ltd. v. U.S. Dry Cleaning Corp.*, No. 08 Civ. 05763 (LTS) (JCF), 2009 WL 2163598, at *3
(S.D.N.Y. July 21, 2009).

to enter into a contractual relationship with the plaintiff." *Amerol Corp. v. Am. Chemie-Pharma, Inc.*, CV 04-0940(JO),  2006 WL 721319, at *13 (E.D.N.Y. Mar. 17, 2006).  It appears the Chaises' claim, however styled, is simply duplicative of their insufficiently pleaded tortious interference with contract claim, and accordingly should be dismissed.

## VI.    The Trustee Did Not Convert The Money In The Account.

Under New York law, conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v. Housing Auth. of City of El Paso, Tex.*, 87 N.Y.2d 36, 44, 660 N.E.2d 1121 (N.Y. 1995).  The Chaises' conversion claim fails because: (1) there was no unauthorized ownership of the account by the Trustee, and (2) the Chais Defendants did not plead that the money was specifically identifiable property.

### A.    The Trustee Did Not Exercise Ownership Of The Account, And Even If He Did, His Conduct Was Authorized.

A conversion claim "requires that *the defendant* exclude the owner from exercising her rights over the goods."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 404 (2d Cir. 2006) (emphasis added).  Here, there is no dispute that Goldman – not the Trustee – withheld the money.  (*See, e.g.,* Counterclaim ¶¶ 187, 192.)  Goldman elected – as it was entitled to do under the Customer Agreement – to withhold money from the Chaises and only release money if the Trustee approved.  The Trustee was not exercising any ownership interest in the money.  Indeed, the act of sending a notice does not interfere with a party's use or possession of property.  *Indus. Equip. Credit Corp. v. Green*, 62 N.Y.2d 903, 906, 467 N.E.2d 525 (N.Y. 1984).  Moreover, even Goldman was merely freezing the money, not taking ownership of it, and the Counterclaim does not allege that the Chaises had ownership, possession, or control of the money before the alleged conversion in any event.

28

And, even if the Trustee exercised an ownership interest in the money by sending the Letter, the Trustee was authorized to do so. As described above, the Trustee is required to recover and distribute property of the estate, including enforcing the automatic stay, and a debtor's interest in customer property includes property previously transferred from a customer's account if customer property is insufficient to pay claims in full. *See generally* SIPA §§ 78fff(a)-(b), 78fff-2(c)(3); 15 U.S.C. §§ 362(a), 704(a); *In re Park South Secs., LLC*, 326 B.R. at 512-13. Because the Trustee did not exercise unauthorized ownership over the funds, the Chaises' conversion claim should be dismissed.

### B.    The Chaises Did Not Plead That The Account Funds Were Specifically Identifiable Property.

An action for conversion normally does not exist for money. For money to be the subject of a conversion claim under New York law, the funds must be specifically identifiable. *The High View Fund, L.P. v. Hall,* 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998) ("Because plaintiffs do not claim ownership of a specifically identifiable, segregated [$1 million] they fail to state a claim for conversion of money." (internal quotations and citations omitted)); *Fed'n Internationale Du Sport Universitaire v. Greater Buffalo Athletic Corp.*, No. 93-CV-0356E(F), 1994 WL 411908, at *4 (W.D.N.Y. Aug. 4, 1994) (dismissing conversion claim for money); *Auguston v. Spry,* 282 A.D.2d 489, 491, 723 N.Y.S.2d 103 (N.Y. App. Div. 2001) (money commingled with other money cannot be converted); *9310 Third Ave. Assoc. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207, 208 (N.Y. App. Div. 1994) (dismissing conversion claim for money). Funds simply deposited into an account, for example, may not be the subject of a conversion claim. *See, e.g., United Sys. Assoc. v. Norstar Bank Upstate N.Y.*, 171 A.D.2d 922, 923, 566 N.Y.S.2d 793 (N.Y. App. Div. 1991) (funds in checking account did not give rise to conversion claim); *Double Alpha, Inc. v. Mako Partners, L.P.*, 99 CIV 11541(DC), 2000 WL 1036034, at *4

(S.D.N.Y. July 27, 2000) (dismissal of conversion claim based on investment funds provided to defendant).

