**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
E-mail: dsheehan@bakerlaw.com
Marc Hirschfield
E-mail: mhirschfield@bakerlaw.com
Paul P. Eyre (admitted *pro hac vice*)
E-mail: peyre@bakerlaw.com
Ona T. Wang
E-mail: owang@bakerlaw.com
Stephan J. Schlegelmilch (admitted *pro hac vice*)
E-mail: sschlegelmilch@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of*
*Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>   Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, *Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC*,<br><br>   Plaintiff,<br><br>    v.<br><br>STANLEY CHAIS, *et al*.,<br><br>   Defendants. | Adv. Pro. No. 09-1172 (BRL) |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ................................................................................................... 2

    I.    DEFENDANTS' EFFORT TO ARGUE FACTS NOT CONTAINED IN THE COMPLAINT IS IMPROPER ................................................ 2

    II.    STANLEY CHAIS AND HIS FAMILY PROFITED TREMENDOUSLY FROM MADOFF'S FRAUD AND ARE NOT VICTIMS ................................. 3

    III.    STANLEY CHAIS KNEW OR SHOULD HAVE KNOWN THAT HE AND HIS FAMILY WERE BENEFITING FROM A FRAUD .......................... 5

ARGUMENT ......................................................................................................... 7

    I.    THE TRUSTEE'S ALLEGATIONS ARE PLED WITH SPECIFICITY AND ARE PLAUSIBLE ................................................................. 8

        A.    The Defendants Mischaracterize The Trustees' Claims ........................... 9

        B.    Defendants are Liable for The Conduct and Knowledge of Their Agent ................................................................................. 10

    II.    THE TRUSTEE'S ACTUAL FRAUD CLAIMS HAVE BEEN ADEQUATELY PLED ................................................................. 11

        A.    The Trustee's Claims Have Been Pled With Sufficient Particularity ...... 12

            1.    The Trustee Has Alleged That Mr. Chais And Defendants Did Not Take In Good Faith And That, As A Result, All Of The Transfers Are Voidable ......................................... 12

            2.    Defendants Possess The Transaction Information In Question ................................................................. 15

            3.    Defendants' Arguments Regarding The Net Equity Dispute Are Improper ....................................................... 16

        B.    Defendants Misstate The Law Regarding NYDCL § 276 ...................... 18

    III.    THE TRUSTEE HAS ADEQUATELY ALLEGED CONSTRUCTIVE FRAUD ................................................................................. 21

        A.    The Trustee's Constructive Fraud Claims Are Sufficiently Pled ........... 21

        B.    Defendants' Efforts To Argue Net Equity Are Inappropriate ................ 24

        C.    Principal Sum Does Not Include "Expected Returns." ........................... 24

IV.   THE RELEVANT DATE FOR THE SIX YEAR CONVEYANCES IS CORRECTLY ALLEGED .................................................................. 26

    A.   State Statutes of Limitations Are Relevant Only Until The Bankruptcy Case Is Filed ....................................................... 26

        1.   Defendants' Argument Contravenes 25 Years Of Bankruptcy Case Law ................................................... 28

        2.   There Is No Evidence Of Contrary Congressional Intent ........... 30

    B.   Regardless, The State Statute Of Limitations Has Not Run ................... 30

        1.   The Bankruptcy Case Filing Stays The Running Of The Statute Of Limitations Under New York Law ........................... 31

        2.   Section 108(c) Of The Bankruptcy Code Also Stays The Running Of The New York Statute Of Limitations .................... 32

        3.   The State Statute Of Limitations Is Also Equitably Tolled As To Both Real And Hypothetical Creditors For Claims Based On Actual Fraud ................................................. 33

    C.   The Trustee Is Entitled To Rely On The Discovery Rule To Avoid Transfers That Took Place Over Six Years Ago ..................................... 35

        1.   There Is No Requirement At This Stage Of The Action To Specifically Identify The Creditor(s) Whose Claims Are Being Asserted .......................................................... 35

        2.   Regardless, The Complaint Does, In Fact, Identify A Category Of Creditors ................................................. 37

        3.   The "Red Flags" Indentified In The Complaint Do Not Defeat The Trustee's Discovery Rule Claims ........................... 37

V.    THE TRUSTEE'S CLAIM FOR TURNOVER AND ACCOUNTING IS APPROPRIATE ................................................................................ 39

VI.   THE TRUSTEE HAS PROPERLY ALLEGED A CLAIM TO AVOID SUBSEQUENT TRANSFERS .......................................................... 42

VII.  THE TRUSTEE HAS PROPERLY ALLEGED DISALLOWANCE OF THE DEFENDANTS' SIPA CLAIMS ............................................. 43

    A.   Defendants Do Not Allege That Any Of The Individual Defendants Even Filed SIPA Claims ......................................... 43

    B.   Defendants Do Not Cite Any Authority For Their Contention That The Trustee's Allegations Are Insufficient ............................ 44

C.    Defendants' Argument That Section 502(d) Does Not Apply To
      SIPA Claims Does Not Survive Scrutiny ................................................ 45

CONCLUSION ........................................................................................................... 47

# TABLE OF AUTHORITIES

**Page**

## CASES

*546-552 W. 146th St. LLC v. Arfa*, 863 N.Y.S.2d 412 (N.Y. App. Div. 1st Dep't 2008) ............................................................................................................... 11, 13

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Valez Constr., Inc.)*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007) .................. 20, 39

*Apollo Fuel Oil v. United States*, 195 F.3d 74 (2d Cir. 1999) ............................ 11, 13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................... 7, 8

*Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.)*, 238 B.R. 558 (Bankr. S.D.N.Y. 1999) ............................................................... 29

*Bay State Milling Co. v. Martin (In re Martin)*, 142 B.R. 260 (Bankr. N.D. Ill. 1992) ........................................................................................................ 28

*Bayou Superfund, LLC v. WAM Long/Short Fund II, LLP (In re Bayou Group, LLC)*, 362 B.R. 624 (Bankr. S.D.N.Y. 2007) .................................. 18, 22, 25

*Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1 (S.D.N.Y. 2005) ................................................................................ 14, 18, 20

*Belford v. Martin-Trigona (In re Martin-Trigona)*, 763 F.2d 503 (2d Cir. 1985) ..................... 33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................ 7, 8, 21

*Bloom v. Fry (In re Leach)*, 380 B.R. 25 (Bankr. D.N.M. 2007) ............................. 28

*Boykin v. KeyCorp*, 521 F.3d 202 (2d Cir. 2008) ................................................. 8

*Browning v. Williams (In re Silver Wheel Freightlines, Inc.)*, 64 B.R. 563 (Bankr. D. Or. 1986) .............................................................................................. 29

*Capital Wireless v. Deloitte*, 627 N.Y.S.2d 794 (N.Y. App. Div. 3d Dep't 1995) .............. 11, 13

*CDS Recoveries, L.L.C. v. Davis*, 715 N.Y.S.2d 517 (N.Y. App. Div. 3d Dep't 2000) ......................................................................................................... 31

*Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828 (N.Y. 1985) .......................... 10, 13

*Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 325 B.R. 417 (Bankr. D. Ariz. 2005) ....................................................................... 34

*CompuDyne Corp. v. Shane*, 453 F.Supp. 2d 807 (S.D.N.Y. 2006) ...................... 11, 13

*Conley v. Gibson*, 355 U.S. 41 (1957) ............................................................ 21

*Crigger v. Fahnestock & Co.*, 443 F.3d 230 (2d Cir. 2006) .................................. 38

*Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992 (S.D.N.Y. 1991) ............... 19

*DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151 (1983) .............................. 27

*DirecTV, Inc. v. Webb*, 545 F.3d 837 (9th Cir. 2008) ........................................ 27

*Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) ............................................... 22, 24

*Doyle v. Paolino (In re Energy Sav. Ctr., Inc.)*, 61 B.R. 732 (E.D. Pa. 1986) .......... 40, 42

*Drenis v. Haligiannis*, 452 F. Supp. 2d 418 (S.D.N.Y. 2006) ........................................ 18, 21, 23

*Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*, 100 B.R. 157 (Bankr. S.D.N.Y. 1989) .......................................................................................................... 28

*Erbe v. Lincoln Rochester Trust Co.,* 144 N.E.2d 78 (N.Y. 1957) ............................................ 38

*Erickson v. Pardus,* 551 U.S. 89 (2007) ...................................................................................... 8

*F.D.I.C. v. Daniel,* 158 F.R.D. 101 (E.D. Tex. 1994) ............................................................... 13

*FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125 (2d Cir. 1992) .................... 31, 32, 41

*Fed. Sav. & Loan Ins. Corp. v. Musacchio,* 695 F. Supp. 1053 (N.D. Cal. 1988) ..................... 13

*Fitzgibbons v. Thomason (In re Thomason),* 202 B.R. 768 (Bankr. D. Colo. 1996)................... 34

*Gentry v. Kovler (In re Kovler),* 249 B.R. 238 (Bankr. S.D.N.Y. 2000), *corrected,* 329 B.R. 17 (Bankr. S.D.N.Y. 2005) .......................................................................... 19, 20

*Geron v. Schulman (In re Manschul Contr. Corp.),* Nos. 97 CIV. 8851(JGK), 99 CIV. 2825(JGK) 2000 U.S. Dist. LEXIS 12576 (S.D.N.Y. Aug. 29, 2000) ........................ 19

*G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.),* 313 B.R. 612 (Bankr. D.N.J. 2004) ............................................................................... 29, 32

*Gilbert v. Bagley,* 492 F. Supp. 714 (M.D.N.C. 1980) .............................................................. 13

*Global Crossing Estate Rep. v. Winnick,* No. 04 Civ. 2558, 2006 U.S. Dist. LEXIS 53785 (S.D.N.Y. Aug. 3, 2006) .......................................................................... 29

*Global Network Comm'ns, Inc. v. City of New York,* 458 F.3d 150 (2d Cir. 2006) ..................... 3

*Glosser v. S. & T. Bank (In re Ambulatory Med. & Surgical Health Care),* 187 B.R. 888 (Bankr. W.D. Pa. 1995) ................................................................................. 29

*Goldman v. Belden,* 754 F.2d 1059 (2d Cir. 1985)....................................................................... 8

*Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 545 U.S. 409 (2005).................................................................................................................... 27

*Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.),* 310 B.R. 500 (Bankr. S.D.N.Y. 2002) ................................................................................................ 12, 18

*Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech Group, Inc.),* 916 F.2d 528 (9th Cir. 1990) ...................................................................................... 10

*HBE Leasing Corp. v. Frank,* 48 F.3d 623, 623 (2d Cir. 1995) ...................................... 14, 19, 20

*Higazy v. Templeton,* 505 F.3d 161 (2d Cir. 2007)............................................................ 17, 24

*Hoffenberg v. Hoffman & Pollok,* 288 F.Supp.2d 527 (S.D.N.Y. 2003) ................................... 35

*In re Asia Global Crossing, Ltd.,* 333 B.R. 199 (Bankr. S.D.N.Y. 2005) ................................. 46

*In re Kaiser,* 722 F.2d 1574 (2d Cir. 1983) ............................................................................... 20

*In re Luxottica Group S.P.A., Securities Litig.,* 293 F. Supp. 2d 224 (E.D.N.Y. 2003) ...................................................................................................................... 13

*In re Lyons*, 130 B.R. 272 (Bankr.N.D.Ill.1991) ........................................................ 32

*In re Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr. S.D.N.Y. 1986) ........................... 46

*In re OPM Leasing Servs., Inc.*, 35 B.R. 854 (Bankr. S.D.N.Y. 1982) ................. 15, 35

*In re Polar Chips Int'l., Inc.*, 18 B.R. 480 (Bankr. S.D. Fla. 1982) ............................ 14

*In re Princeton-New York Inv., Inc v. Gibbons (In re Princeton-New York Inv., Inc.)*, 219 B.R. 55 (D.N.J. 1998) .................................................................................. 28

*In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 519 (Bankr. S.D.N.Y. 1996) ............................................................................................ 36

*In re Taubman*, 160 B.R. 964 (Bankr. S.D. Ohio 1993) ....................................... 23, 25

*In re Vitreous Steel Prods. Co.,* 911 F.2d 1223 (7th Cir. 1990) ................................. 34

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66 (2d Cir. 1998) .............................................................................................................. 3

*Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, 399 B.R. 352 (Bankr. D. Mass. 2009) .................................................................................................. 16, 23, 43

*Jenkins v. New York City Transit Auth.*, 646 F.Supp.2d 464 (S.D.N.Y. 2009) ............ 8

*Kaliner v. Load Rite Trailers, Inc. (In re Sverica Acquisition Corp.),*179 B.R. 457 (Bankr. E.D. Pa. 1995) ...................................................................................... 29, 32

*L.A. Clarke & Son, Inc. v. Donald (In re L.A. Clarke & Son, Inc.)*, 59 B.R. 856 (Bankr. D.D.C. 1986) ................................................................................................ 29

*Le Café Crème, Ltd. v. Le Roux (In re Le Café Crème, Ltd.)*, 244 B.R. 221 (Bankr. S.D.N.Y. 2000) .......................................................................................................... 19

*Lefkowitz v. Appelbaum*, 685 N.Y.S.2d 460 (N.Y. App. Div. 2d Dep't 1999) ............ 35

*Levit v. Spatz (In re Spatz)*, 222 B.R. 157 (N.D. Ill. 1998) ....................................... 28

*Lippe v. Bairnco Corp.*, 225 B.R. 846 (S.D.N.Y. 1998) ............................................ 35

*Mahoney, Trocki & Assocs., Inc. v. Kunzman (In re Mahoney, Trocki & Assocs., Inc.)*, 111 B.R. 914 (Bankr. S.D. Cal. 1990) ...................................................... 27, 28

