**SILLS CUMMIS & GROSS P.C.**
One Rockefeller Plaza
New York, NY 10020
Tel: 212-643-7000
Philip R. White
Email: pwhite@sillscummis.com
Andrew H. Sherman
Email: asherman@sillscummis.com

*Attorneys for Defendants*
*Emily Chasalow, Mark Chais, Wrenn Chais,*
*William Chais, Miri Chais and the Entities*
*identified on Exhibit 1 to the Previously Filed*
*Notice of Partial Motion to Dismiss*

**Hearing Date: May 5, 2010**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>     Debtor. | SIPA LIQUIDATION<br><br>No. 08-01789 (BRL) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>STANLEY CHAIS, *et al.*,<br><br>     Defendants. | Adv. Pro. No. 09-1172 (BRL) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' PARTIAL MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................- 1 -

ARGUMENT ..............................................................................................................................- 3 -

I.  THE TRUSTEE HAS NOT PLEADED ANY FACTS THAT WOULD ESTABLISH THAT ANY OF THE DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT TRANSFERS FROM BLMIS WERE FRAUDULENT .......- 3 -

    A.  The Trustee Admits That He Has Alleged No Facts That Any Defendant Other Than Stanley Chais Knew Or Should Have Known That BLMIS Was A Ponzi Scheme.........................................................................................- 3 -

    B.  The Complaint Does Not Allege That Stanley Chais Was Defendants' Agent............................................................................................................- 5 -

II.  THE TRUSTEE HAS NOT SUFFICIENTLY PLEADED HIS CLAIMS BASED ON BLMIS'S ACTUAL INTENT TO DEFRAUD ......................................................- 7 -

    A.  The Trustee Failed To Particularize The Allegedly Fraudulent Transfers ........- 7 -

    B.  The Trustee Failed To Plead That Defendants Received The Six Year Transfers With Actual Intent To Hinder Delay Or Defraud BLMIS's Other Creditors...........................................................................................................- 9 -

III.  THE TRUSTEE HAS NOT SUFFICIENTLY PLEADED HIS CONSTRUCTIVE FRAUD CLAIMS ..................................................................................................- 13 -

    A.  The Trustee Has Not Sufficiently Pleaded That The Transfers To Defendants Were Not Made For Value Or For Fair Consideration.................- 13 -

IV.  THE TRUSTEE MAY NOT RECOVER TRANSFERS MADE MORE THAN SIX YEARS BEFORE THE DATE OF THE PETITION .........................................- 14 -

V.  THE TRUSTEE'S CLAIM FOR TURNOVER AND ACCOUNTING MUST BE DISMISSED BECAUSE THE TRANSFERS ARE NOT PROPERTY OF THE ESTATE..................................................................................................................- 16 -

VI.  THE TRUSTEE'S CLAIM TO AVOID SUBSEQUENT TRANSFERS MUST BE DISMISSED BECAUSE THE TRUSTEE HAS NOT IDENTIFIED ANY SUBSEQUENT TRANSFERS...............................................................................- 17 -

VII.  DEFENDANTS SHOULD BE PERMITTED TO SEEK RELIEF UNDER SIPA ....- 18 -

CONCLUSION.........................................................................................................................- 19 -

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahn v. Rooney Pace, Inc.,*
    624 F. Supp. 368 (S.D.N.Y. 1985) ................................................................................6

*American Protein Corp. v. AB Volvo,*
    844 F.2d 56 (2d Cir. 1988).............................................................................................4

*Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.),*
    373 B.R. 262 (Bankr. S.D.N.Y. 2007).....................................................................9, 16

*Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC),*
    396 B.R. 810 (Bankr. S.D.N.Y. 2008).........................................................................9

*Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund),*
    397 B.R. 1 (S.D.N.Y. 2007).........................................................................................12

*Center v. Hampton Affiliates,*
    497 N.Y.S.2d 898 (N.Y. 1985) ...................................................................................6

*DeVittorio v. Equidyne Extractive Industries, Inc.,*
    822 F.2d 1242 (2d Cir. 1987).......................................................................................4

*Doyle v. Paolino (In re Energy Sav. Cntr.),*
    61 B.R. 732 (E.D. Pa. 1986) ......................................................................................16

*Drenis v. Haligianis,*
    452 F. Supp. 2d 418 (S.D.N.Y. 2006)....................................................................13, 14

*Encyclopedia Brown Prods., Ltd. v. American Intl. Cablevision Industries, Inc.,*
    25 F. Supp. 2d 395 (S.D.N.Y. 1998)...........................................................................6

*Fromer v. Yogel,*
    50 F. Supp.2d 227 (S.D.N.Y. 1999).............................................................................12

*Gentry v. Kovler (In re Kovler),*
    249 B.R. 238 (Bankr. S.D.N.Y. 2000).........................................................................9

*Gentry v. Kovler,*
    329 B.R. 17 (Bankr. S.D.N.Y. 2005)......................................................................9, 10

*Golden Budha Corp. v. Canadian Land Co. of America*,
    931 F.2d 196 (2d Cir. 1991) ......................................................................................10

*Grumman Aerospace Corp. v. Rice*,
    605 N.Y.S.2d 305 (2d Dept. 1993) ............................................................................11

*Hassett v. Goetzman*,
    10 F. Supp. 2d 181 (N.D.N.Y. 1998) .........................................................................12

*HBE Leasing Corp. v. Frank*,
    61 F.3d 1054 (2d Cir. 1995) .....................................................................................11

*In re Agric. Research & Tech. Group, Inc.*,
    916 F.2d 528 (9th Cir. 1990) ...................................................................................12

*In re CBI Holding Co., Inc.*,
    311 B.R. 350 ( S.D.N.Y. 2004), *vacated on other grounds*, 318 B.R. 761 (S.D.N.Y.
    2004) ..........................................................................................................................6

