**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**                    FOR PUBLICATION

----------------------------------------------------------X

In re:                                                              No. 08-01789 (BRL)

BERNARD L. MADOFF INVESTMENT                     SIPA LIQUIDATION
SECURITIES LLC,                                            (Substantively Consolidated)

                         Debtor.

----------------------------------------------------------X

IRVING H. PICARD, Trustee for the
Liquidation of BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                                                                   Adv. Pro. No. 09-1172 (BRL)

                         Plaintiff,

            v.

STANLEY CHAIS, *et al*.,

                         Defendants.

----------------------------------------------------------X

APPEARANCES:

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
By:    David J. Sheehan
         Marc E. Hirschfield
         Paul P. Eyre (admitted *pro hac vice*)
         Ona T. Wang
         Karl Fanter (admitted *pro hac vice*)

*Attorneys for Plaintiff, Irving H. Picard, Esq., Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

LOEB & LOEB LLP
345 Park Avenue
New York, NY 10154
Telephone: (212) 407-4000
Facsimile:  (212) 407-4990
By:    Eugene Licker
         Walter H. Curchack
         Amanda Merkur

*Attorneys for Defendants Stanley Chais, Pamela Chais, Appleby Productions Ltd., Appleby*
*Productions Ltd. Defined Contribution Plan, Appleby Productions Ltd. Money Purchase Plan,*
*Appleby Productions Ltd. Profit Sharing Plan, and the 1991 Chais Family Trust*

Before: Hon. Burton R. Lifland
    United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER GRANTING TRUSTEE'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

Before the Court is the motion to dismiss (the "Motion to Dismiss") of plaintiff Irving H. Picard, Esq. (the "Trustee" or "Picard"), trustee for the substantively consolidated Securities Investor Protection Act[1] ("SIPA") liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff") seeking to dismiss the counterclaims filed by defendants Stanley Chais, Pamela Chais, Appleby Productions Ltd., Appleby Productions Ltd. Defined Contribution Plan, Appleby Productions Ltd. Money Purchase Plan, Appleby Productions Ltd. Profit Sharing Plan, and the 1991 Chais Family Trust (collectively, the "Answering Defendants") in the above-captioned adversary proceeding.

The Answering Defendants assert four counterclaims (the "Counterclaims")[2] against the Trustee, all of which are based on a notice letter (the "Letter") that the Trustee sent to Goldman Sachs ("Goldman") on March 6, 2009: (1) tortious interference with a contract; (2) tortious interference with a business relationship; (3) conversion; and (4) a Fifth Amendment violation. The Trustee asserts that the Counterclaims fail to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, and should be dismissed. For the reasons set forth below and at oral argument, the Trustee's Motion to Dismiss is GRANTED.

---

[1] 15 U.S.C. § 78aaa *et seq.*  References to sections of SIPA hereinafter shall replace "15 U.S.C." with "SIPA."

[2] The Counterclaims can be found in the Answer of Stanley Chais, Pamela Chais, Appleby Productions Ltd., Appleby Productions Ltd. Defined Contribution Plan, Appleby Productions Ltd. Money Purchase Plan, Appleby Productions Ltd. Profit Sharing Plan, and the 1991 Chais Family Trust ("Answer") (Dkt. No. 45), ¶¶ 179-211.

## BACKGROUND

### I.     The Trustee's Complaint Against the Defendants

On May 1, 2009, the Trustee filed a complaint (the "Complaint") against the Answering Defendants and others (collectively, the "Defendants"),[3] seeking to avoid and recover preferential payments and fraudulent transfers of over $1 billion in connection with the infamous Madoff Ponzi scheme.  For a detailed background of the mechanics of the Ponzi scheme and the events preceding the Trustee's Complaint, see *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 424 B.R. 122, 125-33 (Bankr. S.D.N.Y. 2010).

### II.    The Answering Defendants' Counterclaims Against the Trustee

On November 12, 2009, the Answering Defendants answered the Complaint and filed their Counterclaims.  In addition to damages, the Answering Defendants seek "an order by the Court declaring that the Letter should be withdrawn and that the contents of the Account are not customer property or property of the estate and enjoining the Trustee from sending out similar letters in the future."  Answer, p. 27.

The following facts alleged in the Counterclaims, presented in the light most favorable to the Answering Defendants, are assumed to be true for purposes of this Motion to Dismiss.  In 2002, Stanley Chais, acting as co-trustee of the 1991 Chais Family Trust, opened an account at Goldman (the "Account").  The Account was the "principal and only materially liquid asset of Mr. and Mrs. Chais other than the accounts they held with Madoff."  Answer, ¶ 180.  In March 2009, approximately three months after the collapse of Madoff's Ponzi scheme, Goldman notified Stanley and Pamela Chais that they would not be permitted to withdraw any funds from the Account.  Initially, Goldman ignored Stanley and Pamela Chais' inquiries as to why their

---

[3] For a complete list of the Defendants, see Exhibit A to this Memorandum Decision and Order.

account was frozen. Goldman later claimed that the freeze was the result of the Chaises' failure to honor capital calls on some of the Account's investments. Finally, Goldman admitted that the freeze was a result of the Letter it received from the Trustee, prohibiting Goldman from disbursing any funds currently in the Account.

### a.  The Trustee's March 6, 2009 Notice Letter to Goldman

On March 6, 2009, the Trustee sent the notice Letter to Goldman stating that "[Goldman] may have received funds, either directly or indirectly, from BLMIS during the 90-day period prior to the Filing Date (the "Funds")" constituting "customer property" as defined under SIPA section 78*lll*(4). *See* Answer, Exhibit A (attaching the letter), at p. 1 [hereinafter, the "Letter"]. The Letter explains that "customer property" means "cash and securities . . . at any time received, acquired or held by or for the account of [BLMIS] or for the securities accounts of a customer, and the proceeds of any such property transferred by [BLMIS], including property unlawfully converted." *Id.* (quoting SIPA § 78*lll*(4)).

