**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X

In re:

BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                        Debtor.

---------------------------------------------------------X

IRVING H. PICARD, as Trustee for the
Liquidation of BERNARD L. MADOFF
INVESTMENT SECURITIES LLC,

                        Plaintiff,

        v.

ESTATE OF STANLEY CHAIS, *et al.*,[1]

                        Defendants.

---------------------------------------------------------X

FOR PUBLICATION

SIPA LIQUIDATION

No. 08-01789 (BRL)

(Substantively Consolidated)

Adv. Pro. No. 09-1172 (BRL)

APPEARANCES**:**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile:  (212) 589-4201
<u>By</u>:    David J. Sheehan
       John Moscow
       Marc E. Hirschfield
       Oren J. Warshavsky
       Seanna R. Brown

*Attorneys for Plaintiff, Irving H. Picard, Trustee for the Substantively Consolidated SIPA*
*Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff*

---

[1] Defendant Stanley Chais passed away during the pendency of this action.  *See* Suggestion of Death of Defendant Stanley Chais (Dkt. No. 85).  As a result, Stanley Chais has been substituted by the Estate of Stanley Chais, and the caption above reflects such change.  *See* Stipulation and Order Substituting Party (Dkt. No. 88).  The complete caption, as amended, is attached hereto as Exhibit A.

SILLS CUMMIS & GROSS P.C.
One Rockefeller Plaza
New York, NY 10020
Telephone:    (212) 643-7000
Facsimile:    (212) 643-6500
By:    Philip R. White
       Andrew H. Sherman

*Attorneys for Defendants Emily Chasalow, Mark Chais, Wrenn Chais, William Chais, Miri Chais and the Entities Identified on Exhibit 1 to the Notice of Motion to Dismiss*

Before: Hon. Burton R. Lifland
        United States Bankruptcy Judge

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS TRUSTEE'S COMPLAINT

Before the Court is the motion (the "Motion to Dismiss") of defendants Emily Chasalow, Mark Chais, Wrenn Chais, William Chais, Miri Chais, and other related entities (collectively, the "Moving Defendants") seeking to partially dismiss the complaint (the "Complaint") of Irving H. Picard, Esq. (the "Trustee" or "Plaintiff"), trustee for the substantively consolidated Securities Investor Protection Act[2] ("SIPA") liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"), filed pursuant to SIPA sections 78fff(b) and 78fff-2(c)(3), sections 105(a), 502(d), 542, 544, 547, 548(a), 550(a) and 551 of the Bankruptcy Code (the "Code"), various sections of New York Debtor and Creditor Law[3] (the "NYDCL") and other applicable law for turnover, accounting, preferences, fraudulent conveyances, damages, and objections to SIPA claims.

The Moving Defendants assert that the Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), made applicable herein by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012, with respect to ten

---

[2] 15 U.S.C. § 78aaa *et seq.* References to sections of SIPA hereinafter shall replace "15 U.S.C." with "SIPA."

[3] N.Y. DEBT. & CRED. LAW § 270 *et seq.* (McKinney 2010).

of the eleven counts asserted, and it should therefore be partially dismissed. The Moving Defendants do not seek to dismiss Count Two of the Complaint, which seeks the return of $46 million in allegedly preferential transfers.

For the reasons set forth below and at oral argument, the Motion to Dismiss is GRANTED in part and DENIED in part. Specifically, the Motion to Dismiss is GRANTED with respect to Count One of the Complaint, seeking immediate turnover under section 542 of the Code and SIPA section 78fff-2(c)(3). The Motion to Dismiss is DENIED with respect to Counts Three through Eleven of the Complaint.

## **BACKGROUND**[4]

The Complaint arises in connection with the infamous Ponzi scheme perpetrated by Bernard L. Madoff for decades through his investment company, BLMIS. As recognized by the Securities Investor Protection Corporation ("SIPC"), and as relayed in this Court's recent decision in *Picard v. Merkin*,[5] "this is not a typical SIPC proceeding in which securities or cash were on hand at the time of the failure of the brokerage house." Letter from Stephen P. Harbeck, President of SIPC to the Subcommittee on Capital Markets, Insurance and Government Sponsored Enterprises at p. 6 (dated Sept. 7, 2010) [hereinafter "SIPC Letter"]. Rather, it was a fraud of unparalleled magnitude "in which the only assets were other people's money or assets derived from such funds." *Id.* During the course of this fraud, there were approximately 90,000 disbursements of fictitious profits to Madoff investors totaling $18.5 billion. *Id.* at p. 5. Due to the longstanding nature of the Ponzi scheme, many of the customer accounts presented multiple generational investments, requiring the Trustee to conduct a full forensic analysis of all of

---

[4] A comprehensive discussion of the facts underlying this SIPA liquidation and Madoff's notorious Ponzi scheme is set forth in this Court's March 1, 2010 net equity decision (the "Net Equity Decision"). *See Sec. Investor Prot. Corp. v. BLMIS (In re BLMIS)*, 424 B.R. 122, 125–33 (Bankr. S.D.N.Y. 2010).

[5] *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010).

BLMIS's books and records, dating back to at least the early 1980s. *Id.* at p. 7. As of February 18, 2011, the Trustee has determined 16,267 claims, denied 2,740 claims (and 10,731 third party claims), and allowed 2,403 claims in the amount of $6,854,549,449.81. Moreover, SIPC has committed $791,149,690.14 in SIPC advances. *See* http://www.madofftrustee.com (last visited Feb. 23, 2011). The Trustee has reviewed, and continues to review, millions of documents to determine the thousands of customer claims filed in this SIPA liquidation. SIPC Letter at p. 7.

## I. THE MOVING DEFENDANTS

In the instant Complaint, the Trustee seeks to recover over $1 billion in preferential payments and fraudulent transfers from the Moving Defendants, Stanley Chais, and other non-moving defendants (collectively, the "Defendants").

Each of the Moving Defendants is connected with defendant Stanley Chais,[6] a sophisticated investment advisor who has been closely associated with Madoff since the 1970s. Prior to Madoff's arrest, Stanley Chais invested in BLMIS for over three decades through more than 60 entity and/or personal accounts. From his investments with BLMIS, Stanley Chais purportedly withdrew hundreds of millions of dollars of other investors' money, funneling much of it to his children and their spouses, his grandchildren, and various entities he created for the benefit of his family. He is the settlor and trustee for many of the trust defendants named in the Complaint, as well as the general partner and investment advisor to defendants The Brighton Company, The Lambeth Company, and The Popham Company (the "Chais Funds"), who have not moved to dismiss the Complaint. As the general partner of the Chais Funds, which invested heavily in BLMIS, Stanley Chais collected management fees equal to 25% of each Chais Funds' entire net profit for every calendar year in which profits exceeded 10%, which has occurred

---

[6] Stanley Chais did not move to dismiss the complaint, but rather answered and filed counterclaims against the Trustee. The Trustee filed a motion to dismiss these counterclaims, which was granted in its entirety on November 30, 2010. *See Picard v. Chais, et al. (In re BLMIS)*, 440 B.R. 282 (Bankr. S.D.N.Y. 2010) (Dkt. No. 86).

every calendar year since at least 1996.  The Trustee asserts that by virtue of, *inter alia*, his close and personal relationship with Madoff and expertise as an investment advisor, Stanley Chais knew or should have known that BLMIS was predicated on fraud.

The Moving Defendants consist of two groups, all of whom held accounts allegedly directed and controlled by Stanley Chais:  (1) family members of Stanley Chais and (2) related entities of Stanley Chais.   The family members include Stanley Chais's daughter, Emily Chasalow,[7] his two sons, Mark Chais and William Chais, and their wives, Miri Chais[8] and Wren Chais, respectively (the "Family Defendants").   The related entities include trusts and other entities that Stanley Chais purportedly created for the benefit of his family (the "Entity Defendants").[9]   Aside from Miri Chais, the Family Defendants are trustees and/or directors of these Entity Defendants.  The Trustee asserts that all of the Moving Defendants were clients of the investment advisory business (the "IA Business") and maintained the BLMIS accounts highlighted in Exhibit A to the Complaint (the "IA Accounts").  Compl. at ¶ 93; *see also id.* at Ex. A.

---

[7] Defendant Emily Chasalow is married to defendant Michael Chasalow, who filed a separate motion to dismiss the Complaint.  The parties have consented by stipulation entered January 18, 2011 that the Trustee will amend the Complaint as to Michael Chasalow, at which time Michael Chasalow's motion to dismiss will be deemed withdrawn without prejudice.  *See* Stipulation and Order Granting Leave to File Amended Complaint (Dkt. No. 89).

[8] Defendant Miri Chais also separately filed a motion to dismiss before this Court, which was denied in its entirety on November 30, 2010.  *See Picard v. Chais, et al., (In re BLMIS)*, 440 B.R. 274 (Bankr. S.D.N.Y. 2010) (denying motion to dismiss for lack of personal jurisdiction) (Dkt. No. 87).

[9] The Entity Defendants are: Unicycle Trading Company, Unicycle Corporation, Emily Chais Trust No. 2, Emily Chais Trust No. 3, Emily Chais 1983 Trust, Emily Chais Issue Trust No. 1, Emily Chais Issue Trust No. II, Benjamin Paul Chasalow Transferee Trust No.1, Benjamin Paul Chasalow 1999 Trust, Rachel Allison Chasalow Transferee Trust No. 1, Rachel Allison Chasalow 1999 Trust, Justin Robert Chasalow Transferee Trust No. 1, Justin Robert Chasalow 1999 Trust, Onondaga, Inc. Pension Plan, William Frederick Chais Trust No. 2, William Frederick Chais Trust No. 3, William Frederick Chais 1983 Trust, William Frederick Chais Issue Trust No. I, William Frederick Chais Issue Trust No. II, Madeline Chais Transferee Trust No. I, Madeline Celia Chais 1992 Trust, Chloe Frances Chais Transferee Trust No. I, Chloe Frances Chais 1994 Trust, Jonathan Chais Transferee Trust No. I, Jonathan Wolf Chais 1996 Trust, Mark Hugh Chais Trust No. 2, Mark Hugh Chais Trust No. 3, Mark Hugh Chais 1983 Trust, Mark Hugh Chais Issue Trust No. I, Mark Hugh Chais Issue Trust No. II, Tali Chais Transferee Trust No. I, Tali Chais 1997 Trust, Ari Chais Transferee Trust No. I, Ari Chais 1999 Trust, 1994 Trust for the Children of Stanley and Pamela Chais, 1996 Trust for the Children of Stanley and Pamela Chais, William & Wrenn Chais 1994 Family Trust, 1999 Trust for the Grandchildren of Stanley and Pamela Chais, Chais Investments, Ltd., Onondaga, Inc., Chais Management, Ltd., Chais Management, Inc., and Chais Venture Holdings.

## II.    THE COMPLAINT

The Complaint, filed on May 1, 2009, seeks to avoid and recover preferential and fraudulent transfers made to or for the benefit of the Defendants as initial or subsequent transferees pursuant to sections 544, 547, 548, 550, and 551 of the Bankruptcy Code (the "Code") and various sections of New York Debtor and Creditor Law (the "NYDCL"). The Complaint additionally seeks turnover and accounting under section 542 of the Code and SIPA section 78fff-2(c)(3) and objects to Defendants' SIPA claims, which the Trustee asserts should be disallowed under section 502(d) of the Code and because they are not supported by the books and records of BLMIS.