Here, the Chaises did not plead that the funds at issue were specifically identifiable, or that the Chaises had a right to the specific funds they put into their Goldman account. Rather, they merely pleaded they did not have access to money in their account. (*See, e.g.,* Counterclaim ¶ 194.) Thus, their conversion claim should be dismissed.

## VII.   The Chaises' Fifth Amendment Claim Fails.

The Chaises' final claim simply alleges that the Trustee's actions constitute state action, and that they were deprived of their funds without judicial process. (Answer ¶¶ 210-11.) Although the Chaises' Counterclaim does not explain their claim in any more detail, the Chaises have previously described their claim as the Trustee having deprived the Chaises of access to counsel: "Finally, by depriving the Chaises of their property and thereby effectively barring access to counsel, Mr. Picard has violated their constitutional rights."[15] (Chais Def. Memo. in Supp. of Order to Show Cause, Docket Entry # 17, at 3.)

First, by the Chaises' own admission, Goldman – not the Trustee – allegedly withheld the funds.[16] (*See, e.g.,* Counterclaim ¶ 187.) Moreover, as explained above, any such withholding by Goldman was expressly permitted by Goldman's contract with the Chaises, and the Letter was proper in any event. Thus, there was no unconstitutional deprivation of the Chaises' funds by the Trustee based on the Letter, nor did the Trustee take title to the property. Furthermore, when the Trustee actually asked the Court for a temporary restraining order freezing some of the

---

[15] The vagueness alone of the Chaises' constitutional claim is sufficient grounds to dismiss it. *See, e.g., Mullarkey v. Greenberg*, 2009 WL 3754192, at *2-3 (D.N.J. Nov. 5, 2009) (dismissing vague constitutional claims against Chapter 13 trustee, despite the court applying a less stringent pleading standard because of plaintiff's pro se status).

[16] Indeed, even if the Letter was improper, "the due process provision of the Fifth Amendment does not apply to the indirect adverse effects of governmental action." *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 789 (1980). The Chaises do not allege the Trustee froze the Goldman account.

Chaises' assets, including the Goldman account, the issues were fully briefed and a hearing was held on the matter, providing the Chaises with ample process.

Second, the Trustee is not a state actor, and thus his actions do not constitute "state action." *See Lonnecker Farms, Inc. v. Kobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986) (bankruptcy trustee did not act under color of state law); *Conklin v. Warrington Twp.*, No. 1:06-CV-2245, 2008 WL 2704629, *7-8, *7 n.11 (M.D. Pa. July 7, 2008) (bankruptcy trustee not state actor). The Chaises' legal conclusion, without any factual support whatsoever, that the "Trustee's actions herein constitute state actions for purposes of application of the Constitution of the United States," (Counterclaim ¶ 210), is entitled to no weight when evaluating a motion to dismiss. *See Iqbal*, 129 S.Ct. at 1949; *Smith*, 291 F.3d at 240.

Third, there is no automatic right to counsel in the civil context. *See Lassiter v. Dep't of Social Servs. of Durham County, N.C.*, 452 U.S. 18, 26-27 (1981) ("an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty"). The Chaises do not claim their physical liberty is at stake. Moreover, in the civil context, courts look to whether the individual has been barred from retaining counsel, or has been denied access to counsel, not whether the individual can afford the counsel of his choice. *See Gray v. New England Telephone & Telegraph Co.*, 792 F.2d 251, 257 (1st Cir. 1986). Here, the Chaises have been represented by counsel since Madoff's Ponzi scheme was exposed. Thus, although the Chaises do not have a constitutional right to civil counsel, the Chaises have not actually been denied access to counsel in any event, and the Chaises' Fifth Amendment claim should be dismissed.

## CONCLUSION

For the above reasons, the Trustee respectfully requests that the Court dismiss the

Chaises' Counterclaim with prejudice.

Respectfully submitted,

Dated: New York, New York
       January 15, 2010

*s/Marc E. Hirschfield*
David J. Sheehan
E-mail: dsheehan@bakerlaw.com
Marc E. Hirschfield
E-mail: mhirschfield@bakerlaw.com
Ona T. Wang
E-mail: owang@bakelaw.com
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

-and-

Paul P. Eyre (admitted *pro hac vice*)
E-mail: peyre@bakerlaw.com
Karl Fanter (admitted *pro hac vice*)
E-mail: kfanter@bakerlaw.com
3200 National City Center
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment*
*Securities LLC and Bernard L. Madoff*

300064015

32