*Mancuso v. Cont'l Bank Nat'l Ass'n Chicago (In re Topcor, Inc.)*, 132 B.R. 119 (Bankr. N.D. Tex. 1991) ........................................................................................... 28

*Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008) ... 22, 23, 39, 42

*Mercury Capital Corp. v. Shepherds Beach, Inc.*, 723 N.Y.S.2d 48 (N.Y. App. Div. 2d Dep't 2001) ................................................................................................... 31

*Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843 (D. Utah 1987) ................... 10

*Mi-Lor Corp. v. Gottsegen (In re Mi-Lor Corp.)*, 233 B.R. 608 (Bankr. D. Mass. 1999) ........................................................................................................................ 28

*Mirror Group Newspapers, plc v. Maxwell Newspapers, Inc.* (*In re Maxwell Newspapers*), 164 B.R. 858 (Bankr. S.D.N.Y.1994) ............................................ 11

*N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F. Supp. 606 (S.D.N.Y. 1995) ............................ 13

*Nisselson v. Softbank AM Corp. (In re Marketxt Holdings Corp.)*, 361 B.R. 369 (Bankr. S.D.N.Y. 2007) ................................................................................................ 12, 20

*O'Connell v. Shallo (In re Die Fleidermaus LLC), 323 B.R. 101 (Bankr. S.D.N.Y. 2005)* ......................................................................................................................... 29

*Orr v. Bernstein (In re Bernstein), 259 B.R. 555 (Bankr. D.N.J. 2001)* ............................ 29, 32

*Phillips v. Levie*, 593 F.2d 459 (2d Cir. 1979) ..................................................................... 35

*Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005) ................... 20

*Rahl v. Bande*, 328 B.R. 387 (S.D.N.Y. 2005) ........................................................................ 12

*Resolution Trust Corp. v. Heiserman*, 839 F. Supp. 1457 (D. Colo. 1993) ............................ 13

*Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.), 398 B.R. 761 (Bankr. S.D.N.Y. 2008)* ............................................. 36, 37

*Rosania v. Haligas (In re Dry Wall Supply, Inc.)*, 111 B.R. 933 (D. Colo. 1990) ............... 27, 28

*Schmidt v. McKay*, 555 F.2d 30 (2d Cir. 1977) ................................................................ 35, 38

*Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) ..................................................... 22, 24, 25

*Sears Petroleum & Transp. Co. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 2d 212 (D. Mass. 2006) ........................................................................................................... 28

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) ................................................................................................................... 15, 19

*Sender v. Buchannan (In re Hedged-Investments Assocs.)*, 84 F.3d 1286 (10th Cir. 1996) ............................................................................................................... 22, 24, 25

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.), 403 F.3d 43 (2d Cir. 2005)* ...................................................................................................... 19, 20

*Silverman v. K.E.R.U. Realty, Corp. (In re Allou Distribs.)*, 379 B.R. 5 (Bankr. E.D.N.Y. 2007) .......................................................................................... 8, 42, 44

*Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647 (S.D. Tex. 2007) .......................................... 28

*Smith v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180 (D. Ariz. 2001) ................................... 13

*Spanierman Gallery, PSP v. Love*, 320 F. Supp. 2d 108 (S.D.N.Y. 2004) ................................ 21

*Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406 (2d Cir. 2008) ............................... 2, 3

*Tab P'ship v. Grantland Fin. Corp.*, 866 F. Supp. 807 (S.D.N.Y. 1994) .................................. 38

*Tabas v. Gigi Adver. P'ship (In re Kaufman & Roberts, Inc.)*, 188 B.R. 309 (Bankr. S.D. Fla. 1995) ............................................................................................... 29

*Trepuk v. Frank*, 376 N.E.2d 924 (N.Y. 1978) ..................................................................... 38

*Tsai v. Bldgs. By Jamie, Inc. (In re Bldgs. by Jamie, Inc.)*, 230 B.R. 36 (Bankr. D.N.J. 1998) ................................................................................. 28

*Visconsi v. Lehman*, No. 06-3304, 2007 U.S. App. LEXIS 19088 (6th Cir. Aug. 8, 2007) ..................................................................................... 25

*Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162 (N.D. Ill. 1990) ................ 13

*Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801 (9th Cir. 1989) ..................................................................................... 30

*Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*, 389 B.R. 721 (B.A.P. 9th Cir. 2008) ..................................................................................... 41

*Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) ............................. 36

*Zuckerman v. 234-6 W. 22nd St. Corp.*, 645 N.Y.S.2d 967 (N.Y. Sup. Ct. 1996) ..... 31

## STATUTES

11 U.S.C. § 108(c) ............................................................................. 32, 33

11 U.S.C. § 362 ................................................................................. 31, 32

11 U.S.C. § 502(d) .................................................................. 43, 44, 45, 46

11 U.S.C. § 541(a)(3) ........................................................................... 41

11 U.S.C. § 542 ........................................................................ 39, 40, 41

11 U.S.C. § 542(a) ............................................................................... 39

11 U.S.C. § 544(a) ........................................................................... 33, 34

11 U.S.C. § 544(b) ............................... 26, 27, 28, 29, 31, 32, 35, 36, 37

11 U.S.C. § 546(a) ...................................................................... 27, 28, 29

11 U.S.C. § 548(a)(1)(B) ....................................................................... 21

11 U.S.C. § 548(c) ............................................................................... 12

11 U.S.C. § 550 ............................................................................... 42, 46

15 U.S.C. § 78fff-2(a)(2) ....................................................................... 45

15 U.S.C. § 78fff-2(b) ....................................................................... 44, 45

15 U.S.C. § 78fff-2(c)(3) ....................................................................... 40

15 U.S.C. § 78fff-3(a) ........................................................................... 45

15 U.S.C. § 78*lll*(2) ............................................................................. 45

15 U.S.C. § 78*lll*(11) ......................................................................... 2, 16

N.Y. C.P.L.R. § 203(g) .................................................................. 33, 34, 35

N.Y. C.P.L.R. § 204 .............................................................................. 31

**Page**

N.Y. C.P.L.R. § 204(a) ........................................................................ 31, 32

N.Y. C.P.L.R. § 207 .................................................................................. 34

N.Y. C.P.L.R. § 213(8) ................................................................. 33, 34, 35

N.Y. Debt. & Cred. Law § 272 ........................................................... 19, 22

N.Y. Debt. & Cred. Law § 273 .................................................................. 22

N.Y. Debt. & Cred. Law § 274 .................................................................. 34

N.Y. Debt. & Cred. Law § 275 .................................................................. 34

N.Y. Debt. & Cred. Law § 276 .................................................................. 18

N.Y. Debt. & Cred. Law § 276-a .............................................................. 18

N.Y. Debt. & Cred. Law § 278 .................................................................. 35

N.Y. Debt. & Cred. Law § 279 .................................................................. 35

Rule 8(a) ...................................................................................................... 8

Rule 9(b) ...................................................................................................... 8

Rule 12(b)(6) ............................................................................................... 7

## OTHER AUTHORITIES

4 *Collier on Bankruptcy* ¶ 544.03[2] (1989) ........................................... 29

5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1215 (Civ.3d
    2009) ................................................................................................. 8, 44

5 *Collier on Bankruptcy* ¶ 546.02[1][b] (2009) ...................................... 29

5 *Collier on Bankruptcy* ¶ 548.05(1)(b) (2009) ...................................... 22

5 *Collier on Bankruptcy* ¶ 550.07 (2009) ............................................... 41

# PRELIMINARY STATEMENT

Defendants[1] do not deny (i) investing with Bernard L. Madoff Investment Securities ("BLMIS") through the accounts alleged in the Complaint, (ii) permitting defendant Stanley Chais to exercise unfettered control over those accounts, (iii) receiving hundreds of millions of dollars from BLMIS, or (iv) pocketing substantial funds that ultimately came from other BLMIS investors. Rather, the theme of Defendants' motion to dismiss is that they should be treated like any other of the victims of Mr. Madoff's fraud because there is no evidence that they had any one-on-one involvement with Mr. Madoff. (*See, e.g.*, MTD 6, 7-9.) But the fundamental premises of Defendants' motion are flawed: They are not victims, and there is substantial evidence that they knowingly profited from Mr. Madoff's fraud.

Based upon the Trustee's investigation to date, Defendants collectively took from BLMIS more than $200,000,000, much of which was fictitious profits that were, in fact, simply other investors' money. Thus, notwithstanding their substantial efforts to recast themselves, Defendants are simply not in the same position as "Madoff's other victims – investors deceived

---

[1] The term "Defendants" refers, collectively, to defendants Emily Chasalow; Mark Chais; Wrenn Chais; William Chais; Miri Chais; Unicycle Trading Company; Unicycle Corporation; Emily Chais Trust No. 2; Emily Chais Trust No. 3; Emily Chais 1983 Trust; Emily Chais Issue Trust No. 1; Emily Chais Issue Trust No. II; Benjamin Paul Chasalow Transferee Trust No.1; Benjamin Paul Chasalow 1999 Trust; Rachel Allison Chasalow Transferee Trust No. 1; Rachel Allison Chasalow 1999 Trust; Justin Robert Chasalow Transferee Trust No. 1; Justin Robert Chasalow 1999 Trust; Onondaga, Inc. Pension Plan; William Frederick Chais Trust No. 2; William Frederick Chais Trust No. 3; William Frederick Chais 1983 Trust; William Frederick Chais Issue Trust No. I; William Frederick Chais Issue Trust No. II; Madeline Chais Transferee Trust No.1; Madeline Celia Chais 1992 Trust; Chloe Frances Chais Transferee Trust No. I; Chloe Frances Chais 1994 Trust; Jonathan Chais Transferee Trust No. I; Jonathan Wolf Chais 1996 Trust; Mark Hugh Chais Trust No. 2; Mark Hugh Chais Trust No. 3; Mark Hugh Chais 1983 Trust; Mark Hugh Chais Issue Trust No. I; Mark Hugh Chais Issue Trust No. II; Tali Chais Transferee Trust No. I; Tali Chais 1997 Trust; Ari Chais Transferee Trust No. I; Ari Chais 1999 Trust; 1994 Trust for the Children of Stanley and Pamela Chais; 1996 Trust for the Children of Stanley and Pamela Chais; William & Wrenn Chais 1994 Family Trust; 1999 Trust for the Grandchildren of Stanley and Pamela Chais; Chais Investments, Ltd.; Onondaga, Inc.; Chais Management, Ltd.; Chais Management, Inc.; and Chais Venture Holdings. (*See* Notice of Motion to Dismiss, Ex. 1.)

by his reputation and prestige . . . who lost substantial sums as a result of his fraud." (MTD 5.) Not only did Defendants not lose money, they profited tremendously from Mr. Madoff's fraud.

Defendants' efforts to distance themselves from Mr. Madoff's fraud also ignore the Complaint's detailed allegations regarding their knowledge of and participation in the financial shenanigans at BLMIS. Defendants' Motion ignores the fact that their agent, Stanley Chais, clearly knew or should have know that he and his children were benefitting, substantially, from a fraud, an allegation which Defendants' motion criticizes but concedes has been adequately pled. Defendants do not even address the fact that Stanley Chais's conduct and knowledge can be, and should be, imputed to Defendants, his principals. And, in any event, it is well-settled that the Trustee may recover from Defendants the fictitious profits they received, either directly or indirectly, from Mr. Madoff's Ponzi scheme, irrespective of Defendants' supposed lack of personal knowledge.

The Trustee's action to recoup the fraudulent transfers received by Defendants, on behalf of the *actual* victims of Mr. Madoff's fraud, is wholly appropriate and has been more than adequately pled. Defendants' motion to dismiss should be denied.

## BACKGROUND

### I. DEFENDANTS' EFFORT TO ARGUE FACTS NOT CONTAINED IN THE COMPLAINT IS IMPROPER.

As a preliminary matter, Defendants improperly ask this Court to consider certain "facts" not contained in the Complaint, likely in an effort to advance their arguments regarding the Net Equity Dispute.[2] Citing *Staehr v. Hartford Fin. Servs. Group, Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008), Defendants contend that the Court may take judicial notice of the "background

---

[2] The disagreement between the Trustee and Defendants regarding the Trustee's interpretation of "net equity," as defined by 15 U.S.C. § 78*lll*(11) (2009), is referred to herein as the "Net Equity Dispute." As explained below, the Net Equity Dispute is irrelevant to the issue of the sufficiency of the Trustee's claims, and it cannot, in any event, be determined by way of a motion to dismiss.

information" they append to their brief "without converting [their] motion into one for summary judgment." (MTD 5, n.1.) But Defendants misstate *Staehr* and the relevant law. It is the well-settled law of this Circuit that the Court may "take judicial notice of the *fact* that press coverage, prior lawsuits, or regulatory filings contained certain information" but not of the "the truth of their contents." *Staehr*, 547 F.3d at 425 (emphasis in original). *See also Global Network Comm'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("although the final determination of March 2005 and Massie's testimony may be public records of which a court may take judicial notice, 'it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion'") (citation omitted); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70-71 (2d Cir. 1998) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Consequently, the Trustee submits that the Court cannot consider the supposed truth of any of the "publicly available documents" submitted by Defendants when considering their motion to dismiss.

## II.    STANLEY CHAIS AND HIS FAMILY PROFITED TREMENDOUSLY FROM MADOFF'S FRAUD AND ARE NOT VICTIMS.

As pled in the Trustee's Complaint, filed on May 1, 2009, Stanley Chais is an unregistered investment advisor. (Compl. ¶ 33.) He was a beneficiary of Madoff's Ponzi scheme for at least 30 years. (Compl. ¶ 2.) During this 30-year period, Mr. Chais pocketed hundreds of millions of dollars in other investors' money, and he funneled much of that money to his children and their spouses, his grandchildren, and various entities he created to provide for and benefit his family. (Compl. ¶¶ 2, 27, 99, 102.)