*In re OPM Leasing Services, Inc.*,
    35 B.R. 854 (Bankr. S.D.N.Y. 1982) ..........................................................................8

*In re Shulman Transport Enterprises*,
    744 F.2d 293 (2d Cir. 1984) .....................................................................................5

*Jalbert v. Zurich American Ins. Co.*,
    399 B.R. 352 (Bankr. D. Mass 2009) .........................................................................8

*Kalisch v. Maple Trade Fin. Co.*,
    413 B.R. 115 (Bankr. S.D.N.Y. 2008) ........................................................................6

*Kane v. Sesac, Inc.*,
    54 F. Supp. 853 (S.D.N.Y. 1943) ..............................................................................12

*Lippe v. Bairnco Corp.*,
    225 B.R. 846 (S.D.N.Y. 1998) ............................................................................14, 15

*Lipson v. H.M.R. Enterprises, Inc.*,
    183 N.Y.S.2d 160 (N.Y. Sup. Ct.), *mod. o.g.* 193 N.Y.S.2d 138 (1st Dept. 1959) ..............12

*Marine Midland Bank v. Murkoff*,
    120 A.D.2d 122, 508 N.Y.S.2d 17 (2d Dep't 1986) ..................................................12

*Mendelsohn v. Jacobowitz (In re Jacobs)*,
    394 B.R. 646 (Bankr. E.D.N.Y. 2008) ......................................................................16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, 1994 WL 88129 (S.D.N.Y. Mar. 15,
    1994) ......................................................................................................................3, 15

*Merrill v. Abbott (In re Independent Clearing House Co.)*,
    77 B.R. 843 (D. Utah 1987) ..............................................................................................12

*New York State Teamsters Conference Pension & Retirement Fund v. Hoh*,
    554 F. Supp. 519 (N.D.N.Y. 1982) .....................................................................................4

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*,
    361 B.R. 369 (Bankr. S.D.N.Y. 2007) ...............................................................................9

*Orr v. Kinderhill*,
    991 F.2d 31 (2d Cir. 1993).................................................................................................15

*Pereira v. Grecolas Ltd. (In re Saba Enterprises)*,
    2009 Bankr. LEXIS 2745 (Bankr. S.D.N.Y. 2009) ...........................................................9

*Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*,
    325 B.R. 134 (Bankr. S.D.N.Y. 2005)..............................................................................16

*Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999)................................................................................8

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780 (S.D.N.Y. Aug.
    9, 2005) ..........................................................................................................................3, 15

*Sharp Intl. Corp. v. State St. Bank & Trust Co. (In re Sharp Intl. Corp.)*,
    403 F.3d 43 (2d Cir. 2005)..........................................................................................10, 11

*Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005)................................................................................9

*Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.)*,
    379 B.R. 5 (Bankr. E.D.N.Y. 2007)..................................................................................17

*Spencer v. Hylton-Spencer*,
    709 N.Y.S.2d 207 (2d Dept. 2000) ...................................................................................11

*Sullivan v. Kodsi*,
    373 F. Supp. 2d 302 (S.D.N.Y. 2005).................................................................................4

*Sullivan v. Messer (In re Corcoran)*,
    246 B.R. 152 (Bankr. E.D.N.Y. 2000)........................................................................12

*United States v. Carlin*,
    948 F. Supp. 271 (S.D.N.Y. 1996) ...................................................................11, 12

*Zinaman v. USTS New York, Inc.*,
    798 F. Supp. 128 (S.D.N.Y. 1992) ...........................................................................4

**STATUTES**

11 U.S.C.
    § 502(d).......................................................................................................................18
    § 542.......................................................................................................................2, 16
    § 544(a)(1)(B).............................................................................................................1
    § 548(a)(1)(A).............................................................................................................7
    § 548(a)(1)(B)...........................................................................................................13

15 U.S.C.
    § 78fff-2(c)(3)...........................................................................................................16

New York Debtor and Creditor Law
    § 276................................................................................................................ passim

**RULES**

CPLR 213.......................................................................................................14, 15

CPLR 203...........................................................................................................14

## PRELIMINARY STATEMENT

The Trustee has pled no facts showing that Defendants knew or should have known of Madoff's fraud. Confronted with this reality as established by the Defendants' Motion to Dismiss, the Trustee responds by tacitly conceding that Defendants had no knowledge. Instead, he concocts a new legal theory, not pleaded in the Complaint – that Stanley Chais was the Defendants' agent, and that his alleged knowledge of the Madoff fraud should therefore be imputed to the Defendants. This maneuver fails for two reasons. First, the Trustee's theory does not appear in the Complaint, which nowhere mentions the words "agent" or "agency." Second, the Trustee does not plead, and cannot plead in good faith, an essential element of agency – that Defendants controlled Stanley Chais in his dealings with Madoff.

The Trustee's Six Year claims under New York Debtor and Creditor Law § 276 should be dismissed because the Trustee has not pled that the Defendants shared or knew of Madoff's actual intent to defraud. Authority on the need to plead and prove the transferee's intent is divided in this Court, and neither the Second Circuit nor the New York Court of Appeals has definitively settled the issue. Defendants submit that the better weight of authority makes the transferee's intent an element of the claim. Moreover, the Trustee has not particularized the transfers he seeks to recover, despite having complete access to all of the books and records of BLMIS. His statement that he intends to recover every transfer enumerated on Schedule A of the Complaint, like his assertion that Stanley Chais is Defendants' agent, is an afterthought.

The Trustee's claims under 11 U.S.C. §544(a)(1)(B) and D.C.L. §§ 273-75 should be dismissed because the Trustee has not identified the principal sums that Defendants invested with BLMIS, the return of which constitutes consideration. At the very least, those claims should be limited to any distributions in excess of Defendants' invested principal.