After providing legal authority for SIPA's definition of "customer property," the Letter puts Goldman on notice that any further disbursements of Funds will constitute a willful violation of the Bankruptcy Court's automatic stay:

> This letter places you on notice (if you were not already on notice) that because the Funds constitute "customer property" and, therefore, property of BLMIS pursuant to SIPA, the Trustee will presume that any further payment or disposition of the Funds by you (whether or not at the direction of your customer or depositor) will be deemed a willful violation of the automatic stay by the Bankruptcy Court.

*Id.* at 2. The Letter therefore instructs Goldman "to refrain from engaging in or permitting any transfers or dispositions of the Funds and other monies received from BLMIS without an order from the Bankruptcy Court." *Id.*

Finally, the Trustee warns Goldman that "failure to abide by this instruction may subject [Goldman] to liability under 11 U.S.C. §§ 549 and 550." *Id.* The Trustee adds that "any such

4

transfer or disposition may be deemed by the Bankruptcy Court to have been made in bad faith"
and Goldman's liability "may include sanctions."  *Id.*  It is noteworthy that the two-page letter
never mentions the Answering Defendants.

The Answering Defendants assert that the contents of the Letter are "patently untrue" and
that the "scant legal authority cited is entirely misrepresented."  Answer, ¶ 186.  They continue
that the "Trustee does not have the power to control Mr. and Mrs. Chais' assets and such assets
are not a part of the Madoff estate."  *Id.*  Finally, they allege that Goldman "felt threatened by the
Letter" and therefore "effectuated a freeze over the Account - only allowing disbursements that
were approved and directed by the Trustee."  *Id.*, ¶ 187.  The freeze remains in effect pursuant to
a consent order, as explained below.

### b. The Order to Show Cause and The Consent Order Freezing Assets

The Answering Defendants allege that at the outset, the Trustee refused to share the
Letter or its contents with Mr. and Mrs. Chais.  Only after Mr. and Mrs. Chais filed a related
Order to Show Cause did the Trustee finally disclose the Letter to them.

On September 29, 2009, the Answering Defendants moved the Court by an order to show
cause seeking a declaration that the money in the Account was wrongfully frozen.  Dkt. No. 17.
On October 1, 2009, the Trustee opposed the Answering Defendants' motion and filed an
application for a temporary restraining order and preliminary injunction prohibiting the
Answering Defendants from transferring or otherwise dissipating "any of the funds in their
banking and investment accounts located in the custody of Goldman Sachs, City National Bank,
or elsewhere . . . ." Dkt. No. 22, p. 1.  That same day, the Court held a chambers conference on
the matter and entered an order to show cause with a temporary restraining order enjoining the
Answering Defendants from "transferring or otherwise of disposing [sic] any of their assets or

assets of entities they control prior to the hearing on Plaintiff's Application for a Temporary Restraining Order" and permitting the Answering Defendants to withdraw up to $50,000 from their accounts (the "October 1, 2009 Order"). Dkt. No. 23, p. 2.   The temporary restraining order was subsequently extended, upon consent of the parties, on October 7, 2009,[4] October 20, 2009,[5] and October 29, 2009.[6]  Dkt. Nos. 28, 29, 32, respectively.

On November 2, 2009, the Answering Defendants entered into a consent order with the Trustee, freezing various assets belonging to the Answering Defendants, including the Goldman Account.  Dkt. No. 33.  The consent order also allowed the Answering Defendants to withdraw money from those accounts for legal, medical and living expenses, in addition to other expenses such as capital calls.  *Id.*  Based on the Answering Defendants' representation of need, the Trustee approved the release of over $450,000 from the Account at Goldman.  Declaration of Paul P. Eyre in Support of Application for a Temporary Restraining Order and Preliminary Injunction (Dkt. No. 21), ¶ 12.

On May 5, 2010, the Court heard oral argument regarding, *inter alia*, the Answering Defendants' Counterclaims.

## <u>MOTION TO DISMISS UNDER RULE 12(b)(6)</u>

Rule 12(b)(6), made applicable to this proceeding by Bankruptcy Rule 7012, allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be

---

[4] The October 7, 2009 temporary restraining order (the "October 7, 2009 Order") also permitted the Answering Defendants to withdraw up to $100,000 from their accounts, inclusive of the amount authorized in the Court's October 1, 2009 Order, of which, at the request of the parties, $50,000 could be used for legal fees, with the remainder to be used at their discretion.

[5] The October 20, 2009 temporary restraining order contained the same terms for withdrawal of funds as the October 7, 2009 Order.  *See supra* n.4.

[6] The October 29, 2009 temporary restraining order permitted the Answering Defendants to withdraw up to $150,000 from their accounts, inclusive of the amount authorized in the Court's October 1, 2009 Order and October 7, 2009 Order, of which, at the request of the parties, $50,000 could be used for legal fees, with the remainder to be used at their discretion.

granted." FED. R. CIV. P. 12(b)(6).[7]  When considering a motion to dismiss under Rule 12(b)(6),

a court must accept all factual allegations in the complaint as true and draw all reasonable

inferences in the plaintiff's favor.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d

144, 148 (2d Cir. 2000).

Rule 8(a)(2), incorporated herein by Bankruptcy Rule 7008, provides that a pleading

stating a claim for relief must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  As clarified by recent U.S. Supreme Court

jurisprudence, two underlying principles must be considered in assessing a complaint under Rule

8.  <u>First</u>, "the tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions."  *Iqbal*, 129 S. Ct. at 1949.  Thus, a recitation of the

elements of a cause of action, supported by mere conclusory statements, is insufficient.  *Id.*

<u>Second</u>, "only a complaint that states a plausible claim for relief survives a motion to dismiss."

*Id.* at 1950.  In determining plausibility, the court must "draw on its judicial experience and

common sense," *id.*, and determine whether the factual allegations "raise a right to relief above

the speculative level."  *Twombly*, 550 U.S. at 545.  In addition, although the court must take the

plaintiffs allegations as true, "the claim may still fail as a matter of law . . . if the claim is not

legally feasible."  *Linzer Prods. Corp. v. Sekar*, 499 F. Supp. 2d 540, 547 (S.D.N.Y. 2007)

(quoting In *re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 459

(S.D.N.Y. 2006)).[8]

---

[7] A motion to dismiss a <u>counterclaim</u> for failure to state a claim upon which relief may be granted is governed by
Rule 12(b)(6).  *See New York Mercantile Exch., Inc. v. Intercont'l Exch., Inc.*, 323 F. Supp. 2d 559, 560-61
(S.D.N.Y. 2004).