The following facts alleged in the Complaint, presented in the light most favorable to the Trustee, are assumed to be true for purposes of the Motion to Dismiss. Between December 1, 1995 and December 11, 2008 (the "Filing Date"),[10] BLMIS allegedly made transfers to the Defendants in excess of $1 billion (the "Transfers"). Of these Transfers, $804 million was transferred within six years of the Filing Date (the "Six Year Transfers"); $377 million was transferred within two years of the Filing Date (the "Two Year Transfers"); and $46 million was transferred within ninety days of the Filing Date (the "Ninety Day Transfers"). The particular details of these transactions from BLMIS to the Defendants as initial transferees—including the date, transferee, and amount transferred—are highlighted in Exhibit B to the Complaint ("Exhibit B"). The Complaint then provides that "some or all of the[se] Transfers were subsequently transferred . . . to Defendant Chais and/or other Defendants in the form of payment of commissions or fees, transfers from one account to another, or other means" (collectively, the "Subsequent Transfers"). *See* Compl. at ¶ 166.

_____

[10] *See* SIPA § 78*lll*(7)(B) (defining the "Filing Date").

The Trustee asserts that the Moving Defendants, independently or through Stanley Chais, knew or should have known that BLMIS was predicated on fraud and failed to exercise reasonable due diligence into BLMIS. In support of this assertion, the Trustee alleges that the Moving Defendants were on notice of, *inter alia*, the following indicia of irregularity and fraud: (1) the Moving Defendants' accounts, directed and controlled by Stanley Chais, received fantastical rates of return from 1996 through 2007, including 125 instances of returns exceeding 50%, more than 35 instances of returns exceeding 100%, and one instance of returns exceeding 300%; (2) losses were manufactured after the dates when the subject transactions purportedly took place, including a purchase and sale of 125,000 shares of Micron Technology Inc. for a loss of more than $1 million appearing for the first time on a date 150 days after the purported purchase; (3) purported losses were generally remedied in subsequent periods with monumental rates of return that far outpaced the market, including a rebound in one Moving Defendant's account from negative 89% returns in 2003 to positive 165% returns the following year; (4) financial industry press reports questioned the legitimacy of BLMIS and Madoff and their ability to achieve promised consistent returns, and many banks and advisors refused to deal with BLMIS and Madoff; (5) BLMIS lacked transparency to investors, regulators, and other outside parties by failing to provide customers with real-time online access to their accounts and excluding an independent custodian of securities; and (6) BLMIS, one of the world's largest hedge funds, was supposedly audited by Friehling & Horowitz, an accounting firm with only three employees, one of whom was semi-retired, with offices located in a strip mall.[11] Compl. at

---

[11] David Friehling is the subject of a criminal information filed by the United States alleging, *inter alia*, securities fraud. *See* Friehling Information, *United States v. Friehling*, No. 09-CR-0700 (AKH) (S.D.N.Y. July 17, 2009) (Dkt. No. 14). He has since pled guilty, and sentencing has been adjourned to March 18, 2011 due to continuing cooperation. *Id.* at Dkt. No. 43.

### STANDARD OF REVIEW – MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).

To survive a motion to dismiss, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); FED. R. BANKR. P. 7008. However, a recitation of the elements of the cause of action, supported by mere conclusory statements, is insufficient. *Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. In determining plausibility, this Court must "draw on its judicial experience and common sense," *id.* at 1950, to decide whether the factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In contrast, allegations of fraud are held to the higher pleading standard of Rule 9(b), requiring a party to "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); FED. R. BANKR. P. 7009(b). Rule 9(b) permits, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind" be pled generally. FED. R. CIV. P. 9(b). In

applying this heightened pleading requirement where applicable, this Court is mindful of the vastness and complexity of the Trustee's investigation of the Madoff Ponzi scheme, and the disadvantage the Trustee faces in pleading fraud against multiple defendants.  It has been held that courts will take a "liberal" approach in construing allegations of actual fraud asserted by a bankruptcy trustee on behalf of all creditors of an estate.  *Pereira v. Grecogas Ltd., et al.* (*In re Saba Enters., Inc.)*, 421 B.R. 626, 640 (Bankr. S.D.N.Y. 2009); *Gredd v. Bear, Stearns Sec. Corp.* (*In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002), *leave to appeal denied by* 288 B.R. 52 (S.D.N.Y. 2002).  Courts have found that "[g]reater liberality in the pleading of fraud is particularly appropriate in bankruptcy cases, because . . . it is often the trustee, a third party outsider to the fraudulent transaction, that must plead the fraud on secondhand knowledge for the benefit of the estate and all of its creditors."  *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 310 (Bankr. S.D.N.Y. 1999) (citing *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 631 F. Supp. 335, 348 (S.D.N.Y. 1986), *aff'd* 818 F.2d 240 (2d Cir. 1987)).  Consistent with the foregoing, as the Trustee is pleading from secondhand knowledge, "allegations of circumstantial evidence are sufficient to establish fraudulent intent." *In re Saba Enters., Inc.*, 421 B.R. at 643.  Moreover, as "the trustee's lack of personal knowledge is compounded with complicated issues and transactions which extend over lengthy periods of time, the trustee's handicap increases," and he should therefore be afforded "even greater latitude."  *Stratton Oakmont, Inc.*, 234 B.R. at 310 (citing *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97-CIV-4978 (LMM), 1998 WL 159059, at *6 (S.D.N.Y. Apr. 1, 1998)).

## DISCUSSION

**I.**   **THE TRUSTEE HAS SUFFICIENTLY PLED ACTUAL FRAUD PURSUANT TO THE CODE AND THE NYDCL**

The Trustee has sufficiently pled Count Three of the Complaint pursuant to sections

548(a)(1)(A), 550 and 551 of the Code and Counts Five and Nine pursuant to sections 276, 276-a, 278, and 279 of the NYDCL, in conjunction with sections 544, 550 and 551 of the Code, to avoid and recover actual fraudulent transfers.[12]

### A. THE TRUSTEE'S CLAIMS FOR ACTUAL FRAUD UNDER SECTIONS 548(a)(1)(A), 550 AND 551 OF THE CODE ARE SUFFICIENTLY PLED

Under the Code, "the trustee may avoid any transfer . . . of an interest of the debtor in property . . . made or incurred on or within 2 years before the date of the filing of the petition, if the debtor . . . made such transfer . . . with actual intent to hinder, delay or defraud." 11 U.S.C. § 548(a)(1)(A). To adequately plead such a claim, the complaint must state with particularity the factual circumstances constituting fraud under Rule 9(b). *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 106–07 (S.D.N.Y. 2004). To do this, the complaint must allege "(1) the property subject to the transfer, (2) the timing and, if applicable, frequency of the transfer and (3) the consideration paid with respect thereto." *In re Saba Enters., Inc.*, 421 B.R. at 640. In contrast, fraudulent intent may be pled generally under Rule 9(b). FED. R. CIV. P. 9(b). Under the Code, the trustee must show such intent on the part of the debtor-transferor. 11 U.S.C. § 548(a)(1)(A) (requiring a showing by the trustee that "*the debtor . . . made such transfer . . . with actual intent to hinder, delay, or defraud*") (emphasis added); *Andrew Velez Constr., Inc. v. Consolidated Edison Co. of N.Y., Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 269 (Bankr. S.D.N.Y. 2007); *Gredd v. Bear Stearns Sec. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500, 505 (Bankr. S.D.N.Y. 2002) ("The operative requirement for a transfer

---

[12] A SIPA trustee's authority to utilize these sections of the Code and the NYDCL derives from SIPA sections 78fff(b) and 78fff-2(c)(3). SIPA sectoin 78fff(b) provides that "[t]o the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though, it were being conducted under chapters 1, 3, and 5 and subchapters I and II of chapter 7 of title 11." SIPA § 78fff(b). Similarly, SIPA section 78fff-2(c)(3) allows a SIPA trustee to utilize the avoidance powers enjoyed by a bankruptcy trustee: "Whenever customer property is not sufficient to pay in full the claims set forth in subparagraphs (A) through (D) of paragraph (1), the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11." SIPA § 78fff-2(c)(3).

to be avoided under this section is the *debtor's* actual fraudulent intent."). Thus, the intent of the transferee is irrelevant for purposes of pleading under section 548(a)(1)(A) of the Code. *Silverman v. Actrade Capital, Inc. (In re Actrade Fin'l Tech. Ltd.)*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005).

Contrary to the Moving Defendants' position, the Trustee has pled with particularity the identity of the Two Year Transfers and the Six Year Transfers sought to be avoided in accordance with Rule 9(b). Exhibit B to the Complaint specifically identifies the date, account number, transferor, transferee, method of transfer, and amount of each of the Transfers that the Trustee has thus far identified. *See* Compl. at Ex. B. In addition, the Trustee alleges that the Transfers represent redemptions of both principal and fictitious profits. *Id*. at ¶ 106. The Six Year Transfers total $804 million, the Two Year Transfers total $377 million, and the Ninety Day Transfers total $46 million.[13] Compl. at ¶¶ 108–10. Therefore, the Trustee's allegations, together with Exhibit B, sufficiently identify the specific Transfers sought to be avoided in accordance with Rule 9(b).

Further, the Moving Defendants do not dispute that the Trustee has sufficiently alleged the intent of the transferor, BLMIS, for purposes of section 548(a)(1)(A) of the Code. It is now well recognized that the existence of a Ponzi scheme establishes that transfers were made with the intent to hinder, delay and defraud creditors. *See, e.g.*, *In re Bayou Group, LLC*, 439 B.R. 284, 306 n.19 (S.D.N.Y. 2010) ("[W]here a Ponzi scheme exists, there is a presumption that transfers were made with the intent to hinder, delay and defraud creditors."); *Bear, Stearns Sec. Corp. v. Gredd (In re Manhattan Inv. Fund Ltd.)*, 397 B.R. 1, 8–14 (S.D.N.Y. 2007) ("*Manhattan Inv. II*"). The breadth and notoriety of the Madoff Ponzi scheme leave no basis for

---

[13] Notably, the Moving Defendants have not sought to dismiss Count Two of the Complaint seeking the return of the allegedly preferential Ninety Day Transfers, totaling $46 million.

disputing the application of the Ponzi scheme presumption to the facts of this case, particularly in light of Madoff's criminal admission. *See* Compl. at ¶ 1; Memorandum of Law in Support of the Defendants' Partial Motion to Dismiss ("Defs' Partial MTD") at p. 5; *see also Manhattan Investment II*, 397 B.R. at 12 (relying on transferor's criminal guilty plea to establish the existence of a Ponzi scheme); *see also Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008) ("[A] debtor's admission, through guilty pleas and a plea agreement admissible under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. § 548(a)(1)(A)."). Accordingly, BLMIS's fraudulent intent is established as a matter of law for purposes of the Trustee's Code-based actual fraudulent transfer claims.

Accordingly, the Trustee has sufficiently pled actual fraud under the Code, and the Motion to Dismiss Count Three is denied.

### B. THE TRUSTEE HAS SUFFICIENTLY ALLEGED ACTUAL FRAUD UNDER THE NYDCL

Under the NYDCL, a trustee may avoid any "conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." NYDCL § 276. As under the Code, to adequately plead a claim to recover actual fraudulent transfers under the NYDCL, the Complaint must state with particularity the factual circumstances constituting fraud under Rule 9(b). *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 106, 107 (S.D.N.Y. 2004). As a preliminary matter, for the reasons set forth above in Section I, A, this Court finds that the Trustee has identified the Transfers sought to be avoided with particularity in accordance with Rule 9(b) and fraudulent intent on the part of BLMIS, the transferor, has been established by virtue of the Ponzi scheme presumption.