Defendant Emily Chasalow is Mr. Chais's daughter. (Compl. ¶ 33.) Defendants Mark Chais and William Chais are Mr. Chais's sons. (Compl. ¶¶ 36, 37.) Mark Chais is married to defendant Miri Chais; William Chais is married to defendant Wrenn Chais. (Compl. ¶¶ 39, 40.) The remaining defendants listed in Exhibit 1 to the Notice of Partial Motion to Dismiss are trusts and other entities that Mr. Chais created for the benefit of family; all either had accounts with BLMIS or received distributions from BLMIS. (Compl. ¶¶ 50, *et seq*.) The Trustee's investigation has shown that little, if any, of the principal contributions of Defendants' BLMIS accounts came from Defendants' themselves. (Compl. ¶ 102.) Rather, the principal was provided by Mr. Chais, who paid himself, from his investors' money, the funds as a "commission" for his investment services. Of course, Mr. Chais provided no actual investment services; all of his investors' money was simply handed over to BLMIS, though few, if any, of his investors knew it. (Compl. ¶¶ 97, 99, 104(b).)

As pled in the Complaint, Stanley Chais provided all of the direction, control, and/or management over the Defendants' BLMIS accounts. (Compl. ¶¶ 92, 100-101, 103(b).) The backdating alleged in the Complaint occurred in BLMIS accounts held by Defendants and other Chais family members. (Compl. ¶¶ 103(d)-103(g).) Defendants' accounts were, for all intents and purposes, Stanley Chais's alter egos. (Compl. ¶ 92.)

Between 1995 and 2008, accounts controlled by Stanley Chais and his family members withdrew approximately $1,000,000,000 from BLMIS, and Defendants received much of this money. (Compl. ¶¶ 103(c).) Indeed, based upon the Trustee's investigation to date, defendant Emily Chasalow, personally, withdrew at least $8,700,000 belonging to victims of Mr. Madoff's

fraud.[3] Defendants Mark and Miri Chais pocketed over $13,800,000. Defendants William and Wrenn Chais received over $10,000,000. Chais Investments, Ltd., just one of the numerous entities listed on Defendants' Exhibit 1, withdrew approximately $10,000,000 in fictitious profits from BLMIS. And The Emily Chais Trusts Nos. 1, 2, and 3, three of the dozens of trusts on Defendants' Exhibit 1, also collectively received another $10,000,000 of funds rightfully belonging to actual victims. At present, the Trustee's investigation suggests that Defendants collectively took from BLMIS more than $200,000,000 in other investors' money. Defendants are simply not "victims"—not by a long shot.

## III. STANLEY CHAIS KNEW OR SHOULD HAVE KNOWN THAT HE AND HIS FAMILY WERE BENEFITING FROM A FRAUD.

The BLMIS accounts managed by Stanley Chais were riddled with evidence of fraud, and Defendants' accounts especially so. For example, the accounts for which Mr. Chais recruited outside investors (e.g., Brighton, Popham, and Lambeth), reported implausibly consistent—and consistently high—rates of return. (Compl. ¶ 103(a).) During the twelve-year period from 1996 through 2007, the purported annual rate of return for these accounts remained consistently between 20% and 24%. (*Id.*) In only three of those 144 months did these non-family investor accounts earn a negative monthly return. (*Id.*) By contrast, during the same period, annual returns for the S&P 500 fluctuated by over fifty-five percentage points, with an average annual return of 10.72% and 52 months of negative returns. (*Id.*)

Improbable as the rates of return were for the Mr. Chais's "outside" accounts, they pale in comparison to the fantastical rates of return for Defendants' accounts. (Compl. ¶ 103(b).) For example, Defendant Jonathan Wolf Chais Trust's account purportedly earned an annual return of

---

[3] Since the filing of the Complaint in May 2009, the Trustee has obtained and begun to analyze additional financial information from BLMIS and, accordingly, the amounts cited in the Complaint and herein may increase.

more than 300% in 1999, while Defendant Unicycle Corporation's purported annual return in 2003 was more than 100%. (*Id.*) Indeed, between 1996 and 2007, BLMIS accounts held by Mr. Chais's family enjoyed more than 35 instances of supposed annual returns of more than 100% and more than 125 instances in which the annual returns purportedly exceeded 50%. (*Id.*) Collectively, the accounts held by Mr. Chais's family or for their benefit reported an annual average rate of return of over 39% during the period between 1996 – 2007. (*Id.*) The drastically higher rates of returns for Mr. Chais's family's accounts, compared to those of Mr. Chais's non-family investors, was itself evidence of Madoff's fraud, of which Mr. Chais and his family, including Defendants, was or should have been aware. Indeed, on information and belief, the substantially higher returns for Mr. Chais's family were a form of compensation by Mr. Madoff to Mr. Chais for perpetuating the Ponzi scheme by investing and maintaining millions of dollars of other people's money in BLMIS. (*Id.*)

On some occasions, certain accounts held by Mr. Chais's family reported anomalous "losses" that, on information and belief, were manufactured at Mr. Chais's direction to benefit Defendants, presumably for tax purposes. (Compl. ¶¶ 103(d)-103(f).) One particular example is illustrative. In one of Defendant Chais 1991 Family Trust's accounts, BLMIS purported to purchase and sell 125,000 shares of Micron Technology Inc. for a loss of more than $1 million. (Compl. ¶ 103(d).) The trade was first recorded on the account's July 1998 account statement, but was backdated to January 27, 1998. (*Id.*) No such purchase appeared on the account's January 1998 statement, nor was a corresponding value of securities reflected in any account statement between January and June. (*Id.*) Instead, the first appearance of the stock is on the July 1998 statement, when the fictitious purchase is first reflected and the "sale" at a loss is purported to occur. (*Id.*) On information and belief, the fictitious purchase was backdated by

more than 150 days to ensure that a targeted loss figure was met.  (*Id.*)  Mr. Chais and the other

Defendants knew or should have known that fictitious and backdated trading activity was being

reported in their accounts, and that their accounts reflected fictitious holdings.[4]

Beyond these indicia of fraud in Defendants' own accounts, Mr. Chais and Defendants

ignored numerous other indicia of irregularity and fraud from the general manner in which

BLMIS operated.  (*See, e.g.,* Compl. ¶¶ 104(a)-104(i).)  And on information and belief, Mr.

Madoff instructed Mr. Chais not to inform his investors that BLMIS was their money manager,

and Mr. Chais complied.  (Compl. ¶ 104(b).)  He did not inform his investors that he had placed

all of their money with Mr. Madoff.  (*Id.*)  Mr. Chais was paid handsomely for funneling all of

his investors' money to BLMIS and for his silence.  (Compl. ¶¶ 96, 99.)  He rewarded himself

with millions of dollars in "administration fees" and "profit sharing," even though all he did was

transfer the money to BLMIS.  (*Id.*)  Clearly, Mr. Chais and Defendants knew or should have

known that Mr. Madoff was engaging in fraudulent conduct.

## ARGUMENT

In determining whether a motion to dismiss should be granted, a court must analyze

whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give

rise to an entitlement to relief."  *Iqbal*, 129 S. Ct. at 1950.  In considering a motion to dismiss

under Rule 12(b)(6), "[t]he Court's function . . . is 'not to weigh the evidence that might be

---

[4] The purported "losses" were often remedied in subsequent periods with monumental and patently incredible rates of return that far outpaced the market.  For example, in 2003, Defendant Mark Hugh Chais' account purported to show a negative 89% annual rate of return.  (Compl. ¶ 103(e).)  In 2004, the account rebounded to earn a reported 165% return. (*Id.*)

presented at [a] trial but merely to determine whether the complaint itself is legally sufficient.'" *Jenkins v. New York City Transit Auth.*, 646 F.Supp.2d 464, 467 (S.D.N.Y. 2009) (*quoting Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

Under Federal Rule of Civil Procedure 8(a), all that is required is that the complaint give the opposing party "fair notice of what the . . . claim is and the grounds upon which it rests." *Silverman v. K.E.R.U. Realty, Corp. (In re Allou Distribs.)*, 379 B.R. 5, 31 (Bankr. E.D.N.Y. 2007) (*quoting Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (ellipsis in original). A complaint satisfies the pleading requirement of Rule 8(a) if it contains sufficient factual allegations to enable a defendant to respond. 5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1215 (Civ.3d 2009).

Contrary to the intimation of Defendants' motion, *Iqbal* and *Twombly* do not create a heightened standard of pleading, but instead require that a plaintiff include sufficient, specific factual allegations so as "to render [a] claim *plausible*." *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (emphasis in original). Put another way, a complaint need plead "only enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Here, each of the Trustee's claims are legally sufficient and utterly plausible. Defendants' Motion to Dismiss should be denied.

## I.    THE TRUSTEE'S ALLEGATIONS ARE PLED WITH SPECIFICITY AND ARE PLAUSIBLE.

In Section I of their Motion, Defendants challenge the particularity and "plausibility" of the allegations of fraud against them. They do not, however, identify which of the Trustee's eleven claims they challenge. Citing Civil Rule 9(b) and 8(a), Defendants contend that the Trustee has failed to allege any facts tying them directly to Mr. Madoff and that the Trustee has, instead, improperly "lump[ed] the Defendants together with the allegations asserted against

Stanley Chais." (MTD 10-11.).  Defendants do not, however, deny (a) their knowledge of the

BLMIS accounts identified in the Complaint, (b) their ownership of the BLMIS accounts alleged

in the Complaint, (c) Stanley Chais's dominion and control over their BLMIS accounts, (d) the

fact that they received hundreds of millions of dollars from BLMIS, or (e) that BLMIS was a

Ponzi scheme.  Nor could they.

### A.    The Defendants Mischaracterize The Trustees' Claims.

The Defendants' challenge to the particularity and "plausibility" of the Trustee's

allegations mischaracterizes the Trustee's claims.  Though one would not know this from reading

Defendants' motion, the Trustee has not brought a fraud claim against Defendants.  Nor has the

Trustee alleged that Defendants are co-conspirators of Mr. Madoff or BLMIS.  Rather, the

Complaint advances several Bankruptcy Code and New York law claims for the avoidance of

certain fraudulent transfers made by BLMIS to Defendants.  And in this regard, the Complaint

specifically alleges that Madoff and BLMIS were engaged in a fraud (*see, e.g.*, Compl. ¶¶ 13,

18-31), that transfers of money were made by BLMIS to Defendants (*see, e.g.*, Compl. ¶¶ 27,

96), that Mr. Madoff and BLMIS made the transfers with the intent to defraud (*see, e.g.*, Compl.

¶¶ 23, 25), that BLMIS received less than equivalent value (*see, e.g.,* Compl. ¶¶ 134, 146) or fair

consideration (*see, e.g.*, Compl. ¶ 151) for the transfers to Defendants, and that Defendants knew

or should have known that the transfers at issue were fraudulent (*see, e.g.*, Compl. ¶¶ 27, 103).

Mr. Madoff's fraud is conceded by Defendants (MTD 5), and Defendants do not even

address the Trustee's assertion that BLMIS made the transfers in question with the actual intent

to defraud.  Indeed, Defendants recognize that "[t]he fraudster's very purpose in making

distributions from a Ponzi scheme is to reassure investor-victims that the business is prospering

and all is well."  (MTD 17, citing *Hayes v. Palm Seedlings Partners-A (In re Agric. Research &*

*Tech Group, Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) and *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987); *see also* MTD 33.)  While practically begging the Court to address the Net Equity Dispute outside of the context of the February 2, 2010 hearing on the subject, Defendants do not meaningfully address the Trustee's allegations that Defendants failed to provide reasonably equivalent value for the transfers (as required by the Bankruptcy Code) and that Defendants failed to exchange fair value in good faith (as required by New York law)—likely because the ultimate success of these claims will depend on a fact-based inquiry that cannot be determined on a motion to dismiss.

Instead, citing the particularity and "plausibility" requirements of the Federal Rules of Civil Procedure, Defendants contend that all but one of the Trustee's claims must be dismissed because the Trustee has failed to plead their *direct* involvement in or knowledge of Mr. Chais's and Mr. Madoff's malfeasance.  The Complaint, however, is not deficient in this regard.

### B.    Defendants are Liable for The Conduct and Knowledge of Their Agent

As discussed above, the Complaint is replete with specific allegations of the facts and circumstances giving rise to actual or constructive knowledge on the part of Stanley Chais regarding his and Defendants' fraudulent transactions with BLMIS.  Defendants do not attack the sufficiency of the Trustee's allegations that Mr. Chais was their agent, acting within the scope of his authority.  Defendants also do not dispute that they were the primary beneficiaries of wrongful conduct and accepted and enjoyed the benefits thereof for decades.  (*See, e.g.,* Compl. ¶¶ 100-103.)  Under such circumstances, it is black letter law that the acts and knowledge of agents are imputed to their principals, and that the principals cannot retain the fruits of their agent's conduct.  *Center v. Hampton Affiliates, Inc.*, 488 N.E.2d 828, 829 (N.Y. 1985) ("knowledge acquired by an agent acting within the scope of his agency is imputed to his

principal and the latter is bound by such knowledge although the information is never actually communicated to it"); *546-552 W. 146th St. LLC v. Arfa*, 863 N.Y.S.2d 412, 414 (N.Y. App. Div. 1st Dep't 2008); *Capital Wireless v. Deloitte*, 627 N.Y.S.2d 794, 797 (N.Y. App. Div. 3d Dep't 1995); *CompuDyne Corp. v. Shane*, 453 F.Supp. 2d 807, 824 (S.D.N.Y. 2006) (the principle applies even if the agent never communicated the information to the principal); *Mirror Group Newspapers, plc v. Maxwell Newspapers, Inc.* (*In re Maxwell Newspapers)*, 164 B.R. 858, 866 (Bankr. S.D.N.Y.1994) (citing New York State law); *see also Apollo Fuel Oil v. United States*, 195 F.3d 74, 76-77 (2d Cir. 1999) (when agent acquires knowledge material to employment, such knowledge is imputed to the principal, and corporation can be guilty of knowing violations of law through doctrine of respondeat superior).  Thus, Mr. Chais's knowledge and conduct is fully attributable to Defendants.  And Defendants' vague contention that the Trustee has failed to allege fraud with particularity and "plausibility" fails.  The motion should be denied.