Because the Trustee has not pled sufficient grounds to impute Stanley Chais's knowledge to Defendants, his effort to toll the New York statute of limitations on his D.C.L. § 276 claims is contradictory. Insofar as the Complaint's allegations about Defendants' are concerned, Defendants are in no different position than any other BLMIS investor who wrongly believed that he or she was enjoying good fortune. If it was reasonable for such investors not to know of the Madoff Ponzi scheme – the crux of the Trustee's tolling argument – then it was equally reasonable for Defendants not to know. The Trustee can toll the statute of limitations only at the cost of conceding Defendants' good faith.

Finally, the weight of authority in this Court is that the Trustee cannot use a turnover proceeding under 11 U.S.C. § 542 to recover allegedly fraudulent transfers.

# ARGUMENT

## I.   THE TRUSTEE HAS NOT PLEADED ANY FACTS THAT WOULD ESTABLISH THAT ANY OF THE DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT TRANSFERS FROM BLMIS WERE FRAUDULENT

### A.   The Trustee Admits That He Has Alleged No Facts That Any Defendant Other Than Stanley Chais Knew Or Should Have Known That BLMIS Was A Ponzi Scheme

In this suit, the Trustee has sued three groups of defendants: (i) Stanley Chais and his wife individually; (ii) a group of investment enterprises and foundations allegedly controlled by Stanley Chais; and (iii) Stanley Chais's adult children, their spouses, and the family trusts of which Chais's children and grandchildren are beneficiaries ("Defendants").  As the Defendants demonstrated in the initial Brief supporting their Motion to Dismiss the Complaint against them (Defendants Br. at 12-18), the Complaint alleged no facts whatsoever that any of them knew or had any reason to know that BLMIS was a Ponzi scheme or that they were receiving fraudulent transfers from it.  It is Stanley Chais alone who is alleged to have known or had reason to know of the Madoff fraud.  His children and their trusts are simply, yet improperly, lumped together as "the Defendants." *See, Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780, at \*12 (S.D.N.Y. Aug. 9, 2005) (Lumped-together accusations of wrongdoing by undifferentiated groups of defendants is not sufficient to satisfy Rule 9(b)); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, at \*21, 1994 WL 88129, at \*7 (S.D.N.Y. Mar. 15, 1994) ("Sweeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b).").

As the Defendants demonstrated in their Brief at page 11, Fed. R. Civ. P. 9(b) requires a complaint alleging fraud against multiple defendants to allege with particularity the role of each in the alleged fraud.  "Where multiple defendants are asked to respond to allegations of fraud, the

complaint should inform each defendant of the nature of his alleged participation in the fraud." *DeVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). This principle applies to allegations of intentional fraudulent transfers. *Sullivan v. Kodsi*, 373 F. Supp. 2d 302, 309 (S.D.N.Y. 2005).

The Trustee's brief implicitly concedes that he has pled no facts whatsoever about the conduct or knowledge of the Defendants. Instead, he argues that whatever Stanley Chais knew or should have known must be imputed to the Defendants. The Complaint alleges that the trusts – though not Chais's individual children and their spouses – were somehow Chais's alter egos. [Complaint ¶ 92]. That contention appears to have been abandoned because the Trustee's Brief makes no reference to the Complaint's alter ego theory.[1] Rather, in contradiction to that theory, the Trustee now asserts that Stanley Chais's knowledge must be imputed to the Defendants because he was their agent in dealing with BLMIS. [Trustee's Br. at 10 and 12-14]. That is his sole (and unpleaded) basis to allege the Defendant's knowledge of Madoff's fraud. By resorting

---

[1]     Under New York law, two elements must be pleaded and proven in order to establish liability under an "alter ego" theory: (1) that the parent exercised such complete domination "in respect to the transaction attacked" that the subsidiary had "at the time" no separate will of its own, and (2) that this domination was used to "commit fraud or wrong" against the plaintiff, which proximately caused the plaintiff's injury. *Zinaman v. USTS New York, Inc.*, 798 F. Supp. 128, 132 (S.D.N.Y. 1992); *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) (quoting *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 287 N.Y.S. 62 (1st Dep't), *aff'd*, 272 N.Y. 360, 6 N.E.2d 56 (1936)), *cert. denied*, 488 U.S. 852, 109 S. Ct. 136, 102 L. Ed. 2d 109 (1988). Further, New York courts disregard corporate form reluctantly and for a viable claim to exist on an alter ego theory, the plaintiff must spell out some evidence of fraud. S*ee New York State Teamsters Conference Pension & Retirement Fund v. Hoh*, 554 F. Supp. 519, 525 (N.D.N.Y. 1982) (mere allegations of fraud in complaint insufficient to establish parent as alter ego of subsidiary and justify piercing the corporate veil). Finally, to the extent that the Trustee is contending that Stanley Chais is the alter ego of the individual defendants, the Trustee has come forward with no authority which would support a finding that one individual could be the alter ego of another individual. In fact, at least one Court has noted that there does not appear to be any precedent for using an alter-ego theory to impute liability from one individual to another. *See, Salti v. Keybank National Association*, 2001 Ohio App. LEXIS 4344 * 6 note 5 (Ohio Ct. App. 2001)("We are aware of no precedent which permits a trial court to enter a judgment that one individual is the alter ego of another individual, . . .")

to his unpleaded agency theory, the Trustee has tacitly admitted that he has no basis for accusing the Defendants of conduct which would justify avoidance of transfers, including the absence of good faith, other than that they are Stanley Chais's children or trusts in which such individuals have an interest. The Complaint does not allege, as the Trustee now asserts, that the Defendants controlled Stanley Chais's dealings with Madoff. Indeed, the Complaint purports to allege just the opposite. Accordingly, the fraudulent transfer claims should be dismissed.