[8] To the extent that Rule 9(b) applies, a party must state "with particularity" the statements he alleges were
fraudulent and the reasons those statements were fraudulent. FED.R.CIV.P. 9(b). *See infra* at p. 16, n.14.

## DISCUSSION

The Answering Defendants' Counterclaims essentially allege that the Trustee violated his duties as Trustee and committed a number of torts when he sent the Letter to Goldman. These Counterclaims must be dismissed because the Trustee sent the Letter in good faith within the scope of his duties, and is therefore immune from liability.  Even if the Trustee did not have this immunity, which he clearly does, the Counterclaims all hinge on the facially implausible assertion that Goldman, a full-service global investment banking and securities firm with its own advisors and attorneys, chose to breach its contract with the Answering Defendants based on the Trustee's Letter.  At bottom, the Answering Defendants failed to sufficiently plead causes of action against the Trustee for tortious interference with a contract, tortious interference with a business relationship, conversion or violation of the Fifth Amendment.  Accordingly, regardless of the way in which the Counterclaims are analyzed, they must be dismissed in their entirety.

I.    **The Trustee Has Immunity from Liability When Acting Within The Scope of His Duties**

The Trustee has immunity from liability[9] because the Trustee's act of sending the Letter to Goldman was performed in good faith and within the scope of his statutory and court-appointed duties.  In the Second Circuit, a bankruptcy trustee is a quasi-judicial official "immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order."  *In re Smith*, 400 B.R. 370,

---

[9] It is not clear in what capacity the Answering Defendants are suing the Trustee.  For purposes of this Motion to Dismiss, the Court is assuming that the Answering Defendants are suing the Trustee in his representative capacity. If they are suing the Trustee individually and seeking recovery from him personally, then the Counterclaims are dismissed as "[i]t is fundamental that in an action brought by a party in a representative capacity, a counterclaim cannot be asserted against the plaintiff in his individual capacity." *Eisenberg v. Casale (In re Casale)*, 62 B.R. 899, 900 (Bankr. E.D.N.Y. 1986) (quoting 3 *Moore's* Federal Practice § 13.06[1] (2d ed. 1984)).  Rule 13, made applicable by Bankruptcy Rule 7013, mandates that a counterclaim be asserted against an "opposing party."  A trustee, in his individual capacity, is not an "opposing party" in an action commenced by a trustee in his representative capacity. *Eisenberg*, 62 B.R. at 900; *Rogers v. Virgin Land, Inc.*, No. 1996-13M, 1996 WL 493174, at *2 (D.V.I. May 13, 1996); *Pettigrew v. Graham (In re Graham)*, 16 B.R. 606, 611 (Bankr. N.D. Ga. 1981). Accordingly, any of the Counterclaims asserted against the Trustee personally must be dismissed.

377 (Bankr. E.D.N.Y. 2009); *see also Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F. 3d 272, 276 (2d Cir. 1996) (bankruptcy trustee is considered an officer of the court and "the court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties"); *Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y. 1985) (a trustee has immunity from liability when acting "at the court's behest or under its supervision and subject to its orders.").

Courts employ this same immunity standard to SIPA trustees. *Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.*), Nos. 95-08203 (JLG), 95-924A, 1998 WL 551972, at *11 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*, 208 F.3d 202 (2d Cir. 2000). Similar to a Chapter 7 bankruptcy trustee, a SIPA trustee "is not liable in any manner for mistakes in judgment where discretion is allowed." *Id.* at *17. Additionally, like a Chapter 7 trustee, a SIPA trustee's "duty to the SIPA estate as a whole clearly prevails over the interests of any single customer." *Id.* A SIPA trustee may be held liable only for a "knowing, intentional and/or negligent breach of his fiduciary duties," but there can be no breach of duty to a customer where a trustee acts in accordance with the statutory scheme. *Id.* at *11, *17. Accordingly, a SIPA trustee enjoys immunity when acting in the interest of the estate and in a manner and on a subject that SIPA expressly contemplates. *Id.* at *17.

The Answering Defendants assert that the Trustee is not immune from personal liability because his immunity is qualified and his behavior in sending the Letter "is not of the type protected by any quasi-judicial immunities." Chais Opposition,[10] p. 27. Specifically, relying upon an exception maintained by the Second Circuit, they argue that the Trustee is not afforded immunity on the basis that he negligently or intentionally violated his duties. *Dana Comm.*

---

[10] Memorandum of Law of Stanley Chais, Pamela Chais, Appleby Productions Ltd., Appleby Productions Ltd. Defined Contribution Plan, Appleby Productions Ltd. Money Purchase Plan, Appleby Ltd. Profit Sharing Plan and the 1991 Chais Family Trust in Opposition to Plaintiff's Motion to Dismiss Counterclaims (Dkt. No. 73).

*Credit Corp. v. Nisselson (In re Ctr. Teleproductions, Inc.)*, 112 B.R. 567, 576 (Bankr. S.D.N.Y. 1990) ("[A] bankruptcy trustee may be held liable for negligent or willful acts in carrying out his statutory or other duties.").  In essence, the Answering Defendants' argument is that the Trustee intentionally misstated the law and made unsubstantiated threats in his Letter to further improper purposes, and must therefore be held liable.