Unlike under the Code, under the NYDCL, courts differ as to whether the fraudulent intent of both the transferor and the transferee must be pled. While some courts have held that section 276 requires a plaintiff to show intent to "hinder, delay, or defraud" simply on the part of the transferor, *see, e.g.*, *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005) (citing *HBE Leasing Corp. v. Frank,* 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)); *Geron v. Schulman (In re Manshul Constr. Corp.)*, No. 97-CIV-8851 (JGK), 2000 WL 1228866, at *46 (S.D.N.Y. Aug. 30, 2000) ("It is not necessary under DCL § 276 to show fraudulent intent on the part of the transferee."); *Le Café Crème, Ltd. v. Le Roux (In re Le Café Crème, Ltd.)*, 244 B.R. 221, 239 (Bankr. S.D.N.Y. 2000). The Moving Defendants' position that a plaintiff must also plead the *transferee's* fraudulent intent is likewise supported, *see, e.g.*, *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 396 (Bankr. S.D.N.Y. 2007) ("[the debtor] must plead . . . the intent of the transferor and transferee []under NYDCL[]."); *Picard v. Taylor (In re Park South Sec., LLC)*, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005) ("[U]nder section 276 of the N.Y. D.C.L . . . the Trustee must establish both the debtor's *and* the transferee's actual fraudulent intent."). Assuming that a transferee's intent must also be pled under section 276 of the NYDCL, the Court finds that the Complaint contains circumstantial evidence of fraudulent intent on the part of the Moving Defendants sufficient to raise the curtain for discovery into the Trustee's claims.

### i. THE TRUSTEE HAS SUFFICIENTLY PLED FRAUDULENT INTENT UNDER THE NYDCL ON THE PART OF THE FAMILY DEFENDANTS

To adequately plead intent, the Trustee must allege "facts that give rise to a strong inference of fraudulent intent." *Musicland Holding Corp. v. Best Buy Co., Inc. (In re Musicland Holding Corp.)*, 398 B.R. 761, 773 (Bankr. S.D.N.Y. 2008) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); *Silverman v. K.E.R.U. Realty Corp. (In re*

*Allou Distrib., Inc.*), 379 B.R. 5, 17 (Bankr. E.D.N.Y. 2007). Such facts may either (1) demonstrate that defendants had both the motive and the opportunity to commit fraud; or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness.[14] *Official Comm. Of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 277 B.R. 20, 36 (S.D.N.Y. 2002).

The facts alleged in the Complaint "give rise to a strong inference" of the Family Defendants' "motive and . . . opportunity to commit fraud." *In re Saba Enters., Inc.*, 421 B.R. at 642. With regard to motive, the Family Defendants were receiving "fantastical," implausibly high and consistent rates of return, as well as millions of dollars in transfers of fictitious profits by continuing to participate in the fraud. Compl. at ¶ 103(b), Ex. B. Specifically, between 1996 and 2007, while the S&P 500 saw average annual returns of 10.72% and 52 months of negative returns, the Family Defendants, along with the Entity Defendants, "enjoyed more than 35 instances of supposed annual returns of more than 100% and more than 125 in which the annual returns purportedly exceeded 50%" with an average annual rate of return of over 39%. Compl. at ¶ 103(a), (b). In fact, the Family Defendants even "received drastically higher rates of returns than those reported for [other accounts Stanley Chais managed] during the same time periods." *Id*. at ¶ 103(b). Moreover, the Family Defendants reported anomalous "losses," sometimes purporting to lose almost the entire value of their accounts with a negative 95% annual rate of return, which were allegedly manufactured to provide significant tax benefits. *See id*. at ¶ 103(d).

---

[14] This two-prong test is commonly applied to analyze *scienter* in securities fraud actions, but the "same standard has been applied in [the Second] Circuit to non-securities fraud claims." *In re Musicland*, 398 B.R. at 774 n.7 (applying the two-prong test to establish fraudulent intent under section 544 of the Code and applicable state law); *see also Serova v. Teplen*, No. 05-CIV-6748 (HB), 2006 WL 349624, at *8 (S.D.N.Y. Feb. 16, 2006) ("This Circuit applies the same [two-prong] standard to pleading fraudulent intent under common law fraud as to pleading scienter in securities fraud."); *G-I Holding, Inc.*, 277 B.R. at 36–37 (applying the two-prong test to establish fraudulent intent under section 276 of the NYDCL); *In re Saba Enters., Inc.*, 421 B.R. at 641–42 (applying the two-prong test to establish fraudulent intent under section 548(a)(1)(A) of the Code).

Additionally, with regard to opportunity, the Family Defendants had a unique opportunity to benefit from Madoff's fraud by virtue of their strong familial ties to Stanley Chais, who was closely associated with Madoff. The Family Defendants are members of Stanley Chais's immediate family and innermost circle, consisting of his wife, his three children and their respective spouses. Stanley Chais completely controlled their accounts for "his personal interests and those of [the Family Defendants]." Compl. at ¶ 92. In turn, Stanley Chais was "closely associated with Madoff on both a business and social level since at least the 1970s"—so much so that Stanley Chais's telephone number was the first speed dial entry on a BLMIS telephone. Compl. at ¶¶ 33, 99. Stanley Chais thereby "enjoyed unusually intimate access to Madoff, allowing him an opportunity to gain special access to extensive information about the operations of BLMIS." *Id.* at 99. In light of the foregoing, it is plausible that the Family Defendants, who were closely related and connected to Stanley Chais and whose accounts were controlled by him, likewise had special access to inside information about BLMIS, and thus an exceptional opportunity to participate in, and benefit from, the fraudulent scheme.

While motive and opportunity are sufficient to infer fraudulent intent, the allegations in the Complaint additionally support a finding of "conscious misbehavior or recklessness." *In re Saba Enters., Inc.*, 421 B.R. at 642. The allegations in the Complaint, accepted as true, demonstrate that Stanley Chais, who earned substantial fees in connection with his management of the Family Defendants' accounts, was consciously aware of the fraud. *See* Compl. at ¶ 97. Despite his sophisticated knowledge as an investment advisor, Stanley Chais, *inter alia*, (i) instructed Madoff to backdate trades and manufacture account losses for tax purposes; (ii) actively concealed BLMIS's role as money manager; (iii) and failed to investigate numerous indicia of fraud, including consistent and astronomical rates of return and BLMIS's lack of

transparency.  *See* Compl. at ¶¶ 99, 103, 104.  Through their close familial ties to Stanley Chais,

who controlled their accounts, it is plausible that the Family Defendants were similarly aware

that BLMIS was predicated on fraud.

Accordingly, assuming the NYDCL requires it, the Trustee has sufficiently pled the

Family Defendants' fraudulent intent such that discovery into the Trustee's claims is

warranted.[15]

## ii. THE TRUSTEE HAS SUFFICIENTLY PLED FRAUDULENT INTENT UNDER THE NYDCL ON THE PART OF THE ENTITY DEFENDANTS

The Trustee has sufficiently pled the fraudulent intent of the Entity Defendants, which

include corporations, trusts, and partnerships.

The Trustee has sufficiently alleged an agency relationship between the Entity

Defendants and Stanley Chais, such that Stanley Chais's alleged bad faith knowledge can be

imputed to the Entity Defendants.[16]  Based on principles of New York agency law, the fraudulent

---

[15] Many courts, including those in this district, accept the existence of "badges of fraud" as a means of alleging intent based on circumstantial evidence.  *See In re Saba Enters., Inc.*, 421 B.R. at 643; *Picard v. Taylor* (*In re Park South Sec., LLC*), 326 B.R. 505, 518 (Bankr. S.D.N.Y. 2005).  The badges include: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the event and transactions under inquiry; (7) a questionable transfer not in the usual course of business; and (8) the secrecy, haste, or unusualness of the transactions.  *In re Saba Enters.*, 421 B.R. at 643.  The existence of several badges constitutes "clear and convincing evidence of actual intent."  *Id.* at 644 (quoting *Silverman v. Actrade Capital, Inc.* (*In re Actrade Fin. Techs. Ltd.*), 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005)).  In addition to the circumstantial evidence of fraudulent intent discussed above, at least badges (1), (2), and (8) are present here.  With respect to the first badge, and as discussed more fully in Section III, the Trustee has successfully pled that the Transfers lacked "reasonably equivalent value" and "fair consideration."  In connection with the second badge, the Moving Defendants had a close association with Madoff and BLMIS through Stanley Chais.  Last, with regard to the eighth badge, every transfer was unusual and secretive in that the Transfers were made in the context of a Ponzi scheme.  It appears, however, that the badges of fraud are designed to establish the fraudulent intent of a transferor, rather than a transferee, and thus are not necessarily applicable.  In any event, the Trustee has adequately pled that the Family Defendants (1) had motive and incentive to commit fraud and (2) displayed conscious misbehavior or recklessness, and thus the Court need not make a finding with respect to these badges.

[16] The Trustee has also adequately pled that the Entity Defendants are plausibly the alter egos of Stanley Chais, who "dominated" and used them as a mere instrument to facilitate his personal interests and those of his family members.  Compl. at ¶ 92.  Accordingly, Stanley Chais and the Entity Defendants may be treated as one unit for purposes of

knowledge of an officer or director can be imputed to the corporate entity he controls. *See S.E.C. v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1089 n.3 (2d Cir. 1972) (imputing individual's knowledge of securities law violations to corporate entity); *Bondi v. Bank of America (In re Parmalat)*, 383 F. Supp. 2d 587, 597 (S.D.N.Y. 2005) ("The acts performed and knowledge acquired by a corporate officer or agent are imputed to the corporation where the officer or agent was acting within the scope of his or her employment."). Similarly, a trust can be attributed with the knowledge of the individual or entity by which it is controlled or dominated. *S.E.C. v. Ballesteros Franco*, 253 F. Supp. 2d 720, 730 (S.D.N.Y. 2003) ("The Trust defendants stand in the same position as those corporations that have been held liable for securities fraud based on the knowledge attributed to them from those who controlled them."). Likewise, the knowledge of a general partner can be imputed to the limited partnership. *See* N.Y. P'SHIP LAW § 23 (McKinney 2010) (titled "Partnership Charged With Knowledge Of Or Notice To Partner"); *Franco v. English*, 210 A.D.2d 630, 635 (N.Y. App. Div. 1994), *rev'd on other grounds*, 620 N.Y.S.2d 156. These principles are "consistent with the self-evident proposition that a corporation [or entity] can act only through the actions . . . of its agents." *Ballesteros Franco*, 253 F. Supp. 2d at 729.

Here, the Entity Defendants can be charged with the fraudulent knowledge of Stanley Chais. In addition to properly alleging that Stanley Chais served as trustee, officer, director, and/or general partner of the Entity Defendants, *see, e.g.*, Compl. at ¶¶ 33, 56, 58, 59, 100, the Trustee also alleges that Stanley Chais personally established the Entity Defendants for his benefit and the benefit of his family members and functioned as "principal and/or directed and controlled the [Entity Defendants]" with "unlimited access to and control of the funds" in the

determining the sufficiency of the Trustee's allegations. *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 147 (2d Cir. 2010). ("[O]nce alter ego status is established, 'the alter egos are treated as one entity' for purposes of . . . liability.").