## II.   THE TRUSTEE'S ACTUAL FRAUD CLAIMS HAVE BEEN ADEQUATELY PLED.

In Section II of their Motion, Defendants contend that Counts Three, Five, and Nine of the Complaint must be dismissed because the Trustee has failed to identify each and every specific fraudulent transfer in the Complaint, and that the Trustee's state law actual fraud claim (Count Five) fails because the Trustee has not adequately alleged that these particular Defendants had an intent to defraud.  Defendants' first argument ignores the Trustee's allegations and is wholly unfair given that Defendants themselves control the transactional information in question.  The argument is also another thinly-veiled effort to re-argue the Net Equity Dispute.  Defendants' latter argument is also premised upon case law that has been discredited in this Circuit.  Consequently, both of Defendants' contentions fail, and the motion to dismiss should be denied.

- 11 -

### A.     The Trustee's Claims Have Been Pled With Sufficient Particularity.

Defendants acknowledge that the Trustee has specifically identified each and every

transfer from BLMIS for the thirteen years prior to the filing of this case, including all of the

transfers in the two-year and six-year windows. Defendants contend, however, that the Trustee

has failed to identify which of these transfers he contends are voidable. Not so. The Trustee

alleges that *all* of the identified transfers are voidable. And to the extent that this Court finds that

less than all of the transfers are voidable, the specific transactional information necessary to

make a determination regarding voidability is, at present, exclusively within the control of

Defendants and will only be learned by the Trustee once discovery commences.

> #### 1.     *The Trustee Has Alleged That Mr. Chais And Defendants Did Not Take In Good Faith And That, As A Result, All Of The Transfers Are Voidable.*

In arguing that the Trustee has failed to specify which of the transactions identified in the

Complaint are voidable, Defendants ignore the Trustee's allegations that Defendants did not take

the transfers in good faith and that, as a result, *all* of the transfers are voidable. *See* 11 U.S.C. §

548(c).[5]

First, whether Defendants acted in good faith is an issue of fact which should not be

considered on a motion to dismiss where the plaintiff has adequately alleged those facts. *Rahl v.

Bande*, 328 B.R. 387, 418, n.14 (S.D.N.Y. 2005). *See also*, *Nisselson v. Softbank AM Corp. (In

re Marketxt Holdings Corp.)*, 361 B.R. 369, 400 (Bankr. S.D.N.Y. 2007) (disputed facts

precluded determination, on motion to dismiss, of issue whether defendant acted in good faith in

---

[5] Defendants also subtly ask this Court to create a pleading requirement where none exists. Defendants' arguments ignore the fact that the "good faith" exception of 11 U.S.C. § 548(c) is an affirmative defense, and the absence of good faith need not be pleaded by the Trustee. *Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002) ("section 548(c) designates the transferee's good faith as an *affirmative defense* which may be raised and proved by the transferee at trial").

connection with claimed fraudulent transfers); *N.F.L. Ins. Ltd. v. B & B Holdings, Inc.*, 874 F. Supp. 606, 615 (S.D.N.Y. 1995) (finding that issue whether defendant acted in good faith is issue of fact, not even appropriate at summary judgment stage); *accord*, *In re Luxottica Group S.P.A., Securities Litig.*, 293 F. Supp. 2d 224, 238 (E.D.N.Y. 2003); *Smith v. Arthur Andersen L.L.P.*, 175 F. Supp. 2d 1180, 1204 (D. Ariz. 2001) ("The essential determination of whether . . . Defendants acted in good faith is a question of fact that cannot be decided in the context of a motion to dismiss."); *F.D.I.C. v. Daniel*, 158 F.R.D. 101, 103 (E.D. Tex. 1994); *Resolution Trust Corp. v. Heiserman*, 839 F. Supp. 1457, 1463 (D. Colo. 1993); *Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 174 (N.D. Ill. 1990); *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1064 (N.D. Cal. 1988); *Gilbert v. Bagley,* 492 F. Supp. 714, 738 (M.D.N.C. 1980).

Second, Defendants' argument that the Trustee has failed to plead that *they* did not take in good faith rests, again, on the false premise that Defendants can divorce themselves from the knowledge and actions of their agent, Mr. Chais. That is not the case. Mr. Chais's knowledge and actions are imputed to Defendants, because Mr. Chais was the sole agent with investment discretion for Defendants, an allegation which Defendants cannot dispute in the context of their motion to dismiss. *Center*, 488 N.E.2d at 829; *546-552 W. 146th St. LLC*, 863 N.Y.S.2d at 414; *Capital Wireless*, 627 N.Y.S.2d at 797; *CompuDyne Corp.*, 453 F.Supp. 2d at 824; *In re Maxwell Newspapers, Inc.*, 164 B.R. at 866; *see also Apollo Fuel Oil*, 195 F.3d at 76-77. And, as discussed above, the pleadings amply set out Mr. Chais's lack of good faith; indeed, the Trustee has alleged that Mr. Chais participated, to at least some degree, in Mr. Madoff's fraud, and that Defendants' substantially benefited from that participation.

Third, even if the issue could be resolved in the context of a motion to dismiss, it must be recalled that the Trustee need not even show *bad faith* in order to defeat a defense of good faith. Rather, it is enough that the Trustee alleges that Mr. Chais and Defendants were on inquiry notice of the fraudulent nature of the transfers from BLMIS. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 623, 636 (2d Cir. 1995) ("Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have lead them to inquire further into the circumstances of the transaction, but who failed to make such inquiry."); *Bear Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 23-25 (S.D.N.Y. 2005); *In re Agric. Research and Tech. Group, Inc.*, 916 F.2d at 536 ("if the circumstances would place a reasonable person on inquiry of a debtor's fraudulent purpose, and a *diligent* inquiry would have discovered the fraudulent purpose, then the transfer is fraudulent") (citing *In re Polar Chips Int'l., Inc.*, 18 B.R. 480 (Bankr. S.D. Fla. 1982)). Here, the Complaint alleges that there was an array of "red flags" flying, but that Mr. Chais averted his eyes. (*See, e.g.*, Compl. ¶¶ 103, 104.) The BLMIS accounts managed by Stanley Chais were riddled with evidence of fraud, and Defendants' accounts especially so. All of Mr. Chais's accounts reported suspiciously high and consistent rates of return. (Compl. ¶ 103(a).) And while Mr. Chais' non-family accounts had implausible rates of return, Defendants' rates of return were nothing short of fantastical. (Compl. ¶ 103(b).) Collectively, the accounts held by Mr. Chais's family or for their benefit reported an annual average rate of return of over 39% during the period between 1996 – 2007. (*Id.*) Moreover, on several occasions, certain accounts held by Mr. Chais's family reported "losses" that, on information and belief, were manufactured at Mr. Chais's direction to benefit Defendants, presumably for tax purposes. (Compl. ¶¶ 103(d)-103(f).) These reported "losses" often required the backdating of Defendants' investment records, sometimes by nearly

six months, to ensure that the target loss figure was met.  (Compl. ¶¶ 103(d)-103(f).)  And, on

information and belief, Mr. Chais knowingly deceived his clients regarding the fact that all of

their money was invested with Mr. Madoff.  (Compl. ¶ 104(b).)  All of these facts, not to

mention the other "red flags" relating to the manner in which BLMIS operated—e.g., BLMIS's

self-custody of investors' assets, its willingness to forgo the customary fee for providing

investment services, and the highly secretive nature of the investment—placed both Mr. Chais

and Defendants on inquiry notice.

Because the Trustee has adequately alleged the absence of good faith, an issue which

cannot ultimately be decided on a motion to dismiss, the Trustee has also specifically alleged that

*all* of the transactions identified in the Complaint are voidable.  Defendants' argument regarding

specificity therefore fails.

### 2.       *Defendants Possess The Transaction Information In Question.*

Defendants' complaints regarding the supposed lack of specificity are also disingenuous

because they ignore the fact that the detailed transaction information to which Defendants claim

they are entitled is, at present, uniquely in their own custody.  It is also well accepted that greater

liberality is afforded in the pleading of fraud in bankruptcy cases because it is often a trustee,

who is a third party to the fraudulent transaction, who must plead fraud based on second-hand

knowledge for the benefit of the estate and its creditors.  *See Sec. Investor Prot. Corp. v. Stratton

Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999).  And "[w]hen the trustee's lack of

personal knowledge is compounded with complicated issues and transactions which extend over

lengthy periods of time, the trustee's handicap increases[,] and courts therefore should afford

him or her even greater latitude." *Id.*; *see also In re OPM Leasing Servs., Inc.*, 35 B.R. 854, 862

(Bankr. S.D.N.Y. 1982) (Lifland, J.) (liberalized pleading of fraud warranted where trustee has

- 15 -

no personal knowledge of the facts, records, and conversations regarding transactions between debtor and defendant). It would be improper to dismiss the claims against Defendants while they alone have access to essential facts regarding the transfers at issue. *See Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, 399 B.R. 352, 365 (Bankr. D. Mass. 2009) (denying motion to dismiss constructive fraud claim; although specific transfers were not identified, "Jalbert [the trustee] cannot at this stage be required to do more" than "give a time frame and specify the nature of the transfers" because "[h]e is an outsider to these transactions and will need discovery to identify the specific transactions by date, amount and the manner in which they were effected"). Consequently, dismissal is improper and the parties should be permitted to proceed with discovery.

### 3. *Defendants' Arguments Regarding The Net Equity Dispute Are Improper.*

Finally, Defendants' arguments regarding the sufficiency of the Trustee's actual fraud claims are a subtle effort to challenge, again, the Trustee's interpretation of "net equity" as defined under Section 78*lll*(11) of SIPA in its determination of customer claims. *See* 15 U.S.C. § 78*lll*(11) (2009). This issue cannot be resolved in the context of Defendants' motion, and Defendants should not be permitted to re-argue this point here.

As this Court well knows, the issue of "net equity" applies to the determination of all customer claims in this SIPA liquidation, as well as claims brought by the Trustee. Accordingly, it will be heard by the Court on February 2, 2010, after briefing by interested parties in accordance with this Court's September 16, 2009 Scheduling Order. (*See* Order Scheduling Adjudication of "Net Equity" Issue, Sept. 16, 2009 (Docket No. 437); *see also* Mem. Dec. & Order Granting Trustee's Mot. to Dismiss, Sept. 10, 2009 [hereinafter "Peskin Order"] (Docket No. 417).) As this Court stated in its decision dismissing a complaint by another investor,

"[w]ith more than 15,000 claims filed in the Madoff proceeding and multi-billions of dollars at stake, the issue of how the Trustee determines claimants' 'net equity' for distribution purposes is a central question to be determined in this SIPA liquidation." (Peskin Order at 2.) The Court's reasoning in that decision, dismissing an investor's complaint for a declaration of the scope of her claims, is equally applicable here:

> The Scheduling Motion will address the concerns of a variety of customers with different account histories and balances, including both net winners and net losers, and will provide everyone involved with the benefits from the submission of a comprehensive and complete record on this issue. Allowing Plaintiffs, who represent only one group of customers…to proceed with the adversary proceeding to determine the Net Equity Issue that will apply to all customer claims will yield an incomplete record that might result in piecemeal litigation on this issue. Moreover, Plaintiffs will suffer no prejudice in having the Net Equity Issue decided pursuant to the Scheduling Motion while other customers will suffer great harm if Plaintiffs are permitted to proceed without their participation.

(*Id*. at 12-13, as amended per the Errata Order dated Sept. 11, 2009.) Moreover, the precise amount of equity in the customer accounts is a heavily factual issue that remains under investigation and cannot be decided in the context of a motion to dismiss. *See, e.g., Higazy v. Templeton*, 505 F.3d 161, 174 (2d Cir. 2007) ("Where there is a dispute about the material facts, this question must be resolved by the fact finder.") (citation omitted). Defendants cannot be permitted to reargue this issue in the context of a motion to dismiss.

## B.       Defendants Misstate The Law Regarding NYDCL § 276.

Defendants also argue that Count Five of the Complaint should be dismissed because New York law requires fraudulent intent on the *transferee's* part to prove actual fraud.[6] (MTD 19-20.) To the contrary, the plain language of Section 276 of the NYDCL establishes that the relevant intent is that of the *transferor*, not the transferee. *Bayou*, 396 B.R. at 826, n.5 ("The statute itself makes this clear. Section 276 is concerned only with a 'conveyance made . . . with intent,' and only a transferor can be said to have 'made' a conveyance. There is no reference in this provision to the transferee or the transferee's intent."). By contrast, section 276-a of New York Debtor and Creditor law, which governs the award of attorneys' fees in an action to set aside a fraudulent conveyance, provides for attorneys' fees when a conveyance is found to have been "made by the debtor *and received by the transferee* with actual intent . . . to hinder, delay or defraud either present or future creditors." N.Y. Debt. & Cred. § 276-a (McKinney 2009) (emphasis added). Section 276-a demonstrates that when the state legislature intended to require transferee intent it knew how to do so. It therefore appears that the omission of any reference to transferee intent in section 276 was deliberate, and that the Trustee need only allege and prove the intent of the transferor, here, BLMIS, in order to prevail on a claim of actual fraud under New York state law.