The Trustee's theory is essentially one of collective, familial guilt. The Trustee has inexplicably singled out the children and grandchildren of Stanley Chais, alleging no facts that involve them in Madoff's scheme or that would show they had any knowledge of it beyond the general run of investors in BLMIS. His theory is simply that because Stanley Chais allegedly knew of Madoff's fraud, his children must be deemed to have known under some theory or other. For the reasons stated below, his theory that Stanley Chais was the Defendants' agent is neither alleged in the Complaint nor supported by law.

**B.** **The Complaint Does Not Allege That Stanley Chais Was Defendants' Agent**

Nowhere in the Complaint does the terms "agent" or "agency" appear. The Complaint does not allege the existence of any agreement between Stanley Chais and the Defendants for him to act as their agent. More importantly, it does not allege one essential element of an agency relationship – that Stanley Chais acted under the Defendants' control. Despite the lack of such an essential allegation, the Trustee's brief repeatedly argues that there is no need to make specific allegations as to the Defendants because of the unpleaded agency relationship. The linchpin of the Trustee's Brief is not to be found in the Trustee's Complaint.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *In re Shulman Transport Enterprises*, 744 F.2d 293, 295 (2d Cir. 1984),

*quoting* Restatement 2d, Agency § 1(1); *accord Encyclopedia Brown Prods., Ltd. v. American Intl. Cablevision Industries, Inc.*, 25 F. Supp. 2d 395, 404 (S.D.N.Y. 1998); *Kalisch v. Maple Trade Fin. Co.*, 413 B.R. 115, 130-31 (Bankr. S.D.N.Y. 2008). "The element of subservience is essential, for there can be no agency relationship where the alleged principal holds no right of control over the alleged agent." *Ahn v. Rooney Pace, Inc.*, 624 F. Supp. 368, 370 (S.D.N.Y. 1985).

Control is the basis for imputing the agent's acts and knowledge to the principal. *See In re CBI Holding Co., Inc.*, 311 B.R. 350, 369 ( S.D.N.Y. 2004), *vacated on other grounds*, 318 B.R. 761 (S.D.N.Y. 2004); *affirmed in part and reversed in part*, 529 F.3d 432 (2d Cir. 2008):

> The presumption of communication [of the agent's knowledge] is a pure fiction, contrary to the fact, for it is only when the agent has failed to communicate his knowledge that any occasion arises for imputing it to the principal. The presumption that an agent communicates such knowledge results from an attempt to balance **factors that favor imputing an agent's knowledge to his principal (i.e., the principal has control over the agent, the principal should be incentivized to monitor the agent, and the principal chooses to use an agent as his link to the outside world)** and factors that disfavor imputing the agent's knowledge to his principal (i.e., agency would fall into desuetude if imputation had no bounds). [Emphasis added].

318 B.R. at 369. It is presumed that the agent has disclosed information to the principal because the principal has the power to control the agent. *See Center v. Hampton Affiliates*, 497 N.Y.S.2d 898, 899 (N.Y. 1985) ("presumption that an agent has discharged his duty to disclose to his principal all the material facts coming to his knowledge with reference to the subject of his agency").

The Complaint alleges no facts from which it can be inferred that any of the Defendants had the right and power to control Stanley Chais in his dealings with BLMIS. On the contrary, the Trustee's theory is that Stanley Chais was not the agent but the principal, that all of the Defendants (except for his children in their natural capacity) were his alter egos, and that he "directed and controlled . . . the Chais Family Accounts to the benefit of his personal interests

and those of his family members." [Complaint ¶ 92]. Far from alleging that Stanley Chais was the Defendants' agent, acting under their control, the Trustee has alleged the opposite – that he was the patriarch, manipulating the Chais Family Accounts as he saw fit for his own purposes. The Complaint therefore does not allege that Stanley Chais was the Defendants' agent, and agency cannot be used to impute to them any knowledge he might have. Consequently, the causes of action that depend on allegations of the Defendants' knowledge or lack of good faith should be dismissed.

## II. THE TRUSTEE HAS NOT SUFFICIENTLY PLEADED HIS CLAIMS BASED ON BLMIS'S ACTUAL INTENT TO DEFRAUD

### A. The Trustee Failed To Particularize The Allegedly Fraudulent Transfers

The Trustee argues [Trustee's Br. at 12] that he is not required to plead the Defendants' lack of good faith with respect to his claims under 11 U.S.C. § 548(a)(1)(A) and New York D.C.L.§ 276 for transfers made with actual intent to hinder, delay and defraud. He is demolishing a straw man. Defendants did not argue that lack of good faith must be pleaded on the § 548(a)(1)(A) claims, as opposed to those under D.C.L. § 273-75 that allege constructive fraud. Pleading requirements on the § 276 claim are discussed in point II.B, *infra*.

The Trustee does not respond to the Defendants' argument that he is required to identify with particularity every fraudulent transfer that he seeks to recover [Defendants Br. at 18-19] except by asserting that he intends to recover all of them. [Trustee's Br. at 12]. As with his assertion that Stanley Chais is the Defendants' agent, this is an afterthought that appears in the Trustee's Brief but not in his Complaint.

Nor can the Trustee excuse his lack of particularization by asserting that "Defendants possess the transaction information in question." [Trustee's Br. at 15]. It is the Trustee who possesses all of the books, records and computers of the Madoff enterprise and has spent millions of dollars and thousands of hours in the past 16 months of investigation. Since the Trustee

- 7 -

contends that every distribution from BLMIS was made with actual intent to hinder, delay and defraud Madoff's creditors because of the nature of a Ponzi scheme [Trustee's Br. at 9], the Trustee should have in his hands sufficient information to particularize the distributions to the Defendants as a result of the apparent detailed investigation. He has not identified the type of records that he would need, that he does not possess, and that lie in Defendants' possession. *Cf. Jalbert v. Zurich American Ins. Co.*, 399 B.R. 352, 365 (Bankr. D. Mass 2009) (defendant insurance company had records of debtor's allegedly fraudulent premium and loss payments). It is difficult to conceive how or why the Trustee has been unable to access the records he needs based upon the apparent extensive investigation which has been undertaken by the Trustee through his teams of professionals employed in this case.