Beyond this bald assertion, the Answering Defendants fail to plausibly allege that the Trustee intentionally misstated the law or acted other than in his discretion within the limits of a court order or statutory duty.  Here, the Trustee was statutorily authorized to send the Letter to Goldman regarding BLMIS funds held in the Answering Defendants' Account in an effort to marshal assets of the estate.  *See Kusch*, 1998 WL 551972, at *11, *17 (charging the SIPA trustee with the duties of "marshaling the assets of a debtor's estate and distributing the proceeds in accordance with the scheme established under the statute," and providing him with "wide discretion" in determining how to comply with this mandate).  Moreover, the Trustee reasonably believed his act to comport with the December 15, 2008 order appointing him as trustee and charging him with "tak[ing] immediate possession of the property of the Defendant, wherever located."  S.D.N.Y. No. 08-10791, Dec. 15, 2008 Order, Dkt. No. 4, ¶¶ II, IV, X (bestowing the Trustee with powers under SIPA section 78eee(b)(3) and implementing a stay from disbursing property "except for the purpose of effecting possession and control of said property by the trustee"), *see* Tr. Mem. Law in Supp. of Pl.'s Motion to Dismiss Defendants' Counterclaim, at p. 11.  The Trustee sent the Letter in accordance with the best interests of the estate, within the discretion provided to him under SIPA and in accordance with a legal position he in good faith advocated.  Thus he cannot have "intentionally violated his duties."  The question of whether the funds in the Account constitute "customer property" by virtue of SIPA section 78fff-2(c)(3) is

complex, with scant precedential authority, and has only recently been addressed by this Court, long after the Trustee sent out the Letter at issue. *See Picard v. Merkin, et al. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789, 2010 WL 4643102, *20-22 (Bankr. S.D.N.Y. Nov. 17, 2010). In *Merkin*, this Court analyzed "whether SIPA section 78fff-2(c)(3) makes property that was transferred prepetition to a third party 'property of the debtor' for purposes of turnover under section 542 of the Code." *Id*. at * 20. As noted in *Merkin*, "the plain language of SIPA section 78fff-2(c)(3) is subject to differing interpretations, and there is a dearth of interpretative caselaw." *Id*. This Court continued that "only nine cases address SIPA section 78fff-2(c)(3), three of which merely cite the statute without analysis or discussion." *Id*. After a thorough review, this Court was "constrained" to find that transferred property becomes "customer property" only following a successful avoidance action. *Id*. at 22.[11] Yet, a thorough review and analysis of extant statutory and case law at the time the Trustee sent the Letter supported a good faith espousal of the Trustee's legal positions in accordance with his business judgment. Accordingly, he is immune from liability, and the Counterclaims against him must be dismissed.

Moreover, the Answering Defendants failed to cite any cases on point to bolster their assertion that the Trustee is not immune from personal liability. The facts in the two cases that they cite are not fitting here. The first case cited, *In re Gorski*, 766 F.2d 723 (2d Cir. 1985), involved a chapter 11 trustee who was held personally liable due to his failure to oversee a debtor's compliance with a court-approved payment plan. When asked by the Court to explain his failure to carry out his obligations as trustee, he stated, "I really have no excuse." *Id.* at 725. The second case cited, *Dana Comm. Credit Corp. v. Nisselson (In re Ctr. Teleproductions, Inc.)*, 112 B.R. 567 (Bankr. S.D.N.Y. 1990), involved a chapter 11 trustee who was alleged to have

---

[11] This Court's decision does not prevent the Trustee from seeking a prejudgment attachment to freeze such property while avoidance actions are pending. *See also Merkin*, 2010 WL 4643102 at * 21, n.33 (noting that the Trustee may utilize provisional remedies such as attachment).

11

wrongfully obtained a court order.  There, the trustee explained that liability may be imposed

only in limited situations, none of which applies in our case:

> [I]n this circuit, a bankruptcy trustee is immune from suit for personal liability for acts
> taken as a matter of business judgment in acting in accordance with statutory or other
> duty or pursuant to court order.  Where the trustee negligently fails to discover his agent's
> negligence, negligently obtains a court order, or negligently or willfully carries out a
> court order he knew or should have known he wrongfully procured, however, personal
> liability will attach.

*Id.* at 578.  The Answering Defendants' Counterclaims make no such plausible allegations that

the Trustee intentionally misstated the law or acted outside the realm of his business judgment

when he sent the Letter to Goldman.  This act constituted a lawful and authorized exercise of his

powers under SIPA and pursuant to court order and the Trustee is therefore "not liable in any

manner for mistakes in judgment where discretion is allowed."  *Kusch v. Mishkin (In re Adler,*

*Coleman Clearing Corp.*), Nos. 95-08203 (JLG), 95-924A, 1998 WL 551972, at *17 (Bankr.

S.D.N.Y. Aug. 24, 1998), *aff'd*, 208 F.3d 202 (2d Cir. 2000).

Finally, sound policy counsels in favor of providing immunity for trustees in cases such

as this one.  *See Weissman v. Hassett*, 47 B.R. 462, 467 (S.D.N.Y. 1985).  A trustee should be

shielded from liability for his lawful exercises of judgment and discretion, even if, in hindsight,

such interpretations of law were incorrect.  If immunity applied only to decisions that turned out

to be proper, there would be no need for the doctrine of immunity.  Here, a determination that the

Trustee can be held liable would deter future trustees for fear they could be held liable for every

discretionary decision.  *Id.*  ("Even a remote prospect of personal liability . . . could not help but

lessen the vigor with which future reorganization trustees will pursue their obligations").  The

Court cannot impose liability on the Trustee for carrying out his duties in good faith and based

on his business judgment.  Accordingly, the Trustee is entitled to immunity, and the Answering

Defendants' Counterclaims must be dismissed.

## II.    The Answering Defendants' Counterclaims Have Not Been Adequately Pled

Even assuming that the Trustee did not have immunity from liability, the Counterclaims

must be dismissed because they have not been adequately pled.

### a.    Goldman, Not the Trustee, Properly Froze Assets from the Answering Defendants' Account

At the outset, the Counterclaims must be dismissed because they all stem from the

facially implausible contention that Goldman chose to breach its contract with the Answering

Defendants by withholding disbursements from the Account based solely on the Trustee's Letter.