Entity Defendants' IA Accounts, Compl. at ¶¶ 92, 100, 101; *see, e.g.*, *Ballesteros Franco*, 253 F. Supp. 2d at 729–30 (imputing defendant's knowledge of fraud to trust defendants where defendant established trusts for the benefit of his close relatives and exerted control over trust defendants). In particular, Stanley Chais reviewed and notated customer statements, directed the purchase and sale of securities, transferred funds and directed payments to and among various Entity Defendants, and communicated with, and provided direction to, BLMIS. Compl. at ¶ 101. In light of Stanley Chais' connection with the Entity Defendants, it is plausible that an agency relationship existed such that the Entity Defendants can be charged with Stanley Chais's intimate knowledge of the Ponzi scheme. *See In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 273 (S.D.N.Y. 2009) ("[T]he question is not whether [the trustee] ha[s] proved the existence of an agency relationship, merely whether [he] should have the chance to do so.") (quoting *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 294 (S.D.N.Y. 2005)). Accordingly, discovery is warranted to further explore these relationships.[17]

In light of the foregoing, assuming such is required by the NYDCL, the Trustee has sufficiently pled the fraudulent intent of the Entity Defendants under Rule 9(b).

## II. THE TRUSTEE HAS SUFFICIENTLY PLED CONSTRUCTIVE FRAUD PURSUANT TO THE CODE AND THE NYDCL

The Trustee has sufficiently pled Count Four of the Complaint pursuant to sections 548(a)(1)(B), 550 and 551 of the Code and Counts Six, Seven, and Eight pursuant to sections

---

[17] It is plausible that the Entity Defendants can also be charged with the fraudulent intent of the Family Defendants, who, alongside Stanley Chais, served as the Entity Defendants' trustees, officers, directors, and/or general partners. *See* Compl. at ¶ 100 ("The [Entity Defendants] are entities controlled or managed by Stanley Chais together with one or more [Family Defendants]," who were "trustees, officers and/or directors of [the Entity Defendants]."). As established above, the Court finds that the Trustee sufficiently pled fraudulent intent on the part of the Family Defendants. *See supra* Section I, B, i. Based on the agency law principles set forth above, the Entity Defendants can, in turn, be charged with the fraudulent knowledge held by the Family Defendants, yet another avenue ripe for exploration through discovery.

273–275, 278, and/or 279 of the NYDCL, in conjunction with sections 544, 550, 551, and 1107 of the Code, to avoid and recover transfers on the basis that they were constructively fraudulent.

## A. The Trustee's Constructive Fraud Claims Under the Code Are Adequately Pled

To prevail on a constructive fraud claim, the Trustee must show, *inter alia*, that the debtor, BLMIS, did not receive "reasonably equivalent value" for the transfer. 11 U.S.C. § 548(a)(1)(B)(i). The heightened federal pleading standard for allegations of fraud does not apply to a complaint to avoid transfers as constructively fraudulent. *See Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 801–02 (Bankr. S.D.N.Y. 2005).

The Moving Defendants argue that the Trustee's constructive fraudulent transfer claims fail as a matter of law because BLMIS received reasonably equivalent value. They base their argument on caselaw standing for the proposition that each investor in a fraudulent investment scheme holds a claim for fraudulent inducement against the debtor, entitling the investor to restitution of its principal investment. These restitution claims constitute antecedent debts. Under the Code, satisfaction of an antecedent debt constitutes value. 11 U.S.C. § 548(d)(2)(A) ("'[V]alue' means property, or satisfaction or securing of a present or antecedent debt of the debtor . . . ."). Investors' redemptions up to the amount of their principal satisfy the debtor's restitution claim debts, and thus constitute value to the debtor. Here, the Moving Defendants posit that they "have a claim against BLMIS for restitution of the principal sums entrusted to the scheme," which constitutes value. Defs' Partial MTD at p. 21. In addition, they maintain that the Complaint contains "no allegations that any of the Defendants' accounts received distributions from BLMIS in excess of that principal sum." Defs' Partial MTD at p. 22. On these grounds, the Moving Defendants contend that the Trustee's constructive fraudulent transfer claims must fail as a matter of law.

First, the Moving Defendants are not entitled to restitution of their principal, as the Trustee has sufficiently alleged that they are not "innocent" investors. Only innocent investors who reasonably believed that they were investing in a legitimate enterprise are entitled to claims for restitution. *See, e.g.*, *Donell v. Kowell*, 533 F.3d 762, 772 (9th Cir. 2008) (concluding that "good faith" investors in a Ponzi scheme acquired a claim for restitution up to the amount invested); *Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1286, 1289–90 (10th Cir. 1996) (holding that an investor who was undisputedly "fraudulently induced" to participate in a Ponzi scheme had a restitution claim up to the amount invested); *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 596 n.7 (9th Cir. 1991) ("If investments were made with culpable knowledge, all subsequent payments made to such investors within one year of the debtors' bankruptcy would be avoidable under section 548(a)(2), regardless of the amount invested, because the debtors would not have exchanged a reasonably equivalent value for the payments."); *Lustig v. Weisz & Assocs., Inc. (In re Unified Commercial Capital, Inc.)*, 260 B.R. 343, 351 (Bankr. W.D.N.Y. 2001) (noting a "universally accepted fundamental commercial principal that, when you loan an entity money for a period of time in good faith, you have given value and are entitled to a reasonable return"); *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000) ("[A]n investor having actual knowledge of the underlying fraud may not have a claim for restitution, and will not be deemed to have given reasonably equivalent value in exchange for payments from a Ponzi scheme."). Here, however, the Moving Defendants cannot benefit from the remedy of restitution because the Trustee has sufficiently pled that they were not "innocent" investors; rather, as discussed above, it is plausible that they knew or should have known of the Madoff fraud and helped to perpetuate it.

The Trustee's assertion that only "innocent" investors are entitled to restitution claims is

also consistent with the equitable nature of the remedy of restitution. It is well settled that restitution is "a remedy traditionally viewed as 'equitable.'" *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 255 (1993). Thus, investors who have knowledge of, and help perpetuate, a fraud should not be permitted to benefit in the form of restitution. As the Supreme Court pointed out, "one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction." *Gibbs & Sterrett Mfg. Co. v. Brucker*, 111 U.S. 597, 601 (1884). The *Independent Clearing House* case, relied upon by the Moving Defendants, reaches the same conclusion: "For a court to lend its aid to a wrongdo[er] . . . is to lend its sanction to the wrong." *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 858 (D. Utah 1987); *see also Cruse v. Callwood*, Nos. 2006-71, *et al.*, 2010 WL 438173, at *3 (D. Virgin Is. Feb. 3, 2010) ("[W]e therefore[] cannot support the trial court's equitable judgment of restitution where it found that Appellees [w]ere aware of the glaringly iniquitous mechanics of this transparent get-rich-quick scheme."). Accordingly, taking the facts alleged in the Complaint as true, the Moving Defendants are not entitled to restitution claims, and thus cannot be said to have given reasonably equivalent value in exchange for their receipt of the relevant Transfers.

Logic dictates the same outcome; if the consideration for a transfer is satisfaction of an antecedent debt, the debt must be legally enforceable. Since investors in a Ponzi scheme are entitled to only an equitable right of repayment, there can be no legally enforceable debt if the investors acted in bad faith. Therefore, while innocent investors are entitled to restitution claims up to the amount of their principal, such is not the case when investors, like the Moving Defendants, are alleged to have had knowledge of, and played a part in, furthering the fraud.

Second, in accordance with Rule 8, the Trustee has sufficiently pled that the Transfers consisted, at least in part, of fictitious profits and therefore lacked reasonably equivalent value. As courts have consistently held, and the Moving Defendants have conceded, when investors invest in a Ponzi scheme, any payments that exceed their principal investments are not made for reasonably equivalent value and can be recovered by the Trustee as fraudulent conveyances. *See, e.g.*, *Donell*, 533 F.3d at 770 ("Where causes of action are brought . . . against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ."); *Hedged-Inv. Assoc., Inc.*, 84 F.3d at 1290; *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995); *United Energy Corp.*, 944 F.2d at 595 n.6 (9th Cir. 1991); *Terry v. June*, 432 F. Supp. 2d 635, 642–43; *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.*, 362 B.R. 624, 636 (Bankr. S.D.N.Y. 2007) ("Plaintiffs are correct in asserting in their brief that virtually every court to address the question has held unflinchingly that to the extent that investors have received payments in excess of the amounts they have invested, those payments are voidable as fraudulent transfers.") (internal quotations omitted); *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 643–46 (Bankr. S.D. Ohio 2006); *Soulé v. Alliot (In re Tiger Petroleum Co.)*, 319 B.R. 225, 239 (Bankr. N.D. Okla. 2004); *Lake States Commodities*, 253 B.R. at 871.[18] This is because transfers received in a Ponzi scheme in excess of an investor's investment are not transferred for reasonably equivalent value. *United Energy Corp.*, 944 F.2d at 595, n.6 ("Such excess amounts would be avoidable because the debtor would not have received reasonably equivalent value."); *Lake States Commodities*, 253 B.R. at 872 (" '[F]alse profits' are not paid in exchange for reasonably equivalent value.").

---

[18] In fact, this Court recently stated in dicta that transfers of fictitious profits are voidable. *SIPC v. BLMIS (In re BLMIS)*, 424 B.R. 122, 136 (Bankr. S.D.N.Y. 2010).

Here, the Trustee has alleged in the Complaint that the Moving Defendants collectively withdrew more than $1 billion from BLMIS since December 1995, which consisted, in part, of fictitious profits generated by a Ponzi scheme. Compl. at ¶ 102 ("The source of funds in many of the [Entity Defendants' IA Accounts] was fictitious profits received by Chais for his participation in the Ponzi scheme."); *see also* Compl. at ¶¶ 25, 27, 106. Moreover, Exhibit B specifically identifies in detail the Transfers to the Moving Defendants, including the date, transferor, transferee and amount transferred. With respect to transfers of fictitious profits, these allegations undeniably render the constructive fraud claims plausible, and provide the Moving Defendants with fair notice of the claims asserted against them. *Twombly*, 550 U.S. at 555–56; *see also* Rule 8(a).

In any event, the Court need not make a finding as to the merits of these issues, as they are inappropriate for a motion to dismiss. *Silverman v. Actrade Capital, Inc. (In re Actrade Fin. Techs. Ltd.)*, 337 B.R. 791, 804 (Bankr. S.D.N.Y. 2005). ("[T]he question of 'reasonably equivalent value' . . . is fact intensive, and usually cannot be determined on the pleadings."). At this early stage, the Trustee has adequately pled a lack of reasonably equivalent value with regard to both principal and fictitious profits for purposes of section 548(a)(1)(B) of the Code.

Accordingly, the Trustee has adequately stated a claim for constructive fraudulent transfers under the Code, and the Motion to Dismiss Count Four of the Complaint is denied.

### B. The Trustee's Constructive Fraud Claims Under the NYDCL Are Adequately Pled

Under the NYDCL provisions governing constructively fraudulent transfers, the Trustee may avoid those transfers for which BLMIS did not receive "fair consideration." NYDCL §§ 273–275. "Fair consideration" requires not only "fair equivalent" property, but also that the transferee receive the transfer in good faith. NYDCL § 272; *HBE Leasing Corp. v. Frank*, 61

F.3d 1054, 1058–59 (2d Cir. 1995) (holding that "fair consideration" requires not only that the exchange be for equivalent value, but also that the conveyance be made in good faith); *Actrade Fin. Techs. Ltd.*, 337 B.R. at 802 ("Under New York law, the party seeking to have the transfer set aside has the burden of proof on the element of fair consideration and, since it is essential to a finding of fair consideration, good faith.") (citing *United States v. McCombs*, 30 F.3d 310, 326 (2d Cir. 1994)); *Mendelsohn v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 662 (Bankr. E.D.N.Y. 2008) (holding that "fair consideration" has a good faith component). Under the NYDCL, as under the Code, the heightened requirements of Rule 9(b) do not apply to the Trustee's constructive fraud claims. *See Actrade Fin. Techs. Ltd.*, 337 B.R. at 801–02. Rather, "the sole consideration should be whether, consistent with the requirements of Rule 8(a), the complaint gives the defendant sufficient notice to prepare an answer, frame discovery and defend against the charges." *Nisselson v. Drew Indus., Inc.*, (*In re White Metal Rolling & Stamping Corp.*), 222 B.R. 417, 429 (Bankr. S.D.N.Y. 1998).