---

[6] Notably, however, Defendants make no legal argument challenging the sufficiency of the Trustee's Bankruptcy Code claims for avoidance of the transfers based on actual fraudulent intent. This is because Defendants have no basis to raise any such challenge. *See, e.g., Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. at 8 (where debtor is engaged in a Ponzi scheme, actual intent to defraud may be presumed as a matter of law); *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 429 (S.D.N.Y. 2006) (same). This so-called "Ponzi presumption" is based on the recognition that "transfers made in the course of a Ponzi scheme could have been made for no other purpose than to hinder, delay, or defraud creditors." *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Investment Fund Ltd.)*, 397 B.R. at 8 (*quoting Gredd v. Bear, Stearns Sec. Corp. (In re Manhattan Fund Ltd.)*, 359 B.R. 510, 517-18 (Bankr. S.D.N.Y. 2007).

Controlling authority also confirms that the transferee's intent is irrelevant for purposes of Section 276 of the NYDCL. *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005); s*ee also, HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995) ("The 'good faith' in § 272 is the good faith of the transferee . . . By contrast, to prove actual fraud under § 276, a creditor must show intent to defraud on the part of the transferor."). *Accord, Geron v. Schulman (In re Manschul Contr. Corp.)*, Nos. 97 CIV. 8851(JGK), 99 CIV. 2825(JGK) 2000 U.S. Dist. LEXIS 12576, at *128 (S.D.N.Y. Aug. 29, 2000) ("It is not necessary under DCL § 276 to show fraudulent intent on the part of the transferee.").[7]  The Complaint pleads Madoff's fraud in detail.  (Compl. ¶¶ 18-31.)  And Defendants do not contest the issue.  (MTD 5.)

Defendants' mistaken contention that the Trustee must establish fraudulent intent on the transferee's part ultimately rests on a single case which has been discredited, *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000), *corrected*, 329 B.R. 17 (Bankr. S.D.N.Y. 2005).  The Court re-opened *In Re Kovler* for the very purpose of correcting it, acknowledging that "the Court mistakenly misattributed a quote and misstated the propositions for which several cases stand . . . because these errors misstate and misquote decisions of other courts, they should be corrected." *In Re Kovler*, 329 B.R. at 18.  *In Re Kovler*, as corrected, no longer states that mutual fraudulent intent is required to recover an actual fraudulent transfer under Section 276. Indeed, the corrected *In re Kovler* decision *deletes* the sentence that read: "[m]utual fraudulent intention on the part of both parties to the transaction is required . . ." *Id*. at 18, and clarifies that "actual intent to defraud is a prerequisite for an award of *attorneys' fees* under Section 276-a,

---

[7]*See also Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 999 (S.D.N.Y. 1991) (under section 276 plaintiff need not prove transferee's intent); *Le Café Crème, Ltd. v. Le Roux (In re Le Café Crème, Ltd.*), 244 B.R. 221, 239 (Bankr. S.D.N.Y. 2000) (same); *Stratton Oakmont, Inc.*, 234 B.R. at 318 (same).

and *that* intent [in order to award attorneys' fees] must be mutual." *Id.* at 19 (emphasis added).

Every case cited by Defendants ultimately relies on the flawed, subsequently corrected statement

in *In Re Kovler*.[8] Paring away the flawed authority, controlling precedent unequivocally

establishes that the Trustee has properly pled his claim under Section 276 of the NYDCL in

Count Five of the Complaint, regardless of the transferee's intent.

Assuming, *arguendo*, that Section 276 of the NYDCL requires the Trustee to plead actual

fraudulent intent on the part of the transferee, the allegations in the Complaint are more than

sufficient. For the Trustee has alleged that Mr. Chais actively participated in certain aspects of

the fraud at BLMIS. (Compl. ¶ 103.) Moreover, the requirements for pleading fraudulent intent

on the part of the transferee would, presumably, be analogous to those applicable to pleading the

transferor's intent, whereby the pleader may rely on the "badges of fraud." *See, e.g., In re Sharp*

*Int'l Corp.*, 403 F.3d at 56.[9] As such, actual fraudulent intent may be inferred from the

circumstances surrounding the transaction, including the relationship among the parties and the

"unusualness" of the transaction. *HBE Leasing Corp.*, 48 F.3d at 639. Here, the Trustee has

alleged that the Defendants' agent, Stanley Chais, was a long-time associate of Mr. Madoff, and

had unusually close contact with Mr. Madoff. (*See, e.g.*, Compl. ¶¶ 33, 99.) The secrecy

surrounding these multimillion dollar transactions between Mr. Chais and BLMIS also makes the

---

[8] MTD 19-20 (citing *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007); *In re MarketXT Holdings Corp.*, 361 B.R. at 396; *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.*), 337 B.R. 791, 805 (Bankr. S.D.N.Y. 2005); and *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005)). *Andrew Velez* made no holding with respect to section 276 and relied, in dicta, on *In re Park S. Sec., LLC* and *In re MarketXT Holdings Corp.*, 361 B.R. 369 (in turn relying solely on *Park South* and *Manhattan Investment Fund*). *Park South* merely cites to *Manhattan Investment Fund*, which makes no holding with respect to section 276 and cites *Kovler* for a statement, in dicta, regarding the transferee's intent. All these cases can be traced back to *Kovler*, which was subsequently abrogated by the *Kovler* court.

[9] Several of the traditional badges of fraud do not precisely correlate to the conduct of a transferee because, again, the badges are aimed at showing *transferor's* fraudulent intent. *See, e.g.,* the nonexclusive list of "badges" set forth in *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

transactions at issue highly unusual.  (Compl. ¶ 104(b).)  Consequently, the Trustee has

adequately alleged the transferee's fraudulent intent, and even under Defendants' flawed and

outdated authority, Count Five of the Complaint survives the motion to dismiss.

## III.    THE TRUSTEE HAS ADEQUATELY ALLEGED CONSTRUCTIVE FRAUD.

In Section III of their motion, Defendants seek to dismiss Counts Four, Six, Seven, and

Eight because the Trustee has, supposedly, failed to plead that any distributions from BLMIS to

Defendants exceeded their principal contribution plus an unknown amount of "expected returns"

had BLMIS "honestly administered their investment."  (MTD 20-23.)  Defendants' contentions

in this regard are, again, an effort to prematurely argue the Net Equity Dispute, and there is

simply no legal support for Defendants' claim that they are entitled to an unstated amount of

"expected returns."

### A.    The Trustee's Constructive Fraud Claims Are Sufficiently Pled.

Though couched as a challenge to the adequacy of the Trustee's pleadings, Defendants'

true purpose is to create a platform for arguing the Net Equity Dispute.  The Trustee's pleadings

are wholly sufficient, for when a complaint alleges constructive fraud, the heightened

requirements of Federal Rule of Civil Procedure 9(b) do not apply.  *See*, *e.g., Drenis,* 452 F.

Supp. 2d at 428-29; *Spanierman Gallery, PSP v. Love*, 320 F. Supp. 2d 108, 113 (S.D.N.Y.

2004);  *Sec. Investor Protect. Corp.*, 234 B.R. at 319.  The Trustee must only "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at

555 (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A transfer may be avoided as constructively fraudulent under the Bankruptcy Code if,

among other things, the transferee received money from the debtor for which the transferee did

not provide "reasonably equivalent value."  11 U.S.C. § 548(a)(1)(B) (2009).  The parallel

provision in the New York Debtor and Creditor Law permits a trustee to avoid a conveyance that was made without "fair consideration."  N.Y. Debt. & Cred. Law § 273 (McKinney 2009).  "Fair consideration" under New York law is defined generally the same as "reasonably equivalent value" under the Bankruptcy Code, except that it also requires that the transferee provided the value or consideration "in good faith."  N.Y. Debt. & Cred. Law § 272 (McKinney 2009); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008).  The question of whether the debtor received fair consideration for a transfer is a highly fact-based inquiry that requires an examination into the totality of circumstances, and therefore is not properly before the Court on a motion to dismiss.  *See, e.g.*, 5 *Collier on Bankruptcy* ¶ 548.05(1)(b) (2009) ("In order to determine if a fair economic exchange has occurred in a case of a suspected fraudulent transfer, the bankruptcy court must analyze all the circumstances surrounding the transfer in question.").

Defendants concede that when investors invest in a Ponzi scheme, payments that exceed their investments are not made for reasonably equivalent value and constitute fraudulent conveyances that may be recovered by the Trustee.  *See, e.g., Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 640 (2008) ("Where causes of action are brought . . . against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ."); *Sender v. Buchannan (In re Hedged-Investments Assocs.)*, 84 F.3d 1286, 1290 (10th Cir. 1996); *Scholes v. Lehmann*, 56 F.3d 750, 757-58 (7th Cir. 1995); *Bayou Superfund, LLC v. WAM Long/Short Fund II, LLP (In re Bayou Group, LLC)*, 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) ("Plaintiffs are correct in asserting in their brief that virtually every court to address the question has held unflinchingly that to the

extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.") (internal quotations omitted); *In re Taubman*, 160 B.R. 964, 986 (Bankr. S.D. Ohio 1993). And the Trustee has alleged that Defendants withdrew fictitious profits in excess of their investment in BLMIS.

The Complaint alleges that Mr. Chais and Defendants withdrew more than $1,000,000,000 from the sixty BLMIS accounts they controlled (*see, e.g.*, Compl. ¶ 103(c)), and the Trustee's continuing investigation indicates that the actual number is greater than $1,000,000,000. The Trustee has alleged that much of this amount consists of fictitious profit generated by a Ponzi scheme is, in reality, nothing more than money obtained from other investors. (*See, e.g.*, Compl. ¶¶ 23-27, 102, 103, 105-110.) Even Defendants' principal investments in BLMIS were derived from other investors' money, as much of it came from the commissions and fees Mr. Chais paid to himself for investment management services that he was not, in fact, providing. (Compl. ¶¶ 92, 97, 99, 102.) The Trustee specified dates, methods of payment, and amounts of avoidable transfers in the Complaint. (*See* Compl., Ex. B.) These allegations put Defendants on ample notice of the claims against them and the bases of these claims, and satisfies the Trustee's pleading obligations. *See, e.g., Drenis,* 452 F. Supp. 2d at 428-29 ("There is no argument that plaintiffs' pleadings fail to meet" constructive fraud pleading standard where plaintiffs alleged that defendants received distributions that exceeded their contributions to a Ponzi scheme); *In re Payton Constr. Corp.,* 399 B.R. at 365 (identification of time frame and nature of the transfers sought to be avoided was sufficient notice to defendant). The Trustee has additionally alleged that the specified transfers were made for less than fair consideration because Mr. Chais and Defendants failed to act in good faith. *See In re Jacobs*,

394 B.R. at 662.  These allegations are sufficient to show Defendants' lack of fair consideration for each transfer alleged.

**B.    Defendants' Efforts To Argue Net Equity Are Inappropriate.**

Defendants' arguments regarding the Trustee's constructive fraud allegations are but another example of their effort to reargue Net Equity.  As set forth above, the Net Equity Dispute will be heard by the Court, after briefing by interested parties in accordance with this Court's September 16, 2009 Scheduling Order.  (*See* Order Scheduling Adjudication of "Net Equity" Issue, Sept. 16, 2009.)  And under whatever method the Court ultimately adopts, the precise amount of equity in the customer accounts is a heavily factual issue that remains under investigation and cannot be decided in the context of a motion to dismiss.  *See, e.g., Higazy*, 505 F.3d at 174.

**C.    Principal Sum Does Not Include "Expected Returns."**

Finally, there is no merit to Defendants' contention that they are entitled to retain an unspecified amount of "expected returns."  As discussed above and as Defendants admit, investors in a Ponzi scheme, regardless of their good faith, must surrender to the trustee the false profit they obtained during their participation in the scheme.  While a good faith transferee has the right to retain payment for a bona fide antecedent debt, fictitious profits from a Ponzi scheme do not constitute such a debt.  This is because an investor in a Ponzi scheme has no legitimate claim to fictitious profits that, in fact, consist of money invested by other investors.  To the extent the debtor promised such profits to the investor, the promise was fraudulent, and courts will not enforce a fraud to the detriment of other innocent creditors.  *See Donell*, 533 F.3d at 770; *In re Hedged-Investments Assocs.*, 84 F.3d at 1290; *Scholes*, 56 F.3d at 757-58; *Bayou*

*Superfund, LLC v. WAM Long/Short Fund II, LLP (In re Bayou Group, LLC)*, 362 B.R. at 636; *In re Taubman*, 160 B.R. at 986.

Defendants cite one unpublished case, *Visconsi v. Lehman*, No. 06-3304, 2007 U.S. App. LEXIS 19088 (6th Cir. Aug. 8, 2007), in support of their position. In *Lehman*, the circuit court affirmed enforcement of an arbitration award against what was at the time a solvent entity. Lehman Brothers was alleged to have failed to supervise a stockbroker in its employ. The investor brought an arbitration claim against Lehman, and the arbitrator was urged to award the investor the full amount of his expectancy damages as remedy for the broker's fraud. *Id.* at *5-7.

The *Lehman* case, however, is inapposite, and it contradicts the vast body of case law supporting the Trustee's avoidance claim. The *Lehman* case involved the enforceability of an arbitrator's award against a solvent party; it had nothing whatsoever to do with bankruptcy. The main issue in *Lehman* was whether the defendants, having fought to enforce the arbitration clause in their contract with the plaintiffs, would be bound by the arbitrator's determination of damages. Enforcing the arbitrator's award was neither against public policy nor to the detriment of other creditors since Lehman was not in bankruptcy and the rights of other creditors were not implicated. *See, e.g., Scholes*, 56 F.3d at 757-58 (argument that it may seem "only fair" that investor be entitled to profits on trades made with his money was true as between investor and Ponzi scheme operator, but was not true as between investor and other investors); *In re Taubman*, 160 B.R. at 986.