The cases the Trustee cites to excuse his lack of particularization, other than *Jalbert*, antedate *Twombly* and, for that reason, are of questionable authority in its aftermath *See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999); *In re OPM Leasing Services, Inc.*, 35 B.R. 854 (Bankr. S.D.N.Y. 1982). Moreover, the defendant transferees in *Stratton Oakmont* had controlled the debtor's affairs, and the trustee pleaded in detail their involvement in an asset stripping scheme. *See Stratton Oakmont*, 234 B.R. at 315-17. While *Stratton Oakmont* states that the Trustee is entitled to "some leeway" in pleading a fraudulent transfer claim because he is not expected to know the transferor's pre-bankruptcy affairs in detail, it also states that a trustee cannot use shotgun pleading but must "allege facts specifying each defendant's contribution to the fraud, identifying which defendant is responsible for which act." *Stratton Oakmont,* 234 B.R. at 310. In contrast to *Stratton Oakmont*, the Trustee pleads only the alleged knowledge of Stanley Chais, relying only on imputation with respect to the Defendants.

**B. The Trustee Failed To Plead That Defendants Received The Six Year Transfers With Actual Intent To Hinder Delay Or Defraud BLMIS's Other Creditors**

There are two conflicting lines of authority in this Court with respect to whether D.C.L. § 276 requires that a plaintiff plead and prove that the transferee of an allegedly fraudulent transfer received it with actual intent to hinder, delay and defraud the transferor's creditors. As Defendants conceded, *Bayou Accredited Fund, LLC v. Redwood Growth Partners, L.P. (In re Bayou Group, LLC)*, 396 B.R. 810, 826 n. 5 (Bankr. S.D.N.Y. 2008) holds that only the transferor's intent must be proven. [Defendants Br. at 19 n.2]. Numerous other decisions of this Court hold that the transferee's intent must be proven as well. [Defendants Br. at 19].[2]

It is no answer to respond, as the Trustee has, that one of those decisions *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000) was "discredited" because the opinion was "corrected" five years later in *Gentry v. Kovler*, 329 B.R. 17, 18 (Bankr. S.D.N.Y. 2005), for two reasons. First, this Court has subsequently held that the fraudulent intent of both transferor and transferee must be established. *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 276 (Bankr. S.D.N.Y. 2007); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 396 (Bankr. S.D.N.Y. 2007); *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs., Ltd.)*, 337 B.R. 791, 805 (Bankr. S.D.N.Y. 2005). Second, the "corrected" opinion in *In re Kovler* states that the intent of both parties must be proven. The corrected paragraph reads in full:

> To prevail in an action under Section 276, the plaintiff must establish that (1) the thing disposed of must be of value, out of which the creditor could have realized a portion of his claim; (2) it must be transferred or disposed of by the debtor; and (3) it must be done with intent to defraud." *Goscienski v. Larosa (In re Montclair Homes)*, 200 B.R. 84, 96 (Bankr. E.D.N.Y. 1996) *(citing Hoyt v. Godfrey*, 88 N.Y. 669 (1882)). To declare a conveyance fraudulent, actual intent to defraud is necessary. *Spear v. Spear*, 101 Misc.2d 341, 346, 421 N.Y.S.2d 277, 280 (N.Y.

---

[2] The conflicting decisions are collected in *Pereira v. Grecolas Ltd. (In re Saba Enterprises)*, 2009 Bankr. LEXIS 2745 *30 n. 14 (Bankr. S.D.N.Y. 2009).

Sup. Ct. 1979). **Where the plaintiff establishes actual and mutual fraudulent intent by both parties, the transaction is a fraudulent conveyance regardless of consideration or the solvency of the transferor.** *Golden Budha Corp. v. Canadian Land Co. of America*, 931 F.2d 196, 201 (2d Cir. 1991) ("If 'the transferee participated or acquiesced in the transferor's fraudulent design...the transaction falls within the condemnation of the fraudulent conveyance statutes, without regard to the adequacy or nature of the consideration, the solvency of the transferor, or the primary purpose of the transferee to secure a profitable purchase.'" (quoting 30 N.Y. JUR. 2D *Creditor's Rights* § 243 (1983))); *United States v. McCombs*, 30 F.3d 310, 327-28 (2d Cir. 1994) ("Section 276 focuses on the 'actual intent' of the transacting parties...[and]...where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given."). Actual intent to defraud is a prerequisite for an award of attorneys' fees under Section 276-a, *Domino Media, Inc. v. Kranis*, 9 F. Supp. 2d 374 (S.D.N.Y. 1998), *aff'd* 173 F.3d 843 (2d Cir. 1999), and that intent must be mutual. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (recovery of attorneys' fees under Section 276-a requires "explicit finding of actual intent to defraud" by both the transferor and the transferee) (citing *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 508 N.Y.S.2d 17, 20-21 (2d Dep't 1986)); *Key Bank of New York v. Diamond*, 203 A.D.2d 896, 897, 611 N.Y.S.2d 382, 384 (4th Dep't 1994). [Emphasis added].

329 B.R. at 18. The corrected paragraph replaced one in which the emphasized sentence read,

"Mutual fraudulent intention on the part of both parties to the transaction is required in order to

invoke the protection of the law prohibiting fraudulent conveyances; fraudulent intent on the part

of one of the parties is insufficient." *Id.* While less forceful than the original version, the

modified opinion still states that a conveyance is fraudulent "where the plaintiff establishes

actual and mutual fraudulent intent by both parties." The revised language quoted the Second

Circuit's decision in *Golden Buddha Corp. v. Canadian Land Co., N.V.*, 931 F.2d 196, 201 (2d

Cir. 1991), which held that a complaint had stated a claim under D.C.L. § 276 where it pleaded

the actual intent to defraud of both transferor and transferee.