Goldman, a top-ranking international investment banking and securities firm with its own

consultants and attorneys, was fully capable of deciding whether it was permissible to freeze

funds in the Answering Defendants' Account.  Presumably after consulting with its advisors and

performing considerable due diligence, Goldman determined that it could do so in accordance

with the Chais 1991 Family Trust Customer Agreement (the "Customer Agreement" or the

"Contract").[12]  Therefore, Goldman voluntarily elected to freeze the funds in the Account,

pending further instructions from the Trustee.  If at all, the Counterclaims should have been

---

[12] The Customer Agreement can be found in Exhibit 1 to the Declaration of Marc E. Hirschfield in Support of Trustee's Motion to Dismiss Defendants' Counterclaim (Dkt. No. 63).  As it is "integral" to the Answering Defendants' Counterclaims, and frequently referenced throughout their pleading (*see, e.g.*, Answer, ¶¶ 179-82, 184-87, 190-94, 197-200), it may properly be considered by the Court, despite the Answering Defendants' failure to attach it.  *Castorino v. Citibank N.A.*, No. 07-CIV-10606 (PAC), 2008 WL 5114482, at *3, n.3 (S.D.N.Y. Dec. 5, 2008); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 180 F. Supp. 2d 420, 423-24 (W.D.N.Y. 2001); *see also New York Mercantile Exch., Inc. v. Intercontinental Exch., Inc.*, 323 F. Supp. 2d 559, 561 (S.D.N.Y. 2004) ("In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may consider documents that are referenced in the counterclaims, documents that the counterplaintiff relied on in bringing suit and that are either in the counterplaintiff's possession or that the counterplaintiff knew of when bringing suit." ).  Moreover, consideration of the Contract will not convert the motion into one for summary judgment.  *Gilbert v. LaSalle Bank Corp.*, No. 06-CIV-4799 (LAK)(JCF), 2007 WL 1290598, at *3 (S.D.N.Y. May 2, 2007); *see also Beng Soon Lim v. Harvest Int'l Realty, Inc.*, No. 08-CIV-3505 (DRH)(WDW), 2009 WL 4110382, at *3 (E.D.N.Y. Nov. 23, 2009) (stating that a party "should not be allowed to escape the consequences of its own failure" to attach a document).

brought against Goldman, the party who performed the act causing the alleged injury.[13]
Accordingly, the Counterclaims against the Trustee must fail.

### b. There is No Cause of Action Against the Trustee for Tortious Interference with a Contract

The Answering Defendants failed to sufficiently allege that the Trustee tortiously interfered with their Contract with Goldman. Under New York law, to prevail on a claim for tortious interference with a contract, a plaintiff must show the following elements: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (internal quotations omitted).

Here, the Answering Defendants have not properly pled at least two of the elements. <u>First</u>, they have not adequately alleged that there was an actual breach of the Contract. In fact, the Contract's terms "are squarely at odds" with the Answering Defendants' allegations of breach of contract. *Castorino v. Citibank N.A.*, No. 07-CIV-10606 (PAC), 2008 WL 5114482, at *3 (S.D.N.Y. Dec. 5, 2008). The Contract specifically provides Goldman with authority to freeze funds at its complete discretion:

> In no event will [Goldman] or its affiliates be obligated to effect any transaction they believe would violate any federal or state law, rule or regulation or the rules or regulations of any regulatory or self-regulatory body.

*See* Customer Agreement, ¶ 29. In addition, the Contract states that Goldman has a security interest in the funds in the Account and is "authorized to take whatever action is

---

[13] The Answering Defendants assert that "the Trustee need not be the one doing the withholding to be liable for conversion." Mem. of Law in Opp. to Pl.'s Motion to Dismiss Counterclaims at pp. 20-21. Yet, the Answering Defendants fail to cite even a single case in support of this proposition. As explained above, it is not plausible that the Trustee caused the funds to be withheld absent Goldman's intervening decision.

necessary to perfect or maintain the perfection of a security interest . . . . " *Id.*, ¶ 22. Finally, the

Contract states,

> [if Goldman] in its discretion, deems it advisable for its protection, [Goldman] may, at
> any time and without prior notice to you . . . cancel, terminate, accelerate, liquidate
> and/or close out any or all agreements or transactions between you and [Goldman] or
> otherwise relating to the Account . . . [or] take any other action as [Goldman], in its
> discretion, deems appropriate with respect to any for the foregoing, and apply the
> proceeds to the discharge of the obligation.

*Id.*  This language provides Goldman with ample discretion to withhold funds from the

Answering Defendants' Account, regardless of the reason, so long as Goldman "deems it

advisable for its protection." *Id.*  As such, the language in the Contract plainly defeats the

Answering Defendants' allegation of a contractual breach, and their cause of action for tortious

interference with a contract must be dismissed.

Second, the Answering Defendants failed to sufficiently plead that the Trustee sent the

Letter to Goldman "without justification."  Under New York law, actions taken to protect an

economic interest are justified and cannot give rise to a tortious interference with a contract

claim. *See Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.*), Nos. 95-08203 (JLG), 95-

924A, 1998 WL 551972, at *19 (Bankr. S.D.N.Y. Aug. 24, 1998), *aff'd*, 208 F.3d 202 (2d Cir.

2000) (holding that a SIPC trustee's maximization of the value of the estate was sufficient

economic justification to dismiss a tortious interference with contract action); *Foster v.

Churchill*, 87 N.Y.2d 744, 750-51 (1996) (holding that acts in furtherance of an economic

interest defeat claims for tortious interference with a contract).  In this instance, the Letter was

justified because it was sent in furtherance of the Trustee's economic interest in preserving and

maximizing assets of the estate for distribution to Madoff customers.  Thus, the Trustee's

"concrete, pre-existing economic interest" is adequate justification for sending the Letter. *White

Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460 F.3d 281, 286 (2d Cir. 2006).

Given that the Trustee had a plausible economic interest in sending the Letter, in order to succeed on their tortious interference with a contract claim, the Answering Defendants must demonstrate that the Trustee acted with fraud, malice or illegality.  *See Foster*, 87 N.Y.2d at 750-51; *White Plains Coat & Apron Co.*, 460 F.3d at 286.  Moreover, mere barebones allegations of malice are not sufficient.  *See Ruha v. Guior*, 717 N.Y.S.2d 35, 36 (App. Div. 2000).  Here, the Answering Defendants have not alleged a claim for fraud,[14] nor have they pled that the Trustee acted illegally or with actual malice in connection with the Letter.  *See* Answer, ¶ 192 (pleading only that the Letter used "false representations of the law" but failing to allege that such representations were intentional and willful).  Rather, the Trustee simply advocated a legal position that he, in good faith, believes to be true.  Such behavior certainly falls short of constituting "fraud, malice or illegality."  Accordingly, the Answering Defendants' claim for tortious interference with a contract must be dismissed.