As discussed in depth in Section I, B, the Trustee has enumerated multiple instances of bad faith, thereby adequately pleading a lack of fair consideration for the Transfers. The Trustee has pointed to numerous facts demonstrating that the Moving Defendants continued to invest and profit while, among other things, receiving astronomical and unrealistic returns and receiving statements with backdated transaction histories, with actual or constructive knowledge that they were participating in and perpetuating a fraud.[19] Accordingly, at this stage, taking the Trustee's allegations as true, this Court finds that the Trustee has adequately stated a claim for constructive fraudulent conveyance under the NYDCL. As such, the Motion to Dismiss Counts Six through Eight of the Complaint is denied.

---

[19] While the Moving Defendants argue that reasonably equivalent value under the Code and fair consideration under the NYDCL "have substantially the same meaning," they do, however, concede in a footnote that the NYDCL defines fair consideration to include a good faith component. *See* Defs' Partial MTD at p. 21 n.3

## C.  The Principal Sum Does Not Include "Expected Returns"

In addition to arguing that they are entitled to restitution of the principal amounts entrusted to BLMIS, the Moving Defendants also contend that they are entitled to retain an unspecified amount of "expected returns."   They assert that when a Ponzi scheme operator is a broker-dealer, investors' restitution claims are not limited to the amounts principally invested, but rather, the amounts they expected to earn on those investments.  In the context of this Ponzi scheme, the Moving Defendants argue that their expectations were reflected on their fictitious November 30, 2008 BLMIS account statements, which, as a result, requires the Trustee to plead that the Transfers exceeded the phantom account balances provided therein.   Although this argument is rendered moot by the Court's finding in Section I, B that the Trustee has adequately pled that the Moving Defendants acted in bad faith and are therefore not entitled to restitution claims in the amount of even their principal investments, the Court will nonetheless address the merits of the argument in the interest of completeness.

To support their position, the Moving Defendants cite to a Sixth Circuit unpublished decision, *Visconsi v. Lehman Bros. Inc.*, 244 Fed. Appx. 708 (6th Cir. 2007).  There, the Circuit affirmed the enforcement of an arbitration award against Lehman Brothers.   The arbitration award arose in connection with a fraudulent investment scheme orchestrated by a stockbroker employed by Lehman Brothers and awarded the plaintiffs expectation damages in excess of their initial investment.   Lehman Brothers sought to vacate the award because the plaintiff actually gained more than $5.2 million in excess of their initial investment.   The Circuit disagreed and affirmed the arbitrator's award.   The Moving Defendants assert that this Court should likewise recognize that defrauded investors are entitled to expectation damages above their initial investment—namely, the fictitious amounts reflected on their last BLMIS account statements.

The *Visconsi* case is not controlling here. First, in upholding the arbitrator's award, the Circuit emphasized that an arbitrator's ruling will only be vacated if it "manifestly disregarded the law," *Visconsi*, 244 Fed. Appx. at 711, and further stated that "Lehman faces a nearly impossible burden" because the arbitrators issued the award without an opinion. *Id.* at 712. Thus, the Circuit did not affirmatively endorse the granting of expectation damages, but instead merely reinforced the difficulty associated with vacating an arbitrator's award, particularly when a written opinion is not present. Second, unlike the case at hand, the issue of expectation damages was not decided in connection with a fraudulent transfer claim where reasonably equivalent value was at issue. Last, and most importantly, the *Visconsi* case was not decided in the context of a liquidation proceeding. Given that Lehman Brothers was solvent and had assets of its own to satisfy the arbitration award, enforcing the award against Lehman Brothers would not, unlike here, be to the detriment of other investors. Accordingly, because the facts in *Visconsi* are entirely different from those before the Court, its holding does not support the Moving Defendants' position.[20]

### III. THE TRUSTEE HAS PROPERLY ALLEGED THAT THE RELEVANT DATE FOR SIX YEAR FRAUDULENT CONVEYANCES UNDER THE NYDCL IS THE FILING DATE OF THE SIPA PROCEEDING

With respect to the Trustee's fraudulent conveyance actions under the NYDCL, the Court finds that the relevant look-back period extends to those Transfers made as early as December 11, 2002, six years before the December 11, 2008 Filing Date of the SIPA liquidation proceeding. *See* Compl. at ¶ 108.

The Moving Defendants argue that the statute of limitations for fraudulent conveyance

---

[20] On March 1, 2010, the Court rendered its Net Equity Decision, holding that the value of a customer's claim in the SIPA liquidation is the amount he deposited in his BLMIS account, less any amounts withdrawn. *See generally SIPC v. BLMIS (In re BLMIS)*, 424 B.R. 122 (Bankr. S.D.N.Y. 2010). While the Court did not decide the value of a hypothetical restitution claim, the Court affirmatively ruled that the net amount invested, and not the amount reflected on a BLMIS account statement, dictates the value of a customer's claim.

actions under section 213 of the New York Civil Procedure Law and Rules (the "NYCPLR"),[21] incorporated by reference in section 544(b) of the Code, looks back six years from the filing of the *Complaint*, filed on May 1, 2009, rather than from the *Filing Date*, December 11, 2008. In effect, the Moving Defendants challenge the Trustee's attempts to recover those Transfers made in the period between December 11, 2002 and May 1, 2003.

The issue raised by the Moving Defendants centers on the interplay between the applicable state statute of limitation period incorporated by section 544(b) and section 546(a) of the Code. Pursuant to section 544(b) of the Code, "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable *under applicable law* by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b) (emphasis added). Under this section, a trustee is permitted to step into the shoes of an unsecured creditor and utilize applicable state law avoidance statutes to recover fraudulently transferred property. *Universal Church v. Geltzer*, 463 F.3d 218, 222 n.1 (2d Cir. 2006) ("[T]he Bankruptcy Code allows the trustee to step into the shoes of a creditor under state law and avoid any transfers such a creditor could have avoided."). Section 546(a) of the Code, in relevant part, states that an action or proceeding under section 544 to avoid a transfer must be commenced within "2 years after the entry of the order for relief." 11 U.S.C. § 546(a). The combination of these statutes raises the question, as one court has framed it, "[i]f the applicable non-bankruptcy law extinguishes a cause of action after the bankruptcy is commenced, but before the limitation period in § 546(a)(1)(A), which statute of limitation is applicable?" *Summitt Sec. Inc. v. Sandifur (In re Metro. Mortg. & Sec. Co., Inc.)*, 344 B.R. 138, 141 (Bankr. E.D. Wash. 2006).

The Moving Defendants read these two Code provisions together to suggest that "the

---

[21] Section 213(8) of the NYCPLR states, in relevant part, that the statute of limitation for bringing causes of action sounding in fraud is six years.

Trustee must bring any claim under § 544(b) within *the shorter of* i) the limitations period provided by [NY]CPLR 213 and ii) the two year post-commencement limitation period imposed by Code § 546(a)(1)(A)." Defs' Partial MTD at p. 24. They argue that "[b]ecause the Trustee has no greater rights under § 544(b) than an actual creditor would have under the NYDCL, he cannot recover transfers made prior to May 1, 2003 unless New York law tolls the statute of limitations" at the Filing Date, which it does not. *Id.* While the Moving Defendants endeavor to support this position, even they "recognize that a number of district and bankruptcy courts have [found that the six-year period runs from the Filing Date], including this court, and that the *Collier* treatise so states." *Id.* at p. 25 (citing 6 COLLIER ON BANKRUPTCY ¶ 546.02[1][b] (15th ed. rev. 2007) ("If the state law limitations period governing a fraudulent transfer action has not expired at the commencement of a bankruptcy case, the trustee may bring the action pursuant to Section 544(b), provided that it is commenced within the Section 546(a) limitations period.").[22] The Court is likewise aware of the abundance of case law in support of the Trustee's position, as well as the strong policy goals involved, and is thus not prepared to adopt the Moving Defendants' construction of the law.

Courts have consistently held that upon the filing of a bankruptcy case, state law statutes of limitation cease to have any continued effect, and, instead, the provisions of section 546(a) of the Code govern. Although the New York statute of limitations for fraudulent conveyance actions allows a creditor to recover transfers made six years before the filing of the *complaint*, it is well established that once a bankruptcy petition is filed, section 546(a) of the Code is triggered, allowing a trustee to recover transfers made six years before the *petition date*. *See, e.g.*, *O'Connell v. Shallo (In re Die Fliedermaus LLC)*, 323 B.R. 101, 107 (Bankr. S.D.N.Y.

---

[22] The Moving Defendants declare that these cases "are not well-reasoned." Defs' Partial MTD at p. 25.

2005) ("This would permit the Trustee to reach back to October 3, 1995, *six years before the Debtor's bankruptcy petition was filed*.") (emphasis added); *Eisenberg v. Feiner (In re Ahead By A Length, Inc.)*, 100 B.R. 157, 164 (Bankr. S.D.N.Y. 1989) (declining to dismiss complaint as untimely where "fraudulent scheme began fewer than *six years before the bankruptcy petition was filed*") (emphasis added); *Barnard v. Joffe (In re Inflight Newspapers, Inc.)*, 423 B.R. 6, 20 (Bankr. E.D.N.Y. 2010) ("[T]he operative date for determining the look-back period for recovering a transfer is the *petition date* . . . .") (emphasis added). In addition, section 546(a) of the Code separately provides that the trustee must commence such claims under section 544(b) within two years from "the entry of the order for relief." 11 U.S.C. § 546(a); *see also Randall's Island Family Ctrs. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs.)*, No. 02-2278, 2002 WL 31496229, at *1 (Bankr. S.D.N.Y. Nov. 8, 2002). Accordingly, as long as the six-year statute of limitations has not expired as of the petition date, a trustee is permitted to bring New York fraudulent conveyance actions in accordance with section 544(b) at *any* point during the two-year period set out in section 546(a). *See, e.g.*, *Finkel v. Polichuk (In re Polichuk)*, Adv. Proc. No. 10-0031 (ELF), 2010 WL 4878789, at *3 (Bankr. E.D. Pa. Nov. 23, 2010) ("Even though the state law cause of action may expire after the filing of the petition, but before the two-year limitation in 546(a), the two-year limit in § 546(a) is applicable.") (internal citations omitted); *Sears Petroleum & Trans. Co. v. Burgess Constr. Servs., Inc.*, 417 F. Supp. 2d 212, 225 (D. Mass. 2006) ("Once the bankruptcy petition is filed, 11 U.S.C. § 546 governs the time for bringing the action, and . . . it is immaterial if the state limitations period accrues during the pendency of the bankruptcy case.").