The case analogous to Defendants' situation is not *Lehman* but *In re Hedged Investments Assocs.*, 84 F.3d 1286. There, an investor in an investment fund that turned into a Ponzi scheme attempted to defend against a trustee's avoidance claim for fictitious profit. Like Defendants, the investor argued that under applicable law (in her case, Colorado), she would have had a claim for

her full expectancy damages and that therefore the full amount of the transfers had been for value. The Tenth Circuit rejected her argument, reasoning that as a matter of public policy, a Colorado state court would not permit an investor in a bankrupt Ponzi scheme to enforce her fraudulent contract with the defendant at the expense of other investors. Since she had no enforceable claim for amounts beyond her initial investment, the debtor had no debt to her for those amounts and she had not provided value for those transfers. *Id.* at 1289. Whatever rights to expectancy damages an investor theoretically may have as a fraud plaintiff, in other words, do not overcome the rule that payments to investors in a Ponzi scheme in excess of the amounts of their investments are avoidable as fraudulent transfers. Defendants' arguments, therefore, fail.

## IV. THE RELEVANT DATE FOR THE SIX YEAR CONVEYANCES IS CORRECTLY ALLEGED.

In Section IV of their motion, Defendants expend much energy in arguing that transfers that occurred within six years of the filing of the bankruptcy case on December 11, 2008, but more than six years before the adversary filing on May 1, 2009, should not be recoverable under 11 U.S.C. § 544(b) (2009). In other words, Defendants challenge this basis for recovering transfers made to them in the period between December 11, 2002 and May 1, 2003. Defendants' argument is illogical and unsupported by statute or case law. It is also irrelevant, because the underlying state law statute of limitations on such transfers did not actually expire before the adversary proceeding was filed, having been tolled by, among other things, the very fact of the filing of the bankruptcy petition.

### A. State Statutes of Limitations Are Relevant Only Until The Bankruptcy Case Is Filed.

The Bankruptcy Code not only creates the causes of action referred to by 11 U.S.C. § 544(b), it specifically provides the limitations period within which they are to be brought.

Accordingly, the case law properly holds that if the cause of action exists at the petition date, the only applicable statute of limitations for bringing it thereafter is 11 U.S.C. § 546(a) (2009).

Under New York state law, a transferor cannot avoid its own transfers—the right belongs to the creditors or, following bankruptcy, debtor in possession or trustee. Consequently, a cause of action for a trustee in bankruptcy is created by the Bankruptcy Code, and it comes into being at the same time as the bankruptcy case itself. *See, e.g. Mahoney, Trocki & Assocs., Inc. v. Kunzman (In re Mahoney, Trocki & Assocs., Inc.)*, 111 B.R. 914, 920 (Bankr. S.D. Cal. 1990) ("a fraudulent transfer action maintained by a debtor-in-possession under 11 U.S.C. section 544(b) is clearly the creation of the Bankruptcy Code"); *Rosania v. Haligas (In re Dry Wall Supply, Inc.)*, 111 B.R. 933, 935 n.2 (D. Colo. 1990) (cause of action under Section 544(b) is not one that could have been brought by the debtor).

A federal cause of action is governed by the federal statute of limitations, where one exists. Only if no federal statute of limitations applies do the federal courts look to a state statute. *See, Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 414 (2005); *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 158-161 (1983); *DirecTV, Inc. v. Webb*, 545 F.3d 837, 847 (9th Cir. 2008). In this instance, 11 U.S.C. § 546(a) specifically provides a statute of limitations for, among other things, proceedings under Section 544. Neither Section 544 nor Section 546, nor any other provision of the Bankruptcy Code, provides that the Trustee must continue to look to the procedural limitations of state law once the Trustee has acquired the substantive rights given to him by Section 544 of the Bankruptcy Code. Instead, Section 546(a) specifically provides the operative limitations period for the rights

created by Section 544. In other words, and contrary to the assumption of Defendants, Section 546(a) does not so much toll the state statute as supersede it.[10]

### 1. Defendants' Argument Contravenes 25 Years Of Bankruptcy Case Law.

More than 25 years of case law under the Bankruptcy Code confirms that the state law statute of limitations does not have any continued effect after the bankruptcy case is filed and the Trustee's Section 544(b) rights arise. *See, e.g., Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*, 100 B.R. 157, 164 (Bankr. S.D.N.Y. 1989); *Bloom v. Fry (In re Leach)*, 380 B.R. 25, 29-30 (Bankr. D.N.M. 2007); *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 677-78 (S.D. Tex. 2007); *Sears Petroleum & Transp. Co. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 2d 212, 225 (D. Mass. 2006); *Mi-Lor Corp. v. Gottsegen (In re Mi-Lor Corp.)*, 233 B.R. 608 (Bankr. D. Mass. 1999); *Tsai v. Bldgs. By Jamie, Inc. (In re Bldgs. by Jamie, Inc.)*, 230 B.R. 36, 45 (Bankr. D.N.J. 1998); *In re Princeton-N.Y. Inv., Inc.*, 219 B.R. at 65-66; *Levit v. Spatz (In re Spatz)*, 222 B.R. 157, 164 (N.D. Ill. 1998); *Bay State Milling Co. v. Martin (In re Martin)*, 142 B.R. 260, 265-66 (Bankr. N.D. Ill. 1992); *Mancuso v. Cont'l Bank Nat'l Ass'n Chicago (In re Topcor, Inc.)*, 132 B.R. 119 (Bankr. N.D. Tex. 1991); *In re Mahoney, Trocki & Assocs., Inc.*, 111 B.R. at 916-18; and *In re Dry Wall Supply, Inc.*, 111 B.R. at 936-37. In each of these cases, the trustee filed an avoidance action to avoid a transfer that had taken place longer ago than the period specified by the primary state statute of limitations. However, at the time the bankruptcy petition was filed, the creditors in whose shoes the trustee was standing were not yet barred. Each of these courts accordingly held that the trustee's action under Section 544(b) was timely because it was filed within the period prescribed by 11 U.S.C. § 546(a).

---

[10] *Cf. In re Princeton-New York Inv., Inc v. Gibbons (In re Princeton-New York Inv., Inc.)*, 219 B.R. 55, 66 (D.N.J. 1998), and *Am. Founders Fin., Corp.*, 365 B.R. at 677-78, finding that Section 546(a), because of preemption, provides the only relevant time period within which a trustee must bring a Section 544(b) action, even if the time limits are set by state law pursuant to a statute of repose rather than a statute of limitations.

Moreover, numerous cases in other contexts have also stated plainly that so long as the applicable statute of limitations has not expired prior to the filing of the bankruptcy case, the trustee may bring a Section 544(b) avoidance action at *any* point during the period set out in Section 546(a). *E.g., O'Connell v. Shallo (In re Die Fleidermaus LLC),* 323 B.R. 101, 107 (Bankr. S.D.N.Y. 2005); *G-I Holdings, Inc. v. Those Parties Listed on Exhibit A (In re G-I Holdings, Inc.),* 313 B.R. 612, 646 (Bankr. D.N.J. 2004); *Orr v. Bernstein (In re Bernstein),* 259 B.R. 555, 558 (Bankr. D.N.J. 2001); *Glosser v. S. & T. Bank (In re Ambulatory Med. & Surgical Health Care),* 187 B.R. 888, 901 (Bankr. W.D. Pa. 1995); *Kaliner v. Load Rite Trailers, Inc. (In re Sverica Acquisition Corp.),* 179 B.R. 457, 466 (Bankr. E.D. Pa. 1995); *Tabas v. Gigi Adver. P'ship (In re Kaufman & Roberts, Inc.),* 188 B.R. 309, 312, 314 (Bankr. S.D. Fla. 1995); *Browning v. Williams (In re Silver Wheel Freightlines, Inc.),* 64 B.R. 563, 568 (Bankr. D. Or. 1986); *L.A. Clarke & Son, Inc. v. Donald (In re L.A. Clarke & Son, Inc.),* 59 B.R. 856, 860-862 (Bankr. D.D.C. 1986). Collier's also agrees unequivocally. 5 *Collier on Bankruptcy* ¶ 546.02[1][b] (2009) ("If the state law limitations period governing a fraudulent transfer action has not expired at the commencement of a bankruptcy case, the trustee may bring the action pursuant to Section 544(b), provided that it is commenced within the Section 546(a) limitations period.") Indeed, even Defendants concede that the case law is against them. (MTD 25.)[11]

---

[11] Some of the cases Defendants cite even acknowledge that the state statute of limitations under Section 544 has no relevance after the bankruptcy petition date. *See, e.g., Barr v. Charterhouse Group Int'l, Inc. (In re Everfresh Beverages, Inc.),* 238 B.R. 558, 571-3 (Bankr. S.D.N.Y. 1999) (refers to Section 546 as the "only relevant" statute of limitations while holding that the plaintiff cannot use the state statute of limitations or Section 108(a) to extend his time for bringing Section 544(b) suits past the limit that Section 546 sets); *Global Crossing Estate Rep. v. Winnick,* No. 04 Civ. 2558, 2006 U.S. Dist. LEXIS 53785, at *19, *19 n. 6 (S.D.N.Y. Aug. 3, 2006) (citing 4 *Collier on Bankruptcy* ¶ 544.03[2] at 544-21, 544-22 (1989) for the proposition that "[o]nce the case has commenced, section 546(a) . . . specifies the time within which the trustee must act under section 544(b)" and further commenting at footnote 6, "On the other hand, a state statute of limitations may be relevant to a section 544(b) claim if it expires before the bankruptcy case commences . . . .").

### 2. There Is No Evidence Of Contrary Congressional Intent.

The policies of the Bankruptcy Code also strongly support allowing the trustee (or debtor in possession) adequate time to determine which causes of action are viable and should be brought. Otherwise, valuable rights that could be asserted for the benefit of all the creditors would simply expire without recognition. There is no legislative history to suggest that Congress intended any other result. Moreover, Congress has had many opportunities to "correct" the statute as part of its periodic review of the Bankruptcy Code if the many, many courts that have ruled on the issue over the decades were doing so contrary to its intentions. While later amendments are not considered the best evidence of original legislative intent, they are still accorded interpretive weight. *See, e.g., Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 808 (9th Cir. 1989) (noting that amendments dealing with topic at issue but leaving existing interpretations undisturbed should be considered when analyzing prior congressional intent).

In short, all of the courts considering the issue over the last quarter century have found against the Defendants' position, and Congress has never acted to change the effect of such cases, despite repeatedly having the opportunity to do so while making other amendments to Section 546. This Court should reject Defendants' position as well.

### B. Regardless, The State Statute Of Limitations Has Not Run.

In any event, Defendants' entire Section 546 argument is irrelevant because the state law statute of limitations *has not expired*. Defendants' entire argument is falsely premised on the belief that, as to certain transactions, the New York state statute of limitations applicable to fraudulent transfer expired between the filing of the bankruptcy case and the commencement of the instant adversary proceeding. Because of the tolling provisions provided by both New York

and bankruptcy law, however, no underlying creditor has had his or her New York law avoidance claim expire. So even if Defendants could overcome the vast body of case law discussed above, their argument fails because avoidance actions against transfers occurring more than six years prior to the adversary filing, and less than six years prior to the filing of the instant bankruptcy case, are indisputably timely.

> ### 1. The Bankruptcy Case Filing Stays The Running Of The Statute Of Limitations Under New York Law.

New York law provides that "[w]here the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action must be commenced." N.Y. C.P.L.R. § 204 (McKinney 2009). Section 362 of the Bankruptcy Code, which automatically stays all creditors from filing fraudulent conveyance recovery cases while the bankruptcy case is proceeding as to their debtor, *see FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125 (2d Cir. 1992), is precisely the type of stay that tolls New York statutes of limitations pursuant to N.Y. C.P.L.R. § 204(a). *E.g.*, *Mercury Capital Corp. v. Shepherds Beach, Inc.*, 723 N.Y.S.2d 48 (N.Y. App. Div. 2d Dep't 2001); *CDS Recoveries, L.L.C. v. Davis*, 715 N.Y.S.2d 517, 519 (N.Y. App. Div. 3d Dep't 2000); *Zuckerman v. 234-6 W. 22nd St. Corp.*, 645 N.Y.S.2d 967, 971 (N.Y. Sup. Ct. 1996) (automatic stay tolls statutes of limitations under New York law). Because a creditor's state law fraudulent conveyance action is subject to the automatic stay of the Bankruptcy Code, C.P.L.R. § 204(a) stays the running of the statute of limitations as to that creditor.

When a state law statute of limitations is tolled as to a creditor, a Trustee who is standing in the shoes of that creditor pursuant to 11 U.S.C. § 544(b) likewise gets the benefit of that

tolling.[12]  Because C.P.L.R. § 204(a) stayed the running of the six year statute of limitations

applicable to the Trustee's claims under Section 544(b), that statute of limitations could not have

expired in the period between the commencement of this case and the filing of the instant

adversary proceeding, no matter which transfers are considered.

### 2. *Section 108(c) Of The Bankruptcy Code Also Stays The Running Of The New York Statute Of Limitations.*

The same result is reached pursuant to 11 U.S.C. § 108(c) (2009), which likewise

suspends the running of statutes of limitations against creditors when they are prevented by

Section 362's automatic stay from commencing or continuing a civil action in a court other than

in a bankruptcy court on a claim against the debtor.  The reason for this is set out in *In re

Colonial Realty Co.,* 980 F.2d at 127-8.  In that case, the FDIC sought, pursuant to its own

statutory avoidance authority, to recover assets alleged to have been fraudulently conveyed,

prepetition, by a bankruptcy debtor.  *Id.*  Although the court concluded that neither the FDIC

action nor the property it sought to recover were technically "property of the estate," it

nonetheless held the action barred because the FDIC was effectively acting "to recover a claim

against the debtor" and the automatic stay therefore applied.  *Id.* at 132.