Neither the Second Circuit nor the New York Court of Appeals has authoritatively

resolved this issue. *Golden Buddha* holds that a claim has been pleaded if the fraudulent intent

of both parties to the transaction was alleged; it did not consider whether pleading the

transferor's intent alone would be enough. *Sharp Intl. Corp. v. State St. Bank & Trust Co. (In re*

*Sharp Intl. Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) and *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n. 5 (2d Cir. 1995), on which the *Bayou Group* court and the Trustee rely, both state that "to prove actual fraud under § 276, the trustee must show intent to defraud on the part of the transferor." However, neither *Sharp* nor *HBE* considered whether the transferee's fraudulent intent must also be proved, because the issue was not raised.[3] Moreover, the statement in *Sharp* is dictum: the fraudulent transfer claim was dismissed, not for reasons of intent, but because the payment was "at most a preference between creditors and did not "hinder, delay, or defraud either present or future creditors." *Sharp*, 403 F.3d at 56. The law on transferee's intent under D.C.L. § 276 is therefore unsettled and will remain so until an authoritative decision by the Second Circuit or the New York Court of Appeals.

The line of authorities requiring that the intention of both the transferor and transferee be proven is the better rule. Unlike constructively fraudulent conveyances under D.C.L. §§ 273-75, a conveyance may be fraudulent under § 276 even if it is made for "fair consideration" as defined by D.C.L. § 272. *United States v. Carlin*, 948 F. Supp. 271, 277-78 (S.D.N.Y. 1996); *Spencer v. Hylton-Spencer*, 709 N.Y.S.2d 207 (2d Dept. 2000). In turn, D.C.L. § 272 defines "fair consideration" to include both equivalent value and the recipient's good faith. Because D.C.L. § 276 does not require "fair consideration," a transfer for fair consideration can be recovered if the requisite intent to defraud is proven.

Requiring pleading and proof of the transferee's intent is consistent with decisions holding that fair consideration need not be proven under § 276. In *Carlin*, the recipient was a shell corporation dominated by the transferor. *Carlin*, 948 F. Supp. at 277-78. In *Spencer*, the recipients were the transferor's siblings and the creditor his former wife. *Spencer*, 709 N.Y.S. 2d at 207. In *Grumman Aerospace Corp. v. Rice*, 605 N.Y.S.2d 305, 307 (2d Dept. 1993), the

---

[3]     In *HBE Leasing Co.*, 61 F.3d at 1059 n.5, the Second Circuit stated that a claim under D.C.L. § 276 need not plead or prove absence of "fair consideration," as defined in § 272.

transfer was from husband to wife at a time when the husband was under criminal investigation. In *Marine Midland v. Murkoff*, 508 N.Y.S.2d 17, 22 (2d Dept. 1986), the recipient was the transferor's spouse, who kept the books of the transferor's bankrupt business and knew he had guaranteed its debts. In each of these cases, intent to defraud was shown by "close relationships among the parties, secrecy and haste in making the transfer, inadequacy of consideration, and the transferor's knowledge of creditor's claims and any inability to pay them." *Carlin*, 948 F. Supp. at 277. In each, therefore, the court could conclude that both transferor and transferee shared an intent to defraud, or at least that the transferee knew of and acquiesced in the transferor's fraud. *See also Fromer v. Yogel*, 50 F. Supp.2d 227, 247 (S.D.N.Y. 1999) (§ 276 claim pleaded with particularity where complaint raised "strong inference" of transferee's knowledge); *Hassett v. Goetzman*, 10 F. Supp. 2d 181, 188-89 (N.D.N.Y. 1998) (transferee spouse had "actual knowledge" of husband's intent); *Kane v. Sesac, Inc.*, 54 F. Supp. 853, 860 (S.D.N.Y. 1943) (transfer for consideration subject to recapture if transferee knew of transferor's fraudulent intent); *Sullivan v. Messer (In re Corcoran)*, 246 B.R. 152, 160 (Bankr. E.D.N.Y. 2000) (transferee's "actual or constructive knowledge of the entire scheme that renders her transaction fraudulent"); *Lipson v. H.M.R. Enterprises, Inc.*, 183 N.Y.S.2d 160, 163 (N.Y. Sup. Ct.), *mod. o.g.* 193 N.Y.S.2d 138 (1st Dept. 1959) (security interest fraudulent where "mortgagee was party or privy to the fraud"). In a Ponzi scheme, on the other hand, the transferor intends to defraud not only third party creditors but the transferee as well, because payments create the fraudulent appearance that the scheme is a legitimate business, allowing it to continue by attracting new victims. *See In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528, 535 (9th Cir. 1990); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund)*, 397 B.R. 1, 8 (S.D.N.Y. 2007); *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987).

Requiring that the Trustee plead and prove the transferee's intent protects the innocent victims of Ponzi schemes to the extent that they have given value.

Finally, for the reasons stated in Point I, the Trustee has not pleaded facts sufficient to attribute any knowledge of Madoff's fraudulent intent that Stanley Chais might have to the Defendants.