### c.  There is No Cause of Action Against the Trustee for Tortious Interference with a Business Relationship

The Answering Defendants have likewise failed to sufficiently allege that the Trustee tortiously interfered with their business relationship with Goldman.  Under New York law, to prevail on such a claim, a plaintiff must show that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair or improper means; and (4) the defendant's acts injured the relationship."  *Catskill Dev., LLC v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).

---

[14] In any event, the Answering Defendants have not met the pleading requirements under Rule 9(b), as they have failed to state "with particularity" the statements they allege were fraudulent and the reasons those statements were fraudulent.  FED.R.CIV.P. 9(b).

While the elements for tortious interference with business relations are similar to the elements for tortious interference with a contract, a plaintiff must show "more culpable conduct on the part of the defendant" to satisfy element (3) for a tortious interference with business relations claim. *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 621 (N.Y. 1996); *see also Catskill Dev.*, 547 F.3d at 132 ("The wrongful means requirement makes alleging and proving a tortious interference claim with business relations more demanding than proving a tortious interference with contract claim.") (internal quotations omitted). Therefore, "a defendant will not be liable for tortious interference with business relations so long as the means employed are not wrongful." *Levista, Inc. v. Ranbaxy Pharm., Inc.*, No. 09-CIV-0569 (SJF) (MLO), 2010 WL 438393, at *4 (E.D.N.Y. Feb. 4, 2010), quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004) (internal quotations omitted). This is so because "greater protection is accorded an interest in an existing contract . . . than to the less substantive, more speculative interest in a prospective relationship . . . ." *NBT Bancorp Inc.*, 87 N.Y.2d at 622.

The Answering Defendants have not alleged "more culpable conduct" on the part of the Trustee. *Id.* at 621. As a general rule, culpable conduct means that "the defendant's conduct must amount to a crime or an independent tort" or that a defendant acts "for the sole purpose of inflicting intentional harm on plaintiffs." *Carvel Corp.,* 3 N.Y.3d 182 at 190. The kind of behavior that constitutes "more culpable" conduct is also described in the Restatement Second addressing when a business competitor may recover against another for tortious interference. There, "wrongful means" include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Carvel Corp.*, 3 N.Y.3d at 191 (quoting Restatement (Second) of Torts § 768, Comment *e*; § 767,

Comment *c*.); *see also Am. Online Latino v. Am. Online, Inc.*, 250 F. Supp. 2d 351, 363 (S.D.N.Y. 2003), opinion clarified, No. 02-CIV-4796, 2003 WL 1842874 (S.D.N.Y. April 2, 2003).   The *Carvel* court points out that regardless of what the behavior is, it must be "egregious." *Carvel Corp.*, 3 N.Y.2d at 189.   Here, the Answering Defendants have failed to plead any such "egregious" behavior.   They have not alleged that sending the Letter constitutes criminal behavior or that it was sent for the sole purpose of inflicting intentional harm on plaintiffs.   On its face, the Letter served "the legitimate purpose of bringing a potential conflict to [Goldman's] attention." *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, No. 107847/09, 2010 WL 2519631, at *7 (N.Y. Sup. Ct. May 28, 2010).   It is clear to this Court that the Letter was intended to advance the interests of the Trustee and the victims of the BLMIS fraud, rather than solely to harm the Answering Defendants.   At most, the Answering Defendants have alleged what amounts to the Trustee's unintentional misinterpretation of the law,[15] which the Court has found was within the scope of the Trustee's business judgment.   As such, it cannot be the type of egregious behavior that is necessary for a claim of interference with business relations.   Indeed, as explained above, the Trustee's behavior does not support even the less demanding standard of "wrongful conduct" for a tortious interference with contract claim.   *See supra*, Section II, b.   Thus, their tortious interference with business relations claim, which requires plaintiff to show even more culpable conduct on the part of the defendant, must also fail.

Finally, the Answering Defendants failed to plead with which prospective business relations the Trustee has interfered (element # 2).   For the Court to hold the Trustee liable under this claim, "the conduct at issue must have caused the third party not to enter into a contractual

---

[15] *See Picard v. Merkin, et al. (In re Bernard L. Madoff Inv. Sec. LLC)*, No. 08-01789, 2010 WL 4643102, *20-22 (Bankr. S.D.N.Y. Nov. 17, 2010) (holding that while the plain language of SIPA section 78fff-2(c)(3) is "subject to differing interpretations" and there is a "dearth of interpretative caselaw," this Court is "constrained" to find that transferred property becomes "customer property" only following a successful avoidance action).

relationship with the plaintiff." *Amerol Corp. v. Am. Chemie-Pharma, Inc.*, No. 04-CIV-0940 (JO), 2006 WL 721319, at *13 (E.D.N.Y. Mar. 17, 2006). Yet, the Answering Defendants have not alleged that the Trustee's conduct caused Goldman to refrain from entering into a contractual relationship with the Answering Defendants. The Answering Defendants have only pled that the Trustee's alleged interference resulted "in a denial of Mr. and Mrs. Chais' access to their own funds and the *lost opportunities that result therefrom* . . . " Answer, ¶ 201 (emphasis added). They have not pled which opportunities were lost. *See Solar Travel Corp. v. Nachtomi*, No. 00-CIV-3564 (AGS), 2001 WL 641151, at *10 (S.D.N.Y. June 8, 2001) (statement that the plaintiff "lost prospective business" and "lost customers" was insufficient); *Constantin Assoc. v. Kapetas*, No. 601305/2006, 2007 WL 4294732, at *2 (N.Y. Sup. Ct. Dec. 6, 2007) (party must identify "lost" contracts in a tortious interference claim). Accordingly, the Answering Defendants' claim for tortious interference with a business relationship must be dismissed.