Construing section 546(a) of the Code and the applicable state statute of limitation period in this manner fosters a trustee's ability to recover property for the benefit of the estate—a

congressional goal intended to be achieved by the Code. *Summitt Sec. Inc. v. Sandifur (In re Metro. Mortg. & Sec. Co., Inc.)*, 344 B.R. 138, 141 (Bankr. E.D. Wash. 2006); *Princeton – New York Inv., Inc.*, 219 B.R. at 65. Section 546(a) advances this goal by providing the trustee with some "breathing room to determine what claims to assert under § 544." *Gibbons v. First Fidelity Bank, N.A (In re Princeton–New York Inv., Inc.)*, 219 B.R. 55, 65 (D.N.J. 1998); *see also Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 677 (Bankr. S.D. Tex. 2007); *Bay State Milling Co. v. Martin (In re Martin)*, 142 B.R. 260, 266 (Bankr. N.D. Ill. 1992). Absent the additional two-year period under section 546(a), a trustee could be forever barred from seeking fraudulently transferred property merely because actions were not commenced immediately upon the filing of the petition. It simply cannot be expected that a newly appointed trustee, with no prior knowledge of the debtor, could assert causes of action within applicable state statute of limitation periods that accrue in the very early stages of a case. *See Metro. Mortg.*, 344 B.R. at 141 (holding that requiring trustee to comply with state statute of limitation periods "would contravene the broad powers Congress has granted to the trustee under § 544"); *Mancuso v. Cont'l Bank Nat'l Assoc. Chicago (In re Topcor, Inc.)*, 132 B.R. 119, 124–25 (Bankr. N.D. Tex. 1991) ("The most evident reason for providing trustees two years to bring avoidance actions is to ensure that the trustee has ample time to investigate any potential claims . . . ."). As such, courts have consistently held that that the applicable state's statute of limitation period is relevant only to determine whether the claim would have been timely as of the *petition date*.

Here, the Trustee may avoid those Transfers made as early as December 11, 2002, six years before the December 11, 2008 Filing Date in accordance with relevant law. <u>First</u>, the claims in Counts Five through Eight asserted under the NYDCL would have been timely because they seek to avoid only those Transfers that occurred within six years of the petition date, which

in this case is the Filing Date.  <u>Second</u>, the Complaint was timely filed under section 546(a) of

the Code, as it was commenced within two years of the "order for relief," which in this case is

also the Filing Date.  Accordingly, contrary to the Moving Defendants' assertions, Counts Five

through Eight of the Complaint seeking Transfers going back six years from the Filing Date are

timely and have been properly pled.[23]

## IV.    THE TRUSTEE HAS SUFFICIENTLY PLED CLAIMS FOR TRANSFERS PRIOR TO SIX YEARS BEFORE THE FILING DATE BASED ON THE DISCOVERY RULE

The Trustee has sufficiently pled Count Nine of the Complaint under sections 276, 276-a,

278 and/or 279 of the NYDCL, and pursuant to sections 544, 550(a) and 551 of the Code, to

recover actual fraudulent transfers from the Moving Defendants made more than six years before

the Filing Date.

Under New York's "discovery rule," causes of action predicated on fraud "must be

commenced within six years after the commission of the fraud or within two years of the date the

fraud was or should have been discovered [with reasonable diligence], [w]hichever is longer."

*Phillips v. Levie*, 593 F.2d 459, 462 n.12 (2d Cir. 1979); *see also Manning v. Utilities Mut. Ins.

Co.*, 254 F.3d 387, 401 n.12 (2d Cir. 2001) ("New York's six year statute of limitations for fraud

claims is a 'discovery rule.' "); N.Y. C.P.L.R. §§ 213(8), 203(g).  The Trustee seeks to utilize

New York's discovery rule, in conjunction with his strong arm power under section 544 and

applicable sections of the NYDCL, to avoid "undiscovered transfers" that occurred more than six

years before the Filing Date.  To do this, the Trustee must show that during the period various

Transfers were made, Madoff's fraud was either: (1) not discovered, and could not have been

discovered with reasonable diligence, by at least one unsecured creditor; or (2) was only

---

[23]  In addition, even if the Moving Defendants' position were correct, the Trustee may nonetheless avoid the
Transfers that occurred in the disputed period between December 11, 2002 and May 1, 2003 due to New York's
"discovery rule," which is discussed in detail in Section IV.

discovered, and could have only been discovered with reasonable diligence, by at least one unsecured creditor within two years of the Filing Date.  *See* 11 U.S.C. § 544(b).

The Moving Defendants argue that the "red flags,"[24] which purportedly placed the Moving Defendants on notice of Madoff's fraud, preclude any inference that an investor exists who could invoke the discovery rule.  Defs' Partial MTD at p. 34 ("[I]f it was reasonable for the [Moving Defendants] to have known that they were receiving distributions from a Ponzi scheme based on [] publicly known facts, it was equally reasonable for any other non-professional investor to have known the same thing.").  In addition, they contend that the Trustee lacks standing because he has failed to identify a specific unsecured creditor who could invoke the discovery rule.  For the reasons set forth below, the Court disagrees and finds that since the Trustee filed the Complaint within two years of the announcement of the BLMIS Ponzi scheme, he is entitled to seek recovery for all of the Transfers over the life of the Moving Defendants' accounts.[25]

With regard to the Moving Defendants' first argument, it does not follow that because the indicia of fraud put the Moving Defendants on notice of the fraud, they were sufficient to put *all* investors on notice, as the Moving Defendants and other BLMIS investors are not similarly situated.  First, the Trustee has adequately alleged indicia of fraud that pertain solely to the Moving Defendants and not generally to all Madoff victims, who could not have discovered the fraud with reasonable diligence.  For example, the Trustee asserts that the Moving Defendants' IA Accounts reflected abnormally high annual returns, Compl. at ¶ 103(b), anomalous "losses"

---

[24] These red flags are discussed in Section I, B in connection with the Trustee's fraudulent transfer claims under the NYDCL.  *See* Defs' Partial MTD at pp. 15–16, 33–34; Compl. at ¶ 104.

[25] The Moving Defendants also assert that the tolling provisions of sections 213(8) and 203(g) of the NYCPLR do not apply to constructive fraud claims.  Count Nine of the Complaint seeks to avoid only those Transfers predicated on actual fraud.  Accordingly, the Court need not address this argument.

allegedly manufactured for tax purposes, *id*. at ¶ 103(d), and backdated trades "with monumental and patently incredible rates of return that far outpaced the market," *id*. at ¶ 103(e). These are only some of the numerous indicia of fraud setting the Moving Defendants apart from other BLMIS investors.

Second, in addition to the indicia of fraud particular to them, the Moving Defendants had means generally unavailable to all Madoff victims to discover the fraud. Unlike many BLMIS investors, the Moving Defendants had the benefit of the management of their accounts by Stanley Chais, a highly sophisticated and experienced investor who invested in BLMIS over many decades through more than 60 entity and/or personal accounts. Compl. at ¶ 33; *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 235 (2d Cir. 2006) ("The law is indulgent of the simple or untutored; but the greater the sophistication of the investor, the more inquiry that is required."); *Tab P'ship v. Grantland Fin. Corp.*, 866 F. Supp. 807, 811 n.3 (S.D.N.Y. 1994) ("It is well settled that a court may consider the sophistication of a plaintiff investor in evaluating issues of inquiry notice . . . ."). Additionally, in light of Stanley Chais's unusually close relationship with Madoff on both a business and social level that spanned over thirty years, the Moving Defendants, whose accounts were controlled by Stanley Chais, were privy to information and dealings of BLMIS not known to other BLMIS investors. *See* Compl. at ¶¶ 92, 99, 100. Therefore, the sophistication, experience and totality of information available to the Moving Defendants by way of Stanley Chais should have put them on notice that they were benefiting from the fraud, differentiating them from other BLMIS investors.

With regard to the Moving Defendants' second argument, a trustee is not required to specifically identify a qualifying unsecured creditor in its complaint to assert standing under section 544 of the Code in accordance with the pleading requirements of Rule 8. *See Musicland*

*Holding Corp. v. Best Buy Co., (In re Musicland Holding Corp.)*, 398 B.R. 761, 780 (Bankr. S.D.N.Y. 2008). At most, a trustee need only identify a category of unsecured creditors in whose shoes standing is being asserted. *Global Crossing Estate Rep. v. Winnick*, No. 04-CIV-2558 (GEL), 2006 WL 2212776, at *11 (S.D.N.Y. Aug. 3, 2006) ("[T]here is no authority for the proposition that the Estate Representative must be more specific than to identify the category of creditors with potentially viable claims."). However, even such is not required; instead, simply pleading the existence of an unsecured creditor generally will suffice to satisfy Rule 8(a)(2). *In re RCM Global Long Term Cap. Apprec. Fund, Ltd.*, 200 B.R. 514, 523–24 (Bankr. S.D.N.Y. 1996) (holding that pleading the existence of an unsecured creditor with an allowable claim is sufficient); *see also In re Musicland*, 398 B.R. at 780 ("Thus, *RCM* supports the proposition that the plaintiff may plead the existence of the qualifying creditor generally, and prove the existence of an actual, qualifying creditor at trial.").

Here, the Trustee has not only adequately pled generally the existence of a qualified unsecured creditor, but has also satisfied the more stringent standard of pleading the existence of a category of creditors who could invoke the discovery rule. The Trustee asserts that "[a]t all times relevant to the Transfers, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS," Compl. at ¶ 160, and that "[a]t all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable . . . ." *Id.* at ¶ 161. Such is more than sufficient to satisfy the standard set out by the *RCM* court, which requires that the Trustee plead only the existence of a qualifying unsecured creditor generally. *RCM*, 200 B.R. at 524. In fact, in *Musicland*, the court observed that it had "not been able to locate a case in this district supporting the proposition that the plaintiff must name the qualifying

creditor in the complaint, or suffer dismissal." *In re Musicland*, 398 B.R. at 780. Moreover, the Complaint additionally satisfies the stricter standard set out in *Global Crossing*.[26] The Complaint provides sufficient notice to the Moving Defendants of at least one category of creditors on whose claims the Trustee bases his standing: the clearly defrauded BLMIS customers. *See* Compl. at ¶ 4 ("The Trustee seeks to set aside such transfers and preserve the property for the benefit of BLMIS' defrauded customers."); *id.* at ¶¶ 14, 17c. Accordingly, based on these allegations, the Complaint more than satisfies the pleading standard under Rule 8.

In any event, while the Trustee has sufficiently alleged the existence of creditors who could not reasonably have discovered the fraud, adjudication of this issue is premature at the motion to dismiss stage. *Schmidt v. McKay*, 555 F.2d 30, 37 (2d Cir. 1977) (holding that whether a plaintiff knew or could have known with reasonable diligence of fraud is a mixed question of law and fact that "ordinarily should not be disposed of by summary disposition"); *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 673 (D.R.I. 1998) ("A probing inquiry into who the creditors are, and what claims they hold, is inappropriate [on a motion to dismiss]."); *Trepuk v. Frank*, 44 N.Y.2d 723, 725 (N.Y. 1978) ("Where it does not conclusively appear that a plaintiff had knowledge of facts from which the fraud could reasonably be inferred, a complaint should not be dismissed on motion and the question should be left to the trier of the facts.").

Accordingly, for the reasons discussed above, the Motion to Dismiss with respect to Count Nine of the Complaint is denied.

## V.   THE TRUSTEE HAS ADEQUATELY PLED CLAIMS TO RECOVER SUBSEQUENT TRANSFERS FROM THE MOVING DEFENDANTS

The Trustee has sufficiently pled Count Ten of the Complaint to recover funds

---

[26] It is worth mentioning that the *Global Crossing* court did not hold that a category of qualifying unsecured creditors must be pled. Instead, the plaintiff in *Global Crossing* pled a category of unsecured creditors and the court held that such was more than sufficient to satisfy Rule 8. Thus, the holding in *Global Crossing* does not overturn the more liberal standard set out in *RCM*.

subsequently transferred to the Moving Defendants under section 550(a)(2) of the Code and section 278 of the NYDCL. *See* 11 U.S.C. § 550(a)(2) (allowing recovery from "any immediate or mediate transferee of such initial transferee"); NYDCL § 278 (allowing recovery from "any person"); *Farm Stores, Inc. v. Sch. Feeding Corp.*, 102 A.D.2d 249, 255 (App. Div. 2d Dep't 1984) ("*[E]ach transferee . . . is liable to the creditor to the extent of the value of the money or property he or she wrongfully received.*") (emphasis added).