For the same reason, a fraudulent conveyance action, even though the debtor is not a

defendant, is an action to recover "a claim against the debtor," within the meaning of Section

108(c), thus triggering the automatic stay.  New York state law fixes a period for commencing

---

[12] *See, e.g., In re G-I Holdings, Inc.*, 313 B.R. at 639-40 (holding a creditor committee standing in the shoes of a trustee could benefit from the one year tolling of the state statute of limitations for asbestos claims); *In re Bernstein*, 259 B.R. at 560 (denying defendant's motion to dismiss because the trustee standing in the shoes of an unsecured creditor may have been able to prove that the unsecured creditor could have availed himself of a one year tolling provision and timely filed its complaint alleging fraudulent transfers as of the petition date); *In re Sverica Acquisition Corp.*, 179 B.R. at 470 (noting the common law "adverse domination" tolling doctrine may apply to a trustee standing in the shoes of a creditor); *In re Lyons*, 130 B.R. 272, 279-81 (Bankr.N.D.Ill.1991) (stating that the doctrine of equitable tolling could apply to a trustee standing in the shoes of a creditor)**.**

fraudulent conveyance actions outside of bankruptcy court, and the automatic stay prevents the creditor from bringing such actions. Such an action therefore fits squarely within the Section 108(c) savings provision. Absent such a provision, a bankruptcy filing which is later dismissed could cost a creditor its only chance to file such a fraudulent conveyance recovery action.

The Second Circuit has expressly recognized that during the pendency of a bankruptcy case, Section 108(c) protects a creditor's right to bring a state law fraudulent conveyance action against expiration, and that as a result the trustee's right to bring an action under 11 U.S.C. § 544(a) also is preserved by Section 108(c). In *Belford v. Martin-Trigona* (*In re Martin-Trigona*), 763 F.2d 503 (2d Cir. 1985), a non-debtor defendant argued that the statute of limitations barred a fraudulent conveyance claim because the trustee did not bring the action until 1983, five years after the allegedly fraudulent conveyance and after the three year state law limitations would have expired. *Id.* at 506. The Second Circuit dismissed this argument as invalid because of the effect of Section 108(c), stating "[t]his argument ignores the tolling of the statute of limitations on December 2, 1980, when the bankruptcy petition was filed. The complaint was timely filed." *Id.* (citing 11 U.S.C. § 108(c) (1982)).

Accordingly, Section 108(c) of the Bankruptcy Code also has prevented the running of the New York state statute of limitations as to fraudulent conveyance actions that could have been brought by a creditor up through the bankruptcy filing date.

### 3. The State Statute Of Limitations Is Also Equitably Tolled As To Both Real And Hypothetical Creditors For Claims Based On Actual Fraud.

Finally, the running of the statute of limitations is also equitably tolled under New York law. N.Y. C.P.L.R. §§ 213(8) and 203(g) both permit a plaintiff to assert a fraud claim that would otherwise be untimely if the plaintiff does so within two years of the time when the plaintiff discovered the fraud or could with reasonable diligence have done so. N.Y. C.P.L.R. §§

203(g) & 213(8) (McKinney 2009). As pled by the Trustee and discussed below, actual creditors

exist who could not reasonably have known of the fraud and, thus, have two years from

discovery to bring their causes of action.

For that matter, the statute also is tolled as to hypothetical creditors, in whose shoes the

Trustee may stand pursuant to 11 U.S.C. § 544(a) (Trustee has the right to "avoid any transfer of

property of the debtor . . . that is voidable by" certain hypothetical creditors, including a creditor

who extends credit and has an execution returned unsatisfied). Such rights of the Trustee are

"without regard to any knowledge of the trustee or of any creditor." 11 U.S.C. § 544(a) (2009).[13]

Both Sections 275 and 276 of the New York Debtor and Creditor Law make transfers available

as to "future creditors," such as a prior claim under 11 U.S.C. § 544(a), and Section 274 makes

available as to persons who become creditors during the continuation of the business transaction

referenced by that Section. *See* N.Y. Debt. & Cred. Law §§ 274-6 (McKinney 2009).[14]

---

[13] While the provisions of 11 U.S.C. § 544(a) are not commonly used to avoid fraudulent transfers, cases have acknowledged that actual and constructive fraud actions may also be brought under Section 544(a) by asserting the rights of hypothetical creditors. *See, e.g., In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1235 n. 5 (7th Cir. 1990) ("The Trustee may also have additional powers to avoid fraudulent transfers using the 'strong arm clause'. . . ."); *Collins v. Kohlberg & Co. (In re Southwest Supermarkets, LLC)*, 325 B.R. 417, 420, 424-27 (Bankr. D. Ariz. 2005) (permitting trustee to bring fraudulent conveyance action under Section 544(a)(2) and holding that "the discovery rule applicable to actual fraudulent transfers prevents the running of limitations against the hypothetical creditor of Section 544(a)(2), who is statutorily defined to lack knowledge of any wrongdoing"); *Fitzgibbons v. Thomason (In re Thomason)*, 202 B.R. 768, 770 (Bankr. D. Colo. 1996) (rejecting defendant's argument that the trustee's avoidance action, brought under Section 544(b), should be dismissed because Section 544(a) "also provides that the trustee may avoid any transfer of property of the debtor that such a hypothetical perfected lien creditor could avoid," thus making the trustee a creditor by operation of law who has the power to exercise any right that a creditor could exercise, including the right to pursue an action under the Colorado Uniform Fraudulent Transfer Act).

[14] The statute of limitations may also be subject to additional tolling if it appears, after discovery, that the Defendants were "without the state" when the "cause of action accrue[d]" or for an extended period thereafter. N.Y. C.P.L.R. § 207 (McKinney 2009).

**C.** **The Trustee Is Entitled To Rely On The Discovery Rule To Avoid Transfers That Took Place Over Six Years Ago.**

Section 544(b) of the Bankruptcy Code bestows standing on the Trustee to avoid transfers that are voidable under applicable law by a creditor holding an unsecured claim that is allowable under Section 502 of the Bankruptcy Code. *See In re OPM Leasing Servs., Inc.*, 32 B.R. at 201. A creditor under New York law may, in turn, set aside fraudulent conveyances made by a debtor, *see, e.g.*, N.Y. Debt. & Cred. Law §§ 276, 276-a, 278, & 279 (McKinney 2009), and may bring his action within six years from the commission of the fraud, or two years from the time of discovery of the fraud, whichever is later. N.Y. C.P.L.R. § 213(8) & 203(g); *see also Hoffenberg v. Hoffman & Pollok*, 288 F.Supp.2d 527, 535-6 (S.D.N.Y. 2003); *Lefkowitz v. Appelbaum*, 685 N.Y.S.2d 460, 461 (N.Y. App. Div. 2d Dep't 1999); *Phillips v. Levie*, 593 F.2d 459, 462 n.12 (2d Cir. 1979); *Schmidt v. McKay*, 555 F.2d 30, 36-37 (2d Cir. 1977); *Lippe v. Bairnco Corp.*, 225 B.R. 846, 852-3 (S.D.N.Y. 1998). In Section IV.C of their motion, however, Defendants contend that the Trustee cannot rely on this "discovery rule" to pursue transfers that took place more than six years prior to the filing date because (i) the Trustee has not named a particular creditor or category of creditor in the Complaint and a basis for why they could not have discovered the fraud; and (ii) the "red flags" identified by the Trustee as putting Defendants on notice of Mr. Madoff's fraudulent scheme preclude the Trustee from claiming that *any* investor could not have discovered the fraud. (*See* MTD 31-34.) Both of these arguments are unavailing and should be rejected by the Court.

**1.** *There Is No Requirement At This Stage Of The Action To Specifically Identify The Creditor(s) Whose Claims Are Being Asserted.*

The Complaint alleges that "[a]t all times relevant to the Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of

BLMIS" (Compl. ¶ 160) and that "[a]t all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable . . . ." (*Id.* ¶ 161). Though they do not even address these specific allegations, Defendants claim that the Complaint is insufficient and that the Trustee must identify the investor(s) whose claim(s) the Trustee is asserting pursuant to Section 544(b) at the very inception stage of this litigation. They are incorrect.

The United States Bankruptcy Court for the Southern District of New York recently reiterated that there is no need at the complaint stage to specifically identify the creditor(s) upon whose claims a trustee bases his standing for purposes of Section 544(b). *See Responsible Person of Musicland Holding Corp. v. Best Buy Co. (In re Musicland Holding Corp.),* 398 B.R. 761, 780-81 (Bankr. S.D.N.Y. 2008); *see also Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 673-74 (D.R.I. 1998) ("a probing inquiry into who the creditors are, and what claims they hold, is inappropriate" at the pleading stage; denying motion to dismiss). Indeed, Defendants themselves (inaccurately) cite *In re Musicland* as holding that "under § 544(b), trustee must plead existence of class of actual creditors *but need not identify specific creditor until trial*." (MTD 33; emphasis added.)[15] And judicial authority in this District approves of almost the very language used by the Trustee. *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 519, 522-25 (Bankr. S.D.N.Y. 1996) (holding that the debtor had adequately pleaded the existence of an unsecured creditor with an allowable claim by pleading that "as of the date of the purported fraudulent conveyance, the Debtor had at least one or more creditors holding unsecured claims against it"). The Trustee's allegations are sufficient.

---

[15] *In re Musicland* does not, in fact, hold that categories of creditors must be pled to survive a motion to dismiss. Rather, the *Musicland* court found that a plaintiff need only "plead the existence of the qualifying creditor generally." *In re Musicland*, 398 B.R. at 780 (citing *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 519, 525 (Bankr. S.D.N.Y. 1996)). The plaintiff's allegation of certain categories of creditors was more than was necessary. *Id.* at 71.

### 2. Regardless, The Complaint Does, In Fact, Identify A Category Of Creditors.

Regardless of the foregoing, the identification of a "category" of creditors is "unquestionably enough" to put defendants on notice of the creditors who supply the standing to sue. *See Global Crossing*, 2006 U.S. Dist. LEXIS 53785, at *36-38 (court held that it was sufficient to refer to a group of creditor noteholders that engaged in an exchange offer); *see also In re Musicland*, 398 B.R. at 780-81. And the Complaint provides ample notice to Defendants of at least one category of creditors on whose claims the Trustee founds his standing: the customers of BLMIS. (*See, e.g.,* Compl. ¶ 4 ("The Trustee seeks to set aside such transfers and preserve the property for the benefit of BLMIS' defrauded customers").)

Defendants can hardly assert that they will have trouble identifying, for purposes of discovery and trial, a relevant category of potential creditors. There will be more than sufficient opportunity during discovery and trial for the Defendants to argue that the identified creditors do not satisfy the requirements of Section 544(b) of the Bankruptcy Code, if the Defendants so desire. At this stage of the proceeding, the Trustee has alleged in the Complaint all that is required.

### 3. The "Red Flags" Indentified In The Complaint Do Not Defeat The Trustee's Discovery Rule Claims.

Defendants also argue that the Trustee cannot rely on the discovery rule because he will be unable to establish that there are BLMIS investors who could not have discovered Mr. Madoff's fraud with reasonable due diligence.[16] Defendants' argument is that having identified certain "red flags" that were available to other investors as well as Defendants, the Trustee is precluded from arguing that any investor was misled. If this information put Defendants on

---

[16] Ironically, Defendants devote several pages of their motion to claiming that they, themselves, could not have discovered Mr. Madoff's fraud.

notice of fraud, they argue, then "it was equally reasonable for any other non-professional investor to have known the same thing." (MTD 34.) This argument is simply another attempt by Defendants to ally themselves with the ordinary investors who have been financially ruined by BLMIS.

The simple fact is that Mr. Madoff operated a Ponzi scheme, took steps to conceal it, and successfully deceived reasonable investors for decades. (*See, e.g.*, Compl. ¶¶ 18-31.) And the evaluation of whether there is an unsecured creditor of BLMIS who, acting with reasonable diligence, could not have discovered the fraud is not an analysis that is appropriate to consider in the context of Defendants' motion to dismiss. *See Schmidt*, 555 F.2d at 37*; Trepuk v. Frank*, 376 N.E.2d 924, 926 (N.Y. 1978) ("Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts."), *rev'd on other grounds*, 437 N.E.2d 278 (N.Y. 1982); *Erbe v. Lincoln Rochester Trust Co.,* 144 N.E.2d 78, 80-1 (N.Y. 1957) (reversing order of dismissal because court would not speculate as to sufficiency of evidence at trial). The determination of what a particular investor knew or should have known requires examination of the totality of the facts and circumstances relating to that individual investor. This is especially true given that issues such as the level of an investor's experience affects "the extent to which a court may properly conclude that a particular event should have influenced that investor to inquire into the likelihood of fraud involving his or her investment." *See Tab P'ship v. Grantland Fin. Corp.*, 866 F. Supp. 807, 811 n. 3 (S.D.N.Y. 1994) *See also Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235-6 (2d Cir. 2006) ("The law is indulgent of the simple or untutored; but the greater the sophistication of the investor, the more inquiry that is required.").