## III. THE TRUSTEE HAS NOT SUFFICIENTLY PLEADED HIS CONSTRUCTIVE FRAUD CLAIMS

### A. The Trustee Has Not Sufficiently Pleaded That The Transfers To Defendants Were Not Made For Value Or For Fair Consideration

The Trustee concedes that, for purposes of 11 U.S.C. § 548(a)(1)(B) (transfers not for reasonably equivalent value) and D.C.L. § 273-75 (transfers while insolvent or not for fair consideration), he must plead that Defendants received from BLMIS distributions in excess of the principal they invested. [Trustee's Br. at 21-22]. He contends that he has satisfied this requirement by generic, shotgun pleading that "the source of funds in many of the Chais Family Accounts was fictitious profits received by Chais for participation in the Ponzi scheme." [Complaint ¶ 102]. Which accounts might those be, and what is the Trustee's good faith basis for his assertion? Nothing in the Complaint distinguishes among Defendants or makes any allowance for the principal sums any Defendant invested with BLMIS. This failure is fatal to those claims – the Trustee must plead and prove that the Defendants took out more than they invested, but this basic element has not been alleged in the Complaint and necessitates a dismissal of those claims.

*Drenis v. Haligianis*, 452 F. Supp. 2d 418 (S.D.N.Y. 2006), on which the Trustee relies for the sufficiency of his pleading, demonstrates the opposite. Like this case, *Drenis* was a claim to recover as fraudulent transfers under D.C.L. § 273 payouts from a Ponzi scheme. Unlike this case, the claim in *Drenis* was limited to the recovery of a specified amount, $10,449,196, by

which distributions from the scheme to the defendants were alleged to constitute "fictitious profits" over and above the defendants' investments. The complaint alleged the extent to which defendants' returns had exceeded their investments, and contrasted it with the extent to which the plaintiff victims returns had fallen short. *See Drenis*, 452 F. Supp. 2d at 424. These particularized allegations, *Drenis* held, were sufficient to state a claim under D.C.L. § 273. In this case, in contrast, the Trustee has alleged no baseline of investment by Defendants. At a minimum, *Drenis* requires the Trustee's § 273 claim be dismissed insofar as it seeks recovery by BLMIS of payments representing a return of Defendants' principal.

The Trustee's Opposition asserts that the Defendants' principal investments were obtained by Stanley Chais by fraud on his retail customers and, presumably, gifted to the Defendants. [Trustee's Br. at 23; Complaint ¶¶ 92, 97, 99, 102]. However, that is more than those provisions of the Complaint expressly allege. Even if the unsupported allegations are read most favorably to the Trustee, the source of an investment does not impact the Trustee's ability (or lack thereof) to recover funds. This is just another attempt by the Trustee to make a claim against Stanley Chais and use that as leverage to assert improper claims against the Defendants. As to Defendants' alleged lack of good faith, for the reasons stated in Point I the Trustee has not pleaded any basis to impute Stanley Chais's alleged lack of good faith to the Defendants.

## IV. THE TRUSTEE MAY NOT RECOVER TRANSFERS MADE MORE THAN SIX YEARS BEFORE THE DATE OF THE PETITION

The Trustee argues that New York's discovery rule, CPLR § 203(g) and 213(8), allows him to pursue transfers to Defendants made more than six years before the date of the Petition as long as he brings suit within two years of the time a reasonable creditor of BLMIS would have discovered the fraud. As demonstrated in Defendants' Brief at 32, and as stated in *Lippe v. Bairnco Corp.*, 225 B.R. 846, 852-53 (S.D.N.Y. 1998), cited by the Trustee, the tolling provision of CPLR 213(8) applies only to claims of actual fraud and not constructive fraud. For claims of

constructive fraud under D.C.L. § 273, the six year limitations period of CPLR 213(1) applies. That period is absolute and runs from the date of the transfer. The discovery rule can apply only to the Trustee's claims of transfers made with actual intent to defraud under D.C.L. § 276. *Orr v. Kinderhill*, 991 F.2d 31, 35 (2d Cir. 1993); *Lippe*, 225 B.R. at 853.

With respect to his D.C.L. § 276 claims, the Trustee asserts that "Mr. Madoff operated a Ponzi scheme, took steps to conceal it, and successfully deceived reasonable investors for decades." [Trustee's Br. at 38]. Insofar as that is true, Madoff successfully deceived Defendants. Except for Stanley Chais, the Complaint alleges nothing that would distinguish Defendants from any other reasonable, non-professional investor. As set out in detail at pp. 12-13 of Defendants Brief, ¶¶ 103 and 104 of the Complaint, while replete with allegations that Stanley Chais knew or should have known that Madoff was a fraud, alleges nothing about what any individual Defendant knew other than the information available to the general investing public set out in ¶ 104.[4] Tacitly conceding this, the Trustee plays what he considers to be his ace of trumps, asserting once more that all of Stanley Chais's knowledge is imputable to the Defendants because he is their agent. [Trustee's Br. at 39]. As demonstrated in Point I, the Trustee has not, and cannot, plead that Stanley Chais is the Defendants' agent.

Without imputation, the Trustee has placed himself in a contradictory position. To toll the statute of limitations on his D.C.L. § 276 claims, he must allege that a reasonable, non-professional investor could not have discovered Madoff's fraud. Since he has not alleged that the Defendants knew more than any other reasonable non-professional investor, he can extend

---

[4]     To the extent that Complaint ¶ 103 alleges "red flags" with respect to particular Defendants' accounts, that knowledge would be known, if at all, to the parties to that particular account. The Trustee cannot use shotgun pleading to impute what any one Defendant might have known to the others. *See Apace Commc'ns, Ltd.*, 522 F. Supp. 2d 512, 517 (W.D.N.Y. 2007); *Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03 Civ. 3120, 2005 U.S. Dist. LEXIS 16382, 2005 WL 1902780, at *12 (S.D.N.Y. Aug. 9, 2005); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91-civ-2923, 1994 U.S. Dist. LEXIS 2929, at *21, 1994 WL 88129, at *7 (S.D.N.Y. Mar. 15, 1994).

the limitations period only by conceding that the Defendants lacked knowledge of Madoff's fraudulent intent. Because the Trustee must plead (and ultimately prove) the Defendants' intent under D.C.L. § 276 for the reasons stated in point II, and because he has pleaded no facts showing that the Defendants – as opposed to Stanley Chais – knew anything more than the reasonable investor in BLMIS – the allegations he relies on to toll the statute of limitations under the discovery rule simultaneously negate his claim under D.C.L. § 276.