### d.  There is No Cause of Action Against the Trustee for Conversion

The Answering Defendants have also failed to sufficiently allege a cause of action for conversion against the Trustee. Under New York law, conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006). Yet, the Answering Defendants have not properly pled a cause of action for conversion. [16]

---

[16] Although conversion actions are typically brought to recover tangible chattel, funds in an account can be recovered through a conversion action upon a plaintiff's showing that the funds are "specifically identifiable." *The High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 429 (S.D.N.Y. 1998). There has not been a clear standard established in this Circuit, however, for determining what constitutes a "specifically identifiable" fund. *See, e.g., id.* (holding that an action for conversion will lie only when there is an obligation to return the identical money taken from a fund to the plaintiff); *9310 Third Ave. Assoc. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207, 208 (App. Div. 1994) (dismissing action in conversion because the monies alleged to have been converted are "incapable of being described or identified in the same manner as a specific chattel") (internal quotations omitted); *Luxonomy Cars, Inc. v. Citibank, N.A.*, 408 N.Y.S.2d 951, 954 (App. Div. 1978) (determining that a checking account cannot be converted); *Cf., e.g.,*

The Answering Defendants failed to adequately allege that the Trustee exercised ownership of the Account. Under New York law, a conversion claim "requires that the *defendant* exclude the owner from exercising her rights over the goods." *Thyroff*, 460 F.3d at 404 (emphasis added). Here, it is undisputed that Goldman, and not the defendant Trustee, withheld money from the Answering Defendants. Answer at ¶ 187; *see supra* at Section II, a. Presumably after due diligence and advice from counsel, Goldman, in accordance with the Customer Agreement, voluntarily elected to freeze[17] the funds in the Account, pending further instructions from the Trustee. Accordingly, the Trustee never exercised ownership over the Account, and thus the Answering Defendants' claim for conversion must be dismissed.

### e. The Answering Defendants Have Failed to Allege a Cause of Action against the Trustee for Violation of Fifth Amendment Due Process

The Answering Defendants have also failed to sufficiently allege their final cause of action for violation of the Fifth Amendment. They allege that the Trustee's correspondences with Goldman "constitute state actions" that deprived the Answering Defendants of their property "without any judicial process whatsoever." Answer at ¶¶ 210, 211.[18]

This cause of action must be dismissed essentially for two reasons. First, the Answering Defendants' allegation that the Trustee is a "state actor" is insufficient to establish that the Fifth

---

*LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997) (concluding union employees' dues not segregated from the company's general account are specifically identifiable); *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (App. Div. 1995) (holding that funds in a specific, named bank account are considered sufficiently identifiable). In any event, it is unnecessary for the Court to determine whether the Answering Defendants have sufficiently pled that the funds in the Account are specifically identifiable, as they have not adequately alleged the Trustee's ownership of the Account. *See supra* at Section II, d.

[17] It is noteworthy that even Goldman did not take ownership of the money; rather, it merely froze the funds.

[18] The Trustee interprets this cause of action primarily as a Sixth Amendment violation and responds accordingly. *See* Tr. Mem. Law in Supp. of Pl.'s Motion to Dismiss Defendants' Counterclaim at p. 30 ("Although the Chaises' Counterclaim does not explain their claim in any more detail, the Chaises have previously described their claim as the Trustee having deprived the Chaises of *access to counsel*") (emphasis added). This Court will not address these arguments and will focus only on a Fifth Amendment violation analysis, as the fourth counterclaim is titled "Fifth Amendment Violation," and counsel for the Answering Defendants clarified on the record that he was alleging only a Fifth Amendment violation. *See* Chais Transcript, dated May 5, 2010, p. 72, lines 1-2 ("This is not a Sixth Amendment argument, but a Fifth Amendment argument, and I want to make that clear.") (Dkt. No. 78).

Amendment applies to the Trustee's actions. The Fifth Amendment of the Constitution provides

that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."

U.S. CONST. AMEND. V. Intended to protect individuals from the powers of Congress, the Fifth

Amendment "applies only to the actions of the federal government," and does not itself limit the

actions of state governments or officials. *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996); *see

also Manbeck v. Katonah-Lewisboro Sch. Dist.*, 435 F. Supp. 2d 273, 276 (S.D.N.Y. 2006) ("The

Fifth Amendment governs the conduct of the federal government and federal employees, and

does not regulate the activities of state officials or state actors."); *Vacendak v. Lake County*, No.

09-CIV-351 (JVB), 2009 WL 2970397, at *2 (N.D. Ind. Sept. 11, 2009) ("The Fifth

Amendment's due process clause, however, applies only to acts of the federal government and

does not limit actions of state officials."); *Craig v. Cohn,* 80 F. Supp. 2d 944, 947 (N.D. Ind.

2000). The Answering Defendants do not allege, however, that the Trustee's actions constitute

actions of the federal government subject to the Fifth Amendment; rather, they rely upon cases

involving Section 1983 of Title 42 of the United States Code ("Section 1983") to argue that the

Trustee is a "state actor." Section 1983 creates a cause of action against any person who violates

the constitutional rights of another "under color of any statute . . . of any State."[19]  42 U.S.C. §

1983. As the Answering Defendants have not asserted any claim under Section 1983 and the

Fifth Amendment does not apply to state actors, however, whether the Trustee acted under color

of state law is irrelevant to the Answering Defendants' Fifth Amendment cause of action.

Moreover, even if relevant, the bald assertion that the "Trustee's actions herein constitute state

actions for purposes of application of the Constitution of the United States," Answer at ¶ 210, is

---

[19] Section 1983 of Title 42 of the United States Code, in relevant part, states that "[e]very person who, *under color of any statute, ordinance, regulation, custom, or usage, of any State* or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added).

a bare legal conclusion that is insufficient, without factual support, to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (While the Court must assume facts pled to be true, it is "not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted).  In fact, the Trustee, whose powers and duties are established by the federal Bankruptcy Code and SIPA, is not plausibly a state actor.  *See Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1096–97 (9th Cir. 1986) (declining to apply 42 U.S.C. § 1983, as acts of bankruptcy judge and bankruptcy trustee were taken under color of federal law, rather than state law).  Accordingly, the Answering Defendants' allegation that the Trustee is a state actor does not plausibly support, and is apparently irrelevant to, their claim under the Fifth Amendment.