In determining whether a claim to recover fraudulent transfers from a subsequent transferee is adequately pled, the Court need only apply a Rule 8 analysis. *SIPC v. Stratton Oakmont, Inc.*, 234 B.R. 293, 317–18 (Bankr. S.D.N.Y. 1999) ("[R]ecovery under § 550(a) is not subject to a particularized pleading standard . . . ."). As such, the Trustee must provide only a "short and plain statement of the claim showing that [he] is entitled to relief." FED. R. CIV. P. 8(a)(2). The purpose of this pleading requirement is to ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Scheidelman v. Henderson (In re Hendersen)*, 423 B.R. 598, 612 (Bankr. N.D.N.Y. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). Consistent with precedent in this Circuit, a trustee need only demonstrate "sufficient facts to show, if proved, that the funds at issue originated with the debtor." *Silverman v. K.E.R.U. Realty Corp. (In re Allou Distrib., Inc.)*, 379 B.R. 5, 30 (Bankr. E.D.N.Y. 2007). However, a "dollar-for-dollar accounting is not required . . . at the pleading stage." *Id.* (finding subsequent transfer claim adequately pled where complaint stated, "at least tens of millions of dollars were fraudulently diverted from [debtor] to [initial transferees] . . . [and] a portion of these fraudulently diverted funds was transferred from the [initial transferees] to, or for the benefit of, the [subsequent transferees].").

Here, the Complaint satisfies Rule 8 by providing "fair notice" to the Moving Defendants

of the Subsequent Transfers sought to be recovered. As discussed previously, the Trustee has alleged initial Transfers totaling more than $1.1 billion, which are set forth with particularity in Exhibit B to the Complaint, specifying the dates upon which they took place, the method of transfer, the transferor, and the specific transferees. Compl. at Ex. B. The Complaint then provides that "some or all of the[se] Transfers were subsequently transferred . . . to Defendant Chais and/or other Defendants in the form of payment of commissions or fees, transfers from one account to another, or other means."[27] Compl. at ¶ 166. The Complaint thus "adequately apprises" the Moving Defendants of the Subsequent Transfers at issue. *Stratton Oakmont, Inc.*, 234 B.R. at 318.

Moreover, the Trustee "is an outsider to these transactions and will need discovery to identify the specific [Subsequent Transfers] . . . by date, amount and the manner in which they were effected." *See Jalbert v. Zurich Am. Ins. Co. (In re Payton Constr. Corp.)*, 399 B.R. 352, 365 (Bankr. D. Mass. 2009). The Moving Defendants are a group of interrelated individuals and entities closely associated with defendant Stanley Chais, all of whom maintained BLMIS accounts and received direct Transfers. Whether they additionally received Subsequent Transfers of BLMIS funds from one another is a question to which they, and they alone, have the requisite information to respond. As such, the Trustee has adequately stated a claim for relief

---

[27] The Moving Defendants erroneously argue that "the Trustee is not permitted to rely upon information and belief pleading" because "he has account records related to the Defendants' BLMIS accounts." *See* Defs' Partial MTD at p. 36 n.15. This argument is incorrectly premised upon a general principal, subject to exception, that "Rule 9(b) pleadings [fraud or mistake] cannot be based upon information and belief." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citing *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)). As discussed above, the Trustee's subsequent transfer claims, which do not depend upon allegations of fraud or mistake, are subject only to a Rule 8 pleading standard. In any event, the exception to the general principle would apply here, as "pleadings on information and belief are acceptable as to facts peculiarly within the opposing party's knowledge." *Breeden v. Bennett (In re Bennett Funding Group, Inc.)*, 367 B.R. 269, 298 (Bankr. N.D.N.Y. 2007) (quoting *DiVittorio*, 822 F.2d at 1247) (internal quotations omitted). Here, the details of subsequent transactions by and between the Moving Defendants, if any, are uniquely in their possession, and should be made available to the Trustee through discovery. *See id*. ("[D]espite the Trustee's post hoc access to BFG's books and records, the byzantine nature and extensive duration of the alleged fraud necessarily resulted in certain facts remaining peculiarly within Bennett's knowledge.").

entitling him to discovery into his subsequent transfer claims.

Accordingly, the Motion to Dismiss with respect to Count Ten of the Complaint is denied.

## VI. THE TRUSTEE HAS NOT SUFFICIENTLY PLED TURNOVER AND ACCOUNTING PURSUANT TO SECTION 542 OF THE CODE[28]

With respect to Count One of the Complaint, the Trustee has not adequately stated a claim for immediate turnover of transferred funds and accounting under section 542 of the Code.

Section 542 of the Code states, in relevant part, that "an entity . . . in possession, custody, or control, during the case, of [property of the estate] . . . shall deliver to the trustee, and account for, such property or the value of such property."  11 U.S.C. § 542(a).  The Defendants argue that the Trustee may not use section 542 of the Code to recover prepetition transfers because they do not become "property of the estate" unless and until they are recovered through a successful avoidance action, which in essence requires a two-step process.  *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992); *Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) ("[P]roperty that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered.").  In contrast, the Trustee contends that in this hybrid proceeding under both SIPA and the Code, SIPA section 78fff-2(c)(3) alters the nature of section 542 of the Code to permit a SIPA trustee to recover prepetition transfers in one step upon a *prima facie* showing that the transfer is "voidable or void," without the need for an avoidance action and separate recovery under section 550 of the Code.  SIPA § 78fff-2(c)(3).

As evidenced by the divergent positions of the parties, the plain language of SIPA section 78fff-2(c)(3) is subject to differing interpretations, and there is a dearth of interpretative caselaw.

---

[28] The issue of turnover was recently decided in this Court's decision, *Picard v. Merkin (In re BLMIS)*, 440 B.R. 243 (Bankr. S.D.N.Y. 2010).

In fact, this Court has located only nine cases addressing SIPA section 78fff-2(c)(3), three of which merely cite the statute without analysis or discussion.[29] Yet, none of these cases addresses the instant question as to whether SIPA section 78fff-2(c)(3) makes property that was transferred prepetition to a third party "property of the debtor" for purposes of turnover under section 542 of the Code. Thus, the Court requested and reviewed supplemental briefing from the parties to address this issue (the "Supplemental Briefing") (Dkt. Nos. 78–80).

Consistent with the Trustee's position and the bankruptcy court's expansive *in rem* jurisdiction,[30] the most efficient application of the hybrid SIPA and Code statutes is to bypass the two-step recovery process and allow the Trustee to expeditiously collect the funds using turnover under section 542 of the Code. Unfortunately, however, there is nothing in the plain language of SIPA section 78fff-2(c)(3) or in the limited interpretive caselaw to give such an "*in rem* spin" to the Trustee's one-step turnover quest under section 542 of the Code.[31]

The plain language of SIPA section 78fff-2(c)(3) creates a fiction that grants the trustee standing to bring avoidance actions under the Code. The avoidance provisions of the Code allow a trustee to "avoid any transfer . . . of *an interest of the debtor in property*." 11 U.S.C. §§ 547, 548 (emphasis added). In a SIPA proceeding, however, property held by a broker-debtor for the

---

[29] Three of the nine cases merely cite to SIPA section 78fff-2(c)(3) without any analysis or discussion. *Togut v. RBC Dain Correspondent Servs. (In re S.W. Bach & Co.)*, 435 B.R. 866, 886 (Bankr. S.D.N.Y. 2010); *Picard v. Fox, (In re BLMIS)*, 429 B.R. 423, 427 n.4 (Bankr. S.D.N.Y. 2010) (Lifland, J.); *Sec. Investor Prot. Corp. v. BLMIS (In re BLMIS)*, 424 B.R. 122, 136 (Bankr. S.D.N.Y. 2010) (Lifland, J.). The remaining six cases analyze SIPA section 78fff-2(c)(3) in conjunction with avoidance provisions of the Code, supporting the Moving Defendants' interpretation. *Picard v. Taylor (In re Park South Sec., LLC.)*, 326 B.R. 505, 512–13 (Bankr. S.D.N.Y. 2005); *Trefny v. Bear Stearns Sec. Corp.*, 243 B.R. 300, 320–23 (S.D. Tex. 1999); *Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*, Nos. 95-08203 (JLG), *et al.,* 1998 WL 551972, at *17 (Bankr. S.D.N.Y. Aug. 24, 1998); *Mishkin v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689, 702 (Bankr. S.D.N.Y. 1998); *Hill v. Spencer S & L Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 94 B.R. 817, 825–27 (D.N.J. 1989); *Hill v. Spencer S & L Ass'n (In re Bevill, Bresler & Schulman, Inc.)*, 83 B.R. 880, 886–88 (D.N.J. 1988) ("*Bevill I*").

[30] *See Cent. Virginia Comm. Coll. v. Katz*, 546 U.S. 356, 369 (2006) (supporting the bankruptcy court's expansive in rem jurisdiction by upholding a trustee's avoidance actions against a state agency); *State Comp. Ins. Fund v. Zamora (In re Silverman)*, 616 F.3d 1001, 1008 (9th Cir. 2010) (holding that a chapter 11 trustee may avoid and recover criminal restitution payments under section 547(b) of the Code).

[31] It is conceivable, however, for the Trustee to find support at law outside of turnover.

account of a customer is not property of the broker-debtor. Thus, a SIPA trustee would lack

standing to utilize these avoidance sections. SIPA section 78fff-2(c)(3) states, in relevant part,

> [T]he Trustee may recover any property transferred by the debtor which, except
> for such transfer, would have been customer property if and to the extent that such
> transfer is voidable or void under the provisions of Title 11. Such recovered
> property shall be treated as customer property. *For the purposes of such
> recovery, the property so transferred shall be deemed to have been the property of
> the debtor* and, if such transfer was made to a customer or for his benefit, such
> customer shall be deemed to have been a creditor, the laws of any State to the
> contrary notwithstanding.

SIPA § 78fff-2(c)(3) (emphasis added). SIPA section 78fff-2(c)(3) rectifies this defect by

creating a fiction that such property "*shall be deemed to have been the property of the debtor*" at

the time of the transfer.[32] SIPA § 78fff-2(c)(3) (emphasis added).

Further, the few cases construing SIPA section 78fff-2(c)(3) find that its limited purpose

is to create this legal fiction. *Bevill I*, 83 B.R. at 894 ("This fiction allows the SIPA trustee to

avoid . . . transfers in spite of the fact that a broker-dealer liquidation technically does not

involve the debtor-creditor relationship . . . ."). Indeed, the six courts that have analyzed this

provision have done so only in the context of avoidance actions, never in conjunction with

section 542 of the Code. *See Picard v. Taylor* (*In re Park South Sec., LLC.*), 326 B.R. 505, 512–

13 (Bankr. S.D.N.Y. 2005) (reading SIPA Section 78fff-2(c)(3) together with sections 544 and

548); *Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*, Nos. 95-08203 (JLG), *et al.*,

1998 WL 551972, at *17 (Bankr. S.D.N.Y. Aug. 24, 1998) (stating that courts have held that

SIPA section 78fff-2(c)(3) authorizes a trustee *to avoid* a transfer of customer property); *Mishkin

v. Ensminger (In re Adler, Coleman Clearing Corp.)*, 218 B.R. 689, 702 (Bankr. S.D.N.Y. 1998)

(finding that SIPA section 78fff-2(c)(3) does not limit a trustee's avoidance power under section

---

[32] Similarly, SIPA section 78fff-2(c)(3) provides that a customer in receipt of a preference "shall be deemed to have
been a creditor" at the time of transfer in order to ensure that the SIPA trustee has standing under section 547 of the
Code. *See* 11 U.S.C. § 547 ("[T]he trustee may avoid any transfer of an interest of the debtor in property – (1) to or
for the benefit of a creditor . . . .").