Finally, Defendants' arguments in this regard, as elsewhere in their motion, fail to acknowledge that they are not the same as "any other non-professional investor." (MTD 34.) The information available to Defendants was not limited to published articles or any single piece of information that was or could have been discovered by others. Rather, Defendants had specific access to information that indicated or should have indicated they were benefiting from fraud. (*See, e.g.,* Compl. ¶ 103.) And the Complaint contains numerous, specific allegations that Defendants' agent, Mr. Chais, was, to at least some degree, complicit in that fraud. (*Id.*)

Defendants simply were not like "any other non-professional investor," and the allegations against Mr. Chais and Defendants are not relevant to the Trustee's ability to rely on the discovery rule in this or any other action.

## V. THE TRUSTEE'S CLAIM FOR TURNOVER AND ACCOUNTING IS APPROPRIATE.

In Section V of their motion, Defendants argue that the Trustee's claim for turnover of the transfers is not ripe because the Court has not yet avoided those transfers and they are not yet the property of the estate. (MTD 35-36.) Each of the transfers in question is, however, the subject of separate avoidance counts in this same action.

It is appropriate under the Bankruptcy Code to pair a turnover claim with an avoidance action. The core function of a turnover claim pursuant to Section 542 is to permit the Trustee to recover "property that the trustee may use, sell, or lease" from any persons holding that property. *See* 11 U.S.C. § 542(a). While the case law pertaining to this subject is not uniform, *see, e.g., In re Andrew Velez Constr., Inc.*, 373 B.R. at 273, a number of cases stand for the proposition that a turnover claim may be properly paired with an avoidance claim. For example, in *In re Jacobs*, the court granted summary judgment to the trustee in an avoidance action and held that a transfer of property from the debtors to the defendants was both actually and constructively fraudulent.

394 B.R. at 664-72.  In the same ruling, the court also granted summary judgment on the

trustee's turnover and accounting claim for that property.  *Id.*  In so ruling, the court observed

that by virtue of its ruling on the avoidance claim, the property was a transfer of property of the

debtor and subject to turnover and avoidance.  *Id.* at 674.  This basic principle was also set forth

in *Doyle v. Paolino (In re Energy Sav. Ctr., Inc.)*, 61 B.R. 732 (E.D. Pa. 1986), where the court

noted that:

> A claim made under Section 542, however, is not necessarily
> distinct from claims under other sections.  For example, if a
> particular transfer of property is voidable as a fraudulent transfer
> under Section 548, then this property, now deemed property of the
> estate, becomes subject to the "turnover" authority contained in
> Section 542.

*Id.* at 735.  The inclusion of a turnover count, therefore, is appropriate.

Defendants' argument also ignores express provisions of the SIPA statute concerning the

status of property transferred by a debtor when funds are insufficient to satisfy claims in full.  In

relevant part, the statute provides:

> . . . the trustee may recover any property transferred by the debtor
> which, except for such transfer, would have been customer
> property if and to the extent that such transfer is voidable or void
> under the provisions of title 11. . . .  For purposes of such recovery,
> *the property so transferred shall be deemed to have been the*
> *property of the debtor. . . .*

15 U.S.C. § 78fff-2(c)(3) (2009) (emphasis added).  The statute makes plain that, as to property

that was customer property prior to the transfer, when "so transferred" the property is deemed to

have been property of the estate prior to the transfer, and therefore subject to the turnover

provisions of Section 542.  *See* 11 U.S.C. § 542 (2009).  In other words, if there were any doubt

about the nature of customer property, this SIPA provision makes it clear that for the purpose of

avoidance actions, customer property is always property of the estate. Here, in the context of a Ponzi scheme, it could not be otherwise.

In challenging the Trustee's claim for turnover, Defendants rely on dicta in the Second Circuit's decision in *In re Colonial Realty Co.*, 980 F.2d 125, in which the Second Circuit noted that only once a transfer is avoided and recovered does the property that was subject to that claim become "property of the estate" within the meaning of Section 541(a)(3). *Id.* at 131; 11 U.S.C. § 541(a)(3) (2009). *In re Colonial Realty*, however, was neither a turnover case nor a SIPA case. Rather, the issue the Court determined in that case was that the automatic stay applied to a prepetition fraudulent transfer claim regardless of whether the fraudulently transferred property was, or was not, property of the estate. *In re Colonial Realty Co.*, 980 F.2d. at 131-2. *In re Colonial Realty* simply does not address the issue here: whether a turnover claim may be properly paired with an avoidance claim.

The pairing of these claims is appropriate for reasons of judicial economy. By the Defendants' logic, the Trustee also could not bring a recovery claim under Section 550 until the transfer is avoided. But it is commonly recognized that this can be done, *see* 5 *Collier on Bankruptcy* ¶ 550.07 (2009), since requiring the Trustee to bring one adversary proceeding to avoid the transfer and then a separate proceeding to recover the transfer or its value would be a waste of resources. *See generally Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*, 389 B.R. 721, 734-35 (B.A.P. 9th Cir. 2008) (holding that an avoidance and recovery action may be brought simultaneously to "avoid absurd results" and to "protect the trustee from attempts to impede recovery" and to "afford[] flexibility when a transferee or its assets have disappeared."). The same rationale should apply to permit Section 542 claims to be paired with avoidance claims.

For these reasons, the Trustee requests that this Court follow the SIPA statute, and the reasoning of *In re Jacobs* and *In re Energy Savings Center,* and deny the Defendants' motion to dismiss Count One.

## VI. THE TRUSTEE HAS PROPERLY ALLEGED A CLAIM TO AVOID SUBSEQUENT TRANSFERS.

In Section VI of their Motion, Defendants allege that the Trustee's claim to avoid subsequent transfers (Count Ten) fails, as a matter of law, because the Complaint only alleges the existence of subsequent transfers "on information and belief." (MTD 36.) The Trustee's allegations, however, are sufficient, and Defendants, again, solely possess the information they demand from the Trustee.

Under the plain language of 11 U.S.C. § 550, a prima facie claim against a subsequent or mediate transferee requires the pleading of an initial transfer that is avoidable, and that the initial transfer was later made to—or for the benefit of—the subsequent or mediate transferee. 11 U.S.C. § 550 (2009); *In re Allou Distribs.,* 379 B.R. at 28-30. An exact dollar-for-dollar tracing of funds from the estate is not required, so long as there are sufficient allegations that the funds at issue originated with the debtor. *Id. at* 30. Here, the Trustee has alleged numerous specific and direct transfers totaling more than $1,100,000,000. (Compl., Ex. B.)[17] As discussed above, all of the transfers constitute avoidable direct transfers of estate property to or for the benefit of Defendants. Consequently, the Trustee has sufficiently pleaded a prima facie case for the avoidance of any subsequent transfers.

Moreover, the detailed transactional information regarding transfers to and between Defendants and third parties is, again, uniquely in the hands of Defendants and not the Trustee.

---

[17] Exhibit B to the Complaint is not expected to be an all-inclusive list of all transfers of estate property to all of the Defendants. (Compl. ¶ 96.)

The parties should be permitted, therefore, to proceed with discovery. *See In re Payton*, 399 B.R. at 365 (noting that the trustee "is an outsider to these transactions and will need discovery to identify the specific transactions by date, amount and the manner in which they were effected."). Like the trustee in *In re Payton*, the Trustee here has only very limited information beyond the documentary evidence in BLMIS' possession, but has, nevertheless, identified the nature of the transfers sought to be avoided. The bases and support, if any, for Defendants' statement to the contrary (MTD 36, n.15) is unknown.

The information provided in the Complaint is sufficient for the Defendants to frame a response. Consequently, Defendants' motion to dismiss the Trustee's subsequent transfer claim should be denied.

## VII. THE TRUSTEE HAS PROPERLY ALLEGED DISALLOWANCE OF THE DEFENDANTS' SIPA CLAIMS.

Finally, Defendants allege that the Trustee has failed to appropriately plead a claim for the disallowance of their SIPA claims because the Trustee's claim is a "perfunctory, formulaic allegation, unsupported by factual detail" and 11 U.S.C. § 502(d) does not, in fact, apply to Defendants' SIPA claim.

### A. Defendants Do Not Allege That Any Of The Individual Defendants Even Filed SIPA Claims.

As a preliminary matter, in order to have any opportunity to participate in this SIPA liquidation, Defendants, like any other BLMIS investor, must have filed claims with the Trustee in accordance with this Court's December 23, 2008 Order on or before the statutory July 2, 2009 bar date. (Order, Dec. 23 2008 [hereinafter "Claims Procedures Order"].) Defendants' motion does not indicate whether any of the individual Defendants timely filed customer claims for their BLMIS accounts with the Trustee in accordance with the Claims Procedures Order, and the

Trustee presently is not aware of any claim being submitted by several of the movants, including Emily Chasalow, Mark Chais, Miri Chais, William Chais, Wrenn Chais, Unicycle Trading Company, Unicycle Corporation, Tali Chais Transferee Trust No. 1, Ari Chais Transferee Trust No. 1, 1996 Trust for the Children of Stanley and Pamela Chais, William and Wrenn Chais 1994 Family Trust, Chais Investments Ltd., and Onondaga, Inc. Thus, as to at least these Defendants, the motion is wholly moot.

     **B.**     **Defendants Do Not Cite Any Authority For Their Contention That The Trustee's Allegations Are Insufficient.**

Defendants acknowledge that the Trustee has alleged two, independent bases for the disallowance of the SIPA claims: the fact that the claims "are not supported by the books and records of BLMIS nor the claim materials submitted by Defendants," and that the claims should be disallowed by Section 502(d) of the Bankruptcy Code. (Compl. ¶¶ 172-73.) Defendants criticize the adequacy of the Trustee's first allegation, but do not cite any authority suggesting that it is not a legally sufficient basis for disallowing their claims. And they could not. *See* 15 U.S.C. § 78fff-2(b).

When viewed in its totality—including, *inter alia*, the Trustee's allegations that BLMIS records reviewed to date suggest that Defendants received distributions far and above the amount of their principal contribution, if any—the Complaint provides Defendants with far more than "fair notice of what the . . . claim is and the grounds upon which it rests," *In re Allou Distribs.*, 379 B.R. at 31, and sufficient factual allegations to enable Defendants to respond. *See* 5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 1215 (Civ.3d 2009). Consequently, the Trustee's allegations are wholly sufficient, and Defendants' motion should be dismissed.

### C. Defendants' Argument That Section 502(d) Does Not Apply To SIPA Claims Does Not Survive Scrutiny.

Apparently conceding that Section 502(d) of the Bankruptcy Code would authorize the Trustee to disallow their SIPA claims, Defendants contend that "11 U.S.C. § 502(d) does not apply" because a SIPA claim is an "insurance claim" rather than a claim against the debtor's estate. (MTD 37.) Tellingly, Defendants do not cite any legal authority for their novel argument. And indeed, Defendants' argument conflicts with the express language of the SIPA statute.

Contrary to Defendants' averment (MTD 38), the SIPA statute provides in several instances that any claim by a defrauded investor is not a claim against SIPC. Rather, an investor has a claim, if at all, against the debtor's estate. The statute's definition of "customer" presupposes that any claim is a claim against the debtor's estate, for "[t]he term 'customer' of a debtor means any person . . . who has a claim on account of securities received, acquired, or held by the debtor . . . [or] any person who has a claim against the debtor arising out of sales or conversions of such securities . . . ." 15 U.S.C. § 78*lll*(2). The statute, in turn, only authorizes SIPA claims by "customers," 15 U.S.C. § 78fff-2(a)(2), and empowers the trustee to "promptly discharge . . . *all obligations of the debtor* to a customer . . . ." 15 U.S.C. § 78fff-2(b) (emphasis added). The statute likewise expressly states that any payment to a "customer" from a trustee using SIPC funds is only an "advance" against that customer's claim. 15 U.S.C. § 78fff-3(a). Consequently, the SIPA statute itself contradicts Defendants' argument, and Defendants have not identified any contrary authority for their position.

Because a SIPA claim is a claim against the debtor, here BLMIS, Section 502(d) applies. And Section 502(d) explicitly mandates the disallowance of Defendants' claims, as it prevents

the transferee of an avoidable transfer from receiving a distribution unless he first returns the transfer:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d). The purpose of § 502(d) is to "preclude entities that have received voidable transfers from sharing in the distribution of assets unless or until the voidable transfer has been returned to the estate." *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986).

In his Complaint, the Trustee has brought claims against Defendants for the receipt of more than $1,000,000,000 of transfers of BLMIS's property which are recoverable under Sections 547, 548, and 550 of the Bankruptcy Code. 11 U.S.C. §§ 547-8, 550. Defendants have not returned such transfers to the Trustee. Thus, Section 502(d) clearly applies to any claims filed by Defendants, as they have failed to repay or turn over property recoverable under Sections 547, 548, and 550 of the Bankruptcy Code. *See, e.g., In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (stating that "Section 502(d) prevents transferee of an avoidable transfer from receiving distribution unless he first returns transfer."). Accordingly, the Trustee has pled a legal basis for disallowing Defendants' SIPA claims, and Defendants' motion to dismiss this Count should be denied.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss should be denied in its entirety.

Dated:  New York, New York          *s/Marc E. Hirschfield*
       January 22, 2010          Baker & Hostetler LLP
                                      45 Rockefeller Plaza
                                      New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
E-mail: dsheehan@bakerlaw.com
Marc E. Hirschfield
E-mail: mhirschfield@bakerlaw.com
Paul P. Eyre (admitted *pro hac vice*)
E-mail: peyre@bakerlaw.com
Ona T. Wang
E-mail: owang@bakerlaw.com
Stephan J. Schlegelmilch (*admitted pro hac vice*)
E-mail: sschlegelmilch@bakerlaw.com

*Attorneys for Irving H. Picard, Esq.,*
*Trustee for the SIPA Liquidation of Bernard L.*
*Madoff Investment Securities LLC*

300068898.1

- 47 -