## V. THE TRUSTEE'S CLAIM FOR TURNOVER AND ACCOUNTING MUST BE DISMISSED BECAUSE THE TRANSFERS ARE NOT PROPERTY OF THE ESTATE

The Trustee apparently concedes that the weight of authority cited in Defendants' Brief at pp. 35-36 is that a turnover proceeding cannot be used to recover property whose title is still in dispute. In *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008), the defendant does not appear to have disputed the propriety of bringing a turnover proceeding to recover an alleged but disputed fraudulent transfer. *Doyle v. Paolino (In re Energy Sav. Cntr.)*, 61 B.R. 732, 735 (E.D. Pa. 1986), holds that the trustee's inartfully pleaded claim for turnover under § 542 gave fair warning of a fraudulent transfer claim under § 548, and that it was therefore fair to amend the pleadings to the proof after trial and recover the fraudulently transferred property. When the issue is directly raised, this Court has held repeatedly that a turnover proceeding cannot be used to recover alleged fraudulent transfers. *Andrew Velez Constr., Inc. v. Consol. Edison Co. of N.Y. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 273 (Bankr. S.D.N.Y. 2007); *Savage & Assoc., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005).

The Trustee's reliance on the SIPA statute, 15 U.S.C. § 78fff-2(c)(3) is circular. The statute provides in pertinent part:

> . . . the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property *if and to the extent that such*

*transfer is void or voidable under* the provisions of title 11 . . . Such recovered property shall be treated as customer property. *For purposes of such recovery,* the property so transferred shall be deemed to have been the property of the debtor and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, the laws of any State to the contrary notwithstanding. [emphasis added].

This section simply incorporates the fraudulent transfer recovery provisions of the Code into the SIPA statute. Once it is adjudged that property was fraudulently transferred, it is deemed to have been the debtor's property for SIPA purposes, but not until then. To obtain that adjudication, a SIPA trustee is simply given the rights and powers of a trustee under the Code. Accordingly, the Trustee's claim for turnover and accounting should be dismissed.

## VI.   THE TRUSTEE'S CLAIM TO AVOID SUBSEQUENT TRANSFERS MUST BE DISMISSED BECAUSE THE TRUSTEE HAS NOT IDENTIFIED ANY SUBSEQUENT TRANSFERS

The Complaint alleges that, on information and belief, subsequent transfers were made "by one or more Defendants directly or indirectly to Defendant Chais and/or other Defendants in the form of payment of Commissions or fees, transfers from one account to another, or other means." The trustee has not identified any such transfers or transferees. His conclusory pleading falls far short of *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distribs.),* 379 B.R. 5 (Bankr. E.D.N.Y. 2007), on which he relies to defend it. In *Silverman*, the complaint did not provide "dollar for dollar" tracing of subsequent transfers, but it specifically identified the transferees, the nature of the transfers, and the uses to which the transferred funds were put. *See Silverman*, 379 B.R. at 29-30. He has not pleaded that any of Defendants received commissions. Nor has he identified transfers from one of Defendants' BLMIS accounts to another, although he has had the benefit of the possession and analysis of the records of BLMIS well before the Complaint was filed. This purely speculative claim fails to satisfy the minimum standard of plausibility and should be dismissed.

## VII.   DEFENDANTS SHOULD BE PERMITTED TO SEEK RELIEF UNDER SIPA

The Trustee asserts that Defendants have not identified any of them who have filed claims with SIPA. The filing of those claims is a matter of public record that can be judicially noticed, and such parties include, but are not limited to: Unicycle Trading Company, Onondaga, Inc. Defined Benefit Plan, Emily Chais 1983 Trust, Benjamin Chasalow Trust, William Chais 1983 Trust, Rachel Chasalow Trust, Justin Chasalow Trust, Mark Chais 1983 Trust, Ari Chais 1999 Trust and Tali Chais 1997 Trust.

The Trustee argues that any of the Defendant's claims under SIPA are barred by 11 U.S.C. § 502(d) so long as the Defendants are retaining funds that the Trustee alleges are fraudulently transferred. This argument depends on claims against SIPA being "claims against the estate" within the meaning of § 502(d). The Trustee asserts that they are because SIPA declares customer claims to be against the debtor, rather than SIPA, and states that SIPC "advances" funds against the customer's claim. This is a legal fiction that ignores the reality of a Ponzi scheme. Because such schemes are insolvent from their inception, there can never be sufficient customer property to satisfy customers' claims for return of principal. Even if every penny of fictitious profits were recovered from every customer of BLMIS and redistributed among them pro rata, the customers would receive far less than the original principal they had invested over the life of the scheme. As Defendants have demonstrated [Defendants Br. 39], economically and legally, SIPC rather than the estate is at risk for the $500,000 per customer it "advances" to reimburse them.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' initial Brief, Counts One and Three through Eleven of the Complaint should be dismissed against Defendants.

Dated: March 26, 2010

<div style="margin-left:40%">

Respectfully submitted,

SILLS CUMMIS & GROSS, P.C.

By: /s/ Philip R. White
    Philip R. White
    Andrew H. Sherman
    One Rockefeller Plaza
    New York, NY 10020
    Tel: 212-643-7000
    pwhite@sillscummis.com
    asherman@sillscummis.com

*Attorneys for Defendants Emily Chasalow,
Mark Chais, Wrenn Chais, William Chais,
Miri Chais and the Entities identified On
Exhibit 1 to the Previously Filed
Notice of Partial Motion to Dismiss*

</div>