Second, assuming the Answering Defendants adequately alleged that the Fifth Amendment applies to limit the Trustee's actions, they have not plausibly established that the Trustee deprived them of their property without due process.  As explained above and admitted by the Answering Defendants, Goldman, rather than the Trustee, voluntarily withheld the Answering Defendants' funds pursuant to its Customer Agreement.  *See supra* at Section II, a.  The Trustee's act of sending the Letter did not itself effectuate a freeze on the Answering Defendants' Account, nor did it constitute an exercise of ownership of the funds.  Aside from Goldman's autonomous decision to freeze the Account, the only act that arguably interfered with the Answering Defendants' control of the Account was the Court's first temporary restraining order entered upon the Trustee's order to show cause of October 1, 2009, before which the Answering Defendants were afforded appropriate due process in the form of a proper application by the Trustee, full briefing, and a chambers conference on the matter.[20]  Dkt No. 23.

---

[20] The temporary restraining orders were entered "without objection" of the Answering Defendants "in order to facilitate limited discovery to facilitate resolution of the Applications."  Dkt No. 28.  Additionally, each allowed for

Accordingly, the Court finds that the Answering Defendants have not alleged sufficient facts to support a claim that the Trustee deprived the Answering Defendants of their property without due process of law, and their cause of action for violation of the Fifth Amendment must be dismissed.

## **CONCLUSION**

For the reasons set forth above and at oral argument, the Answering Defendants have failed to plead valid *prima facie* claims against the Trustee for tortious interference with a contract, tortious interference with a business relationship, conversion and violation of the Fifth Amendment.  Accordingly, the Trustee's Motion to Dismiss is granted in its entirety.

**IT IS SO ORDERED.**

Dated: New York, New York                              /s/ Burton R. Lifland_____
      November 30, 2010                        United States Bankruptcy Judge

---

the Answering Defendants' withdrawal of funds up to specified limits, as outlined *supra* at Section I, b.  Dkt Nos. 23, 28, 29, 32.

# EXHIBIT A – The Defendants

STANLEY CHAIS, individually and as General Partner of Defendants The Brighton Company, The Lambeth Company, and The Popham Company, and as trustee for The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, the Onondaga, Inc. Defined Benefit Plan, and the Unicycle Corporation Money Purchase Plan;

PAMELA CHAIS, individually and as trustee for the Chais 1991 Family Trust, the Appleby Productions Ltd., Defined Contribution Plan, the Appleby Productions Ltd. Money Purchase Plan, and the Appleby Productions Ltd. Profit Sharing Plan;

EMILY CHASALOW, individually and as trustee for the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust;

MARK CHAIS, individually and as trustee for the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1

Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust;

WILLIAM CHAIS individually and as trustee for the William Chais and Wrenn Chais 1994 Family Trust Dated 4/25/95, the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, and the Onondaga, Inc. Defined Benefit Plan;

MICHAEL CHASALOW;

MIRIE CHAIS;

WRENN CHAIS, individually and as trustee for the William and Wrenn Chais 1994 Family Trust Dated 4/25/95;

ALBERT ANGEL, as trustee for The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust,  the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow Transferee #1 Trust, and the Tali Chais Transferee #1 Trust;

THE BRIGHTON COMPANY; THE LAMBETH COMPANY; THE POPHAM COMPANY; APPLEBY PRODUCTIONS LTD.; THE APPLEBY PRODUCTIONS LTD. DEFINED CONTRIBUTION PLAN; THE APPLEBY PRODUCTIONS LTD. MONEY PURCHASE PLAN; THE APPLEBY PRODUCTIONS LTD. PROFIT SHARING PLAN; THE UNICYCLE TRADING COMPANY; UNICYCLE CORP., individually and as the General Partner of The Unicycle Trading Company; THE UNICYCLE CORPORATION MONEY

PURCHASE PLAN; ONONDAGA, INC., individually and as General Partner of Chais Investments Ltd., a Nevada Limited Partnership; THE ONONDAGA, INC. MONEY PURCHASE PLAN; THE ONONDAGA, INC. DEFINED BENEFIT PENSION PLAN; CHAIS INVESTMENTS, LTD.; CHAIS FAMILY FOUNDATION; CHAIS MANAGEMENT, INC., individually and as General Partner of Chais Management Ltd.; CHAIS MANAGEMENT, LTD.; CHAIS VENTURE HOLDINGS;

THE 1994 TRUST FOR THE CHILDREN OF STANLEY AND PAMELA CHAIS; THE 1996 TRUST FOR THE CHILDREN OF PAMELA CHAIS AND STANLEY CHAIS; THE 1999 TRUST FOR THE CHILDREN OF STANLEY AND PAMELA CHAIS; THE 1999 TRUST FOR THE GRANDCHILDREN OF STANLEY AND PAMELA CHAIS; THE CHAIS 1991 FAMILY TRUST; THE EMILY CHAIS 1983 TRUST; THE EMILY CHAIS TRUST; THE EMILY CHAIS ISSUE TRUST; THE MARK HUGH CHAIS TRUST; THE MARK HUGH CHAIS ISSUE TRUST; THE MARK HUGH CHAIS 1983 TRUST; THE WILLIAM FREDERICK CHAIS TRUST; THE WILLIAM F. CHAIS ISSUE TRUST; THE WILLIAM FREDERICK CHAIS 1983 TRUST; THE WILLIAM AND WRENN CHAIS 1994 FAMILY TRUST; THE ARI CHAIS 1999 TRUST; THE ARI CHAIS TRANSFEREE #1 TRUST; THE BENJAMIN PAUL CHASALOW 1999 TRUST; THE BENJAMIN PAUL CHASALOW TRANSFEREE #1 TRUST; THE CHLOE FRANCIS CHAIS 1994 TRUST; THE CHLOE FRANCIS CHAIS TRANSFEREE #1 TRUST; THE JONATHAN WOLF CHAIS TRUST; THE JONATHAN CHAIS TRANSFEREE #1 TRUST; THE JUSTIN ROBERT CHASALOW 1999 TRUST; THE JUSTIN ROBERT CHASALOW TRANSFEREE #1 TRUST; THE MADELINE CELIA CHAIS 1992 TRUST; THE MADELINE CHAIS TRANSFEREE #1 TRUST; THE RACHEL ALLISON CHASALOW 1999 TRUST; THE RACHEL ALLISON CHASALOW TRANSFEREE #1 TRUST; THE TALI CHAIS 1997 TRUST; THE TALI CHAIS TRANSFEREE #1 TRUST; and DOES 1-25