544); *Trefny v. Bear Stearns Secs. Corp.*, 243 B.R. 300, 320–23 (S.D. Tex. 1999) (reading SIPA

Section 78fff-2(c)(3) together with section 548); *Hill v. Spencer S & L Ass'n (In re Bevill,*

*Bresler & Schulman, Inc.)*, 94 B.R. 817, 825–27 (D.N.J. 1989) (reading SIPA Section 78fff-

2(c)(3) together with section 549); *Bevill I*, 83 B.R. at 886–88 (same).

Thus, the Court is constrained to find that while the Trustee has stated *prima facie* claims

for avoidance under the Code and the NYDCL, the current state of the law does not support the

requested *expeditious* turnover of the funds under section 542 of the Code. To hold otherwise

would give the "deemed to have been property of the debtor" language a more expansive

meaning, something that Congress did not address.

In light of the foregoing analysis, the Motions to Dismiss are hereby granted with respect

to Count One of the Complaint.

**VII. THE TRUSTEE HAS SUFFICIENTLY PLED A BASIS FOR DISALLOWING THE MOVING DEFENDANTS' SIPA CLAIMS**

The Trustee has sufficiently pled Count Eleven of the Complaint to disallow the Moving

Defendants' SIPA claims. The Trustee alleges that the claims filed by the Moving Defendants

are (1) not supported by the books and records of BLMIS, and (2) should be disallowed under

section 502(d) of the Code because the Moving Defendants received voidable Transfers that

have not been returned to the Trustee. In response, the Moving Defendants declare that the first

allegation is not supported by factual detail and thus does not satisfy *Twombly* and *Iqbal*. With

respect to the second allegation, the Moving Defendants argue that section 502(d) of the Code

does not apply to insurance claims that are paid by SIPC.

The Trustee has sufficiently pled that the Moving Defendants' SIPA claims are not

supported by the books and records of BLMIS. Compl. at ¶ 172. The books and records indicate

that the Transfers to the Moving Defendants, detailed in Exhibit B, "were, in part, false and

fraudulent payments of nonexistent profits supposedly earned in the Accounts." Compl. at ¶ 106. Thus, the Moving Defendants allegedly received distributions above the amount of their principal contribution, precluding them from receiving SIPC advances and distributions from the pool of assets collected by Trustee. *See SIPC v. BLMIS (In re BLMIS)*, 424 B.R. 122, 125 (Bankr. S.D.N.Y. 2010) (defining net equity by reference to amounts invested and withdrawn).

In addition, the Trustee has adequately pled the disallowance of the Moving Defendants' SIPA claims under section 502(d) of the Code, which states that, "the court shall disallow any claim of any entity . . . that is a transferee of a [voidable] transfer." 11 U.S.C. § 502(d). The purpose of this section is to "preclude entities that have received voidable transfers from sharing in the distribution of assets unless and until the voidable transfer has been returned to the estate." *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986). As discussed, the Trustee has sufficiently pled his avoidance claims against the Moving Defendants. Moreover, they have not returned to the Trustee the funds purportedly transferred. As a result, the Trustee's claim under section 502(d) of the Code is adequately pled.

The Moving Defendants argue unconvincingly that section 502(d) of the Code does not apply to disallow their claims because a SIPA claim is an "insurance claim" against SIPC, rather than a claim against the broker-debtor's estate. In the Net Equity Decision, this Court addressed similar arguments advanced by certain BLMIS customers. Those claimants argued that SIPC provides an *insurance* fund, separate and apart from the pool of customer property, against which claims can be filed. In response, the Court found that Madoff customers are not "statutorily entitled to an additional source of recovery in the form of SIPC *insurance*, separate and apart from customer property distributions," explaining that "[t]his argument finds no support in the text of the statute, which characterizes SIPC payments as *advances* inextricably tied to

distributions of customer property." *In re BLMIS*, 424 B.R. at 133–34. Accordingly, a net equity claim is not a claim against SIPC, but rather a claim against the pool of customer property collected by the Trustee. As such, the Court finds no merit to the Moving Defendants' argument and finds that the Trustee's claim under section 502(d) of the Code is appropriate. Accordingly, the Motion to Dismiss Count Eleven of the Complaint is denied.

## CONCLUSION

Accepting as true the facts pled in the Complaint and drawing all inferences that may be warranted by such facts, the Trustee has pled valid *prima facie* claims against the Moving Defendants in Counts Three through Eleven of the Complaint for, *inter alia*, avoidance of the redemption payments in their entirety under sections 548(a)(1)(A) and 548(a)(1)(B) of the Code and corresponding sections of the NYDCL. The Trustee may or may not prove the requisite facts to establish the elements of his claims after discovery and a trial on the merits. Nevertheless, the Trustee's claims have been adequately pled, and the Motion to Dismiss under Rule 12(b)(6) is therefore DENIED as to these counts. With respect to Count One of the Complaint, the Trustee has not adequately stated a claim for immediate turnover of transferred funds under section 542 of the Code and SIPA section 78fff-2(c)(3), and the Motion to Dismiss is therefore GRANTED in this limited respect.

**IT IS SO ORDERED**.

Dated: New York, New York
      February 24, 2010

                            /s/ Burton R. Lifland
                            UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

In re:

BERNARD L. MADOFF INVESTMENT SECURITIES LLC,

  Debtor.

---

IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,

  Plaintiff,

  v.

ESTATE OF STANLEY CHAIS, individually and as General Partner of Defendants The Brighton Company, The Lambeth Company, and The Popham Company, and as trustee for The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, the Onondaga, Inc. Defined Benefit Plan, and the Unicycle Corporation Money Purchase Plan;

PAMELA CHAIS, individually, as Executor of the Estate of Stanley Chais, and as trustee for the Chais 1991 Family Trust, the Appleby Productions Ltd., Defined Contribution Plan, the Appleby Productions Ltd. Money Purchase Plan, and the Appleby Productions Ltd. Profit Sharing Plan;

EMILY CHASALOW, individually and as trustee for the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow

Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust;

MARK CHAIS, individually and as trustee for the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, and the Tali Chais Transferee #1 Trust;

WILLIAM CHAIS individually and as trustee for the William Chais and Wrenn Chais 1994 Family Trust Dated 4/25/95, the 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais 1999 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow 1999 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais 1994 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Wolf Chais Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow 1999 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Celia Chais 1992 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow 1999 Trust, the Rachel Allison Chasalow Transferee #1 Trust, the Tali Chais 1997 Trust, the Tali Chais Transferee #1 Trust, and the Onondaga, Inc. Defined Benefit Plan;

MICHAEL CHASALOW;

MIRIE CHAIS;

WRENN CHAIS, individually and as trustee for the William and Wrenn Chais 1994 Family Trust Dated 4/25/95;

ALBERT ANGEL, as trustee for The 1994 Trust for the Children of Stanley and Pamela Chais, the 1996 Trust for the Children of Pamela Chais and Stanley Chais, the 1999 Trust for the Children of Stanley and Pamela Chais, the 1999 Trust for the Grandchildren of Stanley and Pamela Chais, the Chais 1991 Family Trust, the Emily Chais 1983 Trust, the Emily Chais Trust, the Emily Chais Issue Trust, the Mark Hugh Chais Trust, the Mark Chais Issue Trust, the Mark Hugh Chais 1983 Trust, the William Frederick Chais Trust, the William F. Chais Issue Trust, the William Frederick Chais 1983 Trust, the Ari Chais Transferee #1 Trust, the Benjamin Paul Chasalow Transferee #1 Trust, the Chloe Francis Chais Transferee #1 Trust, the Jonathan Chais Transferee #1 Trust, the Justin Robert Chasalow Transferee #1 Trust, the Madeline Chais Transferee #1 Trust, the Rachel Allison Chasalow

Transferee #1 Trust, and the Tali Chais Transferee #1 Trust;

THE BRIGHTON COMPANY;

THE LAMBETH COMPANY;

THE POPHAM COMPANY;

APPLEBY PRODUCTIONS LTD.;

THE APPLEBY PRODUCTIONS LTD. DEFINED CONTRIBUTION PLAN;

THE APPLEBY PRODUCTIONS LTD. MONEY PURCHASE PLAN;

THE APPLEBY PRODUCTIONS LTD. PROFIT SHARING PLAN;

THE UNICYCLE TRADING COMPANY;

UNICYCLE CORP., individually and as the General Partner of The Unicycle Trading Company;

THE UNICYCLE CORPORATION MONEY PURCHASE PLAN;

ONONDAGA, INC., individually and as General Partner of Chais Investments Ltd., a Nevada Limited Partnership;

THE ONONDAGA, INC. MONEY PURCHASE PLAN;

THE ONONDAGA, INC. DEFINED BENEFIT PENSION PLAN;

CHAIS INVESTMENTS, LTD.;

CHAIS FAMILY FOUNDATION;

CHAIS MANAGEMENT, INC., individually and as General Partner of Chais Management Ltd.;

CHAIS MANAGEMENT, LTD.;

CHAIS VENTURE HOLDINGS;

THE 1994 TRUST FOR THE CHILDREN OF STANLEY AND PAMELA CHAIS;

THE 1996 TRUST FOR THE CHILDREN OF PAMELA CHAIS AND STANLEY CHAIS;

THE 1999 TRUST FOR THE CHILDREN OF STANLEY AND PAMELA CHAIS;

THE 1999 TRUST FOR THE GRANDCHILDREN OF STANLEY AND PAMELA CHAIS;

THE CHAIS 1991 FAMILY TRUST;

THE EMILY CHAIS 1983 TRUST;

THE EMILY CHAIS TRUST;

THE EMILY CHAIS ISSUE TRUST;

THE MARK HUGH CHAIS TRUST;

THE MARK HUGH CHAIS ISSUE TRUST;

THE MARK HUGH CHAIS 1983 TRUST;

THE WILLIAM FREDERICK CHAIS TRUST;

THE WILLIAM F. CHAIS ISSUE TRUST;

THE WILLIAM FREDERICK CHAIS 1983 TRUST;

THE WILLIAM AND WRENN CHAIS 1994 FAMILY TRUST;

THE ARI CHAIS 1999 TRUST;

THE ARI CHAIS TRANSFEREE #1 TRUST;

THE BENJAMIN PAUL CHASALOW 1999 TRUST;

THE BENJAMIN PAUL CHASALOW TRANSFEREE #1 TRUST;

THE CHLOE FRANCIS CHAIS 1994 TRUST;

THE CHLOE FRANCIS CHAIS TRANSFEREE #1 TRUST;

THE JONATHAN WOLF CHAIS TRUST;

THE JONATHAN CHAIS TRANSFEREE #1 TRUST;

THE JUSTIN ROBERT CHASALOW 1999 TRUST;

THE JUSTIN ROBERT CHASALOW TRANSFEREE #1 TRUST;

THE MADELINE CELIA CHAIS 1992 TRUST;

THE MADELINE CHAIS TRANSFEREE #1 TRUST;

THE RACHEL ALLISON CHASALOW 1999 TRUST;

THE RACHEL ALLISON CHASALOW TRANSFEREE #1 TRUST;

THE TALI CHAIS 1997 TRUST;

THE TALI CHAIS TRANSFEREE #1 TRUST;

and DOES 1-25;

Defendants.